# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

| | |
|---|---|
| STATE OF TEXAS, and TEXAS COMMISSION ON ENVIRONMENTAL QUALITY,<br>    *Petitioners,*<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and GINA MCCARTHY, in her official capacity as Administrator of the United States Environmental Protection Agency,<br>    *Respondents*. | Case No. _____ |

## PETITION FOR REVIEW

In accordance with Section 307(b)(1) of the Clean Air Act, 42 U.S.C. § 7607(b)(1), 5 U.S.C. § 702, and Federal Rule of Appellate Procedure 15(a), petitioners the State of Texas and the Texas Commission on Environmental Quality hereby petition this Court for review of the United States Environmental Protection Agency's (EPA) final action titled "Approval and Promulgation of Air Quality Implementation Plans; Texas; Interstate Transport of Air Pollution for the 2008 Ozone National Ambient Air Quality Standards" 81 Fed. Reg. 53,284 (August 12, 2016), a copy of which is enclosed with this filing.

This Court has jurisdiction and is a proper venue for this action under 42 U.S.C. § 7607(b)(1). The final action concerns disapproval of a portion of a state implementation plan prepared by Texas pursuant to Section 110 of the Clean Air Act, 42 U.S.C. § 7410, to implement in Texas certain provisions pertaining to the 2008 National Ambient Air Quality Standards. The final action was approved by the Regional

Administrator for EPA Region 6, pursuant to his delegated authority to act for the Administrator. Therefore, the final action is a locally or regionally applicable final action and is not "nationally applicable" or of "nationwide scope or effect." 42 U.S.C. § 7607(b). This petition for review is timely filed within sixty days of the date of publication of the Final Rule in the Federal Register. *Id.*

Dated: October 10, 2016

                                         Respectfully submitted,

                                         KEN PAXTON
                                         Attorney General of Texas

                                         JEFFREY C. MATEER
                                         First Assistant Attorney General

                                         BRANTLEY STARR
                                         Deputy First Assistant Attorney General

                                         JAMES E. DAVIS
                                         Deputy Attorney General for Civil Litigation

                                         */s/ Priscilla M. Hubenak*
                                         PRISCILLA M. HUBENAK
                                         Assistant Attorney General
                                         Chief, Environmental Protection Division
                                         State Bar No. 10144690
                                         priscilla.hubenak@oag.texas.gov

                                         CRAIG J. PRITZLAFF
                                         Assistant Attorney General
                                         State Bar No. 24046658
                                         craig.pritzlaff@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
ENVIRONMENTAL PROTECTION DIVISION
P.O. Box 12548, MC 066
Austin, Texas  78711-2548
Tel: (512) 463-2012
Fax: (512) 320-0911

**Counsel for Petitioners**

# CERTIFICATE OF SERVICE

On October 10, 2016, the foregoing Petition for Review was served by certified mail, return receipt requested, on:

Hon. Regina A. McCarthy
Office of the Administrator (1101A)
United States Environmental Protection Agency
1200 Pennsylvania Ave., NW
Washington, DC 20460

Hon. Loretta E. Lynch
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530-0001

*Pursuant to 40 C.F.R. § 23.12:*
    Correspondence Control Unit
    Office of General Counsel (2311A)
    United States Environmental Protection Agency
    1200 Pennsylvania Ave., NW
    Washington DC 20460

*/s/ Priscilla H. Hubenak*
PRISCILLA M. HUBENAK

the submittal titled ''Reasonably Available Control Technology (RACT) as Applicable to the 8-Hour Ozone Standard,'' dated October 26, 2006, as adopted on October 26, 2006 and submitted on July 11, 2007.

(ii) [Reserved]

(2) [Reserved]

[FR Doc. 2016–18900 Filed 8–11–16; 8:45 am]

**BILLING CODE 6560–50–P**

---

**ENVIRONMENTAL PROTECTION AGENCY**

**40 CFR Part 52**

[EPA–R06–OAR–2012–0985; FRL–9950–50–Region 6]

**Approval and Promulgation of Air Quality Implementation Plans; Texas; Interstate Transport of Air Pollution for the 2008 Ozone National Ambient Air Quality Standards**

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule.

**SUMMARY:** The Environmental Protection Agency (EPA) is disapproving the portion of a Texas State Implementation Plan (SIP) submittal pertaining to interstate transport of air pollution which will significantly contribute to nonattainment or interfere with maintenance of the 2008 ozone National Ambient Air Quality Standard (NAAQS) in other states. Disapproval establishes a 2-year deadline for the EPA to promulgate a Federal Implementation Plan (FIP) for Texas to address the Clean Air Act (CAA) interstate transport requirements pertaining to significant contribution to nonattainment and interference with maintenance of the 2008 ozone NAAQS in other states, unless the EPA approves a SIP that meets these requirements. Disapproval does not start a mandatory sanctions clock for Texas.

**DATES:** This rule is effective on September 12, 2016.

**ADDRESSES:** The EPA has established a docket for this action under Docket ID No. EPA–R06–OAR–2012–0985. All documents in the docket are listed on the *http://www.regulations.gov* Web site. Although listed in the index, some information is not publicly available, *e.g.,* Confidential Business Information or other information whose disclosure is restricted by statute. Certain other material, such as copyrighted material, is not placed on the Internet and will be publicly available only in hard copy. Publicly available docket materials are available either electronically through *http://www.regulations.gov* or in hard copy at EPA Region 6, 1445 Ross Avenue, Suite 700, Dallas, Texas 75202–2733.

**FOR FURTHER INFORMATION CONTACT:** Carl Young, 214–665–6645, *young.carl@epa.gov.*

**SUPPLEMENTARY INFORMATION:** Throughout this document, ''we,'' ''us,'' and ''our'' means the EPA.

### I. Background

This rulemaking addresses an infrastructure SIP submittal from the state of Texas addressing, among other things, the requirements of CAA section 110(a)(2)(D)(i)(I), also known as the good neighbor provision (or interstate transport prongs 1 and 2), with respect to the 2008 ozone NAAQS. The background for this action is discussed in detail in our April 11, 2016 proposal (81 FR 21290). In that action we proposed to disapprove the portion of the December 13, 2012 Texas SIP submittal pertaining to CAA section 110(a)(2)(D)(i)(I) which requires that the State prohibit any emissions activity within the state from emitting air pollutants which will significantly contribute to nonattainment (prong 1) or interfere with maintenance (prong 2) of the 2008 ozone NAAQS in other states.[1] In proposing to disapprove the SIP submittal as to prongs 1 and 2 of the good neighbor provision, we noted several deficiencies in Texas' submittal: (1) Texas limited its discussion of data only to areas designated nonattainment in states that are geographically closest to Texas (Arizona, Arkansas, Colorado, Illinois, Indiana, Louisiana, Mississippi, Missouri, Tennessee, and Wisconsin); and (2) Texas did not give the ''interfere with maintenance'' clause of CAA section 110(a)(2)(D)(i)(I) independent significance because its analysis did not attempt to evaluate the potential impact of Texas emissions on areas that are currently measuring clean data, but that may have issues maintaining that air quality.[2] Finally, the EPA explained that Texas and other states could no longer rely on the implementation of the Clean Air Interstate Rule (CAIR) to satisfy emission reduction obligations with respect to the 2008 ozone NAAQS (81 FR 21290, 21294–5). The EPA is finalizing its proposed disapproval in this action.

We received three comments during the comment period on our proposed SIP disapproval. The comments were submitted by the State of Texas (Texas Commission on Environmental Quality ''TCEQ''), Luminant (a Texas electricity producer) and a member of the public. A synopsis of the comments and our responses are provided below.

### II. Response to Comments

*Comment:* Comments were received from a member of the public that was supportive of the EPA's basis for its proposed action, but added that (1) the public can better understand how we are using the most current information if we clarify and explain how the projections and modeling discussed in the evaluation for our proposal are informed by recent ozone monitoring data, and (2) the commenter stated that the EPA took too long to propose action on the Texas SIP revision, noting that Texas would benefit from earlier review of its analysis by the EPA.

*Response:* We agree with the commenter's conclusion that Texas's SIP submittal was inadequate to address the statutory interstate transport requirements with respect to the 2008 ozone NAAQS. With respect to the commenter's first concern, the projections and modeling released c in the August 4, 2015 NODA and the proposed CSAPR Update, which we also o recited in the EPA's proposed action on the Texas SIP submittal. In our CSAPR Update proposal, we explained how the CSAPR Update Rule proposed to use recent ozone monitoring data to inform our evaluation of interstate transport (80 FR 75706, 75724). We proposed to identify as nonattainment receptors those monitoring sites that (1) measured ozone concentrations that exceed the NAAQS based on monitoring data from years 2012–2014, and (2) are projected to exceed the NAAQS in 2017

---

[1] In a separate action, we disapproved the portion of the SIP submittal pertaining to the CAA section 110(a)(2)(D)(i)(II) requirement to address the interstate transport of air pollution which will interfere with other states' programs for visibility protection (81 FR 296, January 5, 2016). We proposed to approve the other portions of the infrastructure SIP submittal on February 8, 2016 (81 FR 6483).

[2] In addition, the EPA cited at proposal certain technical information the agency had released in order to facilitate efforts to address interstate transport requirements for the 2008 ozone NAAQS, and that this information was used to support the proposed Cross-State Air Pollution Rule Update for the 2008 ozone NAAQS (CSAPR Update) (81 FR 21299, 21292). We noted that such information contradicts Texas' conclusions that its SIP contained adequate provisions to meet the CAA interstate transport requirements with respect to the 2008 ozone NAAQS. See Notice of Data Availability (NODA), 80 FR 46271, (August 4, 2015) and the proposed CSAPR Update, 80 FR 75706 (December 3, 2015). We also noted at proposal that the EPA technical information in the NODA and the proposed CSAPR Update accounted for the emission reductions resulting from controls listed in the SIP, implemented within the state, and nonetheless showed that Texas will contribute to downwind air quality problems. The CSAPR Update, however, is outside the scope of this action, and is irrelevant to the question of whether the Texas SIP should be disapproved.

**Attachment 1**

based on an average design value.[3] We proposed to identify maintenance receptors as those monitoring sites that have measured ozone concentrations that meet the NAAQS (clean data) based on monitoring data from years 2012–2014 and are projected to exceed the NAAQS in 2017 based on a maximum or average design value. We proposed this method of projecting from recent monitoring data to 2017 to identify maintenance receptors, since the monitoring sites of the proposed maintenance receptors currently meeting the NAAQS could be subject to conditions that may allow violations to reoccur and therefore may have future maintenance concerns. For more information about how the EPA identified 2017 nonattainment and maintenance receptors, please see pages 75723–75726 in the proposed CSAPR Update. (80 FR 75706). Today's rulemaking does not address which monitoring sites are identified as nonattainment and maintenance receptors with respect to interstate transport for the 2008 ozone NAAQS. Such determination, including more recent ozone monitoring data which will inform that analysis, will be addressed in the EPA's final CSAPR Update and are outside the scope of this final action. The EPA's disapproval is based on the inadequacies in the analysis provided in Texas's SIP submittal, as described in this document and in EPA's proposed action on that SIP.

With respect to the timeliness of the EPA's action on the Texas SIP submittal, CAA section 110(k)(2) requires the EPA to act on SIPs within one year after a submittal is determined to be complete. We determined that the Texas infrastructure SIP submittal, which includes transport, was complete on December 20, 2012. While the EPA generally agrees that prompt action on state SIP submittals can be beneficial to the states' planning efforts, in this case, the D.C. Circuit's decision in *North Carolina* v. *EPA,* 531 F.3d 896, 908–911 (D.C. Cir. 2008) provided the holding that states must give the ''interfere with maintenance'' clause of CAA section 110(a)(2)(D)(i)(I) independent significance, which Texas failed to do.

*Comment:* The TCEQ stated that it does not support the EPA's proposed disapproval of the state's interstate transport portion of its SIP submittal because the TCEQ's interstate transport analysis adequately addresses the requirements of CAA section 110(a)(2)(D)(i)(I). Specifically, TCEQ stated that the EPA failed to issue guidance in a timely manner for states to use in developing infrastructure and transport SIP revisions for the 2008 ozone NAAQS. TCEQ therefore contends that it is inappropriate for the EPA to conclude that the state's analysis of ozone contributions to other areas is incomplete when the EPA did not provide timely guidance stating what would constitute a complete analysis. TCEQ explained that its SIP revision was submitted on December 13, 2012 in order to meet the January 4, 2013 deadline by which the EPA was court-ordered to issue findings of failure to submit infrastructure SIPs for the 2008 ozone NAAQS. TCEQ notes that the EPA did not issue infrastructure SIP guidance until September 13, 2013, eight months following the January 2013 deadline, which did not contain any information on what would constitute an adequate interstate transport analysis. TCEQ further notes that the EPA did not provide information to states regarding interstate transport for the 2008 ozone NAAQS until 2015, through information provided in a January 22, 2015 memo, an August 4, 2015 NODA, and the December 3, 2015 CSAPR Update proposal, which was well after the state's SIP submittal. Therefore, as a result of the EPA's lack of timely transport guidance for the 2008 ozone standard and subsequent NODA regarding 2017 nonattainment and maintenance receptor linkages and contributions, TCEQ contends that it was forced to expend effort and resources to develop its SIP revision without knowing how the EPA would evaluate Texas' interstate transport obligation. Further, the EPA has routinely failed to issue timely guidance for SIP revisions and to even meet statutory SIP review deadlines in the CAA. As a result, the EPA has disrupted the SIP development process nationwide, undermining the states' ability to submit sufficient SIP revisions.

*Response:* We disagree that Texas' December 13, 2012 SIP submittal containing the state's transport analysis adequately addressed the requirements of CAA section 110(a)(2)(D)(i)(I). Rather, the state's analysis was deficient to address the statutory requirements, as detailed in the proposal and in more detail in this document. CAA section 110(a)(2)(D)(i)(I) requires that for a new or revised standard, each SIP must contain adequate provisions to prohibit any emissions activity within the state from emitting air pollutants that will ''contribute significantly to nonattainment'' or ''interfere with maintenance'' of the applicable air quality standard in any other state—here being the 2008 ozone standard. (81 FR 21290–1, April 11, 2016). Texas submitted an analysis of monitoring data, wind patterns, emissions data and emissions controls and concluded that based on monitoring data, due to decreases in ozone design values and existing control measures, emissions from sources from within the state do not contribute significantly to nonattainment or interfere with maintenance of the 2008 ozone NAAQS in other states. We find that Texas' analysis was not adequate because Texas limited its discussion of data only to areas designated nonattainment in states that are geographically closest to the state and we find this approach incomplete, (as detailed in our proposal), since the state did not consider other areas that were not formally designated as nonattainment. (81 FR 21292). Moreover, the state did not give the ''interfere with maintenance'' clause of CAA section 110(a)(2)(D)(i)(I) independent significance, consistent with the D.C. Circuit's decision in *North Carolina* v. *EPA,* 531 F.3d 896, 908–911 (D.C. Cir. 2008), because its analysis did not attempt to evaluate the potential impact of Texas emissions on areas that are currently measuring clean data, but that may have issues maintaining that air quality. (81 FR 21292). As we noted at proposal the EPA's most recent technical information demonstrates that emissions from Texas do impact air quality in other states relative to the 2008 ozone NAAQS. (81 FR 21292–3). With regard to the timelines of EPA guidance, in *EPA* v. *EME Homer City Generation, L.P.,* the Supreme Court clearly held that ''nothing in the statute places the EPA under an obligation to provide specific metrics to States before they undertake to fulfill their good neighbor obligations.'' 134 S. Ct. 1584, 1601 (2014).[4] While we have taken a different approach in some prior rulemakings by providing states with an opportunity to submit a SIP after we quantified the states' budgets (*e.g.,* the

---

[3] The design value for the 2008 ozone NAAQS is the 3-year average of the annual 4th highest daily maximum 8-hour ozone concentration at a monitoring site.

[4] ''Nothing in the Act differentiates the Good Neighbor Provision from the several other matters a State must address in its SIP. Rather, the statute speaks without reservation: Once a NAAQS has been issued, a State 'shall' propose a SIP within three years, § 7410(a)(1), and that SIP 'shall' include, among other components, provisions adequate to satisfy the Good Neighbor Provision, § 7410(a)(2).'' *EPA* v. *EME Homer City Generation, L.P.,* 134 S. Ct. at 1600.

NO$_X$ SIP Call and CAIR [5]), the CAA does not require such an approach. Regarding the commenter's contention that the EPA's alleged inability to review SIP submittals within the CAA timelines undermines the ability of states to submit sufficient SIPs, the State's ability to submit a sufficient SIP that meets the applicable requirements is unrelated to the EPA's timeline for review.

*Comment:* TCEQ and Luminant both state that the EPA's public notice on the proposed disapproval is not meaningful because they contend that the outcome was predetermined when the EPA proposed a FIP for Texas in the proposed CSAPR Update. They stated that at the time of the proposed FIP to update CSAPR, the EPA had taken no action on the previously submitted SIP submittal from Texas addressing interstate transport with respect to the 2008 ozone NAAQS. The commenters contend that the EPA should have evaluated the SIP submittal prior to proposing a CSAPR Update that included Texas. The commenters also stated that we had not satisfied the prerequisites of CAA section 110(c)(1) when we issued the proposed FIP for Texas in the proposed CSAPR Update. The commenters therefore contend that the proposed SIP disapproval is only a post hoc rationalization for the proposed CSAPR Update, and our approach is unlawful and impermissibly treads on cooperative federalism required under the CAA. Lastly, the commenters claim that had we reviewed the SIP revision before proposing the CSAPR Update for Texas, the state would have had the opportunity contemplated by the CAA to correct any problems with its SIP in a timely fashion and avoid the imposition of the FIP.

*Response:* We disagree with the commenters that the proposed disapproval was predetermined when the EPA issued the proposed CSAPR Update that included a FIP for Texas. Our proposal to disapprove the Texas SIP provided proper notice and an opportunity for public comment, as legally required, and provided distinct bases for the proposed disapproval. Importantly, the proposed disapproval of the Texas SIP allowed an opportunity for submittal of any information that could have changed our proposed views concerning (1) the adequacy of the SIP submittal, and (2) the effect of Texas emissions on ozone levels in downwind states as demonstrated in the modeling and contribution information the EPA relied upon for its proposed disapproval. The EPA has not received any information demonstrating the identified inadequacies of the SIP submittal and the data showing the effect of Texas emissions in downwind states are inaccurate.

Whether the EPA appropriately proposed the CSAPR Update is outside the scope of this action, and is irrelevant to the question of whether the Texas SIP should be disapproved. The bases for the disapproval are further explained in both the proposal and this final action, and do not rely upon the proposed CSAPR Update. As described in the proposal and earlier in this document, whether or not the EPA had proposed the CSAPR Update, Texas' SIP submittal failed to include an analysis that appropriately evaluated the impact of state emissions on areas in other states, regardless of current nonattainment designations and considering the ability of areas currently measuring clean data to maintain that standard. These deficiencies are completely independent of any analysis conducted to support the CSAPR Update proposal.

Moreover, while the CSAPR Update proposal also relied upon the same modeling and contribution information to identify which states might be subject to a FIP in the final rulemaking, in the absence of an approvable SIP, the proposed disapproval of the Texas SIP did not rely upon the proposed findings in the CSAPR Update but rather cited, in addition to other deficiencies identified with the Texas SIP, technical data that was relevant to and informative for both proposals.

Our actions are consistent with CAA section 110(c) prerequisites in promulgating a FIP. In our December 3, 2015 **Federal Register** notice, we proposed to include Texas in the CSAPR Update (80 FR 75706). In that proposal we recognized that we could not promulgate a FIP for any state, including Texas, in the final CSAPR Update unless we found that the state had failed to make an approvable SIP submittal (80 FR 75719–20). A proposed rulemaking does not constitute a promulgation of a rule by the EPA, and therefore the proposed CSAPR Update does not constitute a ''predetermined outcome'' of EPA's review of Texas' SIP submittal, as the commenters describe, nor a promulgated FIP under CAA section 110(c). Were the EPA to finalize an approval of Texas' SIP, the EPA would not finalize the proposed inclusion of Texas in any final CSAPR Update. However, for the reasons described earlier, the EPA is finalizing its disapproval of Texas' SIP. However, this final action does not promulgate a FIP nor make any final determination regarding whether and when the EPA will promulgate a FIP. The EPA will determine whether to issue a FIP in the context of the CSAPR Update in the rulemaking for that action, and thus any concerns regarding the EPA's authority to issue a FIP are appropriately raised only in the context of that rulemaking.

Finally, the EPA disagrees with the commenters' claim that had we reviewed the SIP revision before proposing the CSAPR Update for Texas, the state would have had the opportunity contemplated by the CAA to correct any problems with its SIP in a timely fashion in order to avoid the imposition of the FIP. Contrary to commenters' assertions, CAA does not contemplate that a state have an opportunity to correct deficiencies with its SIP either before the EPA takes action to act on the SIP or before the EPA imposes a FIP after disapproval of a SIP. CAA section 110(c) provides that the EPA ''shall promulgate a [FIP] *at any time* within two years after'' the EPA either finds that a state has failed to make a required submittal or disapproves a SIP, in whole or in part. As the Supreme Court confirmed in *EPA* v. *EME Homer City Generation. L.P.,* ''EPA is not obliged to wait two years or postpone its action even a single day: The Act empowers the Agency to promulgate a FIP 'at any time' within the two-year limit.'' *EPA* v. *EME Homer City Generation, L.P.,* 134 S. Ct. 1584, 1600–01 (2014). The EPA notes, however, that states have the ability at any time, including before or after the imposition of a FIP, to submit an approvable SIP, which corrects any deficiency.

*Comment:* TCEQ commented that we inappropriately stated that it should have considered possible contributions to downwind areas that are not designated nonattainment but may nonetheless measure exceedances of the NAAQS. TCEQ further stated that we fail to mention how Texas might have accomplished this theoretical exercise particularly without EPA guidance on how to develop its transport SIP and considering the EPA relies on nationwide modeling to determine potential exceedances in areas that are attaining the NAAQS that is not made available to states prior to the statutory due dates for state transport SIPs. The TCEQ concedes that the EPA may now consider the CSAPR schema to be appropriate guidance for transport regulation, but contends that it is still not possible for states to effectively respond with timely transport SIPs. The commenter again notes that the EPA did

---

[5] For information on the NO$_X$ SIP call see 63 FR 57356 (October 27, 1998). For information on CAIR (the Clean Air Interstate Rule) see 70 FR 25162 (May 12, 2005).

not explain what type of transport analysis would be considered satisfactory when the EPA issued SIP guidance in 2013.

*Response:* Regardless of an air quality designation, any area may violate the NAAQS if upwind emissions affecting air quality are not adequately controlled. The EPA has routinely interpreted the obligation to prohibit emissions that ''significantly contribute to nonattainment'' of the NAAQS in downwind states to be independent of formal designations because exceedances can happen in any area.[6] Nothing in the CAA limits States' obligations under the good neighbor provision to downwind areas that have been formally designated nonattainment. To the contrary, CAA section 110(a)(2)(D)(i)(I) requires States to prohibit emissions that ''*will* contribute significantly to nonattainment in . . . any other State.'' (emphasis added). The future tense demonstrates that Congress intended this requirement to be forward-looking and apply to areas that will be in nonattainment regardless of formal designation. An area with air quality that is projected to exceed the NAAQS would be in nonattainment, and thus not meeting public health-based standards, regardless of whether it has been formally designated as a nonattainment area. An upwind state cannot be relieved of its obligation to address interstate transport of air pollution merely because of a lack of formal designation. Thus, Texas should have considered possible contributions to downwind areas that are not designated nonattainment but may nonetheless measure exceedances of the NAAQS in considering whether Texas emissions significantly contribute to nonattainment in another state.

With respect to the ''interfere with maintenance'' requirement, the court in *North Carolina* v. *EPA,* (531 F.3d 896, D.C. Cir. 2008), was specifically concerned with areas not designated nonattainment when it rejected the view that ''a state can never 'interfere with maintenance' unless the EPA determines that at one point it 'contribute[d] significantly to nonattainment.' '' 531 F.3d at 910. The court pointed out that areas barely attaining the standard due in part to emissions from upwind sources would have ''no recourse'' pursuant to such an interpretation. *Id.* Accordingly, and as described in the proposal, the court explained that the regulatory authority must give ''independent significance'' to the maintenance prong of CAA section 110(a)(2)(D)(i)(I) by separately identifying such downwind areas for purposes of defining states' obligations pursuant to the good neighbor provision. Thus, Texas should have considered the potential impact of its emissions on areas that are currently measuring clean data, but may have issues maintaining that air quality.

Although the TCEQ questions how it could have completed such an analysis without explicit guidance from the EPA and before the EPA had conducted air quality modeling evaluating downwind air quality and contributions, as explained earlier, states bear the primary responsibility for demonstrating that their plans contain adequate provisions to address the statutory interstate transport provisions and the EPA is not required to issue guidance. In separate interstate transport actions, the EPA has reviewed and finalized action on interstate transport SIPs in states where air quality modeling was not available or where the total weight of evidence for finalizing action on the state's SIP was not solely based on air quality modeling, according to these standards.[7] As evidenced by these actions, consideration of monitoring data is one valid way to evaluate potential interstate transport impacts, but it does not absolve a state from evaluating its downwind impact regardless of formal area designations and considering the requirements of both prongs of the good neighbor provision. As we noted above and as found by the Supreme Court in *EME Homer City Generation, L.P.,* the lack of guidance does not relieve either the states of the obligation to submit SIPs that address CAA section 110(a)(2)(D)(i)(I) nor the EPA of the obligation to review such SIPs consistent with the statutory requirements of the good neighbor provision. For the 2015 ozone NAAQS, we plan to provide information pertaining to interstate transport of air pollution later this year.[8] Interstate transport SIPs for the 2015 ozone NAAQS are due October 26, 2018. We plan to continue our ongoing dialogue with states to assist in developing an appropriate transport SIP.

*Comment:* TCEQ and Luminant both state that in our CSAPR Update proposal the EPA did not give independent effect to both the ''contribute significantly to nonattainment'' and the ''interfere with maintenance'' requirements as nonattainment and maintenance receptors are treated exactly the same way as far as linkages to states are defined and emission budgets are set. Luminant also claims that the EPA would be in violation of the Supreme Court in *EME Homer City Generation, L.P.* if we impose the same ''cost-effective controls'' to address both interference with maintenance and significant contribution to nonattainment.

Further, the comments state that because some states are linked to receptors in marginal nonattainment areas, the EPA is requiring emissions reductions from upwind states, including Texas, to assist states that do not have make emission reductions or institute control strategies of their own. Further, the comments claim that we have failed to identify any balance between local controls in areas with potential maintenance problems and reductions that it is requiring of states upwind that it models as contributing at least 1% of the relevant NAAQS to these areas with modeled, not monitored, issues.

The commenters also disagree with the EPA's finding that the Texas SIP submittal did not give independent significance to the CAA ''interfere with

---

[6] See, *e.g.,* Clean Air Interstate Rule, 70 FR 25162, 25265 (May 12, 2005) (''As to impacts, CAA section 110(a)(2)(D) refers only to prevention of 'nonattainment' in other States, not to prevention of nonattainment in designated nonattainment areas or any similar formulation requiring that designations for downwind nonattainment areas must first have occurred.''); Cross-State Air Pollution Rule, 76 FR 48208, 48211 (Aug. 8, 2011) (evaluating nonattainment and maintenance concerns based on modeled projections); Brief for Respondents U.S. Environmental Protection Agency at 23–24, *EME Homer City Generation, L.P.* v. *EPA,* Case No. 11–1302 (D.C. Cir. Jan. 16, 2015), ECF No. 1532516 (defending the EPA's identification of air quality problems in CSAPR independent of area designations). *Cf.* Final Response to Petition from New Jersey Regarding $SO_2$ Emissions From the Portland Generating Station, 76 FR 69052 (Nov. 7, 2011) (finding facility in violation of the prohibitions of CAA section 110(a)(2)(D)(i)(I) with respect to the 2010 $SO_2$ NAAQS prior to issuance of designations for that standard).

[7] See, *e.g.,* Air Quality State Implementation Plans; Approvals and Promulgations: Utah; Interstate Transport of Pollution for the 2006 $PM_{2.5}$ NAAQS May 20, 2013 (78 FR 29314); Final Rule, 78 FR 48615 (August 9, 2013); Approval and Promulgation of Implementation Plans; State of California; Interstate Transport of Pollution; Significant Contribution to Nonattainment and Interference With Maintenance Requirements, Proposed Rule, 76 FR 146516, 14616–14626 (March 17, 2011); Final Rule, 76 FR 34872 (June 15, 2011); Approval and Promulgation of State Implementation Plans; State of Colorado; Interstate Transport of Pollution for the 2006 24-Hour $PM_{2.5}$ NAAQS, Proposed Rule, 80 FR 27121, 27124–27125 (May 12, 2015); Final Rule, 80 FR 47862 (August 10, 2015).

[8] See pages 6–7 of the attachment to the October 1, 2015 EPA memorandum ''Implementing the 2015 Ozone National Ambient Air Quality Standards'' from Janet McCabe, Acting Assistant Administrator, Office of Air and Radiation to Regional Administrators, Regions 1–10, *https://www.epa.gov/sites/production/files/2015-10/documents/implementation_memo.pdf.*

maintenance'' requirement and contend that we have misconstrued that requirement by stating that TCEQ did not evaluate areas currently measuring clean data. Luminant contends that Texas' SIP does give independent significance to the ''interfere with maintenance'' clause. TCEQ claims that the EPA has not promulgated a rule that identifies a required or recommended methodology for the EPA or states to give independent consideration to possible contributions that may interfere with maintenance in downwind areas, and contend that it is arbitrary and capricious for the EPA to propose disapproval for failure to meet a standard or requirement that did not exist at the time the statutory obligation matured.

*Response:* As described in the proposal, the EPA proposed disapproval in part because the Texas SIP submittal did not address the potential impact of Texas emissions on maintenance areas. Reiterating our position explained in the proposal, the D.C. Circuit in *North Carolina* explained that the regulatory authority must give ''independent significance'' to the maintenance prong of CAA section 110(a)(2)(D)(i)(I) by evaluating the impact of upwind state emissions on downwind areas that, while currently in attainment, are at risk of future nonattainment, considering historic variability. *North Carolina* v. *EPA,* 531 F.3d 896, 908–911 (D.C. Cir. 2008). While one commenter contends that Texas evaluated the interference with maintenance prong and concluded monitoring data do not suggest that emissions from Texas contribute significantly to nonattainment or interfere with maintenance of the 2008 ozone NAAQS for areas in any other state, nothing in Texas' SIP submittal indicates that it performed any analysis to support its conclusion as the State limited its discussion of data only to certain areas designated nonattainment and did not consider whether those or any other areas might have trouble maintaining the standard even if they measured clean data. Thus, contrary to the commenter's assertion, Texas did not give independent meaning to the interference with maintenance prong by evaluating the impact of upwind state emissions on downwind areas that, while currently in attainment, are at risk of future nonattainment, as required by the statute and as clarified by the D.C. Circuit in *North Carolina.*

The EPA disagrees with the commenter's assertion that this standard or requirement did not exist at the time the statutory obligation to submit the transport SIP matured. At the time Texas was obligated to submit a SIP addressing interstate transport requirements for the 2008 ozone NAAQS, CAA section 110(a)(2)(D)(i)(I) clearly required states to submit a plan containing adequate provisions prohibiting any source or other type of emissions activity within the state from emitting any air pollutant in amounts which will interfere with maintenance by any other state with respect to a particular NAAQS. This requirement has not changed since Texas' obligation to submit a transport SIP matured, and contrary to commenter's assertion, the EPA is not obligated to identify a required or recommended methodology for giving independent consideration to possible contributions that may interfere with maintenance in downwind areas prior to proposing action on a SIP addressing such statutory requirement. Nonetheless, the State's SIP made no attempt to evaluate the maintenance prong with respect to the 2008 ozone NAAQS aside from its conclusory assertion that the requirements were satisfied.

To the extent the commenter has raised concerns with respect to the EPA's interpretation and application of the CAA, including the ''interfere with maintenance'' clause, in the context of the CSAPR Update rulemaking, such comments are appropriately raised and addressed in that rulemaking. The EPA is not finalizing in this rule any determinations regarding the identification of specific downwind maintenance receptors, the magnitude of Texas' contribution to those receptors, and the quantity of any emission reductions that might be necessary. Such determinations will be made in the context of the CSAPR Update rulemaking. To the extent that Luminant refers to the EPA's approach as not compliant with the Supreme Court's *EME Homer City Generation, L.P.* decision, this comment relates to the CSPAR Update rulemaking and not our action today. Thus, it is outside the scope of this action and would be more appropriately addressed in that separate rulemaking.

*Comment:* TCEQ claims that the EPA has not demonstrated that a contribution by upwind states of 1% of the NAAQS will interfere with maintenance in identified maintenance areas. Further the TCEQ contends that the EPA has not demonstrated that a 1% of the NAAQS contribution to modeled emissions in maintenance areas is appropriate for linking an upwind state to a maintenance monitor. Further, they contend that EPA has not demonstrated that the amount of reductions necessary to cure a contribution to nonattainment is also appropriate to ensure that an upwind state is not interfering with maintenance. Lastly, TCEQ states that the 1% contribution threshold is arbitrary.

*Response:* The EPA explained in the CSPAR Update proposal its reasoning for why we believe it appropriate to use the same approach used in CSAPR to establish a 1% air screening threshold for the evaluation of interstate transport requirements for the 2008 ozone NAAQS, including the interference with maintenance requirement. 81 FR 21292–94. The commenter does not explain its allegations that the 1% threshold is arbitrary nor does the commenter explain how the EPA has not demonstrated this threshold is appropriate to show interference by upwind states with maintenance in identified maintenance areas.

Nonetheless, while the EPA cited the modeling conducted for the CSAPR Update as showing Texas may significantly contribute to nonattainment or interfere with maintenance of the 2008 ozone NAAQS in downwind states, we did not propose to make a specific finding of contribution or to quantify any specific emissions reduction obligation. We did not rely upon a 1% contribution threshold for this action. Rather, the evaluation of whether emissions from Texas significantly contribute to nonattainment or interfere with maintenance of the 2008 ozone NAAQS downwind, relying upon the use of a 1% contribution threshold, and if so what reductions are necessary to address that contribution, is being conducted in the context of the CSAPR Update rulemaking. Accordingly, this comment relates to the CSPAR Update rulemaking and not our action today. Thus, it is outside the scope of this action and would be more appropriately addressed in that separate rulemaking. The EPA will consider timely-submitted comments regarding the EPA's air quality modeling and various associated legal and policy decisions in finalizing that rulemaking.

*Comment:* TCEQ stated that it supports the use of ambient air quality monitoring data as the only valid basis for making nonattainment designations and identifying nonattainment and maintenance receptors and that it does not support the use of modeling as the basis for designations or identifying either nonattainment or maintenance receptors for transport. TCEQ contends that using modeling for these actions could result in major capital expenditures for industry to fix something that may not be a real problem, and claims that to base these actions on modeling is inconsistent with

historical and present EPA policies. TCEQ also notes that the EPA does not redesignate an area to attainment when an area models attainment as part of an attainment demonstration, but rather uses monitoring data to verify attainment before redesignation.

*Response:* While the EPA does rely on ambient air quality monitoring data to make decisions on ozone nonattainment designations and redesignations, the EPA has routinely based its determination of receptors for purposes of evaluating interstate ozone transport on air quality modeling projections.[9] This is because, regardless of designation, any area may violate the NAAQS if upwind emissions affecting air quality are not adequately controlled, and areas currently measuring clean data may still violate the NAAQS if conditions change such that attainment with the NAAQS can no longer be maintained. Thus, the means by which the EPA makes decisions with respect to area designations is not relevant to our identification of receptors that should be evaluated for interstate transport of air pollution. In *North Carolina* v. *EPA,* the D.C. Circuit concluded that the EPA's reliance on future projections to identify such receptors was a reasonable application of the statute. *North Carolina,* 531 F.3d at 914. Nonetheless, while the EPA has relied upon modeling to identify downwind air quality problems, the EPA has also stated that states may consider other types of data when evaluating interstate transport in developing their SIPs. See Memorandum from William T. Harnett to Regional Air Division Directors, Regions I–X, ''Guidance on SIP Elements Required Under [CAA] Sections 110(a)(1) and (2) for the 2006 24-Hour Fine Particle ($PM_{2.5}$) National Ambient Air Quality Standards (NAAQS)'', September 25, 2009.[10] Indeed, as described earlier, the EPA has regularly evaluated interstate transport SIPs in western states, where modeling has not typically been available, considering monitored data in a manner that is consistent with the standards described in this document.

*Comment:* TCEQ stated that we failed to give comments on the adequacy of the State's interstate transport analysis during the State public comment period and that the lack of comments led the State to believe that the submitted analysis was adequate to show how Texas contributes to other states' ozone concentrations.

*Response:* The EPA's authority and obligation under the Act is to review a SIP submittal and determine whether it meets the applicable requirements of the Act and regulations, regardless of whether we commented on a State's proposed SIP during its State rulemaking process. There is no requirement in the Act that the EPA must review, evaluate, and comment on a State's proposed SIP revision during the state rulemaking process, and no reasonable or legal basis for states to assume that the EPA's choosing to not provide comment on their analysis during the state public comment period constitutes the Agency's endorsement of such analysis.

*Comment:* Luminant stated that the EPA needs to revise the CSAPR ozone season $NO_X$ budgets in accordance with the D.C. Circuit's remand in *EME Homer City Generation, L.P.* before the EPA can evaluate Texas' SIP submittal. See *EME Homer City Generation, L.P. v EPA,* 795 F.3d 118 (D.C. Cir. 2015). Luminant stated that, by failing to issue new budgets for the 1997 ozone NAAQS, we are in violation of the D.C. Circuit's specific remand instructions. The commenter contends that the EPA cannot rationally evaluate Texas' SIP submittal until we comply with the court's remand. The commenter specifically contends that the EPA must replace the CSAPR budgets with lawful budgets that do not require more control than necessary to comply with the 1997 ozone NAAQS, and that otherwise, the EPA has no basis to disapprove the Texas SIP submittal. By failing to establish lawful budgets, the commenter claims that the EPA does not have the information necessary to evaluate additional reductions associated with Texas' plan to comply with the 2008 ozone NAAQS.

*Response:* The EPA has an independent statutory obligation to evaluate Texas' SIP submittal addressing the good neighbor provision with respect to the 2008 ozone NAAQS. The fact that the EPA has not yet completed its response to the D.C. Circuit's remand to address interstate transport with respect to the 1997 ozone NAAQS does not preclude either the state from addressing its own statutory obligation with respect to the 2008 ozone NAAQS pursuant to CAA section 110(a)(2)(D)(i)(I) or the EPA from fulfilling its statutory obligation to review the SIP submittal pursuant to CAA section 110(k). As noted earlier, the EPA has identified several deficiencies with the interstate transport analysis in the Texas SIP submittal that are unrelated to the CSAPR rulemakings either with respect to the 1997 or 2008 ozone standards.

The EPA has proposed its intended response to address the D.C. Circuit's remand of the CSAPR ozone season $NO_X$ budgets in the context of the CSAPR Update, which is expected to be finalized later this year. The commenter does not explain how the EPA's finalization of this action with respect to the 1997 ozone standard would aid in the state's evaluation of transport with respect to the 2008 ozone standard. Nonetheless, should the commenter have any concerns about the EPA's approach to addressing the court's remand, the appropriate venue for the EPA's evaluation of those concerns is in the context of the CSAPR Update rulemaking. Any concerns are outside the scope of this rulemaking.

*Comment:* Luminant stated that we must reopen the comment period for the CSAPR Update rulemaking. Luminant contends that comments previously submitted on the CSAPR Update proposal have limited utility because the EPA's rationale for disapproving Texas' SIP submittal was not known at the time those comments were submitted for that proposal.

*Response:* As noted earlier, the EPA has identified several deficiencies with the interstate transport analysis in the Texas SIP submittal that are unrelated to the CSAPR Update rulemaking. Moreover, any request to reopen the public comment period on the CSAPR Update is not appropriately raised in this rulemaking.

### III. Final Action

For the reasons described in the proposal and in this final action, the EPA is disapproving a portion of the December 13, 2012 SIP submittal from Texas seeking to address the required infrastructure element under CAA section 110(a)(2)(D)(i)(I) with respect to the State's significant contribution to nonattainment or interference with maintenance of the 2008 ozone NAAQS in other states, known as prongs 1 and 2 of the good neighbor provision.

In a separate action, we disapproved the portion of the SIP submittal pertaining to the CAA section 110(a)(2)(D)(i)(II) requirement to address the interstate transport of air pollution which will interfere with other states' programs for visibility protection (81 FR 296, January 5, 2016). We proposed to approve the other portions of the infrastructure SIP submittal on February 8, 2016 (81 FR 6483). We expect to take final action on the other portions of the Texas infrastructure SIP at a later date.

---

[9] See CSAPR (76 FR 48208, August 8, 2011), CAIR (70 FR 25162, May 12, 2005) and the $NO_X$ SIP call (63 FR 57356, October 27, 1998).

[10] *https://www3.epa.gov/ttn/naaqs/aqmguide/ collection/cp2/20090925_harnett_section_110(a)_ sip_2006_24-hr_pm2.5_naaqs.pdf.*

Pursuant to CAA section 110(c)(1), this disapproval establishes a 2-year deadline for the EPA to promulgate a FIP for Texas to address the requirements of CAA section 110(a)(2)(D)(i) with respect to the 2008 ozone NAAQS unless Texas submits and we approve a SIP that meets these requirements. Disapproval does not start a mandatory sanctions clock for Texas pursuant to CAA section 179 because this action does not pertain to a part D plan for nonattainment areas required under CAA section 110(a)(2)(I) or a SIP call pursuant to CAA section 110(k)(5).

## IV. Statutory and Executive Order Reviews

### A. Executive Order 12866: Regulatory Planning and Review and Executive Order 13563: Improving Regulation and Regulatory Review

This final action is not a ''significant regulatory action'' and was therefore not submitted to the Office of Management and Budget for review.

### B. Paperwork Reduction Act (PRA)

This final action does not impose an information collection burden under the PRA because it does not contain any information collection activities.

### C. Regulatory Flexibility Act (RFA)

I certify that this action will not have a significant economic impact on a substantial number of small entities under the RFA. This action merely disapproves a SIP submittal as not meeting certain CAA requirements.

### D. Unfunded Mandates Reform Act (UMRA)

This action does not contain any unfunded mandate as described in UMRA, 2 U.S.C. 1531–1538, and does not significantly or uniquely affect small governments. The action imposes no enforceable duty on any state, local or tribal governments or the private sector.

### E. Executive Order 13132: Federalism

This action does not have federalism implications. It will not have substantial direct effects on the states, on the relationship between the national government and the states, or on the distribution of power and responsibilities among the various levels of government.

### F. Executive Order 13175: Consultation and Coordination With Indian Tribal Governments

This action does not have tribal implications as specified in Executive Order 13175. This action does not apply on any Indian reservation land, any other area where the EPA or an Indian tribe has demonstrated that a tribe has jurisdiction, or non-reservation areas of Indian country. Thus, Executive Order 13175 does not apply to this action.

### G. Executive Order 13045: Protection of Children From Environmental Health Risks and Safety Risks

The EPA interprets Executive Order 13045 as applying only to those regulatory actions that concern environmental health or safety risks that the EPA has reason to believe may disproportionately affect children, per the definition of ''covered regulatory action'' in section 2–202 of the Executive Order. This action is not subject to Executive Order 13045 because it merely disapproves a SIP submittal as not meeting certain CAA requirements.

### H. Executive Order 13211: Actions That Significantly Affect Energy Supply, Distribution or Use

This action is not subject to Executive Order 13211, because it is not a significant regulatory action under Executive Order 12866.

### I. National Technology Transfer and Advancement Act

This rulemaking does not involve technical standards.

### J. Executive Order 12898: Federal Actions To Address Environmental Justice in Minority Populations and Low-Income Populations

The EPA believes the human health or environmental risk addressed by this action will not have potential disproportionately high and adverse human health or environmental effects on minority, low-income or indigenous populations. This action merely disapproves a SIP submittal as not meeting certain CAA requirements.

The Congressional Review Act, 5 U.S.C. 801 et seq., as added by the Small Business Regulatory Enforcement Fairness Act of 1996, generally provides that before a rule may take effect, the agency promulgating the rule must submit a rule report, which includes a copy of the rule, to each House of the Congress and to the Comptroller General of the United States. The EPA will submit a report containing this action and other required information to the U.S. Senate, the U.S. House of Representatives, and the Comptroller General of the United States prior to publication of the rule in the **Federal Register**. A major rule cannot take effect until 60 days after it is published in the **Federal Register**. This action is not a ''major rule'' as defined by 5 U.S.C. 804(2).

Under section 307(b)(1) of the CAA, petitions for judicial review of this action must be filed in the United States Court of Appeals for the appropriate circuit by October 11, 2016. Filing a petition for reconsideration by the Administrator of this final rule does not affect the finality of this action for the purposes of judicial review nor does it extend the time within which a petition for judicial review may be filed, and shall not postpone the effectiveness of such rule or action. This action may not be challenged later in proceedings to enforce its requirements. (See CAA section 307(b)(2).)

### List of Subjects in 40 CFR Part 52

Environmental protection, Air pollution control, Incorporation by reference, Ozone.

Dated: August 1, 2016.

**Ron Curry,**
*Regional Administrator, Region 6.*

40 CFR part 52 is amended as follows:

## PART 52—APPROVAL AND PROMULGATION OF IMPLEMENTATION PLANS

■ 1. The authority citation for part 52 continues to read as follows:

**Authority:** 42 U.S.C. 7401 et seq.

### Subpart SS—Texas

■ 2. Section 52.2275 is amended by adding paragraph (l) to read as follows:

### § 52.2275  Control strategy and regulations: Ozone.

\* \* \* \* \*

(l) The portion of the SIP submitted on December 13, 2012 addressing Clean Air Act section 110(a)(2)(D)(i)(I) for the 2008 ozone NAAQS is disapproved.

[FR Doc. 2016–19151 Filed 8–11–16; 8:45 am]

**BILLING CODE 6560–50–P**

---

## ENVIRONMENTAL PROTECTION AGENCY

### 40 CFR Part 52

[EPA–R10–OAR–2015–0397; FRL–9950–58–Region 10]

### Approval and Promulgation of Implementation Plans; Idaho: Stationary Source Permitting Revisions

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule.

**SUMMARY:** The Environmental Protection Agency (EPA) is approving, and incorporating by reference, revisions to