# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

| | |
|---|---|
| **STATE OF TEXAS,** *et al.*, ) <br> ) <br> **Petitioners,** ) <br> ) <br> v. ) <br> ) <br> **UNITED STATES ENVIRONMENTAL** ) <br> **PROTECTION AGENCY and GINA** ) <br> **McCARTHY, Administrator, United States** ) <br> **Environmental Protection Agency,** ) <br> ) <br> **Respondents.** ) | Case No. 16-60670 |

## UNOPPOSED MOTION FOR LEAVE TO INTERVENE
## IN SUPPORT OF PETITIONERS

P. Stephen Gidiere III
BALCH & BINGHAM LLP
1901 6th Ave. N., Ste. 1500
Birmingham, Alabama 35203
205-251-8100
sgidiere@balch.com

David W. Mitchell
BALCH & BINGHAM LLP
601 Pennsylvania Avenue, N.W.
Suite 825 South
Washington, D.C. 20004

Stephanie Z. Moore
Executive Vice President & General Counsel
VISTRA ENERGY CORP.
1601 Bryan Street
22nd Floor
Dallas, Texas 75201

Daniel J. Kelly
Vice President & Associate General Counsel
VISTRA ENERGY CORP.
1601 Bryan Street
43rd Floor
Dallas, Texas 75201

*Counsel for Movant-Intervenors Luminant Generation Company LLC, Big Brown Power Company LLC, Luminant Mining Company LLC, La Frontera Holdings, LLC, Oak Grove Management Company LLC, and Sandow Power Company LLC*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

- Balch & Bingham LLP (Counsel for Movant-Intervenors)

- Big Brown Power Company LLC (Movant-Intervenor)

- Cruden, John C., Assistant Attorney General, Environment and Natural Resources Division, U.S. Department of Justice (Counsel for Respondents)

- Curry, Ron (Regional Administrator for Respondent United States Environmental Protection Agency)

- Dona, Amy J. (Counsel for Respondents)

- Garbow, Avi S. (General Counsel for Respondent United States Environmental Protection Agency)

- Gidiere, P. Stephen III (Counsel for Movant-Intervenors )

- Hubenak, Priscilla M. (Counsel for Petitioner)

- Kelly, Daniel J. (Counsel for Movant-Intervenors and Vice President & Associate General Counsel for Vistra Energy Corp.)

- Kolman, Chloe H. (Counsel for Respondents)

- La Frontera Holdings, LLC (Movant-Intervenor)

- Luminant Generation Company LLC (Movant-Intervenor)

- Luminant Mining Company LLC (Movant-Intervenor)

- Lynch, Loretta E., Attorney General, U.S. Department of Justice (Counsel for Respondents)

- McCarthy, Gina, Administrator, United States Environmental Protection Agency (Respondent)

- Mitchell, David W. (Counsel for Movant-Intervenors)

- Moore, Stephanie Zapata (Counsel for Movant-Intervenors and Vice President & Associate General Counsel for Vistra Energy Corp.)

- Oak Grove Management Company LLC (Movant-Intervenor)

- Pritzlaff, Craig James (Counsel for Petitioner)

- Sandow Power Company LLC (Movant-Intervenor)

- State of Texas (Petitioner)

- Texas Commission on Environmental Quality (Petitioner)

- United States Environmental Protection Agency (Respondent)

- Vistra Asset Company LLC (Parent company of Movant-Intervenors)

- Vistra Energy Corp. (Parent company of Movant-Intervenors)

- Vistra Intermediate Company LLC (Parent company of Movant-Intervenors)

- Vistra Operations Company LLC (Parent company of Movant-Intervenors)

Respectfully submitted,

s/ P. Stephen Gidiere III
*Counsel for Movant-Intervenors*

## MOTION FOR LEAVE TO INTERVENE

Pursuant to Federal Rules of Appellate Procedure 15(d) and 27 and Fifth Circuit Rules 15.5 and 27, Luminant Generation Company LLC, Big Brown Power Company LLC, Luminant Mining Company LLC, La Frontera Holdings, LLC, Oak Grove Management Company LLC, and Sandow Power Company LLC (collectively, "Luminant") respectfully move to intervene in support of Petitioners in Case No. 16-60670, challenging the Environmental Protection Agency's ("EPA") final rule entitled *Approval and Promulgation of Air Quality Implementation Plans; Texas; Interstate Transport of Air Pollution for the 2008 Ozone National Ambient Air Quality Standards*. 81 Fed. Reg. 53,284 (Aug. 12, 2016) ("Final Rule"). Counsel for Petitioners has stated that Petitioners do not oppose the relief requested in this motion. Counsel for Respondents has stated that EPA takes no position on the motion.

Luminant moves to intervene in support of Petitioners because it has a substantial interest in the Final Rule. The Final Rule disapproves provisions of Texas's Clean Air Act ("CAA") State Implementation Plan ("SIP") relating to the 2008 8-hour ozone National Ambient Air Quality Standards ("NAAQS"). Based on the Final Rule, EPA claims the authority to reduce the number of nitrogen oxide ("$NO_X$") emission allowances allocated to the State of Texas in general and to Luminant in particular under an emission allowance trading program—called the Cross-State Air Pollution Rule ("CSAPR")—under which Luminant's generating units are regulated. Like the State of Texas, Luminant contends that EPA's disapproval of

Texas's SIP was unlawful. Accordingly, Luminant seeks to intervene in support of Petitioners in order to protect its rights and assure a fair and complete opportunity to participate in the challenge to the Final Rule.

## BACKGROUND

### I. Statutory and Regulatory Background

EPA is required to set NAAQS for certain pollutants and, based on state recommendations, to designate areas within each state as "attainment," "nonattainment," or "unclassifiable" for the standards. *See* 42 U.S.C. §§ 7407(d), 7409(a)-(b). Within three years after EPA promulgates a NAAQS, each state is to develop a SIP that sets forth the manner in which they will comply with the standard. *See id.* § 7410(a)(1). In developing a SIP, the CAA's "good neighbor" provision requires that each state develop provisions to address the interstate transport of emissions that will (1) "contribute significantly" to a downwind state's nonattainment or (2) "interfere with maintenance" of the NAAQS in a downwind state. *Id.* § 7410(a)(2)(D)(i).

The CAA provides EPA the authority to issue a federal implementation plan ("FIP") only in limited circumstances. Specifically EPA may impose a FIP if: (1) EPA finds that a state failed "to make a required submission" or the state's SIP did not "satisfy the minimum criteria" or (2) EPA disapproves a SIP submission "in whole or in part." *Id.* § 7410(c)(1). In those limited circumstances, EPA may promulgate a FIP

to fill the gap in the state plan within two years unless the state addresses the deficiency in the meantime. *See id.*

In 2005, EPA issued the Clean Air Interstate Rule ("CAIR"), which addressed $NO_X$ emissions from twenty-five states that EPA found to contribute to downwind nonattainment or interfere with maintenance of the 1997 ozone NAAQS. *See* 70 Fed. Reg. 25,162 (May 12, 2005). However, CAIR was remanded to EPA in *North Carolina v. EPA*, 531 F.3d 896 (D.C. Cir. 2008), *modified on reh'g*, 550 F.3d 1176. In response, EPA promulgated the Cross State Air Pollution Rule ("CSAPR"), which established ozone season $NO_X$ budgets for twenty states, including Texas, that were designed to address the 1997 ozone NAAQS. *See* 76 Fed. Reg. 48,208 (August 8, 2011).

The CSAPR trading program was subsequently challenged in the U.S. Court of Appeals for the D.C. Circuit. On remand from the Supreme Court, the D.C. Circuit was presented with "as-applied challenges" to the $NO_X$ emission budgets that EPA had set to address the 1997 ozone NAAQS. *EME Homer City Generation, L.P.*, 795 F.3d 118 (D.C. Cir. 2015). In 2015, the D.C. Circuit invalidated the ozone-season $NO_X$ budget for Texas because the record demonstrated that compliance with the 1997 ozone NAAQS could be achieved with a cost threshold "far lower" than the one that was imposed by CSAPR. *Id.* at 130. To remedy the illegal budgets, the D.C. Circuit concluded that it would "remand without vacatur" the emissions budgets that it found to be invalid. Accordingly, EPA was directed to replace the $NO_X$ budget for

Texas with a lawful budget that does not require more control than necessary to comply with the 1997 ozone NAAQS.

## II. Texas's Interstate Transport Obligation for the 2008 Ozone NAAQS

In 2008, EPA revised the 8-hour ozone NAAQS from 0.08 parts per million ("ppm") to 0.075 ppm. *See* 73 Fed. Reg. 16,436 (Mar. 27, 2008). On December 13, 2012, Texas submitted a SIP revision to EPA regarding implementation of the 2008 ozone NAAQS. Texas concluded that due to existing control measures and decreases in ozone design values, emissions from the State did not contribute significantly to downwind nonattainment or interfere with maintenance of the 2008 ozone NAAQS.

Without evaluating Texas's 2012 SIP submittal or correcting the illegal $NO_X$ budget based on the 1997 ozone NAAQS as directed by the D.C. Circuit, EPA issued a proposed FIP in December 2015 that would revise CSAPR with new, lower $NO_X$ budgets for the 2008 ozone NAAQS. *See* 80 Fed. Reg. 75,706 (December 3, 2015) ("CSAPR Update FIP"). When EPA issued the proposed CSAPR Update FIP, EPA acknowledged that it "ha[d] not taken any action on [Texas's 2012] SIP submission at [that] time."[1]

Four months after proposing the CSAPR Update FIP, EPA proceeded with addressing Texas's underlying SIP submission. On April 11, 2016, EPA proposed to disapprove Texas' 2012 SIP submission, claiming that Texas: (1) limited its discussion

---

[1] EPA, *Status of 110(a)(2)(D)(i)(I) SIPs Proposed Rule TSD*, Dock. ID EPA-HQ-OAR-2015-0500-0099, at 8 (Nov. 2015).

only to areas designated nonattainment in states that were geographically close, (2) failed to evaluate the potential impact of its emissions on areas that were measuring clean data, and (3) relied improperly on the implementation of CAIR to assess its obligations with respect to the 2008 ozone NAAQS.  *See* 81 Fed. Reg. 21,290, 21,292-94 (Apr. 11, 2016).  EPA's disapproval of Texas's SIP was then finalized on August 12, 2016, which is the Final Rule at issue in this case.  81 Fed. Reg. 53,284 (Aug. 12, 2016).  On October 10, 2016, the State of Texas and the Texas Commission on Environmental Quality filed a petition for review in this Court challenging the Final Rule.

Citing the disapproval of Texas's SIP (*i.e.*, the Final Rule), EPA issued the final CSAPR Update FIP on October 26, 2016, establishing substantially lower $NO_X$ budgets for electric generating units in Texas.  81 Fed. Reg. 74,504, 74,506 (Oct. 26, 2016).

### III.    Luminant's Interest in the Final Rule

Luminant is the largest competitive power generator in Texas.  Luminant's generation portfolio includes approximately 17,000 megawatts ("MW") of installed generation capacity, which includes over 8,000 MW from coal and over 6,000 MW from natural gas.  As of September 30, 2016, Luminant provided electricity to approximately 24% of residential customers and 19% of commercial customers in the

region managed by the Electric Reliability Council of Texas ("ERCOT"),[2] the independent system operator for the majority of the State.

Luminant has a direct and substantial interest in the Final Rule because its generation facilities are regulated by Texas's SIP and the final CSAPR Update FIP for Texas. By way of the Final Rule, EPA claims the authority to substantially reduce the number of $NO_X$ allowances allocated to the State of Texas in general and to Luminant in particular for the operation of its generating plants. EPA explained in the proposed CSAPR Update FIP that disapproval of Texas's SIP "would trigger the EPA's FIP authority to implement the requirements of the good neighbor provision for [Texas]." 80 Fed. Reg. at 75,720. Thus, the Final Rule is EPA's claimed legal predicate for the final CSAPR Update FIP that would reduce the number of allowances allocated to the State of Texas by over 11,000 tons (an approximately 18% reduction) and reduce the number of allowances allocated to Luminant by over 4,000 tons (an approximately 26% reduction). With fewer allowances, Luminant would be required to curtail its operations, install costly additional emission control equipment, or purchase allowances in the trading market, or some combination of these. Under any of these options, Luminant is harmed. If the Final Rule is vacated, as the State of Texas requests in this case, EPA will not have the legal authority to reduce the $NO_X$ allowances allocated to Texas and Luminant. Thus, Luminant's interest is direct, concrete, and substantial.

---

[2] Form S-1, Vistra Energy Corp. at 5 (Dec. 23, 2016).

# ARGUMENT

This Court should grant Luminant's motion for leave to intervene in support of Petitioners because Luminant meets this Court's standard for intervention. Although Federal Rule of Appellate Procedure 15 does not establish a legal standard for intervention, this Court "has identified two considerations" that are to be considered in assessing a motion to intervene in a case involving a petition for review: (1) "the statutory design of the act" and (2) "the policies underlying intervention in the trial courts pursuant to Fed. R. Civ. P. 24." *Texas v. Dep't of Energy*, 754 F.2d 550, 551 (5th Cir. 1985) (citing *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., AFL-CIO, Local 283 v. Scofield*, 382 U.S. 205 (1965)). Moreover, this Court has found that "[f]ederal courts should allow intervention 'where no one would be hurt and greater justice could be attained.'" *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (quoting *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970)).

## I. Luminant Is Regulated under the CAA and Impacted by the Final Rule

In evaluating a motion to intervene, the Court first considers "the statutory design" of the CAA. *Texas*, 754 F.2d at 551. Luminant owns and operates power plants that are directly regulated under the CAA, through the Texas SIP as modified by the Final Rule and the final CSAPR Update FIP. If the Final Rule is not vacated, Luminant would be subject to additional regulatory burdens and reduced flexibility through the lower $NO_X$ budgets issued under the final CSAPR Update FIP. The FIP imposes operating and compliance burdens on Luminant by reducing its allowance

7

allocation by approximately 26%, as noted above. Because of this reduction, Luminant would be required to curtail its operations, install costly additional emission control equipment, or purchase allowances in the trading market, or some combination of these—any of which would result in significant costs and pecuniary harm. Such harms are among those types of harms that the CAA seeks to protect, and thus Luminant's intervention in this action is warranted.

Additionally, Luminant has availed itself of the administrative process by submitting comments on the proposed SIP disapproval,[3] in addition to submitting comments on EPA's proposed CSAPR Update FIP[4] and participating in litigation over the final CSAPR Update FIP.[5] Thus, Luminant has a demonstrated interest in the Final Rule.

## II. Luminant Satisfies the Requirements for Intervention as of Right

The requirements for intervention as of right under Federal Rule of Civil Procedure 24(a)(2) are: (1) the application is timely; (2) the applicant claims an interest relating to the subject of the action; (3) disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) existing

---

[3] *See* Comments of Luminant on the Disapproval of Texas's SIP Regarding Implementation of the 2008 Ozone NAAQS, Dock. ID EPA-R06-OAR-2012-0985-0006 (May 11, 2016); Doc. 00513767663 at 8 (listing Luminant's comments as part of the Certified Administrative Record Index).

[4] *See* Comments of Luminant on EPA's Proposed Cross-State Air Pollution Rule Update for the 2008 Ozone NAAQS, Dock. ID EPA-HQ-OAR-2015-0500-0262 (Feb. 1, 2016).

[5] Pet. for Review, *Luminant Generation Co. v. EPA*, No. 16-1439 (D.C. Cir. Dec. 23, 2016).

8

parties may not adequately represent the applicant's interest. Luminant satisfies each prong of that test.

### A. The Motion to Intervene is Timely

Luminant's motion meets the standard for timeliness under Fifth Circuit Rule 15.5, which requires that a motion to intervene in a case seeking review of an agency order should be filed "not later than 14 days prior to the due date of the brief of the party supported by the intervenor." Petitioners' opening merits brief is presently due February 17, 2017. This motion is therefore timely under Fifth Circuit Rule 15.5, as it is was filed over 14 days prior to the date on which that brief is due.

### B. Luminant Has Protectable Interests in Opposing the Rule at Issue That May Be Impaired

Luminant has interests that will be impaired if the Final Rule is upheld. As this Court has noted, "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Espy*, 18 F.3d at 1207 (internal quotations omitted).

Here, Luminant has an interest in protecting the continued operation of its generating facilities and ensuring the economic viability of those facilities without undue burden and in preserving flexibility in compliance options under the CAA. The interests of Luminant will be impaired if the Final Rule is upheld, because the power generation industry is "the real target[]" of EPA's action and "the subject[] of the regulatory plan." *See Sierra Club v. Glickman*, 82 F.3d 106, 109 (5th Cir. 1996) (citing

9

*Conservation Law Found. of N.E., Inc. v. Mosbacher*, 966 F.2d 39 (1st Cir. 1992)). When a final agency action or other regulatory decision is challenged, the members of the regulated industry that are directly affected by that government action have a significant, protectable interest that supports intervention. *See, e.g., Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 566-68 (5th Cir. 2016) (finding that an association representing holders of package store permits has "a legally protectable interest in the regulatory scheme").

Here, if Petitioners are successful, there will be no legal predicate for the CSAPR Update FIP, which reduces Luminant's allowance allocation by approximately 26%. Therefore, the outcome of this litigation will directly affect Luminant's facilities and could significantly increase Luminant's cost of compliance and restrict its operations. Because Luminant has direct legal and economic interests in the subject of Petitioners' challenge that will be impaired if the Final Rule is upheld, intervention on behalf of Petitioners is warranted.

### C. No Existing Party Adequately Represents Luminant's Interests

Luminant's interest in EPA's Final Rule will not be adequately represented by any of the existing parties to this case. The burden of showing that an intervenor's interests will not be adequately represented by existing parties is "minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). This Court has held that the burden "is satisfied if the applicant shows that representation of his interest '*may be*' inadequate . . . ." *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996)

(internal quotations omitted) (emphasis added). In this regard, representation by existing parties may be inadequate even if the putative intervenor and an existing party "agree[] on the merits of the substantive issues to be litigated." *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 425 (5th Cir. 2002). Accordingly, the touchstone of the inquiry is whether any of the parties have the "same ultimate objective" as the party seeking to intervene. *Edwards*, 78 F.3d at 1005-06.

Applying these principles, courts have recognized that governmental representation of private intervenors may be inadequate because the broad range of public interests that governments represent extend beyond those relevant to a private entity. *See John Doe No. 1 v. Glickman*, 256 F.3d 371, 381 (5th Cir. 2001) (citing *Espy*, 18 F.3d at 1208). That is the case here. Petitioners' interest in the Final Rule arises from their governmental obligation to implement policy that reasonably advances the goals of the CAA. This is different from Luminant's interest, which arises from the regulatory obligations attached to its operations as a result of the Final Rule and final CSAPR Update FIP. Thus, while Petitioners and Luminant may seek the same result in the present action (*i.e.*, to reverse EPA's disapproval), their "ultimate objectives" are distinct. Because Petitioners' interests are in the realm of *policymaking* while Luminant's interests are in the realm of *compliance*, Petitioners are not in the position to adequately represent Luminant's specific arguments and interests.

Likewise, EPA as Respondent cannot adequately represent Luminant's interests. This arises from the fact that EPA seeks to defend its disapproval of the

11

Texas SIP, while Luminant seeks reversal of that action. Because EPA is opposed to Luminant's interest, there is no reason or expectation for it to raise arguments in representation of Luminant's position. This means no party in the present litigation will adequately represent Luminant, therefore, making intervention appropriate.

### III.  In the Alternative, Luminant Satisfies the Standard for Permissive Intervention

Luminant should be entitled to intervene as a matter of right, but, in the alternative, this Court should allow for permissive intervention. Federal Rule of Civil Procedure 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." *See also Newby v. Enron Corp.*, 443 F.3d 416, 421 (5th Cir. 2006) ("The decision to permit intervention . . . requires a threshold determination that the [intervenor's] claim or defense and the main action have a question of law or fact in common." (internal quotations omitted)).

As previously demonstrated, Luminant timely filed its motion for leave to intervene. Additionally, Luminant has an interest that will be impaired if the Final Rule is upheld. To protect its interests, Luminant, along with the Petitioners, will argue that EPA acted arbitrarily and capriciously in its disapproval of Texas's SIP submission. In doing so, Luminant and the Petitioners will likely make many similar legal arguments, such as EPA incorrectly found that Texas's SIP did not give independent significance to the "interfere with maintenance" clause found in Section

110 of the CAA. Therefore, a common question of law exists and permissive intervention should be granted.

## CONCLUSION

For the foregoing reasons, Luminant respectfully asks this Court to grant its motion for leave to intervene in support of Petitioners.

Dated: January 19, 2017               Respectfully submitted,

                                                     s/ P. Stephen Gidiere III
P. Stephen Gidiere III
BALCH & BINGHAM LLP
1901 6th Ave. N., Ste. 1500
Birmingham, Alabama 35203
205-251-8100
sgidiere@balch.com

David W. Mitchell
BALCH & BINGHAM LLP
601 Pennsylvania Avenue, N.W.
Suite 825 South
Washington, D.C. 20004

Stephanie Z. Moore
Executive Vice President & General Counsel
VISTRA ENERGY CORP.
1601 Bryan Street
22nd Floor
Dallas, Texas 75201

Daniel J. Kelly
Vice President & Associate General Counsel
VISTRA ENERGY CORP.
1601 Bryan Street
43rd Floor
Dallas, Texas 75201

*Counsel for Movant-Intervenors Luminant Generation Company LLC, Big Brown Power Company LLC, Luminant Mining Company LLC, La Frontera Holdings, LLC, Oak Grove Management Company LLC, and Sandow Power Company LLC*

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel states that this motion complies with Fed. R. App. P. 27(d)(2)(A) because it contains 3,050 words, excluding the caption and signature blocks, as counted by a word processing system and, therefore, is within the word limit. This motion also complies with typeface requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface in 14-point Garamond font.

Dated: January 19, 2017

                                            s/ P. Stephen Gidiere III
                                            *Counsel for Movant-Intervenor*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 19th day of January, 2017.

s/ P. Stephen Gidiere III  
*Counsel for Movant-Intervenors*
