IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

| | |
|---|---|
| STATE OF TEXAS, et al., | ) |
| | ) |
| Petitioners, | ) |
| | ) |
| v. | ) Case No. 16-60670 |
| | ) |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and CATHERINE R. MCCABE, Acting Administrator,[1] U.S. EPA | ) ) ) ) |
| | ) |
| Respondents. | ) |
| _____ | ) |

**UNITED STATES' RESPONSE TO JOINT MOTION TO STRIKE**

Respondents the United States Environmental Protection Agency and Catherine McCabe, Acting Administrator, (collectively, "EPA") hereby submit this response to Petitioners and Intervenor-Petitioners' Joint Motion to Strike Irrelevant Documents from the Administrative Record, ECF No. 00513863091 ("Petitioners' Motion"), and respectfully request that Petitioners' Motion be denied. Petitioners and Petitioner-Intervenors (hereinafter "Petitioners") argue that six documents currently identified in EPA's Corrected Certified Index to Administrative Record, ECF No. 00513859017 ("Certified Index"), should be stricken because they are

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Catherine R. McCabe is substituted as the current Acting Administrator of the U.S. Environmental Protection Agency.

related to a separate rulemaking that EPA said was "irrelevant" to its consideration of the Texas State Implementation Plan ("SIP") at issue in this matter. However, notwithstanding Petitioners' mischaracterizations, the documents at issue were explicitly incorporated into this rulemaking and openly considered by EPA, and Petitioners identify no support for the proposition that an agency is forbidden from using technical data or modeling in support of more than one action. In further support of this response, the United States states as follows:

1. On August 12, 2016, EPA disapproved a portion of a Texas SIP submitted to address the effect of air pollution from Texas on downwind states. 81 Fed. Reg. 53,284 ("Texas SIP Disapproval"). Under Section 110 of the Clean Air Act, state SIPs must include adequate provisions to prohibit in-state emissions that significantly contribute to downwind states' failure to attain and maintain national air quality standards set by EPA, 42 U.S.C. § 7410(a)(2)(D)(i)(I), and those SIPs must be reviewed – and approved or disapproved – by EPA, *id.* § 7410(c)(1). If the Agency disapproves the state SIP, EPA has two years to promulgate a federal implementation plan in the state's place (unless, in the intervening time, the state makes a new submission that is approved). *Id.*

2. The Texas SIP was submitted pursuant to the State's obligations under Clean Air Act Section 110(a)(2)(D)(i)(I) to address certain in-state air pollutant emissions that impact downwind states' ability to meet and maintain the 2008

National Ambient Air Quality Standard for ozone. In disapproving Texas's submittal, EPA explained that it could not approve the Texas SIP because: (1) Texas only considered downwind impacts on geographically proximate states, rather than the full range of states to which pollution from sources in Texas may be transported by air currents; (2) Texas did not give independent effect to the statute's requirement that it consider the impact of its emissions on not only downwind areas failing to meet the air quality standard for ozone but also those areas where Texas's emissions might interfere with continued "maintenance" of air quality; and (3) Texas improperly relied on emissions reductions from the Clean Air Interstate Rule, which is no longer being implemented by EPA and which was developed to address a less stringent ozone standard than the state was obligated to address here. EPA's determination was also based in part on its review of air quality data and modeling that contradicted Texas' conclusions by indicating that Texas emissions may significantly contribute to air quality issues and interfere with the maintenance of air quality in other states. EPA determined that the Texas SIP did not include adequate provisions addressing these air quality impacts.

3.   EPA's Texas SIP Disapproval was challenged by Petitioners on October 11, 2016. Consistent with the Federal Rules of Appellate Procedure, EPA subsequently filed with this Court a notice and Certified Index identifying those documents that it considered in reaching its decision on the Texas SIP and that will

serve as the record for judicial review of the Texas SIP Disapproval. The Certified Index included six documents related to EPA's air quality data and modeling that also appear in the docket for a separate rulemaking, the Cross-State Air Pollution Rule Update ("CSAPR Update"), which was promulgated on October 26, 2016, and fulfills EPA's statutory obligation to promulgate Federal Implementation Plans in place of Texas and other states' disapproved SIPs. *See* 81 Fed. Reg. 74,504.

4. Petitioners claim that the six documents should be struck from the record supporting this action because they are "related" to the CSAPR Update and because EPA stated in the Texas SIP Disapproval that its proposal of the CSAPR Update was "irrelevant to the question of whether the Texas SIP should be disapproved." *See* Petitioners' Motion at 1. Petitioners' attempt to remove these documents from the record should be rejected.

5. As an initial matter, these six documents are properly part of the record for judicial review under the Federal Rules of Appellate Procedure. Federal Rule of Appellate Procedure 16(a) defines the "record on review . . . of an agency order" as including "any findings or report on which it is based," as well as the "pleadings, evidence, and other parts of the proceedings before the agency." Fed. R. App. P. 16(a). Under these authorities, a document actually considered by the Agency in reaching its decision is properly part of the administrative record for review of that decision.

6. The documents Petitioners seek to strike were explicitly incorporated into EPA's record for this action and were openly relied upon by the Agency. Although the six documents appear in the docket for (and so have docket numbers associated with) the CSAPR Update, EPA also explicitly incorporated all six challenged documents into the administrative record as support for the separate Texas SIP Disapproval by providing links to the incorporated material and indicating in the proposed rule that these documents "have been included in the docket for this SIP action." 81 Fed. Reg. 21,290, 21,293 (April 11, 2016) ("Proposed Disapproval"). The docket entry incorporating the six challenged documents into the Texas SIP Disapproval record is available on www.regulations.gov, at docket number EPA-R06-OAR-2012-0985-0003.[2] EPA's explanation of the factors comprising its decision to disapprove the Texas SIP also makes clear reference to the challenged documents, which provided one basis (though not the exclusive basis) for EPA's disapproval. *See* 81 Fed. Reg. at 21,293-94; 81 Fed. Reg. at 53,286.

---

[2] Because this document does not *itself* contain any substantive information upon which EPA "relied," EPA's Certified Index excluded the "incorporation" document while including the six substantive documents listed therein and upon which EPA relied. If, as a matter of procedure, the Court would prefer that the incorporation document be included in the Certified Index, the United States will supplement the Index to indicate the existence of this document.

7. Accordingly, Petitioners are incorrect to suggest that the challenged documents were not "before the agency" or those "on which [the] order is based," Petitioners' Motion at 5 (quoting *Medina County Envtl. Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010), and the Federal Rules of Appellate Procedure). As just explained, it is indisputable that these documents were incorporated into EPA's rulemaking docket for the Texas SIP Disapproval and directly referenced in EPA's proposed and final actions. And EPA has certified to the Court and to the parties that these documents are part of the administrative record. *See* ECF No. 00513859017. Petitioners identify no authority that allows them to dispute the Agency's inclusion of information that it certifies was before the agency when it made its decision. To the contrary, "the designation of the administrative record . . . is entitled to a presumption of administrative regularity," so a court must "assume[] the agency properly designated the administrative record absent clear evidence to the contrary." *City of Dallas v. Hall*, No. CIV.A. 307CV0060-P, 2007 WL 3257188, at *4 (N.D. Tex. Oct. 29, 2007) (citing *Bar MK Ranches v. Yuetter,* 994 F.2d 735, 740 (10th Cir. 1993)); *see Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 415 (1971); *La Union del Pueblo Entero v. Fed. Emergency Mgmt. Agency*, 141 F. Supp. 3d 681, 693 (S.D. Tex. 2015). EPA's certification should thus be the end of the inquiry under the Federal Rules, and Petitioners' Motion should be denied.

8.　　Petitioners' assertion that the documents should be excluded because they are part of the docket for a separate rulemaking that EPA called "irrelevant" to the SIP Disapproval is meritless. Petitioners both misread the statements they quote and ignore the broader context in which those statements were made. First, Petitioners selectively quote a footnote in the final SIP Disapproval notice explaining that available data – including data supporting the CSAPR Update – contradicted Texas's conclusions regarding its emissions' impact on downwind areas. *See* Petitioners' Motion at 1, ¶4; 81 Fed. Reg. at 53,284 n.2. While EPA stated in the footnote that the CSAPR Update itself was "outside the scope" of the SIP disapproval, it clearly explained that certain *technical information* used in support of the CSAPR Update was indeed relevant to EPA's conclusions in the SIP Disapproval. *See* 81 Fed. Reg. at 53,284 n.2. Contrary to Petitioners' characterization, the footnote explains precisely why the technical information is properly part of the administrative record.

9.　　Second, Petitioners quote EPA statements made in response to commenters who alleged that EPA's disapproval of the Texas SIP was a "post hoc rationalization" intended to justify EPA's promulgation of the CSAPR Update. *See* Petitioners' Motion at ¶4; 81 Fed. Reg. at 53,286.[3] In response, EPA again

---

[3] At proposal, the CSAPR Update included states with disapproved SIPs or whose SIPs might subsequently be disapproved – including Texas – but explained that

7

explained that the Agency's decision to propose the CSAPR Update was "irrelevant to the question of whether the Texas SIP should be disapproved" and had not "predetermined" its assessment of whether Texas's proposed SIP had met the statutory factors under Clean Air Act Section 110. *See id.* at 53,286. In clarifying that it would have reached the same conclusion on the Texas SIP "whether or not the EPA had proposed the CSAPR Update," however, EPA decidedly did *not* conclude that available air quality data, information, or modeling was "off limits" for purposes of its decision on the Texas SIP. To the contrary, the text immediately following that quoted by Petitioners, *see* Petitioners' Motion at ¶4, unambiguously states that EPA believed certain air quality data was pertinent to both rulemakings, once again clarifying that "the proposed disapproval of the Texas SIP did not rely upon the proposed findings in the CSAPR Update but rather cited, in addition to other deficiencies identified with the Texas SIP, technical data that was relevant to and informative for both proposals." 81 Fed. Reg. at 53,286.[4]

---

"[w]ere the EPA to finalize an approval of Texas' SIP, the EPA would not finalize the proposed inclusion of Texas in any final CSAPR Update." *Id.*

[4] The additional text Petitioners quote is not to the contrary. There, EPA explained that Texas's SIP failed to meet Section 110's requirements, as it "failed to include an analysis that appropriately evaluated the impact of state emissions on other areas in other states, regardless of current nonattainment designations and considering the ability of areas currently measuring clean data to maintain that standard." These omissions, EPA explained, were "deficiencies . . . completely independent of any analysis conducted to support the CSAPR Update proposal." 81 Fed. Reg. at 53,286; *see also id.* at 53,289 ("As noted earlier, the EPA has

Thus, again, the language Petitioners rely upon supports inclusion of the technical data in the administrative record here.

10. Ultimately, Petitioners have not presented any authority for the proposition that EPA is prohibited from utilizing technical information for more than one purpose or in more than one rulemaking. EPA models air quality on a regular basis, both within the rulemaking context and outside of it, and routinely uses available data regarding air quality concerns to meet its obligations under the Clean Air Act. Petitioners' attempt to prevent EPA from relying on its own air quality modeling data, generated consistent with its scientific protocols and established methodologies, would force the Agency to ignore readily-available, existing analysis bearing on the issues under its consideration simply because the information was also used in another context. Creating such needless obstacles to good data and good decision-making would be contrary to the Agency's mission and the protection of public health and the environment.

11. Finally, striking these documents would not advance any legal or equitable purpose. The identified documents satisfy the rules for inclusion in the administrative record before the Court under the Federal Rules of Appellate

---

identified several deficiencies with the interstate transport analysis in the Texas SIP submittal that are unrelated to the CSAPR rulemakings"). As the remainder of EPA's rulemaking indicates, however, such facial "deficiencies" were in addition to those indicated by the technical information common to both rulemakings. 81 Fed. Reg. at 53,284; *see also id.* at 53,286-88.

Procedure, Fed. R. App. P. 16(a) because they constitute part of the Agency's basis for taking the challenged action. Moreover, the inclusion of these documents in the administrative record would not prevent Petitioners from arguing on the merits that EPA acted arbitrarily or capriciously in actually considering them. Petitioners' attempt to preemptively remove from the record information clearly and indisputably relevant to EPA's analysis should thus be rejected by the Court as inconsistent with the law and improper as a matter of fact.

## CONCLUSION

Petitioners and Petitioner-Intervenors' Joint Motion to Strike Irrelevant Documents from the Administrative Record is contrary to the facts of EPA's consideration of the Texas SIP, reflects a selective reading of EPA's statements about that consideration, and would exclude documents explicitly incorporated into EPA's administrative record. For these reasons, the United States respectfully requests that Petitioners and Petitioner-Intervenors' Motion be denied.

DATED:   February 17, 2017        Respectfully submitted,

                                                          BRUCE GELBER
                                                          Deputy Assistant Attorney General

                                                          */s/ Chloe H. Kolman*
                                                          CHLOE H. KOLMAN
                                                          AMY J. DONA
                                                          U.S. Department of Justice
                                                          Environmental Defense Section
                                                          P.O. Box 7611

Washington, D.C. 20044
(202) 514-9277 (Kolman)
(202) 514-0223 (Dona)
chloe.kolman@usdoj.gov
amy.dona@usdoj.gov

*Counsel for Respondents*

*Of Counsel*:

Stephanie Hogan
Abirami Vijayan
Office of General Counsel
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Lynde Schoellkopf
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 6
1445 Ross Avenue, Suite 1200
Dallas, TX 75202

## CERTIFICATION FOR ECF PLEADING
## AND OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Pursuant to ECF Filing Standards Section A(6), I hereby certify that all required privacy redactions have been made; that no hard copies are required to be submitted to the clerk's office so Section A(6)(2) is not relevant; and that the ECF submission was scanned for viruses with Microsoft's Forefront Client Security, which is updated daily, and, according to the program, is free of viruses.

I also hereby certify that this document complies with the word limit of Fed. R. App. P. 27(d)(2), excluding the parts of the document exempted by Fed. R. App. P. 32(f), because this document contains 2,235 words. This document also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document was prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14 point Times New Roman font.

DATED:  February 17, 2017                /s/ Chloe H. Kolman
                                         CHLOE H. KOLMAN

**CERTIFICATE OF SERVICE**

I hereby certify that on February 17, 2017, I electronically filed the foregoing Response to Joint Motion to Strike with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*/s/ Chloe H. Kolman*
CHLOE H. KOLMAN