No. 16-60670

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

### STATE OF TEXAS;
### TEXAS COMMISSION ON ENVIRONMENTAL QUALITY,

Petitioners,

v.

### UNITED STATES ENVIRONMENTAL PROTECTION AGENCY;
### SCOTT PRUITT, in his official capacity as Administrator of the United States Environmental Protection Agency,

Respondents.

---

### PRINCIPAL BRIEF OF PETITIONER-INTERVENORS

---

P. Stephen Gidiere III
BALCH & BINGHAM LLP
1901 6th Ave. N., Ste. 1500
Birmingham, Alabama 35203
205-251-8100

David W. Mitchell
BALCH & BINGHAM LLP
601 Pennsylvania Avenue, N.W.
Suite 825 South
Washington, D.C. 20004

Stephanie Z. Moore
Executive Vice President & General Counsel
VISTRA ENERGY CORP.
1601 Bryan Street
22nd Floor
Dallas, Texas 75201

Daniel J. Kelly
Vice President & Associate General Counsel
VISTRA ENERGY CORP.
1601 Bryan Street
43rd Floor
Dallas, Texas 75201          **February 24, 2017**

No. 16-60670

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

STATE OF TEXAS;
TEXAS COMMISSION ON ENVIRONMENTAL QUALITY,

Petitioners,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY;
SCOTT PRUITT, in his official capacity as Administrator of the United States
Environmental Protection Agency,

Respondents.

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons

and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an

interest in the outcome of this case. These representations are made in order that the

judges of this court may evaluate possible disqualification or recusal.

- Balch & Bingham LLP (Counsel for Petitioner-Intervenors)

- Big Brown Power Company LLC (Petitioner-Intervenor)

- Coleman, Samuel (Acting Regional Administrator for Respondent United
  States Environmental Protection Agency)

- Dona, Amy J. (Counsel for Respondents)

- Gidiere, P. Stephen III (Counsel for Petitioner-Intervenors )

- Hubenak, Priscilla M. (Counsel for Petitioner)

- Kelly, Daniel J. (Counsel for Petitioner-Intervenors and Vice President & Associate General Counsel for Vistra Energy Corp.)

- Kolman, Chloe H. (Counsel for Respondents)

- La Frontera Holdings, LLC (Petitioner-Intervenor)

- Luminant Generation Company LLC (Petitioner-Intervenor)

- Luminant Mining Company LLC (Petitioner-Intervenor)

- Minoli, Kevin S. (Acting General Counsel for Respondent United States Environmental Protection Agency)

- Mitchell, David W. (Counsel for Petitioner-Intervenors)

- Moore, Stephanie Zapata (Counsel for Petitioner-Intervenors and Executive Vice President & General Counsel for Vistra Energy Corp.)

- Oak Grove Management Company LLC (Petitioner-Intervenor)

- Pritzlaff, Craig James (Counsel for Petitioner)

- Pruitt, Scott, Administrator, United States Environmental Protection Agency (Respondent)

- Sandow Power Company LLC (Petitioner-Intervenor)

- Sessions, Jeff, Attorney General, U.S. Department of Justice (Counsel for Respondents)

- State of Texas (Petitioner)

- Texas Commission on Environmental Quality (Petitioner)

- United States Environmental Protection Agency (Respondent)

- Vistra Asset Company LLC (Parent company of Petitioner-Intervenors)

- Vistra Energy Corp. (Parent company of Petitioner-Intervenors)

- Vistra Intermediate Company LLC (Parent company of Petitioner-Intervenors)

- Vistra Operations Company LLC (Parent company of Petitioner-Intervenors)

- Wood, Jeffrey H., Acting Assistant Attorney General, Environment and Natural Resources Division, U.S. Department of Justice (Counsel for Respondents)


Respectfully submitted,


s/ P. Stephen Gidiere III
*Counsel for Petitioner-Intervenors*

## STATEMENT REGARDING ORAL ARGUMENT

This case involves complex issues under the Clean Air Act, as well as important issues regarding the allocation of regulatory authority between the states and the federal government. Petitioner-Intervenors respectfully submit that the Court would be aided by oral argument in deciding this case.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS .............................................................ii

STATEMENT REGARDING ORAL ARGUMENT ................................................... v

TABLE OF CONTENTS ................................................................................... vi

TABLE OF AUTHORITIES ............................................................................ viii

GLOSSARY OF TERMS AND ACRONYMS ........................................................ xii

STATEMENT OF JURISDICTION .................................................................... 1

STATEMENT OF ISSUES ................................................................................ 2

INTRODUCTION ............................................................................................. 3

STATEMENT OF THE CASE ........................................................................... 5

I.      Statutory and Regulatory Background ............................................... 5

II.     Statement of the Facts ...................................................................... 8

III.    Course of Proceedings ................................................................... 11

SUMMARY OF THE ARGUMENT .................................................................. 13

STANDARD OF REVIEW ............................................................................... 14

ARGUMENT ................................................................................................. 16

I.      EPA Violated the Clean Air Act by Disapproving Texas's State Plan
        on the Basis That It Did Not Conform to EPA's Replacement
        Federal Plan ................................................................................... 16

        A.      The CAA mandates a cooperative federalism approach that
                divides responsibilities between the states and EPA ............... 16

        B.      The CAA does not authorize EPA to reject a SIP based on a
                FIP .......................................................................................... 17

C.    There is no other evidence in the record to support EPA's
disapproval ................................................................................................. 20

II.    EPA's Disapproval Also Violated the Administrative Procedure Act
Because EPA's FIP Pre-Determined the Outcome of EPA's Review .............. 25

CONCLUSION ........................................................................................... 27

CERTIFICATE OF SERVICE ....................................................................... 29

CERTIFICATE OF COMPLIANCE ............................................................ 30

# TABLE OF AUTHORITIES

## Cases

*Advocates for Highway & Auto Safety v. Fed. Highway Admin.,*
  28 F.3d 1288 (D.C. Cir. 1994) ........................................................ 27

*BCCA Appeal Grp. v. EPA,*
  355 F.3d 817 (5th Cir. 2003) ...................................................... 5, 14

*Camp v. Pitts,*
  411 U.S. 138 (1973) ........................................................................ 14

*EME Homer City Generation, L.P. v. EPA,*
  795 F.3d 118 (D.C. Cir. 2015) ...................................................... 10

*EPA v. EME Homer City Generation, L.P.,*
  134 S. Ct. 1584 (2014) .......................................................... 6, 8, 17

*Fla. Power & Light Co. v. Costle,*
  650 F.2d 579 (5th Cir. 1981) ...................................................... 5, 17

*Geyen v. Marsh,*
  775 F.2d 1303 (5th Cir. 1985) ...................................................... 15

*La. Envtl. Action Network v. EPA,*
  382 F.3d 575 (5th Cir. 2004) ............................................... 14, 18, 20

*La Union Del Pueblo Entero v. FEMA,*
  141 F. Supp. 3d 681 (S.D. Tex. 2015) ..................................... 25, 26

*Luminant Generation Co., LLC v. EPA,*
  675 F.3d 917 (5th Cir. 2012) ........................................... 3, 14, 15, 21

*Michigan v. EPA,*
  268 F.3d 1075 (D.C. Cir. 2001) .................................................... 19

*Nat'l Tour Brokers Ass'n v. United States,*
  91 F.2d 896 (D.C. Cir. 1978) ........................................................ 26

*Pina-Galindo v. Lynch*,
    803 F.3d 193 (5th Cir. 2015) ........................................................................ 23

*Rural Cellular Ass'n v. FCC*,
    588 F.3d 1095 (D.C. Cir. 2009) .................................................................... 25

*Texas v. EPA*,
    690 F.3d 670 (5th Cir. 2012) ................................................................. 16, 22

*Texas v. EPA*,
    829 F.3d 405 (5th Cir. 2016) ............................................. 3, 6, 16, 17, 19

*Train v. Natural Res. Def. Council, Inc.*,
    421 U.S. 60 (1975) ............................................................................. 3, 6, 19

*Virginia v. EPA*,
    108 F.3d 1397, 1404 (D.C. Cir. 1997),
    *modified on other grounds*, 116 F.3d 499 (D.C. Cir. 1997) ........................... 6, 19

## **Statutes**

5 U.S.C. § 706 ............................................................................................... 14

5 U.S.C. § 706(2) .......................................................................................... 14

5 U.S.C. § 706(2)(A) ..................................................................................... 24

42 U.S.C. § 7401(a)(3) .................................................................................... 5

42 U.S.C. § 7407(d)(1)(A) ............................................................................. 23

42 U.S.C. § 7409(a) ......................................................................................... 5

42 U.S.C. § 7409(b) ......................................................................................... 5

42 U.S.C. § 7410(a)(2) .................................................................................. 17

42 U.S.C. § 7410(a)(2)(D)(i)(I) ........................................................... 6, 11, 23

42 U.S.C. § 7410(c)(1) ...................................................................... 7, 17, 19

42 U.S.C. § 7410(c)(1)(A) .................................................................................... 7

42 U.S.C. § 7410(c)(1)(B) .................................................................................... 7

42 U.S.C. § 7410(k)(1) ......................................................................................... 7

42 U.S.C. § 7410(k)(1)(A) ............................................................................ 20, 21

42 U.S.C. § 7410(k)(1)(B) ........................................................................ 7, 21, 22

42 U.S.C. § 7410(k)(2) ................................................................................. 7, 8, 9

42 U.S.C. § 7410(k)(3) ............................................................................. 7, 8, 9, 21

42 U.S.C. § 7602(y) ...................................................................................... 7, 17

42 U.S.C. § 7607(b) ............................................................................................. 1

## Regulations

40 C.F.R. Part 51, App. V, § 2.2(d) ............................................................. 7, 21

40 C.F.R. Part 51, App. V, § 2.2(i) .............................................................. 7, 21

40 C.F.R. § 97.506(c)(1)(ii)(B) ........................................................................... 9

## Federal Register Notices

54 Fed. Reg. 2,138 (Jan. 19, 1989) ................................................................... 22

56 Fed. Reg. 23,826 (May 24, 1991) ................................................................. 22

73 Fed. Reg. 16,436 (March 27, 2008) ........................................................... 3, 8

76 Fed. Reg. 48,208 (Aug. 8, 2011) ................................................................... 9

77 Fed. Reg. 34,830 (June 12, 2012) ................................................................. 9

80 Fed. Reg. 75,706 (Dec. 3, 2015) ............................................................ 10, 26

81 Fed. Reg. 21,290 (Apr. 11, 2016)............................4, 10, 11, 18, 19, 20, 22, 23, 24, 26

81 Fed. Reg. 53,284 (Aug. 12, 2016) .................................................3, 11, 18, 20

81 Fed. Reg. 74,504 (Oct. 26, 2016) ................................................................. 10

## <u>GLOSSARY OF TERMS AND ACRONYMS</u>

| | |
|---|---|
| APA | Administrative Procedure Act |
| CAA | Clean Air Act |
| CSAPR | Cross-State Air Pollution Rule |
| EPA | U.S. Environmental Protection Agency |
| Final Rule | 81 Fed. Reg. 53,284 (Aug. 12, 2016) |
| FIP | Federal Implementation Plan |
| NAAQS | National Ambient Air Quality Standards |
| MW | megawatts |
| $NO_X$ | nitrogen oxides |
| $O_3$ | ozone |
| Petitioners | State of Texas and Texas Commission on Environmental Quality |
| Petitioner-Intervenors | Luminant Generation Company LLC, Big Brown Power Company LLC, Luminant Mining Company LLC, La Frontera Holdings, LLC, Oak Grove Management Company LLC, and Sandow Power Company LLC |
| ppm | parts per million |
| SIP | State Implementation Plan |
| $SO_2$ | sulfur dioxide |
| TCEQ | Texas Commission on Environmental Quality |
| VOCs | volatile organic compounds |

# STATEMENT OF JURISDICTION

Jurisdiction in this Court is proper under section 307(b) of the Clean Air Act ("CAA"). *See* 42 U.S.C. § 7607(b). The final rule of the U.S. Environmental Protection Agency ("EPA") at issue in this case disapproves a revision by the State of Texas to its Clean Air Act State Implementation Plan ("SIP"), which is a locally or regionally applicable action that concerns only the State of Texas. *Id.* EPA's disapproval was published in the Federal Register on August 12, 2016, and the State of Texas and the Texas Commission on Environmental Quality ("TCEQ") timely filed a petition for review on October 10, 2016. Luminant Generation Company LLC, Big Brown Power Company LLC, Luminant Mining Company LLC, La Frontera Holdings, LLC, Oak Grove Management Company LLC, and Sandow Power Company LLC (collectively, "Luminant") timely moved to intervene in support of the State of Texas and TCEQ on January 19, 2017, and the Court granted intervention on January 23, 2017.

## <u>STATEMENT OF ISSUES</u>

**I.**     Whether EPA violated the CAA and acted outside of its statutory authority when it disapproved Texas's SIP on the basis that Texas's SIP did not conform to EPA's replacement federal implementation plan ("FIP")—rather than on the statutory requirements for SIPs in effect at the time Texas submitted its SIP.

**II.**    Whether EPA's disapproval violated the Administrative Procedure Act because EPA prejudged the outcome of its review of Texas's SIP by first devising and issuing a replacement FIP.

## **INTRODUCTION**

This case concerns EPA's disapproval of certain aspects of Texas's plan to address the 2008 ozone National Ambient Air Quality Standard ("NAAQS").[1]  81 Fed. Reg. 53,284 (Aug. 12, 2016) ("Final Rule").  Under the CAA, EPA sets the numeric limit of the NAAQS for various pollutants, but after that, states—not EPA—are given the authority and responsibility to develop plans to implement those NAAQS.  EPA's role in reviewing state plans is narrow and limited.  As this Court has held: "With regard to implementation, the Act confines the EPA to the ministerial function of reviewing [state plans] *for consistency with the Act's requirements*."  *Luminant Generation Co., LLC v. EPA*, 675 F.3d 917, 921 (5th Cir. 2012) (emphasis added) (citing 42 U.S.C. § 7410(k)(3)).  In reviewing a state's plan, EPA does not have the authority to substitute its own judgment for that of the state, nor can it lawfully disapprove a state plan because it does not conform with non-statutory requirements.  *Texas v. EPA*, 829 F.3d 405, 426-27 (5th Cir. 2016).  Only if the state plan does not meet the statutory standard "may [EPA] devise and promulgate a specific plan of its own[.]"  *Train v. Natural Res. Def. Council, Inc.*, 421 U.S. 60, 79 (1975).

Here, that statutory division of authority was not observed—indeed, it was turned on its head.  EPA disapproved Texas's plan, not because it did not meet a

---

[1] In 2008, EPA revised the NAAQS for ozone from 0.080 parts per million ("ppm") to 0.075 ppm.  73 Fed. Reg. 16,436 (Mar. 27, 2008).  Ground-level ozone ($O_3$) is not emitted directly by human activities, but is formed when nitrogen oxides ($NO_X$) and volatile organic compounds (VOCs) react in the atmosphere with sunlight.

requirement of the statute, but because it did not conform to a replacement federal plan that EPA had devised *before* it even proposed action on Texas's plan. 81 Fed. Reg. 21,290, 21,292 (Apr. 11, 2016). EPA freely concedes that it did so, explaining that its replacement federal plan was "directly referenced in EPA's proposed and final actions" at issue here and "constitute[s] part of the Agency's basis for taking the challenged action." Doc. 00513880329 at 6, 10. In fact, without EPA's replacement federal plan, which was not published until three years after Texas submitted it plan, there is no other "[s]upporting [d]ocumentation" provided by EPA in the administrative record that could even potentially support the Final Rule. Doc. 00513859017 at 3-4. With no lawful, independent support in the record, EPA's Final Rule must be vacated.

Vacatur of EPA's unlawful Final Rule is necessary, not as an academic exercise, but to prevent substantial harm to Luminant and other electric generating companies in the State of Texas. Relying on its unlawful disapproval, EPA asserts authority to impose further limits on the $NO_X$ emissions from electric generating units in Texas, including Luminant's units. Specifically, in reliance on its unlawful disapproval, EPA has reduced by over 11,000 tons annually (an approximately 18% reduction) the number of $NO_X$ emission allowances in the overall budget for the State of Texas in a multi-state trading program under which $NO_X$ emissions from Texas power plants are regulated. This amounts to a reduction of over 4,000 tons annually (an approximately 26% reduction) in the number of allowances allocated to Luminant for its operations.

Luminant is the largest competitive power generator in Texas, with a generation portfolio that includes approximately 17,000 megawatts ("MW") of installed generation capacity. With fewer allowances, Luminant would potentially be required to curtail operations, install costly additional emission control equipment, or purchase allowances in the trading market, or some combination of these. To prevent this harm, and prevent EPA's unlawful allowance reductions, the Court should vacate EPA's Final Rule.

## STATEMENT OF THE CASE

### I.    Statutory and Regulatory Background

The federal Clean Air Act "establishes a comprehensive program for controlling and improving the nation's air quality through state and federal regulation." *BCCA Appeal Grp. v. EPA*, 355 F.3d 817, 821-22 (5th Cir. 2003). Congress chose a "cooperative federalism" structure to implement the statute, dividing authority between the federal government and the states. *Fla. Power & Light Co. v. Costle*, 650 F.2d 579, 581 (5th Cir. 1981) ("Congress chose a balanced scheme of state-federal interaction to implement the goals of the [Clean Air] Act."). Within this division, "air pollution prevention . . . is the primary responsibility of States and local governments." 42 U.S.C. § 7401(a)(3).

Under this framework, EPA's job is to set NAAQS for certain pollutants, including ozone. *See id.* § 7409(a)-(b). Within three years after EPA promulgates a NAAQS for a particular pollutant, each state is to develop a SIP to implement the

NAAQS and demonstrate the manner in which the state will comply "with the Act's requirements." *EPA v. EME Homer City Generation, L.P.*, 134 S. Ct. 1584, 1600 (2014) (citing 42 U.S.C. § 7410(a)(1)).  The CAA provision at issue in this case is the "good neighbor" provision, which requires that a state's plan "contain adequate provisions" to prohibit "emissions activity within the State from emitting any air pollutant in amounts which will—(I) contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect to [a NAAQS.]"    42 U.S.C. § 7410(a)(2)(D)(i)(I).

To meet the Act's requirements, the CAA provides "each state 'wide discretion in formulating its plan' for achieving the air quality standards set by EPA." *Texas*, 829 F.3d at 411 (quoting *Union Elec. Co. v. EPA*, 427 U.S. 246, 250 (1976)).  "[S]o long as the ultimate effect of a State's choice of emission limitations is compliance with the national standards for ambient air, the State is at liberty to adopt whatever mix of emission limitations it deems best suited to its particular situation." *Train*, 421 U.S. at 79.  The Clean Air Act *does not* "give EPA the authority to condition approval of a state's plan on the state's adoption of control measures EPA has chosen[.]" *Virginia v. EPA*, 108 F.3d 1397, 1404 (D.C. Cir. 1997), *modified on other grounds*, 116 F.3d 499 (D.C. Cir. 1997).

The CAA specifically delineates the manner in which EPA is to evaluate a SIP submission.  First, within 60 days after a state submits a SIP, EPA is required to determine if the SIP submission satisfies certain administrative and technical

completeness criteria. 42 U.S.C. § 7410(k)(1). At this stage, EPA reviews the SIP to determine if it contains, among other things, "[t]he State's demonstration that the national ambient air quality standards . . . are protected if the plan is approved and implemented" and "technological justifications required by any applicable EPA policies[.]" 40 C.F.R. Part 51, App. V, § 2.2(d), (i). If EPA does not determine the completeness of the state's plan within 60 days, the plan is deemed to meet these criteria "by operation of law." 42 U.S.C. § 7410(k)(1)(B). Second, EPA must approve or disapprove a SIP submission within 12 months of making its finding that the SIP submission satisfied the completeness criteria. *Id.* § 7410(k)(2). EPA must approve a SIP if "it meets all of the applicable requirements of" the CAA. *Id.* § 7410(k)(3).

The CAA specifies the limited circumstances in which EPA is authorized to develop and impose a FIP. A FIP is, by definition, limited to "a plan (or portion thereof) promulgated by the Administrator to fill all or a portion of a gap or otherwise correct all or a portion of an inadequacy in a [SIP.]" *Id.* § 7602(y). EPA "shall promulgate a [FIP] at any time within 2 years ***after***" it either: (1) finds that a state "failed to make a required submission," (2) finds that the state's SIP "does not satisfy the minimum criteria," or (3) "disapproves a [SIP] submission in whole or in part[.]" *Id.* § 7410(c)(1)(A)-(B) (emphasis added). In these limited circumstances, EPA must devise and promulgate a FIP to fill the gap in the state plan within two years unless the state "corrects the deficiency, and the Administrator approves the plan or plan revision, before the Administrator promulgates such [FIP]." *Id.* § 7410(c)(1). As the

Supreme Court has explained, "*only after* a State has failed to propose a SIP adequate for compliance with the provision is EPA called upon to act." *EME Homer City Generation, L.P.*, 134 S. Ct. at 1603 n.15 (emphasis added).

## II.    Statement of the Facts

On March 12, 2008, EPA revised the NAAQS for ozone by lowering the standard to 0.075 ppm from the 0.080 ppm standard it had established in 1997. *See* 73 Fed. Reg. 16,436 (Mar. 27, 2008). On December 13, 2012, in accordance with a schedule set as part of litigation over the standard, Texas timely submitted a SIP revision to EPA to implement the revised ozone NAAQS.

To comply with the "good neighbor" provision, Texas's submission included a demonstration that emissions from the state, including $NO_X$ emissions that were regulated under various CAA programs, did not contribute significantly to downwind nonattainment or interfere with maintenance of the 2008 ozone NAAQS. On December 20, 2012, EPA Region 6 determined that Texas's SIP was "administratively and technically complete," Index # 23, App. F, Letter from EPA Region 6 to TCEQ,[2] starting the 12-month clock for EPA to act on Texas' SIP submission and approve it "if it meets all the applicable requirements of [the Act]." *See* 42 U.S.C. § 7410(k)(2)-

---

[2] This brief cites documents from the EPA's Second Corrected Certified Index to Administrative Record as "Index #___, App.___, at [page no. and/or document description as appropriate]." An appendix including these documents will be filed in accordance with Fifth Circuit Rule 30.2(a).

(3). EPA, however, failed to act on Texas's SIP within the statutorily required time period.

Instead, in a separate rulemaking, EPA set about to devise and issue a replacement federal plan to implement the "good neighbor" provision in Texas for the 2008 ozone NAAQS, as if Texas's plan to do so had already been deemed insufficient. EPA's replacement plan came in the form of a revision to EPA's Cross-State Air Pollution Rule ("CSAPR"), which is a multi-state emission allowance trading program administered by EPA and finalized in 2011. Under CSAPR, twenty-seven states, including Texas, are required to limit $NO_X$ and sulfur dioxide ($SO_2$) emissions from power plants. 76 Fed. Reg. 48,208 (Aug. 8, 2011). As relevant here, CSAPR includes a program for limiting $NO_X$ emissions from power plants during ozone season (*i.e.*, the summer months when atmospheric conditions favor ozone formation). Prior to EPA's new FIP, Texas's ozone season "budget" for $NO_X$ was 65,560 tons. 77 Fed. Reg. 34,830, 34,845 (June 12, 2012). This budget is implemented by CSAPR in the form of $NO_X$ emission allowances, which are allocated to operators of power plants in the state, based on their "historic heat-input." 76 Fed. Reg. at 48,212. If an operator does not limit its $NO_X$ emissions to its allocated allowances, it must purchase additional allowances from other generators on the trading market or else face federal penalties. *See e.g.*, 40 C.F.R. § 97.506(c)(1)(ii)(B).[3]

---

[3] Even before EPA reduced Texas's number of $NO_X$ allowances in reliance on the SIP disapproval at issue here, EPA's ozone season $NO_X$ budget for Texas was held

As relevant here, to purportedly implement the 2008 ozone NAAQS in Texas, EPA proposed to reduce the number of $NO_X$ allowances provided to power generators in Texas, claiming the reductions were necessary to meet the good neighbor provision. *See* 80 Fed. Reg. 75,706 (Dec. 3, 2015) ("Proposed CSAPR Update FIP"). When EPA issued the Proposed CSAPR Update FIP, EPA acknowledged that it "ha[d] not taken any action on [Texas's 2012] SIP submission at [that] time."[4] EPA finalized its CSAPR Update FIP on October 26, 2016, reducing Texas's ozone season $NO_X$ allowances to 52,301. 81 Fed. Reg. 74,504, 74,508 (Oct. 26, 2016) ("CSAPR Update FIP").

Four months *after* issuing the Proposed CSAPR Update FIP, EPA proceeded to address Texas's underlying SIP submission. On April 11, 2016, EPA proposed to disapprove Texas' 2012 SIP submission because it did not conform to the Proposed CSAPR Update FIP. *See* 81 Fed. Reg. 21,290 (Apr. 11, 2016). EPA specifically relied

---

unlawful and overly stringent by the U.S. Court of Appeals for the D.C. Circuit because it required more $NO_X$ reductions than were necessary to address nonattainment and maintenance issues in downwind states for the prior ozone standard. *See EME Homer City Generation, L.P. v. EPA*, 795 F.3d 118 (D.C. Cir. 2015). The D.C. Circuit held that compliance with the "good neighbor" provision could be achieved for Texas and certain other states with higher budgets than EPA had developed. *Id.* at 130-31. The D.C. Circuit remanded those unlawful budgets to EPA, but EPA has yet to issue a higher budget for Texas that does not over-control. EPA's failure in this regard is not an issue in this case, but is instead an issue currently pending before the D.C. Circuit. *See State of Wisconsin, et al. v. EPA, et al.*, No. 16-1406 and consolidated cases (D.C. Cir.).

[4] EPA, *Status of 110(a)(2)(D)(i)(I) SIPs Proposed Rule TSD*, Dock. ID EPA-HQ-OAR-2015-0500-0099, at 8 (Nov. 2015).

on the Proposed CSAPR Update FIP as the basis for its disapproval, *id.* at 21,293-94,

claiming that its replacement FIP "contradicts the conclusions of the Texas analysis,"

*id.* at 21,292. Other than its replacement FIP, EPA provided no technical analysis of

the Texas submission that demonstrated that Texas's plan did not "contain adequate

provisions" to prohibit "emissions activity within the State from emitting any air

pollutant in amounts which will—(I) contribute significantly to nonattainment in, or

interfere with maintenance by, any other State with respect to [a NAAQS]," 42 U.S.C.

§ 7410(a)(2)(D)(i)(I), as required by the good neighbor provision.

Despite comments in opposition to its proposed disapproval from the State of

Texas and Luminant, EPA finalized its disapproval of Texas's SIP on August 12,

2016, which is the Final Rule at issue in this case. 81 Fed. Reg. 53,284 (Aug. 12,

2016). In the Final Rule, EPA rejected comments that it had improperly relied on its

replacement FIP as the basis for its disapproval of Texas's SIP, and it confirmed that

the Final Rule "relied upon the same modeling and contribution information" that

was used to devise its replacement FIP. *Id.* at 53,286. EPA claimed that its

disapproval was justified because "EPA has not received any information

demonstrating" that the conclusions in its FIP "are inaccurate." *Id.*

### III.   Course of Proceedings

On October 10, 2016, the State of Texas and TCEQ timely filed a petition for

review challenging the Final Rule. Luminant timely moved to intervene in support of

the State of Texas and TCEQ on January 19, 2017, and the Court granted intervention on January 23, 2017.

On February 1, 2017, EPA filed a Corrected Certified Index to the Administrative Record ("Certified Index"). Doc. 00513859017. Under the heading "Supporting Documentation," the Certified Index lists seven documents. *Id.* at 3-4. Six of those documents are record materials from the CSAPR Update FIP. *See id.* (Index #7-#12). On February 3, 2017, the State of Texas and Luminant filed a joint motion requesting that the Court strike these six documents from the record because they were developed as part of the CSAPR Update FIP and were thus irrelevant to the question of whether EPA lawfully disapproved of Texas's SIP in the first place. Doc. 00513863091. The Court entered an order on February 7, 2017, carrying the motion to strike with the case. Doc. 00513866172.

On February 17, 2017, EPA filed, out of time, a response in opposition to the joint motion to strike. Doc. 00513880329. In its response, EPA contends that "these six documents are properly part of the record for judicial review"—notwithstanding the fact that they were developed in the FIP rulemaking—because they were "directly referenced in EPA's proposed and final actions" at issue here and "constitute part of the Agency's basis for taking the challenged action." *Id.* at 4, 6, 10.

## SUMMARY OF THE ARGUMENT

EPA's disapproval of Texas's SIP should be vacated.  EPA's disapproval action was not in accordance with the Clean Air Act because EPA judged the sufficiency of the Texas SIP according to whether the SIP met the terms of EPA's replacement federal plan.  But under the statute, EPA was authorized to devise and issue a federal plan *only after* it fairly evaluated the Texas plan against the statutory requirements, not against EPA's preferred federal plan.  Because EPA relied on a factor that Congress clearly did not intend for EPA to consider in evaluating SIPs (*i.e.*, its replacement federal plan), EPA's action is contrary to law.  Moreover, there is no other evidence in the record to support EPA's disapproval, and EPA points to no requirement of the statute that Texas's plan failed to meet.

Further, EPA's disapproval violated the Administrative Procedure Act because EPA prejudged the outcome of its review of the Texas SIP by first issuing its federal plan.  EPA is required under the law to keep an "open mind" and give meaningful consideration to public comments in reviewing a SIP, but its actions here make clear that did not happen.  EPA had already made up its mind.  For this reason too, EPA's disapproval should be vacated.

## STANDARD OF REVIEW

A petition to review the EPA's disapproval of a SIP is governed by the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 706; *BCCA Appeal Grp.*, 355 F.3d at 824. Under the APA, final agency action must be "h[eld] unlawful and set aside" if it is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law," or if it exceeds the agency's statutory authority. 5 U.S.C. § 706(2). An agency's action is arbitrary and capricious if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *La. Envtl. Action Network v. EPA*, 382 F.3d 575, 582 (5th Cir. 2004) (citations omitted).

At a minimum, the agency must "examine[] the relevant data and articulate[] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *BCCA Appeal Grp.*, 355 F.3d at 824 (internal quotation omitted). The agency's action must satisfy these standards based only on the administrative record before the agency at the time of its decision and only on the agency's stated rationale at that time. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."); *see also Luminant*

14

*Generation Co.*, 675 F.3d at 925 ("We must disregard any *post hoc* rationalizations of the EPA's action and evaluate it solely on the basis of the agency's stated rationale at the time of its decision."); *Geyen v. Marsh*, 775 F.2d 1303, 1309 (5th Cir. 1985) ("Review of agency action under § 706(2)'s 'arbitrary or capricious' standard is limited to the record before the agency at the time of its decision.").

## **ARGUMENT**

**I.    EPA Violated the Clean Air Act by Disapproving Texas's State Plan on the Basis That It Did Not Conform to EPA's Replacement Federal Plan**

The Final Rule must be vacated and set aside because EPA applied the wrong legal standard by which to judge Texas's SIP and considered a factor that Congress did not intend.  Instead of evaluating Texas's SIP on its own merits to determine if it complies with the applicable requirements of the statute, EPA *first* devised a replacement FIP and then rejected Texas's SIP because it did not conform to EPA's FIP.  This approach is unlawful; it violates the express terms of the statute and exceeds EPA's limited authority in reviewing SIPs.

### **A.    The CAA mandates a cooperative federalism approach that divides responsibilities between the states and EPA.**

The CAA "confines EPA's role in implementing air quality standards 'to the ministerial function of reviewing SIPs for consistency with the Act's requirements.'" *Texas*, 829 F.3d at 411 (quoting *Luminant Generation Co.*, 675 F.3d at 921).  This Court has repeatedly explained that the CAA "mandates that 'the administrator *shall* approve such [a state implementation plan] as a whole if it meets all the applicable requirements of this chapter.'"  *Id.* (emphasis and alteration in original) (quoting 42 U.S.C. § 7410(k)(3)); *see also Texas v. EPA*, 690 F.3d 670, 676 (5th Cir. 2012) ("[I]f a SIP or a revised SIP meets the statutory criteria of the CAA, then the EPA must approve it.").  "*Only if* the state has not complied with the requirements of the Clean

Air Act does EPA assume the role of primary regulator by drafting a state-specific plan." *Texas*, 829 F.3d at 412 (emphasis added).

### B.    The CAA does not authorize EPA to reject a SIP based on a FIP.

EPA's review of SIP revisions is cabined and delineated by 42 U.S.C. § 7410, also referred to as section 110 of the CAA. *Fla. Power & Light Co.*, 650 F.2d at 586-87 (explaining statutory standards for EPA review of SIP revisions). Section 110(a)(2) of the CAA lists the statutory requirements for SIPs. 42 U.S.C. § 7410(a)(2).

Notably absent from the list is any requirement that a SIP conform to the requirements of a FIP developed by EPA. *Id.* Instead, under the plain language and structure of the statute, EPA is authorized to devise a FIP only "*after*" EPA disapproves a SIP on its own merits. *Id.* § 7410(c)(1) (emphasis added). Both the U.S. Supreme Court and this Court have repeatedly confirmed that EPA is authorized to "devise and promulgate a specific plan of its own *only if* a State fails to submit an implementation plan which satisfies [the statutory] standards." *Texas*, 829 F.3d at 426 (emphasis added) (quoting *Train*, 421 U.S. at 79); s*ee also EME Homer City Generation*, 134 S. Ct. at 1598 ("EPA could promulgate a FIP . . . *after* disapproving [the] SIP.") (emphasis added).

The very definition of a FIP is a plan to "fill all or a portion of a gap or otherwise correct all or a portion of an inadequacy in a [SIP]." 42 U.S.C. § 7602(y). Thus, unless and until EPA reviews a SIP on its own merits to determine if a statutory

"gap" or "inadequacy" exists, it is impossible for EPA to lawfully devise a FIP to fill that gap or remedy that inadequacy.

But that is exactly what EPA did here. Four months before EPA even proposed action on Texas's SIP, EPA devised and issued a FIP for Texas that dictated how Texas would meet the "good neighbor" provision. EPA then judged Texas's plan, not strictly on its own merits, but by whether Texas's plan conformed to EPA's FIP. 81 Fed. Reg. at 21,292-93; *see also* Doc. 00513880329 at 5-6, 10 (explaining that the FIP was "openly relied upon by the Agency" and "constitute[s] part of the Agency's basis for taking the challenged action"). EPA freely conceded in the rule that it rejected Texas's plan because it was "contradict[ed]" by EPA's FIP, which turns on its head the statutory division of responsibility in the statute. 81 Fed. Reg. at 21,294. In fact, EPA went so far as to improperly shift the burden to the State of Texas and Texas generators to "demonstrate[e]" "inadequacies" in EPA's FIP before EPA would consider approving the Texas SIP. *Id.* at 53,286. This approach is completely backwards and violates section 110 of the Act. Because EPA's disapproval "relied on factors which Congress has not intended it to consider" (*i.e.*, EPA's FIP), the Final Rule is unlawful and must be vacated. *La. Envtl. Action Network*, 382 F.3d at 582.

Indeed, EPA should not have devised a FIP unless and until EPA first determined that Texas's SIP did not meet the statutory requirements at the time of submission. Under the plain language and structure of the statute, EPA is authorized

18

to devise a FIP only "*after*" EPA disapproves a SIP on its own merits.  42 U.S.C. § 7410(c)(1) (emphasis added); *see also Texas*, 829 F.3d at 426 (EPA may "devise and promulgate a specific plan of its own *only if* a State fails to submit an implementation plan which satisfies [the statutory] standards." (emphasis added) (internal quotation omitted)).  Because EPA is "a creature of statute" and has "only those authorities conferred upon it by Congress," EPA had no business issuing a FIP before disapproving Texas's SIP on its own merits, much less using that FIP to disapprove the SIP.  *Michigan v. EPA*, 268 F.3d 1075, 1081 (D.C. Cir. 2001).  EPA's Final Rule is thus "plainly contrary to law and cannot stand."  *Id.*

Moreover, EPA's approach in the Final Rule effectively nullifies the state's primary role under the Act and the wide latitude states are given to develop SIPs. EPA's approach here meant that Texas had no choice at all in how to implement the good neighbor provision, other than adopting the exact plan in EPA's replacement FIP.  81 Fed. Reg. at 21,292.  It was clear from the record that, by design, any analysis by Texas that was "contradict[ed]" by EPA's FIP would not be approved.  *Id.*  But under the statute, a state may "adopt whatever mix of emission limitations it deems best suited to its particular situation," and is not limited to the approach that EPA deems best.  *Train*, 421 U.S. at 79.  The Clean Air Act *does not* "give EPA the authority to condition approval of a state's plan on the state's adoption of control measures EPA has chosen," which is exactly what EPA did here.  *Virginia*, 108 F.3d at 1404

(vacating EPA action on SIPs because EPA gave states "no alternative" other than to adopt EPA's approach).

**C.    There is no other evidence in the record to support EPA's disapproval.**

Although EPA freely admits and defends its reliance on its FIP to disapprove Texas's SIP, Doc. 00513880329 at 5-6, 10, EPA, as a back-up, asserted in the Final Rule that there were two technical "deficiencies" in Texas's submittal that rendered it "incomplete," providing an "independent" basis for EPA's disapproval.  81 Fed. Reg. at 53,285, 53,286; *id* at 21,292.  But EPA cites no basis for what would amount to a "harmless error" standard for SIP reviews, nor does the law support one.  Because EPA indisputably "relied on factors which Congress has not intended it to consider," *La. Envtl. Action Network*, 382 F.3d at 582, the Final Rule is unlawful and must be vacated, regardless of what other grounds EPA may now claim would have justified disapproval had EPA not considered the unlawful factor.

Moreover, EPA's claim that Texas's submission was "incomplete," 81 Fed. Reg. at 21,292, is foreclosed by the plain language of the statute and does not provide a lawful basis for disapproval.  The statute provides for a two-step process for EPA's review of a SIP submission.  First, upon receipt of Texas's submission, EPA was required to (and did) review Texas's submittal for administrative and technical "completeness."  42 U.S.C. § 7410(k)(1)(A).  Second, after determining that a SIP submission is administratively and technically complete (as EPA did here), the scope

of EPA's review is limited to determining if the SIP "complies with the provisions of [the statute]." *Id.* § 7410(k)(1)(A), (3); *see also Luminant Generation Co.*, 675 F.3d at 921 ("With regard to implementation, the Act confines the EPA to the ministerial function of reviewing [state plans] *for consistency with the Act's requirements*." (emphasis added) (citing and quoting 42 U.S.C. § 7410(k)(3))).

The first step of EPA's review—the completeness review—included a determination by EPA of whether Texas's submission included "the information necessary to enable the Administrator to determine whether the plan submission complies with the [statutory requirements]." 42 U.S.C. § 7410(k)(1)(A). Specifically, EPA was required to determine if Texas's SIP contains, among other things, "[t]he State's demonstration that the national ambient air quality standards . . . are protected if the plan is approved and implemented" and "technological justifications required by any applicable EPA policies[.]" 40 C.F.R. Part 51, App. V, § 2.2(d), (i).

Here, EPA made its completeness determination on December 20, 2012, when it issued its determination that Texas's plan met the criteria and was complete. EPA advised Texas that "[w]e have determined that the [Texas SIP] submittal . . . is administratively *and technically* complete." Index # 23, App. F, Letter from EPA Region 6 to TCEQ (emphasis added). Had EPA not made this determination within six months of receiving Texas's plan, Texas's plan would have been deemed complete "by operation of law." 42 U.S.C. § 7410(k)(1)(B). What EPA now claims are "deficiencies"—for example, that Texas's demonstration should have included

"potential exceedances [of the NAAQS] in other areas not designated nonattainment," 81 Fed. Reg. at 21,292—were required to be identified by EPA during this first phase of the review and within six months of Texas's submission of its plan. Moreover, even without EPA's affirmative finding that Texas's plan was "complete," because EPA failed to identify these so-called "deficiencies" during the statutory review period, EPA is also barred "by operation of law," 42 U.S.C. § 7410(k)(1)(B), from asserting now that such technical "deficiencies" render the Texas SIP "incomplete."[5]

In any case, the two "deficiencies" now claimed by EPA are not "statutory criteria of the CAA," *Texas*, 690 F.3d at 676, that would provide EPA a lawful basis for disapproval. First, there is nothing in the Act that requires that a state model "*potential* exceedances" in downwind areas that are "*not* designated nonattainment," 81 Fed. Reg. at 21,292 (emphasis added), in order to demonstrate that its emissions do

---

[5] The statutory requirement that EPA promptly review a SIP submission for technical completeness within six months—or be barred from later claiming a submission is technically deficient—was added to the CAA in the 1990 amendments to the statute in order to prevent the very type of "excessive delays" in EPA's review of SIPs that occurred in the present case. 56 Fed. Reg. 23,826, 23,826 (May 24, 1991). As EPA explained in issuing the completeness criteria, adherence to the six-month completeness review deadline by EPA is necessary to foster "an optimum State/Federal partnership" and to avoid "dampen[ing] initiatives in State regulatory programs." *Id.* Under the completeness review, if EPA finds that there are technical deficiencies in the state submission, "the submission will be returned to the State with a letter indicating the deficiencies found." 54 Fed. Reg. 2,138, 2,140 (Jan. 19, 1989). EPA failed to do so here, and, in fact, affirmatively notified Texas that its submission was technically complete.

not "contribute significantly to nonattainment," 42 U.S.C. § 7410(a)(2)(D)(i)(I), which is what EPA claims Texas should have done here. Not only was Texas *not required* by the statute to conduct such a counterintuitive analysis, the statutory language is best read to provide for *only* an analysis of a downwind area that "does not meet" the NAAQS, 42 U.S.C. § 7407(d)(1)(A) (definition of "nonattainment"), not one that "potential[ly]" might not meet the NAAQS, as EPA claims, 81 Fed. Reg. at 21,292. Congress's use of the present tense forecloses EPA's approach. *See Pina-Galindo v. Lynch*, 803 F.3d 193, 194 (5th Cir. 2015) ("If Congress's unambiguously expressed intent 'on the precise question at issue' is clear from the language of the statute, no interpretation is needed, because Congress's 'intention is the law and must be given effect.'" (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 & n.9 (1984))).

The "[s]econd" reason that EPA now claims Texas's plan is "incomplete" (which, again, EPA failed to identify during its six-month completeness review) is also not a lawful basis for disapproval. 81 Fed. Reg. at 21,292. Nothing in the statute required Texas to "evaluate the potential impact of Texas emissions on areas that are currently measuring clean data, but that may have issues maintaining that air quality." *Id.* This amounts to a claim that Texas should have followed *the approach used by EPA* in its replacement FIP for the "maintenance" prong of the "good neighbor" provision, which the statute does not require. Texas did consider whether its

emissions would interfere with maintenance, Texas Br. at 36-37, just not in the exact way EPA would like, which, again, is not the statutory standard.

Moreover, it is complete speculation by EPA that these two so-called "deficiencies" impacted at all Texas's demonstration that emissions from the state would not contribute significantly to downwind nonattainment or interfere with maintenance of the 2008 ozone NAAQS in any other state. That is, apart from claiming that its replacement FIP "contradicted" Texas's analysis, EPA provides absolutely no data or technical demonstration to show that Texas's analysis would have turned out any different had Texas considered, for example, "potential exceedances" in areas "not designated nonattainment." 81 Fed. Reg. at 21,292. EPA's claims are based on pure speculation and not real data. In fact, *the only* "[s]upporting [d]ocumentation" provided by EPA in the administrative record for the Final Rule here are: 1) six documents from EPA's replacement FIP (Items 7-12), which EPA unlawfully considered and which should be struck from the record;[6] and 2) a final rule from 2011, which is another EPA FIP that does not even address the 2008 ozone NAAQS (Item 13). Doc. 00513859017 at 3-4. Without any record evidence, EPA's speculation about potential technical deficiencies in Texas's SIP cannot support its disapproval. 5 U.S.C. § 706(2)(A).

---

[6] The Court entered an order on February 7, 2017, carrying with the case Petitioners' and Petitioner-Intervenors' motion to strike these six documents from the record. Doc. 00513866172.

**II.      EPA's Disapproval Also Violated the Administrative Procedure Act Because EPA's FIP Pre-Determined the Outcome of EPA's Review**

The Final Rule must also be vacated because the procedures employed by EPA violated the APA, which requires that EPA keep an open mind and provide a meaningful opportunity for public comment.  That plainly did not happen here. Here, the comment period was not meaningful because EPA had already devised the requirements of a replacement federal plan for Texas, by which it would later judge the Texas SIP, before it even solicited public comments on its proposed disapproval. By relying on the FIP it had already developed as the basis for its disapproval of Texas's SIP, EPA's outcome was predetermined and foreclosed any meaningful public input and any real consideration of other alternatives by EPA.  This failure of basic procedure requires that the Final Rule be vacated, so that EPA can take an appropriate look at the Texas SIP on its own merits.

Under the APA, "[t]he opportunity for comment must be a meaningful opportunity." *Rural Cellular Ass'n v. FCC*, 588 F.3d 1095, 1101 (D.C. Cir. 2009).  This means that "an agency must also remain *sufficiently open-minded*." *Id.*  The APA's notice-and-comment process "serves at least two purposes: '(1) to allow the agency to benefit from the expertise and input of the parties who file comments with regard to the proposed rule, and (2) to see to it that the agency maintains a *flexible and open-minded attitude* towards its own rules, which might be lost if the agency had already put its credibility on the line in the form of 'final' rules.'" *La Union Del Pueblo Entero v.*

*FEMA*, 141 F. Supp. 3d 681, 691 (S.D. Tex. 2015) (emphasis added) (quoting *Nat'l Tour Brokers Ass'n v. United States*, 591 F.2d 896, 902 (D.C. Cir. 1978)). "People naturally tend to be more close-minded and defensive once they have made a 'final' determination." *Nat'l Tour Brokers Ass'n*, 591 F.2d at 902.

EPA's backwards and unlawful approach—devising a FIP before it solicits and reviews public comment on its precedent action on the underlying SIP—is the epitome of not remaining "open-minded" and "flexible" as required by the APA. The record here clearly demonstrates that EPA "ha[d] not taken any action on [Texas's 2012] SIP submission" when it issued the Proposed CSAPR Update FIP.[7] Thus, EPA had expended substantial resources developing a proposed FIP for Texas—and was fully invested in its own FIP—and unable to keep an open mind. The record makes clear that EPA considered its subsequent disapproval of Texas's SIP as a mere formality that "would trigger the EPA's FIP authority to implement the requirements of the good neighbor provision for [Texas]." 80 Fed. Reg. at 75,720.

The record also clearly shows that EPA plainly and openly judged Texas's SIP by evaluating whether Texas's plan conformed to the CSAPR Update FIP. 81 Fed. Reg. at 21,292-93; *see also* Doc. 00513880329 at 5-6, 10 (explaining that the FIP was "openly relied upon by the Agency" and "constitute[s] part of the Agency's basis for taking the challenged action."). EPA was thus predisposed to dismiss relevant public

---

[7] EPA, *Status of 110(a)(2)(D)(i)(I) SIPs Proposed Rule TSD*, Dock. ID EPA-HQ-OAR-2015-0500-0099, at 8 (Nov. 2015).

26

comments and move forward with finalizing its disapproval, so that it could set about implementing its own federal plan for Texas. The Final Rule was issued as proposed, without change, summarily dismissing any adverse comments provided on the proposed disapproval of Texas's SIP. Although "an agency's failure to make any [changes] does not mean its mind is closed," "changes and revision are indicative of an open mind." *Advocates for Highway & Auto Safety v. Fed. Highway Admin.*, 28 F.3d 1288, 1292 (D.C. Cir. 1994). Here, the record shows that EPA's mind was closed. EPA's predetermined solution to a problem that had not yet been defined violated the APA, and for that reason the Final Rule must be vacated.

## <u>CONCLUSION</u>

For all these reasons, the Court should hold unlawful and vacate the Final Rule.

Respectfully submitted,

s/ P. Stephen Gidiere III
Counsel for Petitioner-Intervenors


Counsel for Petitioner-Intervenors:

P. Stephen Gidiere III
BALCH & BINGHAM LLP
1901 6th Ave. N., Ste. 1500
Birmingham, Alabama 35203
205-251-8100
sgidiere@balch.com

David W. Mitchell
BALCH & BINGHAM LLP
601 Pennsylvania Avenue, N.W.
Suite 825 South
Washington, D.C. 20004

Stephanie Z. Moore
Executive Vice President & General Counsel
VISTRA ENERGY CORP.
1601 Bryan Street
22nd Floor
Dallas, Texas 75201

Daniel J. Kelly
Vice President & Associate General Counsel
VISTRA ENERGY CORP.
1601 Bryan Street
43rd Floor
Dallas, Texas 75201

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 1st day of March, 2017.

s/ P. Stephen Gidiere III
*Counsel for Petitioner-Intervenors*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,502 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface in 14-point Garamond font.

Dated: February 24, 2017

s/ P. Stephen Gidiere III
*Counsel for Petitioner-Intervenors*