No. 16-60670

# In the
# United States Court of Appeals
# For the Fifth Circuit

STATE OF TEXAS; TEXAS COMMISSION ON
ENVIRONMENTAL QUALITY,
*PETITIONERS,*

V.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S. REGAN, IN HIS
OFFICIAL CAPACITY AS ACTING ADMINISTRATOR OF THE UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY,
*RESPONDENTS.*

**SUPPLEMENTAL BRIEF OF PETITIONERS STATE OF TEXAS AND THE
TEXAS COMMISSION ON ENVIRONMENTAL QUALITY**

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil
Litigation

KELLIE E. BILLINGS-RAY
Chief, Environmental Protection
Division

July 22, 2024

JOHN R. HULME
Assistant Attorney General
john.hulme@oag.texas.gov

ERIN K. SNODY
Assistant Attorney General
erin.snody@oag.texas.gov

Office of the Attorney General
Environmental Protection Division
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
Tel.: (512) 463-2012
Fax: (512) 320-0911

Counsel for State of Texas and Texas
Commission on Environmental Quality

# TABLE OF CONTENTS

Table of Authorities .................................................................. iii

Introduction ............................................................................. 1

Statement of the Case ................................................................ 1

    I.     Statutory Background ................................................ 2

          A.     The Act's cooperative federalism ............................... 2

          B.     The "good neighbor" provision ................................... 4

    II.    Factual Background and Administrative History ..................... 5

          A.     EPA sets the 2008 NAAQS, disapproves Texas's SIP, and Texas sues. ...................................... 5

          B.     EPA promulgates the 2015 NAAQS, disapproves Texas's SIP, and Texas sues. .................... 7

          C.     This Court removes 2008 SIP disapproval action from abeyance. ............................................ 8

Standard of Review .................................................................... 8

Argument ................................................................................. 9

    I.     EPA's SIP disapproval subverts the Clean Air Act's cooperative federalism approach. ............................. 10

    II.    EPA's SIP disapproval violated the Administrative Procedure Act by requiring nonstatutory factors. ................ 14

    III.   EPA's SIP disapproval was arbitrary and capricious because it ignored Texas's data and analysis on maintenance for areas in attainment and was based on data, methodologies, and standards unavailable when Texas submitted its SIP. ............................................... 17

Conclusion and Prayer ............................................................... 19

i

Certificate of Service ................................................................................21

Certificate of Compliance .......................................................................21

Certificate of Electronic Compliance......................................................21

## Cases

*Alaska Prof'l Hunters Ass'n v. FAA*,
  177 F.3d 1030 (D.C. Cir. 1999), *abrogated on other grounds by Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92 (2015) .........................................18

*BCCA Appeal Grp. v. EPA*,
  355 F.3d 817 (5th Cir. 2003) ...........................................................2, 3

*Christopher v. SmithKline Beecham Corp.*,
  567 U.S. 142 (2012)........................................................................19

*EPA v. EME Homer City Generation, L.P.*,
  572 U.S. 489 (2014)....................................................... 4, 6, 10, 11, 13

*FCC v. Prometheus Radio Project*,
  592 U.S. 414 (2021).........................................................................9

*Loper Bright Enters. v. Raimondo*,
  144 S. Ct. 2244 (2024)........................................................ 15, 16, 17

*Luminant Generation Co. v. EPA*,
  675 F.3d 917 (5th Cir. 2012) ................................................ 2, 3, 12

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983)..........................................................................9

*Ohio v. EPA*,
  144 S. Ct. 2040 (2024).......................................................... 11, 13

*R.J. Reynolds Vapor Co. v. FDA*,
  65 F.4th 182 (5th Cir. 2023) ..................................................... 18, 19

*State of Texas v. EPA*,
  690  F.3d 670 (5th Cir. 2012) (*Texas 2012*)....................................3, 10

*State of Texas v. EPA*,
  829 F.3d 405 (5th Cir. 2016) (*Texas 2016*) ...................... 2, 3, 4, 5, 10

*State of Texas v. EPA*,
   No. 23-60069 (5th Cir.) .........................................................................8

*State of Texas v. EPA*,
   No. 23-60069, 2023 WL 7204840 (5th Cir. May 1, 2023) .................... 8, 11, 12

*Tex. Oil & Gas Ass'n v. EPA*,
   161 F.3d 923 (5th Cir. 1998) ................................................................9

*Train v. Nat. Res. Def. Council, Inc.*,
   421 U.S. 60 (1975).............................................................................3

*Union Elec. Co. v. EPA*,
   427 U.S. 246 (1976)...........................................................................3

**Statutes**

5 U.S.C. § 706..........................................................................................16

5 U.S.C. § 706(2)(A).................................................................................8

5 U.S.C. § 706(2)(C).................................................................................8

42 U.S.C. § 7401(a)(3).............................................................................10

42 U.S.C. § 7407(a) ........................................................................ 2, 3, 10

42 U.S.C. § 7407(d)(1)(A)(i) ...................................................................15

42 U.S.C. § 7407(d)(1)(A)(i)-(ii)...............................................................2

42 U.S.C. § 7408(a) ..................................................................................2

42 U.S.C. § 7409 ....................................................................................10

42 U.S.C. § 7409(a) ..................................................................................2

42 U.S.C. § 7409(d)(1)...............................................................................2

42 U.S.C. § 7410(a)(1)..................................................................... 2, 3, 5, 7

42 U.S.C. § 7410(a)(2)...........................................................................3, 4

42 U.S.C. § 7410(a)(2)(D)(i)(I) .............................................. 4, 14, 15, 17

42 U.S.C. § 7410(a)(2)(D)(i)(II) ...................................................4

42 U.S.C. § 7410(a)(2)(H) ............................................................3

42 U.S.C. § 7410(c)(1).................................................................4

42 U.S.C. § 7410(k)(1)-(3) ..........................................................7

42 U.S.C. § 7410(k)(1)(B)............................................................4

42 U.S.C. § 7410(k)(2)-(3).......................................................4, 5

42 U.S.C. § 7410(k)(3).............................................................3, 10

42 U.S.C. § 7410(*l*).....................................................................3

42 U.S.C. § 7501(2) ...............................................................2, 15

42 U.S.C. § 7602(y) .....................................................................4

42 U.S.C. § 7607(d)(9)(A) ...........................................................8

42 U.S.C. § 7607(d)(9)(C) ...........................................................8

**Rules & Regulations**

40 C.F.R. § 52.02(a)....................................................................3

**Other Authorities**

Air Plan Disapprovals; Interstate Transport of Air Pollution for the
    2015 8-Hour Ozone National Ambient Air Quality Standards, 88
    Fed. Reg. 9,336 (Feb. 13, 2023) ..........................................8

Cross-State Air Pollution Rule Update for the 2008 Ozone NAAQS,
    80 Fed. Reg. 75,706 (Dec. 3, 2015)......................................6

National Ambient Air Quality Standards for Ozone, 80 Fed. Reg.
    65,292 (Oct. 26, 2015) ..........................................................7

Proposed Rule, Air Plan Disapproval; Arkansas, Louisiana, Oklahoma, and Texas; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 87 Fed. Reg. 9,798 (Feb. 22, 2022) ....................................................................7

## INTRODUCTION

In accordance with the Court's order of June 21, 2024, the State of Texas and the Texas Commission on Environmental Quality ("TCEQ") (collectively, "Texas") file this Supplemental Brief in support of its Petition for Review of the Environmental Protection Agency ("EPA")'s disapproval, in part, of its State Implementation Plan ("SIP") for EPA's 2008 National Ambient Air Quality Standard ("NAAQS") for ozone. This Supplemental Brief discusses recent authority regarding the issues discussed in Texas's opening brief filed in March 2017 and explains why the case remains important today.

In disapproving Texas's 2008 ozone SIP, EPA has subverted the Clean Air Act's cooperative federalism framework and violated the Administrative Procedure Act, acting arbitrarily and capriciously by imposing nonstatutory requirements, ignoring Texas's data and analysis in support of its SIP, and basing its disapproval on data and methodologies unavailable to Texas when it submitted its SIP.

## STATEMENT OF THE CASE

The facts and procedural history of this case are described in detail in Texas's opening brief in this case. Texas Br. 3-19, ECF No. 00513893876. This Supplemental Brief summarizes the key facts relevant to Texas's arguments on the merits and supplies an update on the events that have transpired in the seven years that have passed since Texas's submission of its opening brief.

# I. Statutory Background

## A. The Act's cooperative federalism

The Clean Air Act requires EPA to identify air pollutants and establish NAAQS. 42 U.S.C. §§ 7408(a), 7409(a). Every five years, EPA must revise each NAAQS as appropriate. *Id.* § 7409(d)(1). A geographic area that meets the NAAQS is called an "attainment" area; an area that does not is a "nonattainment" area. *Id.* § 7407(d)(1)(A)(i)-(ii); *see id.* § 7501(2).

Although the Act requires EPA to set the NAAQS, it assigns the States "primary responsibility for ensuring that the ambient air meets the NAAQS." *BCCA Appeal Grp. v. EPA*, 355 F.3d 817, 822 (5th Cir. 2003); *see* 42 U.S.C. § 7407(a). "This division of responsibility between the states and the federal government 'reflects the balance of state and federal rights and responsibilities characteristic of our federal system of government.'" *State of Texas v. EPA*, 829 F.3d 405, 411 (5th Cir. 2016) (quoting *Luminant Generation Co. v. EPA*, 675 F.3d 917, 921 (5th Cir. 2012)) (*Texas 2016*). It "indicates a congressional preference that states, not EPA, drive the regulatory process." *Id.*

To implement the NAAQS, "states must adopt and administer [SIPs]," *Luminant*, 675 F.3d at 921, which "provide[] for implementation, maintenance, and enforcement" of the NAAQS within their borders, 42 U.S.C. § 7410(a)(1). After EPA establishes or revises a NAAQS, States have three years to submit SIPs or SIP

revisions specifying how the NAAQS will be met and include numerous congressionally mandated SIP components. *Id.* §§ 7407(a), 7410(a)(1), (a)(2), (a)(2)(H). In discharging that obligation, States have "broad authority to determine the methods and particular control strategies they will use to achieve the statutory requirements," *BCCA Appeal Grp.*, 355 F.3d at 822, and "wide discretion in formulating [their SIPs]" to meet the NAAQS, *Luminant*, 675 F.3d at 921 (quoting *Union Elec. Co. v. EPA*, 427 U.S. 246, 250 (1976)). Indeed, "[s]o long as the ultimate effect of a State's choice of emission limitations is compliance with the [NAAQS], the State is at liberty to adopt whatever mix of emission limitations it deems best suited to its particular situation." *Texas 2016*, 829 F.3d at 411 (quoting *Train v. Nat. Res. Def. Council, Inc.*, 421 U.S. 60, 79 (1975)).

Consistent with this preference for state implementation and enforcement, the Act "confines EPA's role in implementing air quality standards 'to the ministerial function of reviewing SIPs for consistency with the Act's requirements.'" *Id.* (quoting *Luminant*, 675 F.3d at 921); *see* 42 U.S.C. § 7410(a)(1), (*l*). In other words, if a SIP meets the statutory requirements, "EPA must approve it." *State of Texas v. EPA*, 690 F.3d 670, 676 (5th Cir. 2012) (*Texas 2012*); *see* 42 U.S.C. § 7410(k)(3) (providing that "the Administrator *shall* approve [a SIP] as a whole if it meets all of the applicable requirements of [the Act]" (emphasis added)); 40 C.F.R. § 52.02(a). "Only if the state has not complied with the requirements of the Clean Air Act does

EPA assume the role of primary regulator by drafting a [Federal Implementation Plan ("FIP")]." *Texas 2016*, 829 F.3d at 412; *see* 42 U.S.C. § 7410(c)(1); *id.* § 7602(y) (defining a FIP, in part, as "a plan . . . promulgated by the [EPA] Administrator to fill all or a portion of a gap or otherwise correct all or a portion of an inadequacy in a [SIP]").

The Act requires EPA to take action on a SIP within 18 months of its submission. Congress directed EPA to determine, within the first six months, whether a SIP is technically and administratively complete. 42 U.S.C. § 7410(k)(1)(B). If EPA does not issue a completeness finding within six months, the SIP is deemed to meet the minimum criteria by operation of law. *Id.* Upon its issuance of a completeness finding, EPA has 12 months to approve or disapprove the SIP. *Id.* § 7410(k)(2)-(3).

## B. The "good neighbor" provision

As noted, the Act enumerates several substantive requirements for SIPs. *Id.* § 7410(a)(2). Relevant here is the "good neighbor" provision, which requires "upwind States to reduce emissions to account for pollution exported beyond their borders." *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 499 (2014). The text of this provision requires that a SIP "contain adequate provisions" prohibiting emissions that "will . . . contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect to any [NAAQS]." 42 U.S.C.

§ 7410(a)(2)(D)(i)(I); *see also id.* § 7410(a)(2)(D)(i)(II) (requiring a SIP to prohibit emissions that will "interfere with measures required to be included" in other States' SIPs "to prevent significant deterioration of air quality or to protect visibility"); *Texas 2016*, 829 F.3d at 411 (involving action taken under subsection (a)(2)(D)(i)(II)).

## II.    Factual Background and Administrative History

### A.    EPA sets the 2008 NAAQS, disapproves Texas's SIP, and Texas sues.

This case arises from EPA's setting of a new NAAQS for ozone in 2008. Under the federal Clean Air Act ("CAA"), Texas was required within three years to prepare and submit to EPA, for its approval, a state implementation plan or "SIP." 42 U.S.C. § 7410(a)(1). Texas timely submitted its 2008 ozone transport SIP, in accordance with Clean Air Act requirements, in December 2012.[1] This SIP analyzed the impacts of Texas emissions on neighboring states and determined, based on that analysis, that the "good neighbor" provision of the statute did not require that Texas implement any additional control measures other than those otherwise provided. Texas Br. 30-32, 36.

EPA declared Texas's SIP technically complete on December 20, 2012. Although EPA was then required to act on Texas's SIP within twelve months, 42

---

[1] Litigation delayed this SIP submittal deadline.

U.S.C. § 7410(k)(2)-(3), it did not do so for more than three years. Before issuing its proposal to disapprove the SIP, however, in December 2015 EPA prematurely—and unlawfully, *see EME Homer City Generation, L.P.*, 572 U.S. at 507-09—issued a proposed Federal Implementation Plan ("FIP") employing a specific methodology for States to assess their emissions' impacts upon other states under the CAA's good neighbor provision. Cross-State Air Pollution Rule Update for the 2008 Ozone NAAQS, 80 Fed. Reg. 75,706 (Dec. 3, 2015). Thereafter, EPA issued a proposed rule disapproving Texas's SIP in part, in April 2016, and a final rule disapproving the SIP in August 2016.

In October 2016, Texas filed its petition for review of EPA's final rule disapproving Texas's SIP. ECF No. 00513712257. Texas filed its Petitioners' brief in March 2017, arguing that EPA ran roughshod over the "cooperative federalism" contemplated in the CAA, ignoring the State discretion and EPA's own statutory procedural mandates, and basing its disapproval on data and methods developed after Texas submitted its SIP. ECF No. 00513893876. Several industry intervenors[2] also filed a brief in 2017, arguing EPA unlawfully judged the sufficiency of Texas's SIP based on whether it met the terms of EPA's proposed federal replacement plan.

---

[2] Luminant Generation Company LLC, Big Brown Power Company LLC, Luminant Mining Company LLC, La Frontera Holdings LLC, Oak Grove Management Company LLC, and Shadow Power Company LLC.

ECF No. 00513893206. Before EPA filed its response brief, however, the case was stayed as the parties pursued settlement discussions. ECF No. 00514480460. Since then, EPA has filed periodic status reports with the Court.

**B.    EPA promulgates the 2015 NAAQS, disapproves Texas's SIP, and Texas sues.**

While this case was in abeyance, in October 2015, EPA revised the ozone NAAQS to implement more stringent standards. National Ambient Air Quality Standards for Ozone, 80 Fed. Reg. 65,292 (Oct. 26, 2015) (promulgated Oct. 1, 2015). EPA's October 1, 2015 revision of the NAAQS triggered Texas's statutory obligation to revise its SIP within three years, or by October 1, 2018, 42 U.S.C. § 7410(a)(1), and on August 17, 2018, TCEQ timely submitted revisions to Texas's SIP to address interstate transport for the 2015 Ozone NAAQS. EPA, however, again failed to act on Texas's SIP in a timely fashion. *See* 42 U.S.C. § 7410(k)(1)-(3) (reflecting that EPA has a maximum of 18 months to act after a SIP is submitted). In February 2022—two years after it was statutorily obligated to act—EPA proposed to disapprove of Texas's SIP. Proposed Rule, Air Plan Disapproval; Arkansas, Louisiana, Oklahoma, and Texas; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 87 Fed. Reg. 9,798 (Feb. 22, 2022). And about one year later, EPA issued a final rule disapproving of Texas's SIP. *See* Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-

Hour Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 9,336 (Feb. 13, 2023).

Texas timely petitioned this Court for review of EPA's disapproval, and it thereafter moved for a stay of that disapproval action pending appeal. *See generally State of Texas v. EPA*, No. 23-60069 (5th Cir.). This Court granted that motion. *See State of Texas v. EPA*, No. 23-60069, 2023 WL 7204840 (5th Cir. May 1, 2023). That appeal, argued to a panel of this Court in December 2023, remains pending before the Court.

### C. This Court removes 2008 SIP disapproval action from abeyance.

In June 2024, the Court removed this case from abeyance and asked the parties to submit letter briefs proposing how it should be resolved. The Court then ordered briefing resumed.

### STANDARD OF REVIEW

The APA empowers this Court to "hold unlawful and set aside" certain "agency action"—including, as relevant here, action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C); *accord* 42 U.S.C. § 7607(d)(9)(A), (C).

"The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). An action will be found arbitrary or capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Tex. Oil & Gas Ass'n v. EPA*, 161 F.3d 923, 933 (5th Cir. 1998) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

**ARGUMENT**

In its 2017 opening brief, Texas explained the numerous ways that EPA was acting contrary to its Congressional mandate and arbitrary and capriciously in violation of the Administrative Procedure Act: subverting the cooperative federalism structure and usurping State discretion in implementing the Act; ignoring the data and analysis that Texas submitted in support of its SIP; disapproving Texas's SIP based on information not available when Texas was required to submit it; and rejecting it as noncompliant with EPA's already proposed replacement plan. Each of those reasons remain just as fatal to EPA's action as seven years ago. The Court should grant Texas's petition.

## I.     EPA's SIP disapproval subverts the Clean Air Act's cooperative federalism approach.

As Texas explained in its opening brief in 2017, pages 3-8, the Clean Air Act establishes a cooperative-federalism regulatory framework between EPA and the States. EPA sets the NAAQS, such as the 2008 ozone NAAQS at issue in this case, and States are charged with preparing implementation plans to attain them. 42 U.S.C. §§ 7401(a)(3), 7407(a), 7409.  States have wide discretion in this regard—EPA must approve a SIP if it meets all the applicable statutory requirements of the Clean Air Act. *E.g.*, *Texas 2012*, 690 F.3d at 676; 42 U.S.C. § 7410(k)(3) ("the Administrator *shall* approve [a SIP] as a whole if it meets all of the applicable requirements of this chapter" (emphasis added)). Only if the states have not complied does EPA step in to assume the role of a primary regulator and prepare a state-specific plan. *Texas 2016*, 829 F.3d 405, 412.

In *EPA v. EME Homer City Generation, L.P.*,[3] the Supreme Court explained the fundamental structure involved here: EPA issues the NAAQS, then the burden shifts to the states to submit implementation plans adequate for compliance. If EPA determines the state has failed to submit an adequate SIP, then the EPA is required to issue a FIP within two years, unless the state corrects the deficiency.  *Id*. at 498.

---

[3] 572 U.S. 489 (2014).

"[O]nly after a State has failed to propose a SIP adequate for compliance with the provision is EPA called upon to act." *Id*. at 514 n.15.

Recently, in *Ohio v. EPA*,[4] the Supreme Court again confirmed this fundamental structure in another case involving the very "good neighbor" provision at issue in this case. *Ohio* confirms that States possess "primary responsibility" for deciding how to demonstrate compliance with the Good Neighbor Provision. *Id*. at 2048. Indeed, "[s]o long as a SIP satisfies the 'applicable requirements' of the Act[,] . . . EPA '*shall* approve' it." *Id*. (emphasis added). Stated differently, "EPA has 'no authority to question the wisdom of a State's choices of emission limitations,'" *id.* (internal quotation omitted), because "[u]nder the Act, *States* decide how to measure ambient air quality," *id.* (emphasis added).

And in the pending challenge to EPA's disapproval of Texas's 2015 ozone SIP, this Court granted a stay of the final rule disapproving Texas's SIP, finding a likelihood of Texas's success on the merits. In the case of the 2015 SIP, EPA used a four-step framework to evaluate the State's "good neighbor" obligations. The Court found that EPA had acted unlawfully by considering factors not found in the statute, 2023 WL 7204840 at 7-8, and acted arbitrarily and capriciously by basing its denial on modeling data only available after Texas and Louisiana had submitted their SIPs,

_____

[4] *Ohio v. EPA*, 144 S. Ct. 2040, 2048 (2024).

*id.* at 9. On the first point of error, the Court explained that EPA had exceeded its ministerial role in SIP approval (merely ensuring that SIPs complied with the text of the Clean Air Act) by subjecting the States to a range of factors not found in the Act. *Id.* at 7. The Court further noted that EPA's approach inverts the Clean Air Act SIP approval process and "reflects a misapprehension by the EPA of its authorized role in the SIP-approval process." *Id.* at 7 (citing *Luminant*, 675 F.3d at 928 n.8). The Act's text and precedent compel that "the EPA does not possess *any* discretionary authority in th[e] [SIP-approval] process. *Only* the states enjoy discretion in implementing the dictates of the CAA." *Id.*

Here, for the 2008 ozone NAAQS, Texas *complied* with its obligations and submitted a statutorily compliant SIP within the required timeframe. The EPA *did not comply*—it failed to act on Texas's SIP within 12 months as statutorily required.

Indeed, what EPA eventually did here turned the CAA process upside down: it first proposed a Federal Implementation Plan ("FIP") that included Texas, *then* proposed to disapprove Texas's SIP. Texas Br. 33; Luminant Br. 18. It is readily apparent from EPA's final disapproval of Texas's SIP that the real reason for its disapproval was that the SIP did not comport with EPA's own later-identified and preferred approach, including its methodology for the assessment of impacts of a state's emissions on neighboring states, that is incorporated in its *later-developed* FIP. The administrative record that EPA has submitted to the Court confirms this: it

includes numerous items from a later FIP proposal docket in 2015 that were not available at the time Texas was statutorily required to submit its SIP in 2012, or even when EPA was statutorily required to act upon the submittal in December 2013. Texas and Petitioner-Intervenors moved to strike this material from the record, and the Court has carried that motion with the case. ECF Nos. 00513863091, 00513866172. And when EPA finally disapproved Texas's SIP—*after* proposing its replacement FIP—it did so based on the data and methodology in the 2015 FIP docket that Texas did not have access to at the time its statutorily mandated SIP was due and submitted. EPA's disapproval of Texas's SIP based on information that was developed by the agency *after* all the relevant deadlines passed is the very definition of arbitrary decision making. And in any event, years later, EPA has still not issued any rules addressing how States are to implement their good-neighbor obligations through the SIPs—other than to propose and implement its preferred solution through a FIP.

States have broad discretion in how to implement the CAA's requirements. EPA does not have discretion in reviewing the SIP and has a limited ministerial role in ensuring the SIP's compliance with statutory requirements. *EME Homer*, 572 U.S. at 498; *Ohio v. EPA*, 144 S. Ct. at 2048. Rather than address the claimed deficiencies with Texas's SIP, most of EPA's disapproval rule discussed EPA's own preferred approach reflected in its FIP. The rule reflects that rather than timely evaluating

Texas's SIP on its merits (that is, its consistency with statutory requirements), EPA sat on Texas's SIP, issued its own FIP proposal, and *then* arbitrarily and capriciously rejected Texas's SIP on nonstatutory grounds—forcing Texas to comply with EPA's preferred implementation approach. This is contrary to the fundamental structure of the Clean Air Act.

All these problems identified in Texas's 2017 brief remain and in fact have only become more acute over time. EPA has taken a similar approach with regard to Texas's 2015 ozone transport SIP. In that case, EPA again missed its deadline to act on Texas's timely submitted SIP and then years later came back with new data and modeling that was not available at the time to disapprove the SIP.

## II.    EPA's SIP disapproval violated the Administrative Procedure Act by requiring nonstatutory factors.

EPA's disapproval is based on a misinterpretation of the statutory language. As Texas explained in its 2017 brief, Texas Br. 26, EPA has erroneously required—under the statutory language regarding nonattainment areas, 42 U.S.C. § 7410(a)(2)(D)(i)(I)—that Texas assess potential impacts upon areas in *attainment* in other states (on a broad national basis) as well as impacts on *nonattainment* areas.

The statutory language that is at issue here is in section 7410(a)(2)(D)(i), which states that implementation plans shall contain adequate provisions prohibiting any source or other emissions activity from emitting any air pollutant that will

"contribute significantly to nonattainment in, or interfere with maintenance by, any other state with respect to any such national primary or secondary ambient air quality standard."

The first part of this "good neighbor" provision regarding prohibited emissions refers only to *non*attainment areas. 42 U.S.C. § 7410(a)(2)(D)(i)(I) (requiring states to prohibit emissions in amounts which will "contribute significantly to nonattainment in . . . any other State"); Texas Br. 25; *see also* Luminant Br. 22-23. "Nonattainment" is a term of art under the Clean Air Act and cannot be interpreted differently than in other contexts. In other contexts, "nonattainment" refers to areas that have been designated as such following a complicated demonstration process. Texas Br. 25-26; 42 U.S.C. §§ 7407(d)(1)(A)(i), 7501(2). Thus, the only analysis required under this language would be regarding impacts to areas that are already in *non*attainment. EPA's broader interpretation is contrary to the statute's plain language. To the extent that EPA is actually complaining that Texas did not use the same methodology that the federal agency employed in its later proposed and implemented FIP, that is imposing requirements that are found nowhere in the statutory language. *E.g*, Luminant Br. 16-24.

To the extent EPA may try to invoke *Chevron* deference to expand the scope of the statutory "good neighbor" requirements following *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), that effort must fail. In *Loper Bright*, the

Supreme Court squarely confronted the question whether it should overrule *Chevron*. It answered unequivocally: "*Chevron* is overruled." *Id*. at 2273. Under *Chevron*'s erstwhile two-step framework, courts were required to "defer" to agency interpretations of ambiguous statutes—"even if" the agency interpretation was not "the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Id*. at 2264 (quotation omitted). But as the Supreme Court explained, "*Chevron* was a judicial invention that required judges to disregard their statutory duties." *Id*. at 2272. After all, "*Chevron* defies the command of the APA that 'the reviewing court'—not the agency whose action it reviews—is to 'decide all relevant questions of law' and 'interpret . . . statutory provisions.'" *Id*. at 2265 (quoting 5 U.S.C. § 706).

Following *Loper Bright*, "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Id*. at 2273. They "need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id*. Instead, deploying "traditional tools of statutory construction," the court's task is "to resolve statutory ambiguities." *Id*. at 2266. That remains true even if "an ambiguity happens to implicate a technical matter," since "Congress expects courts to handle technical statutory questions," with the aid of parties and amici. *Id*. at 2267.

Under these standards, the Court should reject EPA's attempt to require Texas to meet non-statutory and non-regulatory factors—that is, follow EPA's preferred approach dictated in its subsequent FIP—to gain approval of a SIP. This flouts the Act's cooperative-federalism structure and is arbitrary-and-capricious action barred by the APA. *Loper Bright* confirms that EPA can no longer try to salvage its unlawful SIP disapproval with the incantation of *Chevron* deference.

## III.    EPA's SIP disapproval was arbitrary and capricious because it ignored Texas's data and analysis on maintenance for areas in attainment and was based on data, methodologies, and standards unavailable when Texas submitted its SIP.

The remaining language at issue in this case from CAA section 7410(a)(2)(D)(i)(I), "interfering with maintenance by," refers to areas in attainment that may be affected by exported emissions. Here, EPA's disapproval rule incorrectly states that Texas's SIP did not consider these areas at all. Texas Br. 30; Index #1, App. G, 81 Fed. Reg. at 53,288 ("nothing in Texas' SIP submittal indicates that it performed any analysis to support its conclusion as the State limited its discussion of data only to certain areas designated as nonattainment and did not consider whether those or any other areas might have trouble maintaining the standard even if they measured clean data."); Index #3, App. A, at 2-6 to 2-12.

This EPA statement is simply wrong, and its disapproval of Texas's SIP on this basis was arbitrary and capricious. As Texas explained in its brief, Texas Br. 30-

32, Texas considered and analyzed data regarding areas that are in attainment but may have issues maintaining it. The data examined included 167 monitors in both attainment and nonattainment areas in Texas and neighboring states. The SIP discusses a broad analysis, examining ozone season wind patterns, in-state nonattainment area modeling, monitoring data, and ozone design values and trends in a geographic area bordering Texas. Texas Br. 30-32; Index 3, App. A at 2-3 and 2-19. This detailed analysis of air monitors did not indicate any exceedance of a NAAQS, and trends demonstrated declining levels of ozone at air monitors in adjacent states. *Id*. at 2-5.

Instead of acknowledging Texas's data and analysis, and respecting the State's discretion in SIP development, EPA based its disapproval on data and methodologies that were not available to Texas when it submitted its SIP. Texas Br. 32-35. EPA's disapproval thus violated another foundational principle of administrative law: fair notice. "Dealing with administrative agencies is all too often a complicated and expensive game, and players like [Texas] 'are entitled to know the rules.'" *R.J. Reynolds Vapor Co. v. FDA*, 65 F.4th 182, 189 (5th Cir. 2023) (quoting *Alaska Prof'l Hunters Ass'n v. FAA*, 177 F.3d 1030, 1035 (D.C. Cir. 1999), *abrogated on other grounds by Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92 (2015)). "To keep things fair, agencies must give notice of conduct the agency 'prohibits or requires' . . . ."

*Id.* (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156-57 (2012)).

CONCLUSION AND PRAYER

For the reasons stated above and in Texas's Corrected Petitioners' Brief, Texas requests that the Court vacate the Final Disapproval and remand the matter to EPA for reconsideration. On remand, EPA should be instructed to reconsider its action on the Texas SIP based on information and statutory criteria available at the time of the submission and to approve the SIP unless EPA demonstrates that it violates a requirement of the Act.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil
Litigation

KELLIE E. BILLINGS-RAY
Chief, Environmental Protection Division

 */s/ John R. Hulme*
JOHN R. HULME
Assistant Attorney General
State Bar No. 10258400
John.Hulme@oag.texas.gov

ERIN K. SNODY
Assistant Attorney General
State Bar No. 24093056
Erin.Snody@oag.texas.gov

Environmental Protection Division
Office of the Attorney General
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
Phone: (512) 463-2012
Fax: (512) 320-0911

**Attorneys for Petitioners State of Texas
and Texas Commission on Environmental
Quality**

**CERTIFICATE OF SERVICE**

I certify that on July 22, 2024, the foregoing document was served, via the Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov/, upon all registered CM/ECF users associated with this case.

_/s/ John R. Hulme_
JOHN R. HULME

**CERTIFICATE OF COMPLIANCE**

With Type-Volume Limitation, Typeface Requirements,
and Type Style Requirements

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,278 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f)

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Windows in the Times New Roman font 14-point type face.

_/s/ John R. Hulme_
JOHN R. HULME

**CERTIFICATE OF ELECTRONIC COMPLIANCE**

I certify that, in the foregoing brief using the Fifth Circuit CM/ECF document filing system, 1) required privacy redactions have been made, 5TH CIR. R. 25.2.13; 2) the electronic submission is an exact copy of the paper document, 5TH CIR. R. 25.2.1; and 3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

_/s/ John R. Hulme_
JOHN R. HULME

Dated: July 22, 2024