**No. 16-60670**

In the
United States Court of Appeals
For the Fifth Circuit

STATE OF TEXAS; TEXAS COMMISSION ON
ENVIRONMENTAL QUALITY,
*PETITIONERS,*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S. REGAN,
ADMINISTRATOR OF THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,
*RESPONDENTS.*

## RULE 30.2(a) APPENDIX
## VOLUME 1: TABS 1–6

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil
Litigation

KELLIE E. BILLINGS-RAY
Chief, Environmental Protection
Division

September 20, 2024

JOHN R. HULME
Assistant Attorney General
john.hulme@oag.texas.gov

ERIN K. SNODY
Assistant Attorney General
erin.snody@oag.texas.gov

JAKE MARX
Assistant Attorney General
jake.marx@oag.texas.gov

Office of the Attorney General
Environmental Protection Division
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
Tel.: (512) 463-2012
Fax: (512) 320-0911

Counsel for State of Texas and Texas
Commission on Environmental Quality

## INDEX TO RULE 30.2(a) APPENDIX

1. Approval and Promulgation of Air Quality Implementation Plans; Texas; Interstate Transport of Air Pollution for the 2008 Ozone National Ambient Air Quality Standards; Final Rule; 81 FR 53284 (August 12, 2016) ................................................................. **Tab 1**

2. Approval and Promulgation of Air Quality Implementation Plans; Texas; Interstate Transport of Air Pollution for the 2008 Ozone National Ambient Air Qua1ity Standards; Proposal Rule; 81 FR 21290 (April 11, 2016) ......................................................... **Tab 2**

3. Texas Infrastructure and Transport SIP Submittal for the 2008 Ozone National Ambient Air Quality Standard (NAAQS), Texas Project No. 2012-004-SIP-NR, submitted to EPA December 13, 2012 ................... **Tab 3**

4. TCEQ cover letter and comment letter to EPA–EPA Docket Center, Air and Radiation Docket; Re: Docket ID No. EPA-R06-0AR-2012-0985 (May 11,2016); Comments by the TCEQ Regarding Disapproval of Air Quality Implementation Plans: Interstate Transport of Air Pollution for the 2008 Ozone National Ambient Air Quality Standards ............................................................ **Tab 4**

5. Luminant comment letter to Ron Curry, EPA Region Regional Administrator; Re: Comments of Luminant on the Disapproval of Texas's SIP Regarding Implementation of the 2008 Ozone NAAQS-Docket ID No. EPA-R06-OAR-2012-0985; 81 Fed. Reg. 21290 (April 2016) ......................................................... **Tab 5**

6. Comment letter from public citizen Nicholas Porter; Comment: EPA-R06-OAR-2012-0985-0001; Re: Air Quality State Implementation Plans; Approval and Promulgation; Texas; Interstate Transport of Air Pollution for the 2008 Ozone National Ambient Air Quality Standards Proposed Rule ......................................................... **Tab 6**

7.  Notice of Availability of the Environmental Protection Agency's Updated Ozone Transport Modeling Data for the 2008 Ozone National Ambient Air Quality Standard (NAAQS); 80 FR 46271 (August 4, 2015) ................................................................. **Tab 7**

8.  Notice of Availability of the Environmental Protection Agency's Updated Ozone Transport Modeling Data for the 2008 Ozone National Ambient Air Quality Standard (NAAQS); 2017 Ozone Contributions (Excel Spreadsheet); Cross-State Air Pollution Rule Update for the 2008 Ozone NAAQS; 80 FR 46271 (August 4, 2015) ................................................................. **Tab 8**

9.  Notice of Availability of the Environmental Protection Agency's Updated Ozone Transport Modeling Data for the 2008 Ozone National Ambient Air Quality Standard (NAAQS); Notice of Availability of the Environmental Protection Agency's Updated Ozone Transport Modeling Data for the 2008 Ozone National Ambient Air Quality Standard (NAAQS); Notice of Data Availability (NODA): Details about Provided Emissions Data Files; 80 FR 46271 (August 4, 2015) ................................................................. **Tab 9**

10. Cross-State Air Pollution Rule Update for the 2008 Ozone NAAQS; 80 FR 75706 (December 3, 2015) ........................................ **Tab 10**

11. Cross-State Air Pollution Rule Update for the 2008 Ozone NAAQS; Air Quality Modeling Technical Support Document (TSD) for the 2008 Ozone NAAQS; 80 FR 75706 (December 3, 2015) .................... **Tab 11**

12. Cross-State Air Pollution Rule Update for the 2008 Ozone NAAQS; Ozone Transport Policy Analysis TSD; 80 FR 75706 (December 3, 2015) ............................................................. **Tab 12**

13. Federal Implementation Plans: Interstate Transport of Fine Particulate Matter and Ozone and Correction of SIP Approvals; Final Rule; 76 FR 48208, 48238 (August 8, 2011) ................................. **Tab 13**

14. Memorandum from Janet G. McCabe, Acting Assistant Administrator for the Office of Air and Radiation to Regional Administrators, Regions 1-10, "Implementing the 2015 Ozone National Ambient Air Quality Standards".............................................................................................. **Tab 15**

15. Memorandum from Stephen D. Page, Director, Office of Air Quality Planning and Standards to Regional Air Division Directors, Regions 1-10, "Information on the Interstate Transport 'Good Neighbor' Provision for the 2008 Ozone National Ambient Air Quality Standards under Clean Air Act (CAA) Section 110(a)(2)(D)(i)(I)"...... **Tab 16**

16. EPA letter of December 20, 2012 pertaining to administrative completeness of the Texas SIP revision "Infrastructure Demonstration and Transport Plan for Ozone" ........................................................... **Tab 23**

# Tab 1

Approval and Promulgation of Air Quality Implementation Plans;
Texas; Interstate Transport of Air Pollution for the 2008 Ozone National
Ambient Air Quality Standards; Final Rule; 81 FR 53284
(August 12, 2016)

the submittal titled "Reasonably Available Control Technology (RACT) as Applicable to the 8-Hour Ozone Standard," dated October 26, 2006, as adopted on October 26, 2006 and submitted on July 11, 2007.

(ii) [Reserved]

(2) [Reserved]

[FR Doc. 2016–18900 Filed 8–11–16; 8:45 am]

**BILLING CODE 6560–50–P**

---

## ENVIRONMENTAL PROTECTION AGENCY

### 40 CFR Part 52

**[EPA–R06–OAR–2012–0985; FRL–9950–50–Region 6]**

### Approval and Promulgation of Air Quality Implementation Plans; Texas; Interstate Transport of Air Pollution for the 2008 Ozone National Ambient Air Quality Standards

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule.

**SUMMARY:** The Environmental Protection Agency (EPA) is disapproving the portion of a Texas State Implementation Plan (SIP) submittal pertaining to interstate transport of air pollution which will significantly contribute to nonattainment or interfere with maintenance of the 2008 ozone National Ambient Air Quality Standard (NAAQS) in other states. Disapproval establishes a 2-year deadline for the EPA to promulgate a Federal Implementation Plan (FIP) for Texas to address the Clean Air Act (CAA) interstate transport requirements pertaining to significant contribution to nonattainment and interference with maintenance of the 2008 ozone NAAQS in other states, unless the EPA approves a SIP that meets these requirements. Disapproval does not start a mandatory sanctions clock for Texas.

**DATES:** This rule is effective on September 12, 2016.

**ADDRESSES:** The EPA has established a docket for this action under Docket ID No. EPA–R06–OAR–2012–0985. All documents in the docket are listed on the *http://www.regulations.gov* Web site. Although listed in the index, some information is not publicly available, *e.g.,* Confidential Business Information or other information whose disclosure is restricted by statute. Certain other material, such as copyrighted material, is not placed on the Internet and will be publicly available only in hard copy. Publicly available docket materials are available either electronically through *http://www.regulations.gov* or in hard

copy at EPA Region 6, 1445 Ross Avenue, Suite 700, Dallas, Texas 75202–2733.

**FOR FURTHER INFORMATION CONTACT:** Carl Young, 214–665–6645, *young.carl@epa.gov.*

**SUPPLEMENTARY INFORMATION:** Throughout this document, "we," "us," and "our" means the EPA.

### I. Background

This rulemaking addresses an infrastructure SIP submittal from the state of Texas addressing, among other things, the requirements of CAA section 110(a)(2)(D)(i)(I), also known as the good neighbor provision (or interstate transport prongs 1 and 2), with respect to the 2008 ozone NAAQS. The background for this action is discussed in detail in our April 11, 2016 proposal (81 FR 21290). In that action we proposed to disapprove the portion of the December 13, 2012 Texas SIP submittal pertaining to CAA section 110(a)(2)(D)(i)(I) which requires that the State prohibit any emissions activity within the state from emitting air pollutants which will significantly contribute to nonattainment (prong 1) or interfere with maintenance (prong 2) of the 2008 ozone NAAQS in other states.[1] In proposing to disapprove the SIP submittal as to prongs 1 and 2 of the good neighbor provision, we noted several deficiencies in Texas' submittal: (1) Texas limited its discussion of data only to areas designated nonattainment in states that are geographically closest to Texas (Arizona, Arkansas, Colorado, Illinois, Indiana, Louisiana, Mississippi, Missouri, Tennessee, and Wisconsin); and (2) Texas did not give the "interfere with maintenance" clause of CAA section 110(a)(2)(D)(i)(I) independent significance because its analysis did not attempt to evaluate the potential impact of Texas emissions on areas that are currently measuring clean data, but that may have issues maintaining that air quality.[2] Finally, the EPA explained that

Texas and other states could no longer rely on the implementation of the Clean Air Interstate Rule (CAIR) to satisfy emission reduction obligations with respect to the 2008 ozone NAAQS (81 FR 21290, 21294–5). The EPA is finalizing its proposed disapproval in this action.

We received three comments during the comment period on our proposed SIP disapproval. The comments were submitted by the State of Texas (Texas Commission on Environmental Quality "TCEQ"), Luminant (a Texas electricity producer) and a member of the public. A synopsis of the comments and our responses are provided below.

### II. Response to Comments

*Comment:* Comments were received from a member of the public that was supportive of the EPA's basis for its proposed action, but added that (1) the public can better understand how we are using the most current information if we clarify and explain how the projections and modeling discussed in the evaluation for our proposal are informed by recent ozone monitoring data, and (2) the commenter stated that the EPA took too long to propose action on the Texas SIP revision, noting that Texas would benefit from earlier review of its analysis by the EPA.

*Response:* We agree with the commenter's conclusion that Texas's SIP submittal was inadequate to address the statutory interstate transport requirements with respect to the 2008 ozone NAAQS. With respect to the commenter's first concern, the projections and modeling released c in the August 4, 2015 NODA and the proposed CSAPR Update, which we also o recited in the EPA's proposed action on the Texas SIP submittal. In our CSAPR Update proposal, we explained how the CSAPR Update Rule proposed to use recent ozone monitoring data to inform our evaluation of interstate transport (80 FR 75706, 75724). We proposed to identify as nonattainment receptors those monitoring sites that (1) measured ozone concentrations that exceed the NAAQS based on monitoring data from years 2012–2014, and (2) are projected to exceed the NAAQS in 2017

---

[1] In a separate action, we disapproved the portion of the SIP submittal pertaining to the CAA section 110(a)(2)(D)(i)(II) requirement to address the interstate transport of air pollution which will interfere with other states' programs for visibility protection (81 FR 296, January 5, 2016). We proposed to approve the other portions of the infrastructure SIP submittal on February 8, 2016 (81 FR 6483).

[2] In addition, the EPA cited at proposal certain technical information the agency had released in order to facilitate efforts to address interstate transport requirements for the 2008 ozone NAAQS, and that this information was used to support the proposed Cross-State Air Pollution Rule Update for the 2008 ozone NAAQS (CSAPR Update) (81 FR 21299, 21292). We noted that such information contradicts Texas' conclusions that its SIP contained adequate provisions to meet the CAA interstate transport requirements with respect to the

2008 ozone NAAQS. See Notice of Data Availability (NODA), 80 FR 46271, (August 4, 2015) and the proposed CSAPR Update, 80 FR 75706 (December 3. 2015). We also noted at proposal that the EPA technical information in the NODA and the proposed CSAPR Update accounted for the emission reductions resulting from controls listed in the SIP, implemented within the state, and nonetheless showed that Texas will contribute to downwind air quality problems. The CSAPR Update, however, is outside the scope of this action, and is irrelevant to the question of whether the Texas SIP should be disapproved.

based on an average design value.[3] We proposed to identify maintenance receptors as those monitoring sites that have measured ozone concentrations that meet the NAAQS (clean data) based on monitoring data from years 2012–2014 and are projected to exceed the NAAQS in 2017 based on a maximum or average design value. We proposed this method of projecting from recent monitoring data to 2017 to identify maintenance receptors, since the monitoring sites of the proposed maintenance receptors currently meeting the NAAQS could be subject to conditions that may allow violations to reoccur and therefore may have future maintenance concerns. For more information about how the EPA identified 2017 nonattainment and maintenance receptors, please see pages 75723–75726 in the proposed CSAPR Update. (80 FR 75706). Today's rulemaking does not address which monitoring sites are identified as nonattainment and maintenance receptors with respect to interstate transport for the 2008 ozone NAAQS. Such determination, including more recent ozone monitoring data which will inform that analysis, will be addressed in the EPA's final CSAPR Update and are outside the scope of this final action. The EPA's disapproval is based on the inadequacies in the analysis provided in Texas's SIP submittal, as described in this document and in EPA's proposed action on that SIP.

With respect to the timeliness of the EPA's action on the Texas SIP submittal, CAA section 110(k)(2) requires the EPA to act on SIPs within one year after a submittal is determined to be complete. We determined that the Texas infrastructure SIP submittal, which includes transport, was complete on December 20, 2012. While the EPA generally agrees that prompt action on state SIP submittals can be beneficial to the states' planning efforts, in this case, the D.C. Circuit's decision in *North Carolina* v. *EPA,* 531 F.3d 896, 908–911 (D.C. Cir. 2008) provided the holding that states must give the "interfere with maintenance" clause of CAA section 110(a)(2)(D)(i)(I) independent significance, which Texas failed to do.

*Comment:* The TCEQ stated that it does not support the EPA's proposed disapproval of the state's interstate transport portion of its SIP submittal because the TCEQ's interstate transport analysis adequately addresses the

requirements of CAA section 110(a)(2)(D)(i)(I). Specifically, TCEQ stated that the EPA failed to issue guidance in a timely manner for states to use in developing infrastructure and transport SIP revisions for the 2008 ozone NAAQS. TCEQ therefore contends that it is inappropriate for the EPA to conclude that the state's analysis of ozone contributions to other areas is incomplete when the EPA did not provide timely guidance stating what would constitute a complete analysis. TCEQ explained that its SIP revision was submitted on December 13, 2012 in order to meet the January 4, 2013 deadline by which the EPA was court-ordered to issue findings of failure to submit infrastructure SIPs for the 2008 ozone NAAQS. TCEQ notes that the EPA did not issue infrastructure SIP guidance until September 13, 2013, eight months following the January 2013 deadline, which did not contain any information on what would constitute an adequate interstate transport analysis. TCEQ further notes that the EPA did not provide information to states regarding interstate transport for the 2008 ozone NAAQS until 2015, through information provided in a January 22, 2015 memo, an August 4, 2015 NODA, and the December 3, 2015 CSAPR Update proposal, which was well after the state's SIP submittal. Therefore, as a result of the EPA's lack of timely transport guidance for the 2008 ozone standard and subsequent NODA regarding 2017 nonattainment and maintenance receptor linkages and contributions, TCEQ contends that it was forced to expend effort and resources to develop its SIP revision without knowing how the EPA would evaluate Texas' interstate transport obligation. Further, the EPA has routinely failed to issue timely guidance for SIP revisions and to even meet statutory SIP review deadlines in the CAA. As a result, the EPA has disrupted the SIP development process nationwide, undermining the states' ability to submit sufficient SIP revisions.

*Response:* We disagree that Texas' December 13, 2012 SIP submittal containing the state's transport analysis adequately addressed the requirements of CAA section 110(a)(2)(D)(i)(I). Rather, the state's analysis was deficient to address the statutory requirements, as detailed in the proposal and in more detail in this document. CAA section 110(a)(2)(D)(i)(I) requires that for a new or revised standard, each SIP must contain adequate provisions to prohibit any emissions activity within the state from emitting air pollutants that will

"contribute significantly to nonattainment" or "interfere with maintenance" of the applicable air quality standard in any other state— here being the 2008 ozone standard. (81 FR 21290–1, April 11, 2016). Texas submitted an analysis of monitoring data, wind patterns, emissions data and emissions controls and concluded that based on monitoring data, due to decreases in ozone design values and existing control measures, emissions from sources from within the state do not contribute significantly to nonattainment or interfere with maintenance of the 2008 ozone NAAQS in other states. We find that Texas' analysis was not adequate because Texas limited its discussion of data only to areas designated nonattainment in states that are geographically closest to the state and we find this approach incomplete, (as detailed in our proposal), since the state did not consider other areas that were not formally designated as nonattainment. (81 FR 21292). Moreover, the state did not give the "interfere with maintenance" clause of CAA section 110(a)(2)(D)(i)(I) independent significance, consistent with the D.C. Circuit's decision in *North Carolina* v. *EPA,* 531 F.3d 896, 908–911 (D.C. Cir. 2008), because its analysis did not attempt to evaluate the potential impact of Texas emissions on areas that are currently measuring clean data, but that may have issues maintaining that air quality. (81 FR 21292). As we noted at proposal the EPA's most recent technical information demonstrates that emissions from Texas do impact air quality in other states relative to the 2008 ozone NAAQS. (81 FR 21292–3). With regard to the timelines of EPA guidance, in *EPA* v. *EME Homer City Generation, L.P.,* the Supreme Court clearly held that "nothing in the statute places the EPA under an obligation to provide specific metrics to States before they undertake to fulfill their good neighbor obligations." 134 S. Ct. 1584, 1601 (2014).[4] While we have taken a different approach in some prior rulemakings by providing states with an opportunity to submit a SIP after we quantified the states' budgets (*e.g.,* the

---

[3] The design value for the 2008 ozone NAAQS is the 3-year average of the annual 4th highest daily maximum 8-hour ozone concentration at a monitoring site.

---

[4] "Nothing in the Act differentiates the Good Neighbor Provision from the several other matters a State must address in its SIP. Rather, the statute speaks without reservation: Once a NAAQS has been issued, a State 'shall' propose a SIP within three years, § 7410(a)(1), and that SIP 'shall' include, among other components, provisions adequate to satisfy the Good Neighbor Provision, § 7410(a)(2)." *EPA* v. *EME Homer City Generation, L.P.,* 134 S. Ct. at 1600.

NOₓSIP Call and CAIR⁵), the CAA does not require such an approach. Regarding the commenter's contention that the EPA's alleged inability to review SIP submittals within the CAA timelines undermines the ability of states to submit sufficient SIPs, the State's ability to submit a sufficient SIP that meets the applicable requirements is unrelated to the EPA's timeline for review.

*Comment:* TCEQ and Luminant both state that the EPA's public notice on the proposed disapproval is not meaningful because they contend that the outcome was predetermined when the EPA proposed a FIP for Texas in the proposed CSAPR Update. They stated that at the time of the proposed FIP to update CSAPR, the EPA had taken no action on the previously submitted SIP submittal from Texas addressing interstate transport with respect to the 2008 ozone NAAQS. The commenters contend that the EPA should have evaluated the SIP submittal prior to proposing a CSAPR Update that included Texas. The commenters also stated that we had not satisfied the prerequisites of CAA section 110(c)(1) when we issued the proposed FIP for Texas in the proposed CSAPR Update. The commenters therefore contend that the proposed SIP disapproval is only a post hoc rationalization for the proposed CSAPR Update, and our approach is unlawful and impermissibly treads on cooperative federalism required under the CAA. Lastly, the commenters claim that had we reviewed the SIP revision before proposing the CSAPR Update for Texas, the state would have had the opportunity contemplated by the CAA to correct any problems with its SIP in a timely fashion and avoid the imposition of the FIP.

*Response:* We disagree with the commenters that the proposed disapproval was predetermined when the EPA issued the proposed CSAPR Update that included a FIP for Texas. Our proposal to disapprove the Texas SIP provided proper notice and an opportunity for public comment, as legally required, and provided distinct bases for the proposed disapproval. Importantly, the proposed disapproval of the Texas SIP allowed an opportunity for submittal of any information that could have changed our proposed views concerning (1) the adequacy of the SIP submittal, and (2) the effect of Texas emissions on ozone levels in downwind states as demonstrated in the modeling

and contribution information the EPA relied upon for its proposed disapproval. The EPA has not received any information demonstrating the identified inadequacies of the SIP submittal and the data showing the effect of Texas emissions in downwind states are inaccurate.

Whether the EPA appropriately proposed the CSAPR Update is outside the scope of this action, and is irrelevant to the question of whether the Texas SIP should be disapproved. The bases for the disapproval are further explained in both the proposal and this final action, and do not rely upon the proposed CSAPR Update. As described in the proposal and earlier in this document, whether or not the EPA had proposed the CSAPR Update, Texas' SIP submittal failed to include an analysis that appropriately evaluated the impact of state emissions on areas in other states, regardless of current nonattainment designations and considering the ability of areas currently measuring clean data to maintain that standard. These deficiencies are completely independent of any analysis conducted to support the CSAPR Update proposal.

Moreover, while the CSAPR Update proposal also relied upon the same modeling and contribution information to identify which states might be subject to a FIP in the final rulemaking, in the absence of an approvable SIP, the proposed disapproval of the Texas SIP did not rely upon the proposed findings in the CSAPR Update but rather cited, in addition to other deficiencies identified with the Texas SIP, technical data that was relevant to and informative for both proposals.

Our actions are consistent with CAA section 110(c) prerequisites in promulgating a FIP. In our December 3, 2015 **Federal Register** notice, we proposed to include Texas in the CSAPR Update (80 FR 75706). In that proposal we recognized that we could not promulgate a FIP for any state, including Texas, in the final CSAPR Update unless we found that the state had failed to make an approvable SIP submittal (80 FR 75719–20). A proposed rulemaking does not constitute a promulgation of a rule by the EPA, and therefore the proposed CSAPR Update does not constitute a "predetermined outcome" of EPA's review of Texas' SIP submittal, as the commenters describe, nor a promulgated FIP under CAA section 110(c). Were the EPA to finalize an approval of Texas' SIP, the EPA would not finalize the proposed inclusion of Texas in any final CSAPR Update. However, for the reasons described earlier, the EPA is finalizing its disapproval of Texas' SIP. However,

this final action does not promulgate a FIP nor make any final determination regarding whether and when the EPA will promulgate a FIP. The EPA will determine whether to issue a FIP in the context of the CSAPR Update in the rulemaking for that action, and thus any concerns regarding the EPA's authority to issue a FIP are appropriately raised only in the context of that rulemaking.

Finally, the EPA disagrees with the commenters' claim that had we reviewed the SIP revision before proposing the CSAPR Update for Texas, the state would have had the opportunity contemplated by the CAA to correct any problems with its SIP in a timely fashion in order to avoid the imposition of the FIP. Contrary to commenters' assertions, CAA does not contemplate that a state have an opportunity to correct deficiencies with its SIP either before the EPA takes action to act on the SIP or before the EPA imposes a FIP after disapproval of a SIP. CAA section 110(c) provides that the EPA "shall promulgate a [FIP] *at any time*" within two years after" the EPA either finds that a state has failed to make a required submittal or disapproves a SIP, in whole or in part. As the Supreme Court confirmed in *EPA* v. *EME Homer City Generation. L.P.,* "EPA is not obliged to wait two years or postpone its action even a single day: The Act empowers the Agency to promulgate a FIP 'at any time' within the two-year limit." *EPA* v. *EME Homer City Generation, L.P.,* 134 S. Ct. 1584, 1600–01 (2014). The EPA notes, however, that states have the ability at any time, including before or after the imposition of a FIP, to submit an approvable SIP, which corrects any deficiency.

*Comment:* TCEQ commented that we inappropriately stated that it should have considered possible contributions to downwind areas that are not designated nonattainment but may nonetheless measure exceedances of the NAAQS. TCEQ further stated that we fail to mention how Texas might have accomplished this theoretical exercise particularly without EPA guidance on how to develop its transport SIP and considering the EPA relies on nationwide modeling to determine potential exceedances in areas that are attaining the NAAQS that is not made available to states prior to the statutory due dates for state transport SIPs. The TCEQ concedes that the EPA may now consider the CSAPR schema to be appropriate guidance for transport regulation, but contends that it is still not possible for states to effectively respond with timely transport SIPs. The commenter again notes that the EPA did

⁵ For information on the NOₓ SIP call see 63 FR 57356 (October 27, 1998). For information on CAIR (the Clean Air Interstate Rule) see 70 FR 25162 (May 12, 2005).

not explain what type of transport analysis would be considered satisfactory when the EPA issued SIP guidance in 2013.

*Response:* Regardless of an air quality designation, any area may violate the NAAQS if upwind emissions affecting air quality are not adequately controlled. The EPA has routinely interpreted the obligation to prohibit emissions that "significantly contribute to nonattainment" of the NAAQS in downwind states to be independent of formal designations because exceedances can happen in any area.[6] Nothing in the CAA limits States' obligations under the good neighbor provision to downwind areas that have been formally designated nonattainment. To the contrary, CAA section 110(a)(2)(D)(i)(I) requires States to prohibit emissions that "*will* contribute significantly to nonattainment in . . . any other State." (emphasis added). The future tense demonstrates that Congress intended this requirement to be forward-looking and apply to areas that will be in nonattainment regardless of formal designation. An area with air quality that is projected to exceed the NAAQS would be in nonattainment, and thus not meeting public health-based standards, regardless of whether it has been formally designated as a nonattainment area. An upwind state cannot be relieved of its obligation to address interstate transport of air pollution merely because of a lack of formal designation. Thus, Texas should have considered possible contributions to downwind areas that are not designated nonattainment but may nonetheless measure exceedances of the NAAQS in considering whether Texas emissions significantly contribute to nonattainment in another state.

With respect to the "interfere with maintenance" requirement, the court in

*North Carolina* v. *EPA,* (531 F.3d 896, D.C. Cir. 2008), was specifically concerned with areas not designated nonattainment when it rejected the view that "a state can never 'interfere with maintenance' unless the EPA determines that at one point it 'contribute[d] significantly to nonattainment.'" 531 F.3d at 910. The court pointed out that areas barely attaining the standard due in part to emissions from upwind sources would have "no recourse" pursuant to such an interpretation. *Id.* Accordingly, and as described in the proposal, the court explained that the regulatory authority must give "independent significance" to the maintenance prong of CAA section 110(a)(2)(D)(i)(I) by separately identifying such downwind areas for purposes of defining states' obligations pursuant to the good neighbor provision. Thus, Texas should have considered the potential impact of its emissions on areas that are currently measuring clean data, but may have issues maintaining that air quality.

Although the TCEQ questions how it could have completed such an analysis without explicit guidance from the EPA and before the EPA had conducted air quality modeling evaluating downwind air quality and contributions, as explained earlier, states bear the primary responsibility for demonstrating that their plans contain adequate provisions to address the statutory interstate transport provisions and the EPA is not required to issue guidance. In separate interstate transport actions, the EPA has reviewed and finalized action on interstate transport SIPs in states where air quality modeling was not available or where the total weight of evidence for finalizing action on the state's SIP was not solely based on air quality modeling, according to these standards.[7] As evidenced by these actions, consideration of monitoring data is one valid way to evaluate potential interstate transport impacts, but it does not absolve a state from evaluating its downwind impact regardless of formal

area designations and considering the requirements of both prongs of the good neighbor provision. As we noted above and as found by the Supreme Court in *EME Homer City Generation, L.P.,* the lack of guidance does not relieve either the states of the obligation to submit SIPs that address CAA section 110(a)(2)(D)(i)(I) nor the EPA of the obligation to review such SIPs consistent with the statutory requirements of the good neighbor provision. For the 2015 ozone NAAQS, we plan to provide information pertaining to interstate transport of air pollution later this year.[8] Interstate transport SIPs for the 2015 ozone NAAQS are due October 26, 2018. We plan to continue our ongoing dialogue with states to assist in developing an appropriate transport SIP.

*Comment:* TCEQ and Luminant both state that in our CSAPR Update proposal the EPA did not give independent effect to both the "contribute significantly to nonattainment" and the "interfere with maintenance" requirements as nonattainment and maintenance receptors are treated exactly the same way as far as linkages to states are defined and emission budgets are set. Luminant also claims that the EPA would be in violation of the Supreme Court in *EME Homer City Generation, L.P.* if we impose the same "cost-effective controls" to address both interference with maintenance and significant contribution to nonattainment.

Further, the comments state that because some states are linked to receptors in marginal nonattainment areas, the EPA is requiring emissions reductions from upwind states, including Texas, to assist states that do not have make emission reductions or institute control strategies of their own. Further, the comments claim that we have failed to identify any balance between local controls in areas with potential maintenance problems and reductions that it is requiring of states upwind that it models as contributing at least 1% of the relevant NAAQS to these areas with modeled, not monitored, issues.

The commenters also disagree with the EPA's finding that the Texas SIP submittal did not give independent significance to the CAA "interfere with

---

[6] See, *e.g.,* Clean Air Interstate Rule, 70 FR 25162, 25265 (May 12, 2005) ("As to impacts, CAA section 110(a)(2)(D) refers only to prevention of 'nonattainment' in other States, not to prevention of nonattainment in designated nonattainment areas or any similar formulation requiring that designations for downwind nonattainment areas must first have occurred."); Cross-State Air Pollution Rule, 76 FR 48208, 48211 (Aug. 8, 2011) (evaluating nonattainment and maintenance concerns based on modeled projections); Brief for Respondents U.S. Environmental Protection Agency at 23–24, *EME Homer City Generation, L.P.* v. *EPA,* Case No. 11–1302 (D.C. Cir. Jan. 16, 2015). ECF No. 1532516 (defending the EPA's identification of air quality problems in CSAPR independent of area designations). *Cf.* Final Response to Petition from New Jersey Regarding SO₂ Emissions From the Portland Generating Station, 76 FR 69052 (Nov. 7, 2011) (finding facility in violation of the prohibitions of CAA section 110(a)(2)(D)(i)(I) with respect to the 2010 SO₂ NAAQS prior to issuance of designations for that standard).

[7] See, *e.g.,* Air Quality State Implementation Plans; Approvals and Promulgations: Utah; Interstate Transport of Pollution for the 2006 PM₂.₅ NAAQS May 20, 2013 (78 FR 29314); Final Rule, 78 FR 48615 (August 9, 2013); Approval and Promulgation of Implementation Plans; State of California; Interstate Transport of Pollution; Significant Contribution to Nonattainment and Interference With Maintenance Requirements, Proposed Rule, 76 FR 146516, 14616–14626 (March 17, 2011); Final Rule, 76 FR 34872 (June 15, 2011); Approval and Promulgation of State Implementation Plans; State of Colorado; Interstate Transport of Pollution for the 2006 24-Hour PM₂.₅ NAAQS, Proposed Rule, 80 FR 27121, 27124–27125 (May 12, 2015); Final Rule, 80 FR 47862 (August 10, 2015).

[8] See pages 6–7 of the attachment to the October 1, 2015 EPA memorandum "Implementing the 2015 Ozone National Ambient Air Quality Standards" from Janet McCabe, Acting Assistant Administrator, Office of Air and Radiation to Regional Administrators, Regions 1–10, *https://www.epa.gov/sites/production/files/2015-10/documents/implementation_memo.pdf.*

maintenance'' requirement and contend that we have misconstrued that requirement by stating that TCEQ did not evaluate areas currently measuring clean data. Luminant contends that Texas' SIP does give independent significance to the ''interfere with maintenance'' clause. TCEQ claims that the EPA has not promulgated a rule that identifies a required or recommended methodology for the EPA or states to give independent consideration to possible contributions that may interfere with maintenance in downwind areas, and contend that it is arbitrary and capricious for the EPA to propose disapproval for failure to meet a standard or requirement that did not exist at the time the statutory obligation matured.

*Response:* As described in the proposal, the EPA proposed disapproval in part because the Texas SIP submittal did not address the potential impact of Texas emissions on maintenance areas. Reiterating our position explained in the proposal, the D.C. Circuit in *North Carolina* explained that the regulatory authority must give ''independent significance'' to the maintenance prong of CAA section 110(a)(2)(D)(i)(I) by evaluating the impact of upwind state emissions on downwind areas that, while currently in attainment, are at risk of future nonattainment, considering historic variability. *North Carolina* v. *EPA*, 531 F.3d 896, 908–911 (D.C. Cir. 2008). While one commenter contends that Texas evaluated the interference with maintenance prong and concluded monitoring data do not suggest that emissions from Texas contribute significantly to nonattainment or interfere with maintenance of the 2008 ozone NAAQS for areas in any other state, nothing in Texas' SIP submittal indicates that it performed any analysis to support its conclusion as the State limited its discussion of data only to certain areas designated nonattainment and did not consider whether those or any other areas might have trouble maintaining the standard even if they measured clean data. Thus, contrary to the commenter's assertion, Texas did not give independent meaning to the interference with maintenance prong by evaluating the impact of upwind state emissions on downwind areas that, while currently in attainment, are at risk of future nonattainment, as required by the statute and as clarified by the D.C. Circuit in *North Carolina.*

The EPA disagrees with the commenter's assertion that this standard or requirement did not exist at the time the statutory obligation to submit a transport SIP matured. At the time Texas was obligated to submit a SIP

addressing interstate transport requirements for the 2008 ozone NAAQS, CAA section 110(a)(2)(D)(i)(I) clearly required states to submit a plan containing adequate provisions prohibiting any source or other type of emissions activity within the state from emitting any air pollutant in amounts which will interfere with maintenance by any other state with respect to a particular NAAQS. This requirement has not changed since Texas' obligation to submit a transport SIP matured, and contrary to commenter's assertion, the EPA is not obligated to identify a required or recommended methodology for giving independent consideration to possible contributions that may interfere with maintenance in downwind areas prior to proposing action on a SIP addressing such statutory requirement. Nonetheless, the State's SIP made no attempt to evaluate the maintenance prong with respect to the 2008 ozone NAAQS aside from its conclusory assertion that the requirements were satisfied.

To the extent the commenter has raised concerns with respect to the EPA's interpretation and application of the CAA, including the ''interfere with maintenance'' clause, in the context of the CSAPR Update rulemaking, such comments are appropriately raised and addressed in that rulemaking. The EPA is not finalizing in this rule any determinations regarding the identification of specific downwind maintenance receptors, the magnitude of Texas' contribution to those receptors, and the quantity of any emission reductions that might be necessary. Such determinations will be made in the context of the CSAPR Update rulemaking. To the extent that Luminant refers to the EPA's approach as not compliant with the Supreme Court's *EME Homer City Generation, L.P.* decision, this comment relates to the CSPAR Update rulemaking and not our action today. Thus, it is outside the scope of this action and would be more appropriately addressed in that separate rulemaking.

*Comment:* TCEQ claims that the EPA has not demonstrated that a contribution by upwind states of 1% of the NAAQS will interfere with maintenance in identified maintenance areas. Further the TCEQ contends that the EPA has not demonstrated that a 1% of the NAAQS contribution to modeled emissions in maintenance areas is appropriate for linking an upwind state to a maintenance monitor. Further, they contend that EPA has not demonstrated that the amount of reductions necessary to cure a contribution to nonattainment is also appropriate to ensure that an

upwind state is not interfering with maintenance. Lastly, TCEQ states that the 1% contribution threshold is arbitrary.

*Response:* The EPA explained in the CSPAR Update proposal its reasoning for why we believe it appropriate to use the same approach used in CSAPR to establish a 1% air screening threshold for the evaluation of interstate transport requirements for the 2008 ozone NAAQS, including the interference with maintenance requirement. 81 FR 21292– 94. The commenter does not explain its allegations that the 1% threshold is arbitrary nor does the commenter explain how the EPA has not demonstrated this threshold is appropriate to show interference by upwind states with maintenance in identified maintenance areas.

Nonetheless, while the EPA cited the modeling conducted for the CSAPR Update as showing Texas may significantly contribute to nonattainment or interfere with maintenance of the 2008 ozone NAAQS in downwind states, we did not propose to make a specific finding of contribution or to quantify any specific emissions reduction obligation. We did not rely upon a 1% contribution threshold for this action. Rather, the evaluation of whether emissions from Texas significantly contribute to nonattainment or interfere with maintenance of the 2008 ozone NAAQS downwind, relying upon the use of a 1% contribution threshold, and if so what reductions are necessary to address that contribution, is being conducted in the context of the CSAPR Update rulemaking. Accordingly, this comment relates to the CSAPR Update rulemaking and not our action today. Thus, it is outside the scope of this action and would be more appropriately addressed in that separate rulemaking. The EPA will consider timely-submitted comments regarding the EPA's air quality modeling and various associated legal and policy decisions in finalizing that rulemaking.

*Comment:* TCEQ stated that it supports the use of ambient air quality monitoring data as the only valid basis for making nonattainment designations and identifying nonattainment and maintenance receptors and that it does not support the use of modeling as the basis for designations or identifying either nonattainment or maintenance receptors for transport. TCEQ contends that using modeling for these actions could result in major capital expenditures for industry to fix something that may not be a real problem, and claims that to base these actions on modeling is inconsistent with

historical and present EPA policies. TCEQ also notes that the EPA does not redesignate an area to attainment when an area models attainment as part of an attainment demonstration, but rather uses monitoring data to verify attainment before redesignation.

*Response:* While the EPA does rely on ambient air quality monitoring data to make decisions on ozone nonattainment designations and redesignations, the EPA has routinely based its determination of receptors for purposes of evaluating interstate ozone transport on air quality modeling projections.[9] This is because, regardless of designation, any area may violate the NAAQS if upwind emissions affecting air quality are not adequately controlled, and areas currently measuring clean data may still violate the NAAQS if conditions change such that attainment with the NAAQS can no longer be maintained. Thus, the means by which the EPA makes decisions with respect to area designations is not relevant to our identification of receptors that should be evaluated for interstate transport of air pollution. In *North Carolina* v. *EPA,* the D.C. Circuit concluded that the EPA's reliance on future projections to identify such receptors was a reasonable application of the statute. *North Carolina,* 531 F.3d at 914. Nonetheless, while the EPA has relied upon modeling to identify downwind air quality problems, the EPA has also stated that states may consider other types of data when evaluating interstate transport in developing their SIPs. See Memorandum from William T. Harnett to Regional Air Division Directors, Regions I–X, "Guidance on SIP Elements Required Under [CAA] Sections 110(a)(1) and (2) for the 2006 24-Hour Fine Particle (PM$_{2.5}$) National Ambient Air Quality Standards (NAAQS)", September 25, 2009.[10] Indeed, as described earlier, the EPA has regularly evaluated interstate transport SIPs in western states, where modeling has not typically been available, considering monitored data in a manner that is consistent with the standards described in this document.

*Comment:* TCEQ stated that we failed to give comments on the adequacy of the State's interstate transport analysis during the State public comment period and that the lack of comments led the State to believe that the submitted analysis was adequate to show how

Texas contributes to other states' ozone concentrations.

*Response:* The EPA's authority and obligation under the Act is to review a SIP submittal and determine whether it meets the applicable requirements of the Act and regulations, regardless of whether we commented on a State's proposed SIP during its State rulemaking process. There is no requirement in the Act that the EPA must review, evaluate, and comment on a State's proposed SIP revision during the state rulemaking process, and no reasonable or legal basis for states to assume that the EPA's choosing to not provide comment on their analysis during the state public comment period constitutes the Agency's endorsement of such analysis.

*Comment:* Luminant stated that the EPA needs to revise the CSAPR ozone season NO$_X$ budgets in accordance with the D.C. Circuit's remand in *EME Homer City Generation, L.P.* before the EPA can evaluate Texas' SIP submittal. See *EME Homer City Generation, L.P.* v *EPA,* 795 F.3d 118 (D.C. Cir. 2015). Luminant stated that, by failing to issue new budgets for the 1997 ozone NAAQS, we are in violation of the D.C. Circuit's specific remand instructions. The commenter contends that the EPA cannot rationally evaluate Texas' SIP submittal until we comply with the court's remand. The commenter specifically contends that the EPA must replace the CSAPR budgets with lawful budgets that do not require more control than necessary to comply with the 1997 ozone NAAQS, and that otherwise, the EPA has no basis to disapprove the Texas SIP submittal. By failing to establish lawful budgets, the commenter claims that the EPA does not have the information necessary to evaluate additional reductions associated with Texas' plan to comply with the 2008 ozone NAAQS.

*Response:* The EPA has an independent statutory obligation to evaluate Texas' SIP submittal addressing the good neighbor provision with respect to the 2008 ozone NAAQS. The fact that the EPA has not yet completed its response to the D.C. Circuit's remand to address interstate transport with respect to the 1997 ozone NAAQS does not preclude either the state from addressing its own statutory obligation with respect to the 2008 ozone NAAQS pursuant to CAA section 110(a)(2)(D)(i)(I) or the EPA from fulfilling its statutory obligation to review the SIP submittal pursuant to CAA section 110(k). As noted earlier, the EPA has identified several deficiencies with the interstate transport analysis in the Texas SIP submittal that

are unrelated to the CSAPR rulemakings either with respect to the 1997 or 2008 ozone standards.

The EPA has proposed its intended response to address the D.C. Circuit's remand of the CSAPR ozone season NO$_X$ budgets in the context of the CSAPR Update, which is expected to be finalized later this year. The commenter does not explain how the EPA's finalization of this action with respect to the 1997 ozone standard would aid in the state's evaluation of transport with respect to the 2008 ozone standard. Nonetheless, should the commenter have any concerns about the EPA's approach to addressing the court's remand, the appropriate venue for the EPA's evaluation of those concerns is in the context of the CSAPR Update rulemaking. Any concerns are outside the scope of this rulemaking.

*Comment:* Luminant stated that we must reopen the comment period for the CSAPR Update rulemaking. Luminant contends that comments previously submitted on the CSAPR Update proposal have limited utility because the EPA's rationale for disapproving Texas' SIP submittal was not known at the time those comments were submitted for that proposal.

*Response:* As noted earlier, the EPA has identified several deficiencies with the interstate transport analysis in the Texas SIP submittal that are unrelated to the CSAPR Update rulemaking. Moreover, any request to reopen the public comment period on the CSAPR Update is not appropriately raised in this rulemaking.

## III. Final Action

For the reasons described in the proposal and in this final action, the EPA is disapproving a portion of the December 13, 2012 SIP submittal from Texas seeking to address the required infrastructure element under CAA section 110(a)(2)(D)(i)(I) with respect to the State's significant contribution to nonattainment or interference with maintenance of the 2008 ozone NAAQS in other states, known as prongs 1 and 2 of the good neighbor provision.

In a separate action, we disapproved the portion of the SIP submittal pertaining to the CAA section 110(a)(2)(D)(i)(II) requirement to address the interstate transport of air pollution which will interfere with other states' programs for visibility protection (81 FR 296, January 5, 2016). We proposed to approve the other portions of the infrastructure SIP submittal on February 8, 2016 (81 FR 6483). We expect to take final action on the other portions of the Texas infrastructure SIP at a later date.

---

[9] See CSAPR (76 FR 48208, August 8, 2011), CAIR (70 FR 25162, May 12, 2005) and the NO$_X$ SIP call (63 FR 57356, October 27, 1998).

[10] *https://www3.epa.gov/ttn/naaqs/aqmguide/ collection/cp2/20090925_harnett_section_110(a)_ sip_2006_24-hr_pm2.5_naaqs.pdf.*

Pursuant to CAA section 110(c)(1), this disapproval establishes a 2-year deadline for the EPA to promulgate a FIP for Texas to address the requirements of CAA section 110(a)(2)(D)(i)(i) with respect to the 2008 ozone NAAQS unless Texas submits and we approve a SIP that meets these requirements. Disapproval does not start a mandatory sanctions clock for Texas pursuant to CAA section 179 because this action does not pertain to a part D plan for nonattainment areas required under CAA section 110(a)(2)(I) or a SIP call pursuant to CAA section 110(k)(5).

## IV. Statutory and Executive Order Reviews

### A. Executive Order 12866: Regulatory Planning and Review and Executive Order 13563: Improving Regulation and Regulatory Review

This final action is not a "significant regulatory action" and was therefore not submitted to the Office of Management and Budget for review.

### B. Paperwork Reduction Act (PRA)

This final action does not impose an information collection burden under the PRA because it does not contain any information collection activities.

### C. Regulatory Flexibility Act (RFA)

I certify that this action will not have a significant economic impact on a substantial number of small entities under the RFA. This action merely disapproves a SIP submittal as not meeting certain CAA requirements.

### D. Unfunded Mandates Reform Act (UMRA)

This action does not contain any unfunded mandate as described in UMRA, 2 U.S.C. 1531–1538, and does not significantly or uniquely affect small governments. The action imposes no enforceable duty on any state, local or tribal governments or the private sector.

### E. Executive Order 13132: Federalism

This action does not have federalism implications. It will not have substantial direct effects on the states, on the relationship between the national government and the states, or on the distribution of power and responsibilities among the various levels of government.

### F. Executive Order 13175: Consultation and Coordination With Indian Tribal Governments

This action does not have tribal implications as specified in Executive Order 13175. This action does not apply on any Indian reservation land, any other area where the EPA or an Indian

tribe has demonstrated that a tribe has jurisdiction, or non-reservation areas of Indian country. Thus, Executive Order 13175 does not apply to this action.

### G. Executive Order 13045: Protection of Children From Environmental Health Risks and Safety Risks

The EPA interprets Executive Order 13045 as applying only to those regulatory actions that concern environmental health or safety risks that the EPA has reason to believe may disproportionately affect children, per the definition of "covered regulatory action" in section 2–202 of the Executive Order. This action is not subject to Executive Order 13045 because it merely disapproves a SIP submittal as not meeting certain CAA requirements.

### H. Executive Order 13211: Actions That Significantly Affect Energy Supply, Distribution or Use

This action is not subject to Executive Order 13211, because it is not a significant regulatory action under Executive Order 12866.

### I. National Technology Transfer and Advancement Act

This rulemaking does not involve technical standards.

### J. Executive Order 12898: Federal Actions To Address Environmental Justice in Minority Populations and Low-Income Populations

The EPA believes the human health or environmental risk addressed by this action will not have potential disproportionately high and adverse human health or environmental effects on minority, low-income or indigenous populations. This action merely disapproves a SIP submittal as not meeting certain CAA requirements.

The Congressional Review Act, 5 U.S.C. 801 et seq., as added by the Small Business Regulatory Enforcement Fairness Act of 1996, generally provides that before a rule may take effect, the agency promulgating the rule must submit a rule report, which includes a copy of the rule, to each House of the Congress and to the Comptroller General of the United States. The EPA will submit a report containing this action and other required information to the U.S. Senate, the U.S. House of Representatives, and the Comptroller General of the United States prior to publication of the rule in the **Federal Register**. A major rule cannot take effect until 60 days after it is published in the **Federal Register**. This action is not a "major rule" as defined by 5 U.S.C. 804(2).

Under section 307(b)(1) of the CAA, petitions for judicial review of this action must be filed in the United States Court of Appeals for the appropriate circuit by October 11, 2016. Filing a petition for reconsideration by the Administrator of this final rule does not affect the finality of this action for the purposes of judicial review nor does it extend the time within which a petition for judicial review may be filed, and shall not postpone the effectiveness of such rule or action. This action may not be challenged later in proceedings to enforce its requirements. (See CAA section 307(b)(2).)

## List of Subjects in 40 CFR Part 52

Environmental protection, Air pollution control, Incorporation by reference, Ozone.

Dated: August 1, 2016.

**Ron Curry,**
*Regional Administrator, Region 6.*

40 CFR part 52 is amended as follows:

## PART 52—APPROVAL AND PROMULGATION OF IMPLEMENTATION PLANS

■ 1. The authority citation for part 52 continues to read as follows:

**Authority:** 42 U.S.C. 7401 et seq.

## Subpart SS—Texas

■ 2. Section 52.2275 is amended by adding paragraph (l) to read as follows:

### § 52.2275   Control strategy and regulations: Ozone.

\*     \*     \*     \*     \*

(l) The portion of the SIP submitted on December 13, 2012 addressing Clean Air Act section 110(a)(2)(D)(i)(I) for the 2008 ozone NAAQS is disapproved.

[FR Doc. 2016–19151 Filed 8–11–16; 8:45 am]

**BILLING CODE 6560–50–P**

---

## ENVIRONMENTAL PROTECTION AGENCY

### 40 CFR Part 52

[EPA–R10–OAR–2015–0397; FRL–9950–58– Region 10]

## Approval and Promulgation of Implementation Plans; Idaho: Stationary Source Permitting Revisions

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule.

**SUMMARY:** The Environmental Protection Agency (EPA) is approving, and incorporating by reference, revisions to

# Tab 2

Approval and Promulgation of Air Quality Implementation Plans; Texas;
Interstate Transport of Air Pollution for the 2008 Ozone National
Ambient Air Qua1ity Standards; Proposed Rule; 81 FR 21290
(April 11, 2016)

We prepared an economic evaluation of the estimated costs to comply with this proposed AD and placed it in the AD docket.

## List of Subjects in 14 CFR Part 39

Air transportation, Aircraft, Aviation safety, Incorporation by reference, Safety.

## The Proposed Amendment

Accordingly, under the authority delegated to me by the Administrator, the FAA proposes to amend 14 CFR part 39 as follows:

## PART 39—AIRWORTHINESS DIRECTIVES

■ 1. The authority citation for part 39 continues to read as follows:

**Authority:** 49 U.S.C. 106(g), 40113, 44701.

### § 39.13  [Amended]

■ 2. The FAA amends § 39.13 by adding the following new airworthiness directive (AD):

**Various Restricted Category Helicopters:** Docket No. FAA–2015–3820; Directorate Identifier 2014–SW–024–AD.

### (a) Applicability

This AD applies to Model TH–1F, UH–1B, UH–1F, UH–1H, and UH–1P helicopters with a main rotor (M/R) blade, part number 204–011–250–005 or 204–011–250–113, installed.

### (b) Unsafe Condition

This AD defines the unsafe condition as a crack in an M/R blade, which could result in failure of the M/R blade and subsequent loss of helicopter control.

### (c) Comments Due Date

We must receive comments by June 10, 2016.

### (d) Compliance

You are responsible for performing each action required by this AD within the specified compliance time unless it has already been accomplished prior to that time.

### (e) Required Actions

(1) Within 25 hours time-in-service (TIS) or 2 weeks, whichever occurs first, and thereafter at intervals not to exceed 25 hours TIS or 2 weeks, whichever occurs first, clean the upper and lower exposed surfaces of each M/R blade from an area starting at the butt end of the blade to three inches outboard of the doublers. Using a 3X or higher power magnifying glass and a light, inspect as follows:

(i) Visually inspect the exposed area of the lower grip pad and upper and lower grip plates of each M/R blade for a crack and any corrosion.

(ii) On the upper and lower exposed surfaces of each M/R blade from blade stations 24.5 to 35 for the entire chord width, visually inspect each layered doubler and blade skin for a crack and any corrosion. Pay particular attention for any cracking in a

doubler or skin near or at the same blade station as the blade retention bolt hole (blade station 28).

(iii) Visually inspect the exposed areas of each bond line at the edges of the lower grip pad, upper and lower grip plates, and each layered doubler (bond lines) on the upper and lower surfaces of each M/R blade for the entire length and chord width for an edge void, any corrosion, loose or damaged adhesive squeeze-out, and an edge delamination. Pay particular attention to any crack in the paint finish that follows the outline of a grip pad, grip plate, or doubler, and to any loose or damaged adhesive squeeze-out, as these may be the indication of an edge void.

(2) If there is a crack, any corrosion, an edge void, loose or damaged adhesive squeeze-out, or an edge delamination during any inspection in paragraph (e)(1) of this AD, before further flight, do the following:

(i) If there is a crack in a grip pad or any grip plate or doubler, replace the M/R blade with an airworthy M/R blade.

(ii) If there is a crack in the M/R blade skin that is within maximum repair damage limits, repair the M/R blade. If the crack exceeds maximum repair damage limits, replace the M/R blade with an airworthy M/R blade.

(iii) If there is any corrosion within maximum repair damage limits, repair the M/R blade. If the corrosion exceeds maximum repair damage limits, replace the M/R blade with an airworthy M/R blade.

(iv) If there is an edge void in the grip pad or in a grip plate or doubler, determine the length and depth using a feeler gauge. Repair the M/R blade if the edge void is within maximum repair damage limits, or replace the M/R blade with an airworthy M/R blade.

(v) If there is an edge void in a grip plate or doubler near the outboard tip, tap inspect the affected area to determine the size and shape of the void. Repair the M/R blade if the edge void is within maximum repair damage limits, or replace the M/R blade with an airworthy M/R blade.

(vi) If there is any loose or damaged adhesive squeeze-out along any of the bond lines, trim or scrape away the adhesive without damaging the adjacent surfaces or parent material of the M/R blade. Determine if there is an edge void or any corrosion by lightly sanding the trimmed area smooth using 280 or finer grit paper. If there is no edge void or corrosion, refinish the sanded area.

(vii) If there is an edge delamination along any of the bond lines or a crack in the paint finish, determine if there is an edge void or a crack in the grip pad, grip plate, doubler, or skin by removing paint from the affected area by lightly sanding in a span-wise direction using 180–220 grit paper. If there are no edge voids and no cracks, refinish the sanded area.

(viii) If any parent material is removed during any sanding or trimming in paragraphs (e)(2)(vi) or (e)(2)(vii) of this AD, repair the M/R blade if the damage is within maximum repair damage limits, or replace the M/R blade with an airworthy M/R blade.

### (f) Special Flight Permit

Special flight permits are prohibited.

### (g) Alternative Methods of Compliance (AMOC)

(1) The Manager, Rotorcraft Certification Office, FAA, may approve AMOCs for this AD. Send your proposal to: Charles Harrison, Project Manager, Fort Worth Aircraft Certification Office, 10101 Hillwood Pkwy., Fort Worth, Texas 76177; telephone 817–222–5140; email *9-ASW-FTW-AMOC-Requests@faa.gov*.

(2) For operations conducted under a 14 CFR part 119 operating certificate or under 14 CFR part 91, subpart K, we suggest that you notify your principal inspector, or lacking a principal inspector, the manager of the local flight standards district office or certificate holding district office before operating any aircraft complying with this AD through an AMOC.

### (h) Additional Information

Bell Helicopter Alert Service Bulletin (ASB) No. UH–1H–13–09, dated January 14, 2013, and Bell Helicopter Textron ASB No. 204–75–1 and ASB 205–75–5, both Revision C and both dated April 25, 1979, which are not incorporated by reference, contain additional information about the subject of this AD. For service information identified in this AD, contact Bell Helicopter Textron, Inc., P.O. Box 482, Fort Worth, TX 76101; telephone (817) 280–3391; fax (817) 280–6466; or at *http://www.bellcustomer.com/files/*. You may review a copy of information at the FAA, Office of the Regional Counsel, Southwest Region, 10101 Hillwood Pkwy., Room 6N–321, Fort Worth, Texas 76177.

### (i) Subject

Joint Aircraft Service Component (JASC) Code: 6210, Main Rotor Blades.

Issued in Fort Worth, Texas, on March 29, 2016.

**James A. Grigg,**

*Acting Manager, Rotorcraft Directorate, Aircraft Certification Service.*

[FR Doc. 2016–07985 Filed 4–8–16; 8:45 am]

**BILLING CODE 4910–13–P**

## ENVIRONMENTAL PROTECTION AGENCY

### 40 CFR Part 52

[EPA–R06–OAR–2012–0985; FRL–9944–84–Region 6]

## Approval and Promulgation of Air Quality Implementation Plans; Texas; Interstate Transport of Air Pollution for the 2008 Ozone National Ambient Air Quality Standards

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Proposed rule.

**SUMMARY:** The Environmental Protection Agency (EPA) proposes to disapprove the portion of a Texas State

Implementation Plan (SIP) submittal pertaining to interstate transport of air pollution which will significantly contribute to nonattainment or interfere with maintenance of the 2008 ozone National Ambient Air Quality Standards (NAAQS) in other states. Disapproval will establish a 2-year deadline for the EPA to promulgate a Federal Implementation Plan (FIP) for Texas to address the Clean Air Act (CAA) interstate transport requirements pertaining to significant contribution to nonattainment and interference with maintenance of the 2008 ozone NAAQS in other states, unless the EPA approves a SIP that meets these requirements. Disapproval does not start a mandatory sanctions clock for Texas.

**DATES:** Comments must be received on or before May 11, 2016.

**ADDRESSES:** Submit your comments, identified by Docket No. EPA–R06–OAR–2012–0985, at *http://www.regulations.gov* or via email to *young.carl@epa.gov.* Follow the online instructions for submitting comments. Once submitted, comments cannot be edited or removed from Regulations.gov. The EPA may publish any comment received to its public docket. Do not submit electronically any information you consider to be Confidential Business Information (CBI) or other information whose disclosure is restricted by statute. Multimedia submissions (audio, video, etc.) must be accompanied by a written comment. The written comment is considered the official comment and should include discussion of all points you wish to make. The EPA will generally not consider comments or comment contents located outside of the primary submission (*i.e.,* on the web, cloud, or other file sharing system). For additional submission methods, please contact Carl Young, 214–665–6645, *young.carl@epa.gov.* For the full EPA public comment policy, information about CBI or multimedia submissions, and general guidance on making effective comments, please visit *http://www2.epa.gov/dockets/commenting-epa-dockets.*

*Docket:* The index to the docket for this action is available electronically at *www.regulations.gov* and in hard copy at EPA Region 6, 1445 Ross Avenue, Suite 700, Dallas, Texas. While all documents in the docket are listed in the index, some information may be publicly available only at the hard copy location (*e.g.,* copyrighted material), and some may not be publicly available at either location (*e.g.,* CBI).

**FOR FURTHER INFORMATION CONTACT:** Carl Young, 214–665–6645, *young.carl@*

*epa.gov.* To inspect the hard copy materials, please schedule an appointment with Mr. Young or Mr. Bill Deese at 214–665–7253.

**SUPPLEMENTARY INFORMATION:** Throughout this document, "we," "us," and "our" means the EPA.

## I. Background

On March 12, 2008, the EPA revised the levels of the primary and secondary 8-hour ozone NAAQS from 0.08 parts per million (ppm) to 0.075 ppm (73 FR 16436). The CAA requires states to submit, within three years after promulgation of a new or revised standard, SIPs meeting the applicable "infrastructure" elements of sections 110(a)(1) and (2). One of these applicable infrastructure elements, CAA section 110(a)(2)(D)(i), requires SIPs to contain "good neighbor" provisions to prohibit certain adverse air quality effects on neighboring states due to interstate transport of pollution. There are four sub-elements within CAA section 110(a)(2)(D)(i). This action reviews how the first two sub-elements of the good neighbor provisions, at CAA section 110(a)(2)(D)(i)(I) were addressed in an infrastructure SIP submission from Texas for the 2008 ozone NAAQS. These sub-elements require that each SIP for a new or revised standard contain adequate provisions to prohibit any emissions activity within the state from emitting air pollutants that will "contribute significantly to nonattainment" or "interfere with maintenance" of the applicable air quality standard in any other state.

Ozone is not emitted directly into the air, but is created by chemical reactions between oxides of nitrogen ($NO_X$) and volatile organic compounds (VOCs) in the presence of sunlight. Emissions from electric utilities and industrial facilities, motor vehicles, gasoline vapors, and chemical solvents are some of the major sources of $NO_X$ and VOCs. Because ground-level ozone formation increases with temperature and sunlight, ozone levels are generally higher during the summer. Increased temperature also increases emissions of VOCs and can indirectly increase $NO_X$ emissions.[1]

The EPA has addressed the interstate transport requirements of CAA section 110(a)(2)(D)(i)(I) with respect to ozone in several past regulatory actions. The $NO_X$ SIP Call, promulgated in 1998, addressed the good neighbor provision for the 1979 1-hour ozone NAAQS and the 1997 8-hour ozone NAAQS.[2] The rule required 22 states and the District of Columbia to amend their SIPs and

limit $NO_X$ emissions that contribute to ozone nonattainment. The Clean Air Interstate Rule (CAIR), promulgated in 2005, addressed both the 1997 $PM_{2.5}$ and ozone standards under the good neighbor provision and required SIP revisions in 28 states and the District of Columbia to limit $NO_X$ and $SO_2$ emissions that contribute to nonattainment of those standards.[3] CAIR was remanded to the EPA by the D.C. Circuit in *North Carolina* v. *EPA,* 531 F.3d 896 (D.C. Cir. 2008), *modified on reh'g,* 550 F.3d 1176. In response to the remand of CAIR, the EPA promulgated the Cross State Air Pollution Rule (CSAPR) on July 6, 2011, to address CAA section 110(a)(2)(D)(i)(I) in the eastern[4] portion of the United States.[5] With respect to ozone, CSAPR limited ozone season nitrogen oxide ($NO_X$) emissions from electric generating units (EGUs). CSAPR addressed interstate transport as to the 1997 8-hour ozone NAAQS, the 1997 annual fine particulate matter ($PM_{2.5}$) NAAQS and the 2006 24-hour $PM_{2.5}$ NAAQS, but did not address the 2008 8-hour ozone standard.

## II. Texas SIP Revision Addressing Interstate Transport of Air Pollution for the 2008 Ozone NAAQS

On December 13, 2012, Texas submitted a SIP revision addressing certain CAA infrastructure requirements for the 2008 ozone NAAQS. This action concerns the portion of the December 13, 2012, SIP submittal pertaining to the CAA section 110(a)(2)(D)(i)(I) requirement to address the interstate transport of air pollution which will significantly contribute to nonattainment or interference with maintenance of the 2008 ozone NAAQS in other states. In a separate action, we disapproved the portion of the SIP submittal pertaining to the CAA section 110(a)(2)(D)(i)(II) requirement to address the interstate transport of air pollution which will interfere with other states' programs for visibility protection (81 FR 296, January 5, 2016). We proposed to approve the other portions of the infrastructure SIP submittal on February 8, 2016 (81 FR 6483).

In the portion of its SIP submittal addressing interstate transport, Texas provided an analysis of monitoring data, wind patterns, emissions data and

---

[1] 80 FR 75706, 75711.

[2] $NO_X$ SIP Call, 63 FR 57371 (October 27, 1998).

[3] Clean Air Interstate Rule (CAIR), 70 FR 25172 (May 12, 2005).

[4] When we discuss the eastern United States we mean the contiguous U.S. states excluding the 11 western states of Arizona, California, Colorado, Idaho, Montana, New Mexico, Nevada, Oregon, Utah, Washington, and Wyoming.

[5] Cross-State Air Pollution Rule (CSAPR), 76 FR 48208 (August 8, 2011).

emissions controls. Texas notes that, at the time of the SIP submittal, it had not yet implemented control measures in its two areas designated nonattainment for the 2008 ozone NAAQS because the nonattainment SIP was not due until 2015. Texas cited numerous control measures that were implemented to address prior ozone NAAQS. Texas also includes 1990–2010 design value data for the areas designated nonattainment for the 2008 ozone NAAQS in Texas and in nearby nonattainment areas and notes that design values have generally decreased since 2000. Texas focuses on wind patterns and the distance between in-state ozone nonattainment areas (Dallas-Fort Worth and the Houston-Galveston-Brazoria) and the closest designated nonattainment areas (Baton Rouge, Louisiana, and Memphis, Tennessee) in other states, and monitored data in between these areas. Texas concluded that it is difficult to determine how much ozone at the out-of-state nonattainment areas is due to transport of ozone and how much is due to other sources of ozone precursors.

Texas's analysis includes 2010 8-hour ozone design values from monitors in states located in the EPA Region 6.[6] Texas summarized $NO_X$ emission trends for Texas EGUs from 1995–2011 and discusses how federal rulemakings, such as CAIR and the CSAPR affected EGU emissions. Lastly, Texas described additional non-EGU control measures and SIPs that reduce $NO_X$ and VOC emissions within the state.

Texas concluded in its analysis that (based on monitoring data) due to (1) decreases in ozone design values, and (2) existing control measures, emissions from sources within the state do not contribute significantly to nonattainment or interfere with maintenance of the 2008 ozone NAAQS in any other state. A copy of the Texas SIP submittal may be accessed online at *http://www.regulations.gov*, Docket No. EPA–R06–OAR–2012–0985.

### III. The EPA's Evaluation

As we noted above, the Texas SIP submittal included an analysis of monitoring data, wind patterns, emissions data and emissions controls. The information provided in the Texas analysis is helpful in assessing past air quality and we agree that ozone concentrations have decreased since 2000. However, we disagree with Texas's conclusion concerning interstate transport for the 2008 ozone NAAQS.

Texas limits its discussion of data only to areas designated nonattainment

in states that are geographically closest to Texas (Arizona, Arkansas, Colorado, Illinois, Indiana, Louisiana, Mississippi, Missouri, Tennessee, and Wisconsin). This approach is incomplete for two reasons. First, transported emissions may cause an area to measure exceedances of the standard even if that area is not formally designated nonattainment by the EPA. However, Texas only evaluated its potential impact on the nearest designated nonattainment areas in other states without considering potential exceedances in other areas not designated nonattainment. Thus, Texas did not fully evaluate whether emissions from the state significantly contribute to nonattainment in other states.

Second, in remanding CAIR to the EPA in the *North Carolina* decision, the D.C. Circuit explained that the regulating authority must give the "interfere with maintenance" clause of section 110(a)(2)(D)(i)(I) "independent significance" by evaluating the impact of upwind state emissions on downwind areas that, while currently in attainment, are at risk of future nonattainment, considering historic variability.[7] Texas does not give the "interfere with maintenance" clause of section 110(a)(2)(D)(i)(I) independent significance because its analysis did not attempt to evaluate the potential impact of Texas emissions on areas that are currently measuring clean data, but that may have issues maintaining that air quality.

Furthermore, in addition to being incomplete, the EPA has recently shared new technical information with states to facilitate efforts to address interstate transport requirements for the 2008 ozone NAAQS which contradicts the conclusions of the Texas analysis. The EPA developed this technical information following the same approach used to evaluate interstate transport in CSAPR in order to support the recently proposed Cross-State Air Pollution Rule Update for the 2008 Ozone NAAQS, 80 FR 75706 (December 3, 2015) ("CSAPR Update Rule"). In CSAPR, we used detailed air quality analyses to determine whether an eastern state's contribution to downwind air quality problems was at or above specific thresholds. If a state's contribution did not exceed the specified air quality screening threshold, the state was not considered "linked" to identified downwind nonattainment and maintenance

receptors and was therefore not considered to significantly contribute to nonattainment or interfere with maintenance of the standard in those downwind areas. If a state exceeded that threshold, the state's emissions were further evaluated, taking into account both air quality and cost considerations, to determine what, if any, emissions reductions might be necessary. For the reasons stated below, we believe it is appropriate to use the same approach we used in CSAPR to establish an air quality screening threshold for the evaluation of interstate transport requirements for the 2008 ozone standard.

In CSAPR, we proposed an air quality screening threshold of one percent of the applicable NAAQS and requested comment on whether one percent was appropriate. The EPA evaluated the comments received and ultimately determined that one percent was an appropriately low threshold because there were important, even if relatively small, contributions to identified nonattainment and maintenance receptors from multiple upwind states. In response to commenters who advocated a higher or lower threshold than one percent, we compiled the contribution modeling results for CSAPR to analyze the impact of different possible thresholds for the eastern United States. The EPA's analysis showed that the one percent threshold captures a high percentage of the total pollution transport affecting downwind states, while the use of higher thresholds would exclude increasingly larger percentages of total transport. For example, at a five percent threshold, the majority of interstate pollution transport affecting downwind receptors would be excluded. In addition, the EPA determined that it was important to use a relatively lower one percent threshold because there are adverse health impacts associated with ambient ozone even at low levels. The EPA also determined that a lower threshold such as 0.5 percent would result in relatively modest increases in the overall percentages of fine particulate matter and ozone pollution transport captured relative to the amounts captured at the one-percent level. The EPA determined that a "0.5 percent threshold could lead to emission reduction responsibilities in additional states that individually have a very small impact on those receptors—an indicator that emission controls in those states are likely to have a smaller air quality impact at the downwind receptor. We are not convinced that

---

[6] These states are Arkansas, Louisiana, Oklahoma, and New Mexico.

[7] 531 F.3d at 910–11 (holding that the EPA must give "independent significance" to each prong of CAA section 110(a)(2)(D)(i)(I)).

selecting a threshold below one percent is necessary or desirable.''

In the final CSAPR, we determined that one percent was a reasonable choice considering the combined downwind impact of multiple upwind states in the eastern United States, the health effects of low levels of fine particulate matter and ozone pollution, and the EPA's previous use of a one percent threshold in CAIR. The EPA used a single "bright line" air quality threshold equal to one percent of the 1997 8-hour ozone standard, or 0.08 ppm. The projected contribution from each state was averaged over multiple days with projected high modeled ozone, and then compared to the one percent threshold. We concluded that this approach for setting and applying the air quality threshold for ozone was appropriate because it provided a robust metric, was consistent with the approach for fine particulate matter used in CSAPR, and because it took into account, and would be applicable to, any future ozone standards below 0.08 ppm. The EPA has subsequently proposed to use the same threshold for purposes of evaluating interstate transport with respect to the 2008 ozone standard in the CSAPR Update Rule.

In 2015 we (1) provided notice of data availability (NODA) for the EPA's updated ozone transport modeling for the 2008 ozone NAAQS for public review and comment (80 FR 46271, August 4, 2015), and (2) proposed the CSAPR Update Rule to address interstate transport with respect to the 2008 ozone NAAQS (80 FR 75706, December 3, 2015). The CSAPR Update Rule would further restrict ozone season $NO_X$ emissions from EGUs in 23 states, including Texas, beginning in the 2017 ozone season. Our proposal also addresses a 2015 D.C. Circuit court decision that largely upheld CSAPR, but that, among other things, remanded

without vacatur the $NO_X$ ozone-season emission budgets for EGUs in Texas and 10 other states that were established in CSAPR to address the 1997 ozone NAAQS.[8]

The modeling data released in this NODA was also used to support the proposed CSAPR Update Rule. The moderate area attainment date for the 2008 ozone standard is July 11, 2018. In order to demonstrate attainment by this attainment deadline, states will use 2015 through 2017 ambient ozone data. Therefore, the EPA proposed that 2017 is an appropriate future year to model for the purpose of examining interstate transport for the 2008 ozone NAAQS. The EPA used photochemical air quality modeling to project ozone concentrations at air quality monitoring sites to 2017 and estimated state-by-state ozone contributions to those 2017 concentrations. This modeling used the Comprehensive Air Quality Model with Extensions (CAMx version 6.11) to model the 2011 base year, and the 2017 future base case emissions scenarios to identify projected nonattainment and maintenance sites with respect to the 2008 ozone NAAQS in 2017. The EPA used nationwide state-level ozone source apportionment modeling (CAMx Ozone Source Apportionment Technology/Anthropogenic Precursor Culpability Analysis technique) to quantify the contribution of 2017 base case $NO_X$ and VOC emissions from all sources in each state to the 2017 projected receptors. The air quality model runs were performed for a modeling domain that covers the 48 contiguous United States and adjacent portions of Canada and Mexico. The NODA and the supporting technical support documents have been included in the docket for this SIP action.

The modeling data released in the NODA and the CSAPR Update Rule are the most up-to-date information the EPA

has developed to inform our analysis of upwind state linkages to downwind air quality problems. As discussed in the CSAPR Update proposal, the air quality modeling (1) identified locations in the U.S. where the EPA expects nonattainment or maintenance problems in 2017 for the 2008 ozone NAAQS (*i.e.*, nonattainment or maintenance receptors), and (2) quantified the projected contributions of emissions from upwind states to downwind ozone concentrations at those receptors in 2017 (80 FR 75706, 75720–30, December 3, 2015). Consistent with CSAPR, the EPA proposed to use a threshold of 1 percent of the 2008 ozone NAAQS (0.75 parts per billion) to identify linkages between upwind states and downwind nonattainment or maintenance receptors. The EPA proposed that eastern states with contributions to a specific receptor that meet or exceed this screening threshold are considered "linked" to that receptor, and were analyzed further to quantify available emissions reductions necessary to address interstate transport to these receptors.

Table 1 is a summary of the air quality modeling results for Texas from Table V.D–1 of the proposed CSAPR Update Rule.[9] As the state's downwind contribution to proposed nonattainment and maintenance receptors exceeded the threshold, the analysis for the proposal concluded that Texas emissions significantly contribute to nonattainment and interfere with maintenance of the 2008 ozone NAAQS in other states. Texas emissions were linked to eastern nonattainment receptors in Sheboygan, Wisconsin, and to maintenance receptors in Maryland, Michigan, New Jersey, New York, Ohio and Pennsylvania (Tables V.D–2 and V.D–3, 80 FR 75706, 75728–30).[10]

TABLE 1—TEXAS' LARGEST CONTRIBUTION TO DOWNWIND NONATTAINMENT AND MAINTENANCE AREAS
[Proposed CSAPR update rule]

| 2008 Ozone NAAQS | Air quality threshold | Largest downwind contribution to nonattainment | Largest downwind contribution to maintenance | Downwind nonattainment receptors located in states | Downwind maintenance receptors located in states |
|---|---|---|---|---|---|
| 0.075 ppm (75 parts per billion or ppb) ............ | 0.75 ppb ... | 2.44 ppb ......... | 2.95 ppb ...... | Wisconsin ................. | Maryland, Michigan, New Jersey, New York, Ohio and Pennsylvania. |

Additionally, Texas emissions were also linked to two projected nonattainment receptors in the Denver, Colorado area, with Texas's largest downwind contribution to those

nonattainment receptors being 1.58 parts per billion (ppb).[11] Texas has not provided a demonstration that its SIP is adequate to address interstate transport to the Denver, Colorado receptors. The

EPA believes contribution from an individual state equal to or above 1 percent of the NAAQS could be considered significant where the

[8] *EME Homer City* v. *EPA*, [795 F.3d 118 (D.C. Circuit 2015)] (July 28, 2015).

[9] 80 FR 75706, 75727–28.

[10] Tables V.D–2 and V.D–3, 80 FR 75706, 75728–30.

[11] *See* document EPA–HQ–OAR–2015–0500–0007 in *http://www.regulations.gov*.

collective contribution of emissions from one or more upwind states is responsible for a considerable portion of the downwind air quality problem regardless of where the receptor is geographically located.[12] In this case, Texas has more than a 2% contribution to receptors in Denver, which we consider significant.

As discussed previously, our modeling and analysis released in our NODA and proposed CSAPR Update Rule is the most up-to-date information for assessing interstate transport of air pollution for the 2008 ozone NAAQS. Analysis of wind patterns, emissions data, and ambient monitoring data as provided in the Texas SIP submittal does not quantify the magnitude of impact from Texas emissions to downwind states. For example, wind patterns can only give an indication of the possibility of transport; emissions data and ambient monitoring data can indicate the potential for air quality problems. The Texas analysis only discusses general ozone season wind patterns as being from the south to the east and the limited potential for transport to Memphis and Baton Rouge. However, the general wind patterns are generally consistent with transport to the impacted receptors in Wisconsin and Colorado, and there are observed winds from the west and northwest that could, on some days, transport pollutants towards other areas, such as Baton Rouge. Downward trends in (1) emissions and (2) observed ozone concentrations can indicate progress towards reducing impact, but do not provide information on the magnitude of the remaining impact or the potential benefit from additional emission reductions. Air quality modeling, however, brings together emissions data, atmospheric chemistry and meteorological information that simulate the transport and fate of pollutants and estimate concentrations of pollutants (including ozone) across the modeling domain. Air quality modeling can also provide estimates of upwind impacts by estimating the contribution of a state's emissions to downwind pollutant concentrations. Our modeling and analysis provided the magnitude of impact and show that Texas emissions significantly contribute to ozone concentrations in areas of nonattainment and interfere with maintenance of the 2008 ozone NAAQS in other states.

Texas provided a great deal of information documenting significant emission reductions that have been made throughout the state and particularly in the eastern half of the state between 1990 and 2010. These include reductions from controls on EGUs in East Texas and controls on a variety of $NO_X$ sources in the 1-hour ozone and 8-hour ozone nonattainment areas of Houston-Galveston-Brazoria, Beaumont-Port Arthur and Dallas-Fort Worth. These controls have resulted in significant reductions in ozone levels in Texas and undoubtedly have reduced the amount of transported pollution to other states. However, these reductions were largely put in place to address the 1-hour ozone NAAQS, and as a result, their compliance dates, and therefore the emission reductions achieved through these measures, predate and were therefore accounted for in the EPA's modeling baseline of 2011 for the 2008 ozone NAAQS. Accordingly, the most recent technical analysis available to the EPA contradicts Texas's conclusion that the state's SIP contains adequate provisions to address interstate transport as to the 2008 ozone standard. Furthermore, Texas did not demonstrate how these rules and data for a less stringent standard provide sufficient controls on emissions to address interstate transport for the 2008 ozone NAAQS. Despite the substantial reductions in Texas, we have subsequently published information and proposed an update to CSAPR that addresses the 2008 ozone NAAQS that includes Texas's cited rules and demonstrates Texas still has an interstate impact on other states.

Among the emissions reductions cited by Texas in its SIP, Texas cites its participation in CAIR as a control measure that results in control of $NO_X$ emissions within the state. Texas notes that under CAIR, Texas EGUs were not included in the ozone season $NO_X$ emissions trading program, but were subject to the annual $NO_X$ emissions trading program. The CAIR ozone season $NO_X$ emissions trading program was intended to address interstate transport of air pollution for the 1997 ozone NAAQS. The CAIR annual $NO_X$ emissions trading program, along with the annual sulfur dioxide ($SO_2$) trading program, was intended to address interstate transport of air pollution for the 1997 fine particulate matter ($PM_{2.5}$) NAAQS.

Texas also noted that: (1) A 2008 court decision (the *North Carolina* decision) directed the EPA replace CAIR, but kept it in place temporarily; (2) the EPA replaced CAIR with CSAPR; (3) CSAPR included Texas EGU budgets for ozone-season $NO_X$ emissions, annual $NO_X$ emissions and annual $SO_2$ $NO_X$ emissions to address interstate transport of air pollution for the 1997 ozone NAAQS, the 1997 annual $PM_{2.5}$ NAAQS and the 2006 24-hour $PM_{2.5}$ NAAQS; and (4) in August 2012, the U.S. Court of Appeals for the District of Columbia Circuit (D.C. Circuit) issued a decision vacating CSAPR and requiring continued implementation of CAIR until the EPA develops a replacement. Therefore, Texas concluded that CAIR remains a federally enforceable requirement.

Subsequent to Texas's submission of its SIP, On April 29, 2014, the U.S. Supreme Court reversed that D.C. Circuit decision vacating CSAPR and remanded the case to the D.C. Circuit for further proceedings. On October 23, 2014, the D.C. Circuit granted our motion to lift the judicial stay on CSAPR and delay compliance deadlines by three years. Consistent with the Court's order we issued an interim final rule amending CSAPR so that compliance could begin in an orderly manner on January 1, 2015 (79 FR 71663, December 3, 2014), replacing CAIR. On July 28, 2015, the D.C. Circuit issued its decision on the issues raised on remand from the Supreme Court. The court denied all of petitioners' facial challenges to CSAPR, but remanded several emissions budgets to the EPA for reconsideration.[13] A final rule making the revised CSAPR implementation schedule permanent was issued on March 14, 2016.[14]

Accordingly, CAIR implementation ended in 2014 and CSAPR implementation began in 2015. States and the EPA are no longer implementing the CAIR trading programs. Thus, it is no longer appropriate for states to rely on CAIR to satisfy emission reduction obligations. Moreover, as indicated above, Texas's SIP addresses interstate transport obligations for a different and more stringent standard (the 2008 ozone NAAQS) and it is not sufficient to merely cite evidence of compliance with older programs such as CAIR or measures implemented for prior ozone NAAQS as a means for satisfying

---

[12] 76 FR 48238 (Aug. 8, 2011); 80 FR 75714 (Dec. 3, 2015).

[13] As to Texas in particular, the court remanded without vacatur the state's phase 2 $SO_2$ annual emissions budget and the phase 2 ozone-season $NO_X$ emissions budget for reconsideration. The court concluded that these budgets resulted in over-control of sources in Texas with respect to the air quality concerns to which Texas was linked in our air quality modeling. As stated above, our CSAPR update proposal for the 2008 ozone NAAQS responds to the court remand of the $NO_X$ ozone-season emission budgets for EGUs in Texas that were established for the 1997 ozone NAAQS.

[14] 81 FR 13275 (March 14, 2016)

interstate transport obligations for the 2008 ozone NAAQS.

The EPA is proposing to disapprove the Texas SIP for CAA section 110(a)(2)(D)(i)(I) requirements. As explained above, the Texas analysis does not adequately demonstrate that the SIP contains provisions prohibiting emissions that will significantly contribute to nonattainment or interfere with maintenance of the 2008 ozone NAAQS. Moreover, the EPA's most recent modeling indicates that emissions from Texas are projected to significantly contribute to downwind nonattainment and maintenance receptors in other states.[15]

## IV. Proposed Action

We propose to disapprove the portion of a December 13, 2012 Texas SIP submittal pertaining to CAA section 110(a)(2)(D)(i)(I), the interstate transport of air pollution which will significantly contribute to nonattainment or interfere with maintenance of the 2008 ozone NAAQS in other states. The EPA requests comment on our evaluation of Texas's interstate transport SIP.

Pursuant to CAA section 110(c)(1), disapproval will establish a 2-year deadline for the EPA to promulgate a FIP for Texas to address the requirements of CAA section 110(a)(2)(D)(i) with respect to the 2008 ozone NAAQS unless Texas submits and we approve a SIP that meets these requirements. Disapproval does not start a mandatory sanctions clock for Texas pursuant to CAA section 179 because this action does not pertain to a part D plan for nonattainment areas required under CAA section 110(a)(2)(I) or a SIP call pursuant to CAA section 110(k)(5).

## V. Statutory and Executive Order Reviews

### A. Executive Order 12866: Regulatory Planning and Review and Executive Order 13563: Improving Regulation and Regulatory Review

This action is not a significant regulatory action and was therefore not submitted to the Office of Management and Budget for review.

### B. Paperwork Reduction Act (PRA)

This proposed action does not impose an information collection burden under

---

[15] Texas and others interested parties have provided comments on both the NODA and proposed CSAPR Update Rule. See Docket No. EPA–HQ–OAR–2015–0500 at *http:// www.regulations.gov.* We will consider these comments in final rulemaking to CSAPR Update Rule. Even absent this data, Texas's SIP failed to adequately address the requirements of CAA section 110(a)(2)(D)(i)(I) with respect to the 2008 ozone NAAQS.

the PRA because it does not contain any information collection activities.

### C. Regulatory Flexibility Act (RFA)

I certify that this action will not have a significant economic impact on a substantial number of small entities under the RFA. This action merely proposes to disapprove a SIP submission as not meeting the CAA.

### D. Unfunded Mandates Reform Act (UMRA)

This action does not contain any unfunded mandate as described in UMRA, 2 U.S.C. 1531–1538, and does not significantly or uniquely affect small governments. The action imposes no enforceable duty on any state, local or tribal governments or the private sector.

### E. Executive Order 13132: Federalism

This action does not have federalism implications. It will not have substantial direct effects on the states, on the relationship between the national government and the states, or on the distribution of power and responsibilities among the various levels of government.

### F. Executive Order 13175: Consultation and Coordination With Indian Tribal Governments

This action does not have tribal implications as specified in Executive Order 13175. This action does not apply on any Indian reservation land, any other area where the EPA or an Indian tribe has demonstrated that a tribe has jurisdiction, or non-reservation areas of Indian country. Thus, Executive Order 13175 does not apply to this action.

### G. Executive Order 13045: Protection of Children From Environmental Health Risks and Safety Risks

The EPA interprets Executive Order 13045 as applying only to those regulatory actions that concern environmental health or safety risks that the EPA has reason to believe may disproportionately affect children, per the definition of "covered regulatory action" in section 2–202 of the Executive Order. This action is not subject to Executive Order 13045 because it merely proposes to disapprove a SIP submission as not meeting the CAA.

### H. Executive Order 13211: Actions That Significantly Affect Energy Supply, Distribution or Use

This action is not subject to Executive Order 13211, because it is not a significant regulatory action under Executive Order 12866.

### I. National Technology Transfer and Advancement Act

This rulemaking does not involve technical standards.

### J. Executive Order 12898: Federal Actions To Address Environmental Justice in Minority Populations and Low-Income Populations

The EPA believes the human health or environmental risk addressed by this action will not have potential disproportionately high and adverse human health or environmental effects on minority, low-income or indigenous populations. This action merely proposes to disapprove a SIP submission as not meeting the CAA.

## List of Subjects in 40 CFR Part 52

Environmental protection, Air pollution control, Incorporation by reference, Intergovernmental relations, Ozone, Nitrogen dioxide, Volatile organic compounds.

Dated: April 4, 2016.

**Ron Curry,**
*Regional Administrator, Region 6.*
[FR Doc. 2016–08275 Filed 4–8–16; 8:45 am]
**BILLING CODE 6560–50–P**

## ENVIRONMENTAL PROTECTION AGENCY

### 40 CFR Part 261

**[EPA–HQ–RCRA–2016–0040; FRL9944–67–OLEM]**

### Hazardous Waste Management System; Tentative Denial of Petition To Revise the RCRA Corrosivity Hazardous Waste Characteristic

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Notification of tentative denial of petition for rulemaking.

**SUMMARY:** The Environmental Protection Agency (EPA or the Agency) is responding to a rulemaking petition ("the petition") requesting revision of the Resource Conservation and Recovery Act (RCRA) corrosivity hazardous waste characteristic regulation. The petition requests that the Agency make two changes to the current corrosivity characteristic regulation: revise the regulatory value for defining waste as corrosive from the current value of pH 12.5, to pH 11.5; and expand the scope of the RCRA corrosivity definition to include nonaqueous wastes in addition to the aqueous wastes currently regulated. After careful consideration, the Agency is tentatively denying the petition, since

# Tab 3

Texas Infrastructure and Transport SIP Submittal for the 2008 Ozone
National Ambient Air Quality Standard (NAAQS), Texas Project
No. 2012-004-SIP-NR, submitted to EPA December 13, 2012

Bryan W. Shaw, Ph.D., *Chairman*
Carlos Rubinstein, *Commissioner*
Toby Baker, *Commissioner*
Zak Covar, *Executive Director*

RECEIVED – 6PDL
AIR PLANNING SEC.

12 DEC 19  PM 5: 07

# TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

*Protecting Texas by Reducing and Preventing Pollution*
December 13, 2012

**Docket No.  2012-1087-SIP**
**Project No. 2012-004-SIP-NR**

Ron Curry
Regional Administrator
U.S. Environmental Protection Agency - Region 6
1445 Ross Avenue
Dallas, Texas 75202-2733

Dear Mr. Curry:

On December 5, 2012, the Texas Commission on Environmental Quality (Commission) adopted revisions to the State Implementation Plan (SIP) for Infrastructure and Transport for the 2008 Ozone National Ambient Air Quality Standard (NAAQS).

The Commission adopted SIP revisions demonstrating that Texas is not contributing significantly to nonattainment of the ozone NAAQS for areas in other states; not interfering with the maintenance of the ozone NAAQS in any other state; not interfering with measures required to meet an implementation plan for any other state related to prevention of significant deterioration (PSD); and not interfering with measures required to meet the implementation plan for any other state related to regional haze and visibility.

Enclosed are the proposed revisions to the SIP, a public hearing certification, a complete record of the public hearing, and the accompanying order.  I look forward to your expeditious approval of these SIP revisions.

Sincerely,

Bryan W. Shaw, Ph.D.
Chairman

BWS/alb

Enclosures

cc:    The Honorable Rick Perry, Governor of Texas
       Ms. Kelly Kennedy, Office of Budget, Planning and Policy, Office of the Governor
       Mr. Zak Covar, Executive Director, Texas Commission on Environmental Quality

# Texas Commission on Environmental Quality



Docket No. 2012-1087-SIP
Project No. 2012-004-SIP-NR

THE STATE OF TEXAS

COUNTY OF TRAVIS

    This is to certify that the attached electronic file is included and that the electronic file is a true and correct copy of documents for a revision to the Texas State Implementation Plan, adopted on December 5, 2012, pursuant to 40 Code of Federal Regulations § 51.104. I am the records administrator for the Air Quality Division of the Texas Commission on Environmental Quality (Commission).

David Brymer, Director
Air Quality Division
Texas Commission on Environmental Quality

Texas Commission on Environmental Quality
Public Hearing
September 25, 2012

Concerning Federal Clean Air Act, §110(a)(1) and (2),
Infrastructure and Transport State Implementation
Plan Revision for the 2008 Ozone
National Ambient Air Quality Standard

Project No. 2012-004-SIP-NR

INTRODUCTION

The Texas Commission on Environmental Quality (commission) held a public hearing in Austin on September 25, 2012, to receive testimony regarding the proposed Federal Clean Air Act (FCAA), §110(a)(1) and (2), Infrastructure and Transport State Implementation Plan (SIP) Revision for the 2008 Ozone National Ambient Air Quality Standards and corresponding revisions to the state implementation plan.

The SIP revises how the infrastructure and transport elements listed in FCAA, §110(a) are currently addressed in the Texas SIP. The SIP revision outlines the requirements of FCAA, §110(a)(2)(A)-(M) and the Texas provisions supporting the requirements. These infrastructure requirements include basic program elements such as enforceable emission limitations and control measures, air quality monitoring and modeling, a permitting program, adequate funding and personnel, authority under state law to carry out the plan, emissions reporting, emergency powers, public participation, and the fee collection. The interstate transport requirements include a discussion of ozone transport and a demonstration showing that Texas does not contribute significantly to nonattainment or interfere with maintenance of the 2008 ozone NAAQS in another state.

The comment period closed on September 28, 2012. All testimony and comments have been reviewed and seriously considered. This hearing record contains a complete record of the public hearings and is divided into the following four sections:

o       Public Notification and Proposal

o       Written and Oral Testimony

o       Evaluation of Testimony

o       Staff Recommendations/Order


Additional copies of this hearing record are maintained in the TCEQ central office at 12100 Park

35 Circle, Austin, Texas 78753.  For further information, please contact Shelley Naik at

(512) 239-1536.

# NOTICE & PROPOSAL

PUBLIC NOTIFICATION

Notification to the public of the proposed revisions was conducted by the following procedures:

1.  Publication of notice of public hearing in the following newspapers on the date listed:

    *Austin American-Statesman*:  August 24, 2012
    *Fort Worth Star-Telegram:*  August 24, 2012
    *Houston Chronicle:*  August 24, 2012

2.  Publication of the Notice of Public Hearing in the September 7, 2012, issue of the *Texas Register* (37 TexReg 7221).

3.  Correspondence forwarding the notice of public hearings to the following officials and agencies:

    Speaker of the House

    Lieutenant Governor

    Alamo Area Council of Governments

    Capital Area Planning Council

    City of Austin, Mayor's Office

    City of Dallas, Department of Environmental Quality

    City of Dallas, Department of Aviation

    City of El Paso, Environmental Services

    City of Fort Worth, Environmental Management Department

    City of Houston, Department of Health and Human Services

    East Texas Council of Governments

    El Paso Metropolitan Planning Organization

    Federal Highway Administration

    Galveston County Health District

Harris County Public Health and Environmental Services

Houston-Galveston Area Council

North Central Texas Council of Governments

South East Texas Regional Planning Commission

Texas Department of Transportation

Travis County Judge

Victoria Metropolitan Planning Organization

Arkansas Department of Pollution Control and Ecology

Louisiana Department of Environmental Quality

New Mexico Environmental Department

Oklahoma Department of Environmental Quality

United States Environmental Protection Agency

# Austin American *Statesman*
## August 24, 2012

**LEGAL NOTICES**

**NOTICE OF PUBLIC HEARING BY THE TEXAS COMMISSION ON ENVIRONMENTAL QUALITY ON A PROPOSED REVISION TO THE STATE IMPLEMENTATION PLAN**

The Texas Commission on Environmental Quality (TCEQ) will conduct a public hearing to receive testimony regarding the proposed Federal Clean Air Act (FCAA), Section 110(a)(1) and (2) Infrastructure and Transport State Implementation Plan (SIP) Revision for the 2008 Ozone National Ambient Air Quality Standards (NAAQS).

The proposed SIP revision documents how the infrastructure and transport elements listed in FCAA section 110(a) are currently addressed in the Texas SIP. The SIP revision would outline the requirements of FCAA, Section 110(a)(2)(A) through (M) and the Texas provisions supporting the requirements. These infrastructure requirements include basic program elements such as enforceable emission limitations and control measures, air quality monitoring and modeling, a permitting program, adequate funding and personnel, authority under state law to carry out the plan, emissions reporting, emergency powers, public participation, and fee collection. The interstate transport requirements include a discussion of ozone transport and a demonstration showing that Texas does not contribute significantly to non-attainment or interfere with maintenance of the 2008 ozone NAAQS in another state. (Non-rule Project Number 2012-004-SIP-NR)

A public hearing on this proposal will be held in Austin on September 25, 2012, at 10:00 a.m. The public hearing will be held in the TCEQ Austin headquarters at 12100 Park 35 Circle, Building E, Room 2015, Austin, Texas 78753. The hearing will be structured for the receipt of oral or written comments by interested persons. Registration will begin 30 minutes prior to the hearing. Individuals may present oral statements when called upon in order of registration. There will be no open discussion during the hearing; however, TCEQ staff members will be available to discuss the proposal 30 minutes before the hearing.

Persons planning to attend the hearing who have special communication or other accommodation needs should contact Shelley Naik, Air Quality Division, at (512) 239-1934. Requests should be made as far in advance as possible.

Comments may be submitted to Shelley Naik, MC 206, SIP Team, Office of Air, Texas Commission on Environmental Quality, P.O. Box 13087, Austin, Texas 78711-3087 or faxed to (512) 239-6188. Electronic comments may be submitted at http://www5.tceq.state.tx.us/rules/ecomments. File size restrictions may apply to comments being submitted electronically. All comments should reference the "Federal Clean Air Act, Section 110(a)(1) and (2) Infrastructure and Transport State Implementation Plan Revision for the 2008 Ozone National Ambient Air Quality Standards" and Project Number 2012-004-SIP-NR. The comment period closes September 28, 2012. Copies of the proposed SIP revision can be obtained from the TCEQ's Web site at http://www.tceq.texas.gov/airquality/sip/criteria-pollutants/sip-o-zone. For additional information regarding the proposed SIP revision, please contact Shelley Naik, Air Quality Division, at (512) 239-1934.

An agreed order was entered regarding S A K Grocery Inc. dba Smetana Grocery, Docket No. 2012-0391-PST-E on August 22, 2012 assessing $8,329 in administrative penalties with $1,665 deferred.

Information concerning any aspect of this order may be obtained by contacting David Carney, Enforcement Coordinator at (512) 239-2583, Texas Commission on Environmental Quality, P.O. Box 13087, Austin, Texas 78711-3087.

An agreed order was entered regarding Trinity River Authority of Texas, Docket No. 2012-0422-WQ-E on August 22, 2012 assessing $5,625 in administrative penalties.

Information concerning any aspect of this order may be obtained by contacting Jennifer Graves, Enforcement Coordinator at (956) 430-6023, Texas Commission on Environmental Quality, P.O. Box 13087, Austin, Texas 78711-3087.

An agreed order was entered regarding NORAMI ENTERPRISES INC dba Hungerford Supermarket 344, Docket No. 2012-0447-PST-E on August 22, 2012 assessing $8,006 in administrative penalties with $1,601 deferred.

Information concerning any aspect of this order may be obtained by contacting Rajesh Acharya, Enforcement Coordinator at (512) 239-0577, Texas Commission on Environmental Quality, P.O. Box 13087, Austin, Texas 78711-3087.

TRD-201204551
Bridget C. Bohac
Chief Clerk
Texas Commission on Environmental Quality
Filed: August 29, 2012

♦          ♦          ♦

Notice of Public Hearing on a Proposed Revision to the State Implementation Plan

The Texas Commission on Environmental Quality (TCEQ) will conduct a public hearing to receive testimony regarding the proposed Federal Clean Air Act (FCAA), §110(a)(1) and (2), Infrastructure and Transport State Implementation Plan (SIP) Revision for the 2008 Ozone National Ambient Air Quality Standards (NAAQS).

The proposed SIP revision documents how the infrastructure and transport elements listed in FCAA, §110(a) are currently addressed in the Texas SIP. The SIP revision would outline the requirements of FCAA, §110(a)(2)(A) - (M) and the Texas provisions supporting the requirements. These infrastructure requirements include basic program elements such as enforceable emission limitations and control measures, air quality monitoring and modeling, a permitting program, adequate funding and personnel, authority under state law to carry out the plan, emissions reporting, emergency powers, public participation, and fee collection. The interstate transport requirements include a discussion of ozone transport and a demonstration showing that Texas does not contribute significantly to nonattainment or interfere with maintenance of the 2008 ozone NAAQS in another state. (Non-rule Project Number 2012-004-SIP-NR)

A public hearing on this proposal will be held in Austin on September 25, 2012, at 10:00 a.m. The public hearing will be held in the TCEQ Austin headquarters at 12100 Park 35 Circle, Building E, Room 201S, Austin, Texas 78753. The hearing will be structured for the receipt of oral or written comments by interested persons. Registration will begin 30 minutes prior to the hearing. Individuals may present oral statements when called upon in order of registration. There will be no open discussion during the hearing; however, TCEQ staff members will be available to discuss the proposal 30 minutes before the hearing.

Persons planning to attend the hearing who have special communication or other accommodation needs should contact Shelley Naik, Air Quality Division, at (512) 239-1536. Requests should be made as far in advance as possible.

Comments may be submitted to Shelley Naik, MC 206, SIP Team, Office of Air, Texas Commission on Environmental Quality, P.O. Box 13087, Austin, Texas 78711-3087 or faxed to (512) 239-6188. Electronic comments may be submitted at *http://www5.tceq.texas.gov/rules/ecomments*. File size restrictions may apply to comments being submitted electronically. All comments should reference the "Federal Clean Air Act, §110(a)(1) and (2) Infrastructure and Transport State Implementation Plan Revision for the 2008 Ozone National Ambient Air Quality Standards" and Project Number 2012-004-SIP-NR. The comment period closes September 28, 2012. Copies of the proposed SIP revision can be obtained from the TCEQ's web site at *http://www.tceq.texas.gov/airquality/sip/criteria-pollutants/sip-ozone*. For additional information regarding the proposed SIP revision, please contact Shelley Naik, Air Quality Division, at (512) 239-1536.

TRD-201204516
Robert Martinez
Director, Environmental Law Division
Texas Commission on Environmental Quality
Filed: August 24, 2012

♦          ♦          ♦

Notice of Public Hearing on Proposed Revisions to 30 TAC Chapter 106

The Texas Commission on Environmental Quality (commission or TCEQ) will conduct a public hearing to receive testimony regarding proposed revisions to 30 Texas Administrative Code (TAC) §106.141, concerning Batch Mixers, under the requirements of Texas Government Code, Chapter 2001, Subchapter B, Rulemaking.

Proposed Rule Amendment

The proposed rulemaking would amend §106.141 to also include medium-sized batch mixing operations used in temporary construction and repair operations. Currently, these operations must apply for a case-by-case new source review permit or meet the requirements of the concrete batch plant standard permit, neither of which were designed to meet the operational needs or environmental concerns associated with medium-sized batch mixers.

Public Hearing

The commission will hold a public hearing on this proposal in Austin on October 2, 2012, at 10:00 a.m., in Building E, Room 201S, at the commission's central office located at 12100 Park 35 Circle. TCEQ will structure the hearing for the receipt of oral or written comments by interested persons. Individuals may present oral statements when called upon in order of registration. Open discussion with the audience will not occur during the hearing; however, commission staff members will be available to discuss the proposal 30 minutes prior to the hearing and will answer questions after the hearing.

Persons who have special communication or other accommodation needs who are planning to attend the hearing should contact Sandy Wong, Office of Legal Services, at (512) 239-1802. Make requests as far in advance as possible.

Obtain copies of the proposed amendments at *http://www.tceq.texas.gov/nav/rules/propose_adopt.html* or by contacting TCEQ, Office of Air, Air Permits Division, at (512) 239-1638. Mail comments to Ms. Becky Southard, TCEQ, MC 163, P.O. Box 13087, Austin, Texas 787

---

Bryan W. Shaw, Ph.D., *Chairman*
Carlos Rubinstein, *Commissioner*
Toby Baker, *Commissioner*
Zak Covar, *Executive Director*



TEXAS COMMISSION ON ENVIRONMENTAL QUALITY
*Protecting Texas by Reducing and Preventing Pollution*

### NOTICE OF PUBLIC HEARING BY THE
### TEXAS COMMISSION ON ENVIRONMENTAL QUALITY
### ON A PROPOSED REVISION TO THE STATE IMPLEMENTATION PLAN

The Texas Commission on Environmental Quality (TCEQ) will conduct a public hearing to receive testimony regarding the proposed Federal Clean Air Act (FCAA), Section 110(a)(1) and (2) Infrastructure and Transport State Implementation Plan (SIP) Revision for the 2008 Ozone National Ambient Air Quality Standards (NAAQS).

The proposed SIP revision documents how the infrastructure and transport elements listed in FCAA, Section 110(a) are currently addressed in the Texas SIP. The SIP revision would outline the requirements of FCAA, Section 110(a)(2)(A) - (M) and the Texas provisions supporting the requirements. These infrastructure requirements include basic program elements such as enforceable emission limitations and control measures, air quality monitoring and modeling, a permitting program, adequate funding and personnel, authority under state law to carry out the plan, emissions reporting, emergency powers, public participation, and fee collection. The interstate transport requirements include a discussion of ozone transport and a demonstration showing that Texas does not contribute significantly to nonattainment or interfere with maintenance of the 2008 ozone NAAQS in another state. **(Non-rule Project Number 2012-004-SIP-NR)**

A public hearing on this proposal will be held in Austin on September 25, 2012, at 10:00 a.m. The public hearing will be held in the TCEQ Austin headquarters at 12100 Park 35 Circle, Building E, Room 201S, Austin, Texas 78753. The hearing will be structured for the receipt of oral or written comments by interested persons. Registration will begin 30 minutes prior to the hearing. Individuals may present oral statements when called upon in order of registration. There will be no open discussion during the hearing; however,

TCEQ staff members will be available to discuss the proposal 30 minutes before the hearing.

Persons planning to attend the hearing who have special communication or other accommodation needs should contact Shelley Naik, Air Quality Division, at (512) 239-1536. Requests should be made as far in advance as possible.

Comments may be submitted to Shelley Naik, MC 206, SIP Team, Office of Air, Texas Commission on Environmental Quality, P.O. Box 13087, Austin, Texas 78711-3087 or faxed to (512) 239-6188. Electronic comments may be submitted at *http://www5.tceq.texas.gov/rules/ecomments*. File size restrictions may apply to comments being submitted electronically. **All comments should reference the "Federal Clean Air Act, Section 110(a)(1) and (2) Infrastructure and Transport State Implementation Plan Revision for the 2008 Ozone National Ambient Air Quality Standards" and Project Number 2012-004-SIP-NR**. The comment period closes September 28, 2012. Copies of the proposed SIP revision can be obtained from the TCEQ's Web site at *http://www.tceq.texas.gov/airquality/sip/criteria-pollutants/sip-ozone*. For additional information regarding the proposed SIP revision, please contact Shelley Naik, Air Quality Division, at (512) 239-1536.

*Issued in Austin, Fort Worth, and Houston, Texas, on August 24, 2012.*

REVISIONS TO THE STATE OF TEXAS AIR QUALITY
IMPLEMENTATION PLAN FEDERAL CLEAN AIR ACT, SECTIONS
110(a)(1) AND (2) INFRASTRUCTURE AND TRANSPORT

INFRASTRUCTURE DEMONSTRATION AND TRANSPORT PLAN
FOR OZONE



TEXAS COMMISSION ON ENVIRONMENTAL QUALITY
P.O. BOX 13087
AUSTIN, TEXAS 78711-3087

**FEDERAL CLEAN AIR ACT, SECTIONS 110(a)(1) AND (2)
INFRASTRUCTURE AND TRANSPORT STATE
IMPLEMENTATION PLAN REVISION FOR THE 2008
OZONE NATIONAL AMBIENT AIR QUALITY STANDARDS**

Project Number 2012-004-SIP-NR

Proposal
August 22, 2012

*This page intentionally left blank*

# EXECUTIVE SUMMARY

This proposed revision to the state implementation plan (SIP) for ozone infrastructure and transport is intended to meet the infrastructure requirements of the Federal Clean Air Act (FCAA), §110(a). States are required by §110(a)(1) of the FCAA to submit SIP revisions to meet the infrastructure requirements within three years of promulgation of new or revised National Ambient Air Quality Standards (NAAQS). On March 12, 2008, the United States Environmental Protection Agency (EPA) strengthened the NAAQS for ground level ozone. The new primary eight-hour ozone standard, set at 0.075 parts per million (ppm) replaced the previous 1997 standard of 0.08 ppm. The EPA also strengthened the secondary eight-hour ozone standard to the level of 0.075 ppm making it identical to the revised primary standard. This proposed SIP revision would document that the Texas SIP at 40 Code of Federal Regulations Part 52, Subpart SS contains all the infrastructure elements required by FCAA, §110(a)(2) for the implementation, maintenance, and enforcement of the 2008 ozone NAAQS. Because the infrastructure demonstration explains how the existing Texas statutes and rules will allow the state to meet its obligations under the FCAA, this SIP revision has been developed as an expansion of the existing Section V: *Legal Authority* section of Texas' SIP. This expanded section is unique to infrastructure SIP revisions that are submitted to meet the requirements of FCAA, §110(a)(1), and demonstrates that the state can provide for the implementation, maintenance, and enforcement of the NAAQS.

The infrastructure demonstration outlines the requirements of FCAA, §110(a)(2)(A) through (M) and the Texas statutes and rules that allow the Texas Commission on Environmental Quality to meet those requirements. The requirements include basic program elements such as enforceable emission limitations and control measures, air quality monitoring and modeling, a permitting program, adequate funding and personnel, authority under state law to carry out the plan, emissions reporting, emergency powers, public participation, and fee collection.

This SIP revision also includes a more detailed technical demonstration to meet the interstate transport requirements of FCAA, §110(a)(2)(D)(i)(I). Since this infrastructure element requires more than statutory authority, the requirement is discussed in the Section VI: *Control Strategy* portion of this SIP revision. The technical demonstration includes an analysis of ozone trends and discussion of existing ozone control strategies to demonstrate that emissions from Texas do not contribute significantly to nonattainment or interfere with maintenance of the 2008 ozone NAAQS in another state.

### SECTION V: LEGAL AUTHORITY

A.  General (Revised)
B.  Infrastructure Demonstration for Lead (No change)
    1.  2008 Lead National Ambient Air Quality Standard (No change)
C.  Infrastructure Demonstration for Nitrogen Dioxide (No change)
    1.  2010 Nitrogen Dioxide National Ambient Air Quality Standard (No change)
D.  Infrastructure Demonstration for Ozone (New)
    1.  2008 Ozone National Ambient Air Quality Standards (New)

## SECTION V-A: LEGAL AUTHORITY

A. General

The Texas Commission on Environmental Quality (TCEQ) has the legal authority to implement, maintain, and enforce the National Ambient Air Quality Standards (NAAQS) and to control the quality of the state's air, including maintaining adequate visibility.

The first air pollution control act, known as the Clean Air Act of Texas, was passed by the Texas Legislature in 1965. In 1967, the Clean Air Act of Texas was superseded by a more comprehensive statute, the Texas Clean Air Act (TCAA), found in Article 4477-5, Vernon's Texas Civil Statutes. The legislature amended the TCAA in 1969, 1971, 1973, 1979, 1985, 1987, 1989, 1991, 1993, 1995, 1997, 1999, 2001, 2003, 2005, 2007, 2009, and 2011. In 1989, the TCAA was codified as Chapter 382 of the Texas Health and Safety Code.

Originally, the TCAA stated that the Texas Air Control Board (TACB) is the state air pollution control agency and is the principal authority in the state on matters relating to the quality of air resources. In 1991, the legislature abolished the TACB effective September 1, 1993, and its powers, duties, responsibilities, and functions were transferred to the Texas Natural Resource Conservation Commission (TNRCC). With the creation of the TNRCC, the authority over air quality is found in both the Texas Water Code and the TCAA. Specifically, the authority of the TNRCC is found in Chapters 5 and 7. Chapter 5, Subchapters A - F, H - J, and L, include the general provisions, organization, and general powers and duties of the TNRCC, and the responsibilities and authority of the executive director. Chapter 5 also authorizes the TNRCC to implement action when emergency conditions arise and to conduct hearings. Chapter 7 gives the TNRCC enforcement authority. In 2001, the 77th Texas Legislature continued the existence of the TNRCC until September 1, 2013, and changed the name of the TNRCC to the TCEQ. In 2009, the 81st Texas Legislature, during a special session, amended section 5.014 of the Texas Water Code, changing the expiration date of the TCEQ to September 1, 2011, unless continued in existence by the Texas Sunset Act. In 2011, the 82nd Texas Legislature continued the existence of the TCEQ until 2023.

The TCAA specifically authorizes the TCEQ to establish the level of quality to be maintained in the state's air and to control the quality of the state's air by preparing and developing a general, comprehensive plan. The TCAA, Subchapters A - D, also authorize the TCEQ to collect information to enable the commission to develop an inventory of emissions; to conduct research and investigations; to enter property and examine records; to prescribe monitoring requirements; to institute enforcement proceedings; to enter into contracts and execute instruments; to formulate rules; to issue orders taking into consideration factors bearing upon health, welfare, social and economic factors, and practicability and reasonableness; to conduct hearings; to establish air quality control regions; to encourage cooperation with citizens' groups and other agencies and political subdivisions of the state as well as with industries and the federal government; and to establish and operate a system of permits for construction or modification of facilities.

Local government authority is found in Subchapter E of the TCAA. Local governments have the same power as the TCEQ to enter property and make inspections. They also may make recommendations to the commission concerning any action of the TCEQ that affects their territorial jurisdiction, may bring enforcement actions, and may execute cooperative agreements with the TCEQ or other local governments. In addition, a city or town may enact and enforce ordinances for the control and abatement of air pollution not inconsistent with the provisions of the TCAA and the rules or orders of the commission.

Subchapters G and H of the TCAA authorize the TCEQ to establish vehicle inspection and maintenance programs in certain areas of the state, consistent with the requirements of the Federal Clean Air Act; coordinate with federal, state, and local transportation planning agencies to develop and implement transportation programs and measures necessary to attain and maintain the NAAQS; establish gasoline volatility and low emission diesel standards; and fund and authorize participating counties to implement vehicle repair assistance, retrofit, and accelerated vehicle retirement programs.

B. Applicable Law

The following statutes and rules provide necessary authority to adopt and implement the state implementation plan (SIP). The rules listed below have previously been submitted as part of the SIP.

Statutes

All sections of each subchapter are included, unless otherwise noted.

TEXAS HEALTH & SAFETY CODE, Chapter 382          September 1, 2011
TEXAS WATER CODE                                 September 1, 2011

Chapter 5: Texas Natural Resource Conservation Commission
    Subchapter A: General Provisions
    Subchapter B: Organization of the Texas Natural Resource Conservation Commission
    Subchapter C: Texas Natural Resource Conservation Commission
    Subchapter D: General Powers and Duties of the Commission
    Subchapter E: Administrative Provisions for Commission
    Subchapter F: Executive Director (except §§5.225, 5.226, 5.227, 5.2275, 5.231, 5.232, and
        5.236)
    Subchapter H: Delegation of Hearings
    Subchapter I: Judicial Review
    Subchapter J: Consolidated Permit Processing
    Subchapter L: Emergency and Temporary Orders (§§5.514, 5.5145, and 5.515 only)
    Subchapter M: Environmental Permitting Procedures (§5.558 only)

Chapter 7: Enforcement
    Subchapter A: General Provisions (§§7.001, 7.002, 7.0025, 7.004, and 7.005 only)
    Subchapter B: Corrective Action and Injunctive Relief (§7.032 only)
    Subchapter C: Administrative Penalties
    Subchapter D: Civil Penalties (except §7.109)
    Subchapter E: Criminal Offenses and Penalties: §§7.177, 7.179-7.183

Rules

All of the following rules are found in 30 Texas Administrative Code, as of the following latest effective dates:

Chapter 7: Memoranda of Understanding, §§7.110 and 7.119
                                    December 13, 1996 and May 2, 2002

Chapter 19: Electronic Reporting                 March 15, 2007

Chapter 35: Subchapters A-C, K: Emergency and Temporary Orders and
Permits; Temporary Suspension or Amendment of Permit Conditions     July 20, 2006

Chapter 39: Public Notice, §§39.402(a)(1) - (6), (8), and (10) - (12), 39.405(f)(3) and (g), (h)(1)(A) - (4), (6), (8) - (11), (i) and (j), 39.407, 39.409, 39.411(a), (e)(1) - (4)(A)(i) and (iii), (4)(B), (5)(A) and (B), and (6) - (10), (11)(A)(i) and (iii) and (iv), (11)(B ) - (F), (13) and (15), and (f)(1) - (8), (g) and (h), 39.418(a), (b)(2)(A), (b)(3), and (c), 39.419(e), 39.420 (c)(1)(A) - (D)(i)(I) and (II), (D)(ii), (c)(2), (d) - (e), and (h), and 39.601 - 39.605       June 24, 2010

Chapter 55: Requests for Reconsideration and Contested Case Hearings; Public Comment, §§55.150, 55.152(a)(1), (2), (5), and (6) and (b), 55.154(a), (b), (c)(1) - (3), and (5), and (d) - (g), and 55.156(a), (b), (c)(1), (e), and (g)       June 24, 2010

Chapter 101: General Air Quality Rules       October 27, 2011

Chapter 106: Permits by Rule, Subchapter A       May 15, 2011

Chapter 111: Control of Air Pollution from Visible Emissions and Particulate Matter       February 16, 2012

Chapter 112: Control of Air Pollution from Sulfur Compounds       July 16, 1997

Chapter 113: Standards of Performance for Hazardous Air Pollutants and for Designated Facilities and Pollutants       May 14, 2009

Chapter 114: Control of Air Pollution from Motor Vehicles       August 11, 2011

Chapter 115: Control of Air Pollution from Volatile Organic Compounds       December 29, 2011

Chapter 116: Permits for New Construction or Modification       March 1, 2012

Chapter 117: Control of Air Pollution from Nitrogen Compounds       April 19, 2012

Chapter 118: Control of Air Pollution Episodes       March 5, 2000

Chapter 122: §122.122: Potential to Emit       December 11, 2002

Chapter 122: §122.215: Minor Permit Revisions       June 3, 2001

Chapter 122: §122.216: Applications for Minor Permit Revisions       June 3, 2001

Chapter 122: §122.217: Procedures for Minor Permit Revisions       December 11, 2002

Chapter 122: §122.218: Minor Permit Revision Procedures for Permit Revisions Involving the Use of Economic Incentives, Marketable Permits, and Emissions Trading       June 3, 2001

## SECTION V-D-1: INFRASTRUCTURE DEMONSTRATION FOR THE 2008 OZONE NATIONAL AMBIENT AIR QUALITY STANDARDS

A. Background

Section 110(a)(1) of the Federal Clean Air Act (FCAA) requires states to submit a state implementation plan (SIP) revision to provide for the implementation, maintenance, and enforcement of the National Ambient Air Quality Standards (NAAQS). States are required to submit the infrastructure portion of this SIP requirement to the United States Environmental Protection Agency (EPA) to demonstrate that basic program elements have been addressed within three years of the promulgation of any new or revised NAAQS. Section 110(a)(2) lists the elements that these SIP submissions must contain.

On March 12, 2008, the EPA strengthened the NAAQS for ground level ozone. The new primary eight-hour ozone standard, set at 0.075 parts per million (ppm) replaced the previous 1997 standard of 0.08 ppm. The EPA also strengthened the secondary eight-hour ozone standard to the level of 0.075 ppm making it identical to the revised primary standard. However, the EPA did not initially implement the 2008 eight-hour ozone standard due to a subsequent reconsideration of the NAAQS.

On February 2, 2011, the Texas Commission on Environmental Quality (TCEQ) sent a letter to the EPA Region 6 to request formal clarification on several issues regarding the 2008 ozone NAAQS and the EPA's reconsideration of the standards. Specifically, the TCEQ asked whether the EPA intended that Texas develop and submit infrastructure and transport SIP revisions under the 2008 ozone standards by the March 12, 2011, deadline. On April 21, 2011, the EPA responded to the TCEQ stating, "As we stated earlier, EPA has not implemented the 2008 ozone standards by the deadline specified in the *Federal Register* (75 FR 2936). EPA has proposed that the 2008 ozone standards are insufficient to protect public health and welfare (75 FR 2938). EPA intends to take final action on the reconsideration by the end of July 2011 and at that time we will propose requirements for implementation, including the requisite infrastructure and transport elements." Based on this EPA direction, the TCEQ did not submit an infrastructure SIP revision by the March 12, 2011, deadline.

On September 22, 2011, the EPA issued a memorandum to inform states that the 2008 ozone NAAQS would be implemented. Implementation of the 2008 ozone NAAQS requires that the infrastructure SIP be submitted, although the original deadline of March 12, 2011, has already passed. To date, the EPA has not published infrastructure or transport guidance for the 2008 ozone NAAQS.

This proposed SIP revision is intended to provide an update of the §110(a)(2) infrastructure requirements for the 2008 ozone NAAQS. This chapter outlines FCAA, §110(a)(2)(A) through (M) and includes various Texas provisions that support the conclusion that Texas meets the requirements of each section. The federally enforceable SIP for Texas is documented at 40 Code of Federal Regulations Part 52, Subpart SS.

The infrastructure demonstration is an expansion of the Legal Authority section of Texas' SIP that provides additional information about how the existing statutes and rules allow Texas to meet the §110(a)(2) infrastructure requirements of the FCAA. Therefore, this SIP revision contains an expanded infrastructure section under the SIP Legal Authority. This infrastructure section is intended to satisfy the §110(a)(1) requirement to provide for the implementation, maintenance, and enforcement of the NAAQS. This infrastructure section will be updated as part of the infrastructure SIP revisions that Texas is required to submit as new or revised NAAQS are promulgated, but it will not otherwise be included in other Texas SIP revisions.

Section A of the Legal Authority contains the basic listing of Texas' legal framework for adopting SIP revisions and will be the default Legal Authority for Texas SIP revisions that are not specifically submitted to meet the FCAA, §110(a)(1) infrastructure demonstration requirement.

The October 2, 2007, EPA *Guidance on SIP Elements Required Under Sections 110(a)(1) and (2) for the 1997 8-hour ozone and PM$_{2.5}$ National Ambient Air Quality Standards*, and the September 25, 2009, *Guidance on SIP Elements Required Under Sections 110(a)(1) and (2) for the 2006 24-Hour Fine Particle (PM$_{2.5}$) National Ambient Air Quality Standards (NAAQS)* indicated that if a state determines that its existing SIP is adequate, the state can certify via a letter to the EPA that the existing SIP contains provisions that address the infrastructure requirements. The EPA's more recent 2011 *Guidance on Infrastructure State Implementation Plan (SIP) Elements Required Under Sections 110(a)(1) and 110(a)(2) for the 2008 Lead (Pb) National Ambient Air Quality Standards (NAAQS)* indicates that the state should provide reasonable public notice and opportunity for public hearing prior to submission to the EPA. The EPA has not yet proposed infrastructure or transport guidance for the 2008 ozone NAAQS, but in order to meet statutory deadlines for submittal of infrastructure SIPs, states do not have the option of waiting for EPA to provide additional guidance before proceeding with infrastructure and transport SIP development, review, and submittal. The TCEQ is proceeding with publication of this proposed SIP revision to ensure that there are adequate opportunities for public notice and comment as required by state and federal statutes.

The TCEQ acknowledges that proposed changes to federal regulations may have future impacts on how the TCEQ meets the requirements of FCAA, §110(a)(2); however, this proposed SIP revision reflects the methods and means by which Texas meets these requirements at the time of this SIP revision. Should future federal rule changes necessitate state rule changes, the TCEQ will act appropriately at that time.

## B.  Texas Statutory Authority

The TCEQ has the legal authority to implement, maintain, and enforce the NAAQS. Texas' legal authority has been submitted to the EPA as part of various SIP revisions that have been approved by the EPA.

The first air pollution control act, known as the Clean Air Act of Texas, was passed by the Texas Legislature in 1965. In 1967, the Clean Air Act of Texas was superseded by a more comprehensive statute, the Texas Clean Air Act (TCAA), found in Article 4477-5, Vernon's Texas Civil Statutes. The Legislature amended the TCAA in 1969, 1971, 1973, 1979, 1985, 1987, 1989, 1991, 1993, 1995, 1997, 1999, 2001, 2003, 2005, 2007, 2009, and 2011. In 1989, the TCAA was codified as Chapter 382 of the Texas Health and Safety Code.

Originally, the TCAA stated that the Texas Air Control Board (TACB) was the state air pollution control agency and was the principal authority in the state on matters relating to the quality of air resources. In 1991, the legislature abolished the TACB effective September 1, 1993, and its powers, duties, responsibilities, and functions were transferred to the Texas Natural Resource Conservation Commission (TNRCC). With the creation of the TNRCC, the authority over air quality is found in both the Texas Water Code and the TCAA. Specifically, the authority of the commission is found in Texas Water Code, Chapters 5 and 7. Chapter 5, Subchapters A - F, H - J, and L, include the general provisions, organization, and general powers and duties of the commission, and the responsibilities and authority of the executive director. Chapter 5 also authorizes the commission to implement action when emergency conditions arise and to conduct hearings. Chapter 7 gives the commission enforcement authority. In 2001, the 77th Texas Legislature continued the existence of the commission until September 1, 2013, and

changed the name of the TNRCC to the TCEQ. In 2009, the 81st Texas Legislature, during a special session, amended the Texas Water Code, §5.014, changing the expiration date of the TCEQ to September 1, 2011, unless continued in existence by the Texas Sunset Act. In 2011, the 82nd Texas Legislature continued the existence of the TCEQ until 2023.

The TCAA specifically authorizes the TCEQ to establish the level of quality to be maintained in the state's air and to control the quality of the state's air by preparing and developing a general, comprehensive plan. The TCAA, Subchapters A through D, also authorize the TCEQ to collect information to enable the commission to develop an inventory of emissions; conduct research and investigations; enter property and examine records; prescribe monitoring requirements; institute enforcement proceedings; enter into contracts and execute instruments; formulate rules; issue orders taking into consideration factors bearing upon health, welfare, social and economic factors, and practicability and reasonableness; conduct hearings; establish air quality control regions; encourage cooperation with citizens' groups and other agencies and political subdivisions of the state as well as with industries and the federal government; and establish and operate a system of permits for construction or modification of facilities.

Local government authority concerning air quality matters is found in Subchapter E of the TCAA. Local governments have the same power as the TCEQ to enter property and make inspections. Local governments may also make recommendations to the commission concerning any action of the TCEQ that affects their territorial jurisdiction, may bring enforcement actions, and may execute cooperative agreements with the TCEQ or other local governments. In addition, a city or town may enact and enforce ordinances for the control and abatement of air pollution not inconsistent with the provisions of the TCAA or the rules or orders of the commission.

Subchapters G and H of the TCAA authorize the TCEQ to establish vehicle inspection and maintenance programs in certain areas of the state, consistent with the requirements of the FCAA; coordinate with federal, state, and local transportation planning agencies to develop and implement transportation programs and measures necessary to attain and maintain the NAAQS; and fund and authorize participating counties to implement vehicle repair assistance, retrofit and accelerated vehicle retirement programs.

<u>Statutory Authority</u>
The following statutory authority allows for the establishment and operation of the TCEQ and the adoption and implementation of all §110(a)(2) requirements.

Texas Clean Air Act, Texas Health and Safety Code, Chapter 382, except Subchapter I.

Texas Water Code:

| | |
|---|---|
| §5.013(a)(11) & (13) | GENERAL JURISDICTION OF COMMISSION |
| §5.051. | COMMISSION |
| §5.052. | MEMBERS OF THE COMMISSION; APPOINTMENT |
| §5.053. | ELIGIBILITY FOR MEMBERSHIP |
| §5.054. | REMOVAL OF COMMISSION MEMBERS |
| §5.059. | CONFLICT OF INTEREST |
| §5.060. | LOBBYIST PROHIBITION |
| §5.101. | SCOPE OF SUBCHAPTER |
| §5.102. | GENERAL POWERS |
| §5.103. | RULES |
| §5.104. | MEMORANDA OF UNDERSTANDING |

| §5.105. | GENERAL POLICY |
| §5.106. | BUDGET APPROVAL |
| §5.107. | ADVISORY COMMITTEES, WORK GROUPS, AND TASK FORCES |
| §5.115. | PERSONS AFFECTED IN COMMISSION HEARINGS; NOTICE OF APPLICATION |
| §5.117. | MANDATORY ENFORCEMENT HEARING |
| §5.120. | CONSERVATION AND QUALITY OF ENVIRONMENT |
| §5.133. | ACTIONS IN MEXICO |
| §5.1733. | ELECTRONIC POSTING OF INFORMATION |
| §5.223. | ADMINISTRATIVE ORGANIZATION OF COMMISSION |
| §5.230. | ENFORCEMENT |
| §5.233. | GIFTS AND GRANTS |
| §5.234. | APPLICATIONS AND OTHER DOCUMENTS |
| §5.237. | OPERATING FUND |
| §5.501. | EMERGENCY AND TEMPORARY ORDER OR PERMIT; TEMPORARY SUSPENSION OR AMENDMENT OF PERMIT CONDITION |
| §5.502. | APPLICATION FOR EMERGENCY OR TEMPORARY ORDER |
| §5.514. | ORDER ISSUED UNDER AIR EMERGENCY |
| §5.515. | EMERGENCY ORDER BECAUSE OF CATASTROPHE |
| §5.701(a) | FEES |
| §5.702. | PAYMENT OF FEES REQUIRED WHEN DUE |
| §5.703. | FEE ADJUSTMENTS |
| §5.704. | NOTICE OF CHANGE IN PAYMENT PROCEDURE |
| §5.705. | NOTICE OF VIOLATION |
| §7.002. | ENFORCEMENT AUTHORITY |
| §7.032. | INJUNCTIVE RELIEF |
| §7.051. | ADMINISTRATIVE PENALTY |
| §7.052. | MAXIMUM PENALTY |
| §7.053. | FACTORS TO BE CONSIDERED IN DETERMINATION OF PENALTY AMOUNT |
| §7.061. | PAYMENT OF PENALTY; PETITION FOR REVIEW |
| §7.066. | REFERRAL TO ATTORNEY GENERAL |
| §7.067. | SUPPLEMENTAL ENVIRONMENTAL PROJECTS |
| §7.072. | RECOVERY OF PENALTY |
| §7.073. | CORRECTIVE ACTION |
| §7.101. | VIOLATION |
| §7.102. | MAXIMUM PENALTY |
| §7.103. | CONTINUING VIOLATIONS |
| §7.105. | CIVIL SUIT |
| §7.106. | RESOLUTION THROUGH ADMINISTRATIVE ORDER |
| §7.177. | VIOLATIONS OF CLEAN AIR ACT |
| §7.178. | FAILURE TO PAY FEES UNDER CLEAN AIR ACT |
| §7.179. | FALSE REPRESENTATIONS UNDER CLEAN AIR ACT |
| §7.180. | FAILURE TO NOTIFY UNDER CLEAN AIR ACT |
| §7.181. | IMPROPER USE OF MONITORING DEVICE |
| §7.182. | RECKLESS EMISSION OF AIR CONTAMINANT AND ENDANGERMENT |
| §7.183. | INTENTIONAL OR KNOWING EMISSION OF AIR CONTAMINANT AND KNOWING ENDANGERMENT |
| §7.186. | SEPARATE OFFENSES |
| §7.187. | PENALTIES |

§7.302.                    GROUNDS FOR REVOCATION OR SUSPENSION OF PERMIT

C. Texas Regulatory Authority
The TCEQ has promulgated rules implementing statutory authority to meet the requirements of both the FCAA and the TCAA. These rules were submitted to the EPA in various SIP revisions and have been approved in the *Federal Register* (FR) or are pending EPA review. Rules that are relevant for each FCAA, §110(a)(2) requirement are noted below.

**FCAA, §110(a)(2)(A)**
Federal Requirement
    (A)    include enforceable emission limitations and other control measures, means, or techniques (including economic incentives such as fees, marketable permits, and auctions of emissions rights), as well as schedules and timetables for compliance, as may be necessary or appropriate to meet the applicable requirements of this Act;

Texas Requirement
The TCEQ has promulgated rules to implement and enforce the NAAQS and other air quality standards. These rules include programs for banking and trading of emissions, as well as permits and fees. Periodic revisions to the SIP establish timetables and schedules for improving the air quality in nonattainment areas.

The following chapters of Title 30 Texas Administrative Code (TAC) contain rules relevant for this federal requirement:

| | |
|---|---|
| Chap. 7 | Memoranda of Understanding |
| Chap. 101 | General Air Quality Rules |
| Chap. 106 | Permits by Rule, Subchapter A, General Requirements |
| Chap. 111 | Control of Air Pollution from Visible Emissions and Particulate Matter |
| Chap. 112 | Control of Air Pollution from Sulfur Compounds |
| Chap. 113 | Standards of Performance for Hazardous Air Pollutants and for Designated Facilities and Pollutants |
| Chap. 114 | Control of Air Pollution from Motor Vehicles |
| Chap. 115 | Control of Air Pollution from Volatile Organic Compounds |
| Chap. 116 | Control of Air Pollution by Permits for New Construction or Modification |
| Chap. 117 | Control of Air Pollution from Nitrogen Compounds |
| Chap. 118 | Control of Air Pollution Episodes |

**FCAA, §110(a)(2)(B)**
Federal Requirement
    (B)    provide for establishment and operation of appropriate devices, methods, systems, and procedures necessary to (i) monitor, compile, and analyze data on ambient air quality, and (ii) make such data available to the Administrator;

Texas Requirement
The TCEQ maintains a network of air quality monitors to measure air quality data that is reported to the EPA on a regular basis. Texas submits annual monitoring plans to the EPA that describe how the state has complied with monitoring requirements and explains any proposed changes.

The following chapters of 30 TAC contain rules relevant for this federal requirement:

| Chap. 101 | General Air Quality Rules |
| Chap. 106 | Permits by Rule, Subchapter A, General Requirements |
| Chap. 111 | Control of Air Pollution from Visible Emissions and Particulate Matter |
| Chap. 112 | Control of Air Pollution from Sulfur Compounds |
| Chap. 115 | Control of Air Pollution from Volatile Organic Compounds |
| Chap. 116 | Control of Air Pollution by Permits for New Construction or Modification |
| Chap. 117 | Control of Air Pollution from Nitrogen Compounds |

## FCAA, §110(a)(2)(C)

### Federal Requirement

(C) include a program to provide for the enforcement of the measures described in subparagraph (A), and regulation of the modification and construction of any stationary source within the areas covered by the plan as necessary to assure that national ambient air quality standards are achieved, including a permit program as required in parts C and D;

### Texas Requirement

The TCEQ has established rules governing the enforcement of control measures, including attainment plans and permitting programs that regulate construction and modification of stationary sources.[1]

The EPA has published various proposed disapproval notices for Texas' air permitting programs, and these disapprovals have not yet been fully resolved. Texas has adopted new rules that address these notices and has committed to working closely with the EPA to ensure that these rulemaking efforts will result in rules that are approvable by the EPA. The EPA has also proposed limited approval/limited disapproval of the commission's rules regarding public participation for air quality New Source Review (NSR) permits. Texas has withdrawn from EPA consideration most of the rules that were the subject of the proposed limited approval/limited disapproval and has submitted new and revised adopted public participation rules to the EPA for the SIP. On October 28, 2010, the EPA signed a notice withdrawing its limited approval and limited disapproval of the SIP revisions relating to public participation, because those revisions are no longer before the EPA for review. Although the EPA has disapproved various elements of Texas' air permitting programs, those concerns are being addressed with newly adopted rules and a commitment to work closely with EPA staff to issue EPA-approvable rules. Texas has a robust, SIP-approved permitting program and therefore has met the infrastructure requirements of §110(a)(2).

The following chapters of 30 TAC contain rules relevant for this federal requirement:

| Chap. 35 | Emergency and Temporary Orders and Permits; Temporary Suspension or Amendment of Permit Conditions; Subchapters A, B, C, K |
| Chap. 39 | Public Notice |
| Chap. 55 | Requests for Reconsideration and Contested Case Hearings; Public Notice |

---

[1] Texas has permitting rules for Prevention of Significant Deterioration (PSD), as required by the FCAA. The EPA has recently promulgated regulations for the permitting of greenhouse gases under the PSD program. Although Texas has not amended or proposed amendments to its permitting program to include greenhouse gases, Texas is meeting its obligations under the FCAA to provide for permitting of facilities that emit criteria pollutants. Greenhouse gases are not criteria pollutants, with a NAAQS that must be met, and therefore a lack of permitting requirements in Texas rules for greenhouse gas emissions does not constitute a lack in the required infrastructure elements of §110(a)(2).

| Chap. 101 | General Air Quality Rules |
|---|---|
| Chap. 106 | Permits by Rule, Subchapter A, General Requirements |
| Chap. 112 | Control of Air Pollution from Sulfur Compounds |
| Chap. 115 | Control of Air Pollution from Volatile Organic Compounds |
| Chap. 116 | Control of Air Pollution by Permits for New Construction or Modification |
| Chap. 117 | Control of Air Pollution from Nitrogen Compounds |

## FCAA, §110(a)(2)(D)

Federal Requirement

(D)     contain adequate provisions (i) prohibiting, consistent with the provisions of this title, any source or other type of emissions activity from emitting any air pollutant in amounts which will (I) contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect to any such national primary or secondary ambient air quality standard, or (II) interfere with measures required to be included in the applicable implementation plan for any other State under part C to prevent significant deterioration of air quality or to protect visibility,(ii) insuring compliance with the applicable requirements of sections 126 and 115 (relating to interstate and international pollution abatement);

Texas Requirement

This SIP revision includes an interstate transport technical analysis in Section VI: *Control Strategy* to address the requirements of §110(a)(2)(D)(i)(I).

Texas has a SIP-approved PSD and nonattainment NSR permitting program that contains requirements for sources of air pollutants to obtain an approved permit before beginning construction of a facility and before modifying an existing facility (see requirements for §110(a)(2)(C) previously listed). Texas submitted a Regional Haze SIP revision to the EPA on March 19, 2009. Regional haze program requirements include progress reports due to the EPA in 2014 and every five years thereafter, to demonstrate progress toward the visibility goal. Another Regional Haze SIP is due in 2018 and every 10 years thereafter, through 2064.

The following chapters of 30 TAC contain rules relevant for this federal requirement:

| Chap. 101 | General Air Quality Rules |
|---|---|
| Chap. 122 | Subchapter E, Division 2, Clean Air Interstate Rule |

## FCAA, §110(a)(2)(E)

Federal Requirement

(E)     provide (i) necessary assurances that the State (or, except where the Administrator deems inappropriate, the general purpose local government or governments, or a regional agency designated by the State or general purpose local governments for such purpose) will have adequate personnel, funding, and authority under State (and, as appropriate, local) law to carry out such implementation plan (and is not prohibited by any provision of Federal or State law from carrying out such implementation plan or portion thereof), (ii) requirements that the state comply with the requirements respecting State boards under section 128, and (iii) necessary assurances that, where the State has relied on a local or regional government, agency, or instrumentality for the implementation of any plan provision, the State has responsibility for ensuring adequate implementation of such plan provision;

Texas Requirement

The TCEQ has consistently included assurances in SIP revisions that the state has adequate personnel, funding, and authority under state law to carry out the SIP. The TCEQ has various Memoranda of Understanding and Memoranda of Agreement with other state and local agencies. Local governments have their own responsibilities and privileges regarding the protection of air quality as established by the Texas legislature.

The TCEQ relies on the complete statutory and regulatory authority as referenced throughout this document. This statutory authority ensures that Texas can meet the requirements of this section, including the requirements of §128 of the FCAA. The TCEQ also regularly submits a legal authority with SIP revisions submitted to the EPA.

## FCAA, §110(a)(2)(F)

Federal Requirement

(F)     require, as may be prescribed by the Administrator: (i) the installation, maintenance, and replacement of equipment, and implementation of other necessary steps, by owners or operators of stationary sources to monitor emissions from such sources, (ii) periodic reports on the nature and amounts of emissions and emissions-related data from such sources, and (iii) correlation of such reports by the State agency with any emission limitations or standards established pursuant to this Act, which reports shall be available at reasonable times for public inspection;

Texas Requirement

The TCEQ requires monitoring for air pollutants as part of its NSR permit program. Certain emission sources are required to submit annual emission inventories and periodic reporting of emissions, which provides data that is used in air quality modeling to help Texas prepare SIP revisions. Emissions data are available at reasonable times for public inspection, with some information also available on the agency Web site.

The following chapters of 30 TAC contain rules relevant for this federal requirement:

| | |
|---|---|
| Chap. 101 | General Air Quality Rules |
| Chap. 106 | Permits by Rule, Subchapter A, General Requirements |
| Chap. 111 | Control of Air Pollution from Visible Emissions and Particulate Matter |
| Chap. 112 | Control of Air Pollution from Sulfur Compounds |
| Chap. 115 | Control of Air Pollution from Volatile Organic Compounds |
| Chap. 116 | Control of Air Pollution by Permits for New Construction or Modification |
| Chap. 117 | Control of Air Pollution from Nitrogen Compounds |

## FCAA, §110(a)(2)(G)

Federal Requirement

(G)     provide for authority comparable to that in section 303 and adequate contingency plans to implement such authority;

Texas Requirement

The TCEQ may issue emergency orders, or issue or suspend air permits as required by an air pollution emergency. In addition, the TCEQ also maintains air quality information in a form readily available to the public on the TCEQ's Today's Texas Air Quality Forecast Web site (http://www.tceq.texas.gov/compliance/monitoring/air/monops/forecast_today.html).

The following chapters of 30 TAC contain rules relevant for this federal requirement:

Chap. 35          Emergency and Temporary Orders and Permits; Temporary Suspension or
                  Amendment of Permit Conditions; Subchapters A, B, C, K
Chap. 118         Control of Air Pollution Episodes

## FCAA, §110(a)(2)(H)

Federal Requirement

(H)    provide for revision of such plan: (i) from time to time as may be
       necessary to take account of revisions of such national primary or
       secondary ambient air quality standard or the availability of improved or
       more expeditious methods of attaining such standard, and (ii) except as
       provided in paragraph (3)(C), whenever the Administrator finds on the
       basis of information available to the Administrator that the plan is
       substantially inadequate to attain the national ambient air quality
       standard which it implements or to otherwise comply with any additional
       requirements established under this Act;

Texas Requirement

The TCEQ regularly revises the Texas SIP in response to revisions in the NAAQS and the EPA
rules. See §110(a)(2)(A) above.

## FCAA, §110(a)(2)(I)

Federal Requirement

(I)    in the case of a plan or plan revision for an area designated as a
       nonattainment area, meet the applicable requirements of part D (relating
       to nonattainment areas);

Texas Requirement

SIP revisions that implement the control strategies necessary to bring a nonattainment area into
attainment of the NAAQS are not required by the FCAA to be submitted within three years of the
promulgation of a new or revised NAAQS. Therefore, §110(a)(1) does not require this element to
be demonstrated as part of an infrastructure SIP submittal (73 FR 16205, at 16206).

## FCAA, §110(a)(2)(J)

Federal Requirement

(J)    meet the applicable requirements of section 121 (relating to consultation),
       section 127 (relating to public notification), and part C (relating to
       prevention of significant deterioration and visibility protection);

Texas Requirement

The TCEQ has an established public participation process for all SIP revisions and permitting
programs. The EPA has proposed limited approval/limited disapproval of the rules regarding
public participation for air quality NSR permits.[2] Texas has withdrawn from EPA consideration
most of the rules that were the subject of the proposed limited approval/limited disapproval,
and has submitted new and revised public participation rules to the EPA as a new SIP revision to

---

[2] Approval and Promulgation of Implementation Plans; Texas; Revisions to Chapters 39, 55, and 116
Which Relate to Public Participation on Permits for New and Modified Sources, 73 FR 72001 (November
26, 2008).

address the EPA's published concerns regarding these requirements.[3] On October 28, 2010, the EPA signed a notice withdrawing its limited approval/limited disapproval of the SIP revisions relating to public participation because those revisions are no longer before the EPA for review (75 FR 68291). The TCEQ consults with other state agencies, local agencies, and non-governmental organizations, as well as with the environmental agencies of other states regarding air quality concerns. All major sources in Texas are subject to Texas' SIP-approved PSD program. Texas submitted a SIP revision to address Regional Haze, including a long-term strategy to address visibility impairment for each Class I area that may be impacted by emissions from Texas facilities.

The following chapters of 30 TAC contain rules relevant for this federal requirement:

| | |
|---|---|
| Chap. 7 | Memoranda of Understanding |
| Chap. 35 | Emergency and Temporary Orders and Permits; Temporary Suspension or Amendment of Permit Conditions; Subchapters H and K |
| Chap. 101 | General Air Quality Rules |
| Chap. 116 | Control of Air Pollution for New Construction or Modification |

### FCAA, §110(a)(2)(K)
Federal Requirement

(K)     provide for (i) the performance of such air quality modeling as the Administrator may prescribe for the purpose of predicting the effect on ambient air quality of any emissions of any air pollutant for which the Administrator has established a national ambient air quality standard, and (ii) the submission, upon request, of data related to such air quality modeling to the Administrator;

Texas Requirement
Air quality modeling is conducted during development of revisions to the Texas SIP, as appropriate for the state to demonstrate attainment with required NAAQS. Modeling is also a part of the NSR permitting program.

The following chapter of 30 TAC contains rules relevant for this federal requirement:

Chap. 116     Control of Air Pollution for New Construction or Modification

### FCAA, §110(a)(2)(L)
Federal Requirement

(L)     require the owner or operator of each major stationary source to pay to the permitting authority, as a condition of any permit required under this Act, a fee sufficient to cover (i) the reasonable costs of reviewing and acting upon any application for such a permit, and (ii) if the owner or operator receives a permit for such source, the reasonable costs of implementing and enforcing the terms and conditions of any such permit (not including any court costs or other costs associated with any enforcement action), until fee requirement is superseded with respect to

---

[3] The TCEQ adopted this rulemaking on June 2, 2010, and the adopted rules were published in the *Texas Register* (TR) on June 18, 2010 (35 TR 5198). These rules became effective on June 24, 2010, were submitted to the EPA on July 2, 2010, but the EPA has not yet taken any action on these rules.

such sources by the Administrator's approval of a fee program under title V;

<u>Texas Requirement</u>
The TCEQ assesses fees for reviewing permit applications and for enforcing the terms and conditions of permits.

The following chapters of 30 TAC contain rules relevant for this federal requirement:

| | |
|---|---|
| Chap. 12 | Payment of Fees |
| Chap. 101 | General Air Quality Rules |
| Chap. 106 | Permits by Rule, Subchapter A, General Requirements |
| Chap. 116 | Control of Air Pollution by Permits for New Construction or Modification |

**FCAA, §110(a)(2)(M)**
<u>Federal Requirement</u>
    (M)    provide for consultation and participation by local political subdivisions affected by the plan.

<u>Texas Requirement</u>
The TCEQ has several cooperative agreements and Memoranda of Understanding with various other state and local agencies and organizations. Consultation with a variety of different organizations is a regular part of the TCEQ's process of developing SIP revisions.

D.  <u>Conclusion</u>
The foregoing demonstrates that Texas has the necessary regulatory and statutory authority to meet the infrastructure requirements of FCAA, §110(a)(1) and (2) for the 2008 ozone NAAQS.

## SECTION VI: CONTROL STRATEGY

A.  Introduction (No change)
B.  Ozone (No change)
C.  Particulate Matter (No change)
D.  Carbon Monoxide (No change)
E.  Lead (No change)
F.  Oxides of Nitrogen (No change)
G.  Sulfur Dioxide (No change)
H.  Conformity with the National Ambient Air Quality Standards (No change)
I.  Site Specific (No change)
J.  Mobile Sources Strategies (No change)
K.  Clean Air Interstate Rule (No change)
L.  Transport (Revised)
M.  Regional Haze (No change)

# TABLE OF CONTENTS

Executive Summary

Section V: Legal Authority

Section V-A: Legal Authority

    A. General

    B. Applicable Law

Section V-D-1: Infrastructure Demonstration for the 2008 Ozone National Ambient Air Quality Standards

    A. Background

    B. Texas Statutory Authority

    C. Texas Regulatory Authority

        FCAA, §110(a)(2)(A)

        FCAA, §110(a)(2)(B)

        FCAA, §110(a)(2)(C)

        FCAA, §110(a)(2)(D)

        FCAA, §110(a)(2)(E)

        FCAA, §110(a)(2)(F)

        FCAA, §110(a)(2)(G)

        FCAA, §110(a)(2)(H)

        FCAA, §110(a)(2)(I)

        FCAA, §110(a)(2)(J)

        FCAA, §110(a)(2)(K)

        FCAA, §110(a)(2)(L)

        FCAA, §110(a)(2)(M)

    D. Conclusion

Section VI: Control Strategy

Table of Contents

List of Acronyms

List of Tables

List of Figures

Chapter 1: General

    1.1 Background

1.2 Introduction

1.3 Health Effects

1.4 Public Hearing and Comment Information

1.5 Social and Economic Considerations

1.6 Fiscal and Manpower Resources

1.7 Coordination with Local Agencies

1.8 Organizations Responsible for Development, Implementation and Enforcement

1.9 Data Availability

Chapter 2: Required Control Strategy Elements

2.1 Background

2.2 Control Strategy Overview

2.2.1 Significant Contribution to Nonattainment and Interference with Maintenance Elements

2.2.1.1 Technical Analysis

2.2.1.2 Monitoring Sites

2.2.1.3 References

2.2.2 Emissions Reductions from EGUs

2.2.2.1 CAIR and Cross-State Air Pollution Rule (CSAPR)

2.2.2.2 Utility Electric Generation in Ozone Nonattainment Areas

2.2.2.3 Utility Electric Generation in East and Central Texas

2.2.2.4 Senate Bill 7 (76th Texas Legislature)

2.2.3 Emission Reductions from Other Sources

2.2.3.1 HGB Area MECT Program

2.2.3.2 Cement Kilns

2.2.3.3 East Texas Engines

2.2.3.4 HGB Area Highly Reactive VOC (HRVOC) Rules and HRVOC Cap and Trade (HECT) Program

2.2.4 1997 Eight-Hour Ozone SIP Revisions Adopted Since 2008

2.2.4.1 HGB 1997 Eight-Hour Ozone SIP Revisions

2.2.4.2 DFW 1997 Eight Hour Ozone SIP Revisions

2.2.4.3 BPA 1997 Eight-Hour Ozone Redesignation to Attainment and Maintenance Plan

2.2.4.4 VIC 1997 Eight-Hour Ozone Contingency Plan SIP Revision

2.2.4.5 ARR 1997 Eight-Hour Ozone Flex Plan

2.3 Control Strategy Conclusions

Chapter 3: Future Revisions to the National Ambient Air Quality Standards (NAAQS)

## LIST OF ACRONYMS

| | |
|---|---|
| AD | attainment demonstration |
| AQS | Air Quality System |
| ARR | Austin-Round Rock |
| BPA | Beaumont-Port Arthur |
| CAIR | Clean Air Interstate Rule |
| CSAPR | Cross-State Air Pollution Rule |
| CTG | control techniques guidelines |
| DERC | Discrete Emission Reduction Credit |
| DFW | Dallas-Fort Worth |
| EAC | Early Action Compact |
| EGU | electric generating unit |
| EPA | United States Environmental Protection Agency |
| FCAA | Federal Clean Air Act |
| FR | *Federal Register* |
| g/hp-hr | grams per horsepower-hour |
| HECT | Highly Reactive Volatile Organic Compounds Emissions Cap and Trade |
| HGB | Houston-Galveston-Brazoria |
| hp | horsepower |
| HRVOC | highly reactive volatile organic compounds |
| hv | sunlight |
| lb/MMBtu | pound per million British thermal units |
| lb/ton of clinker | pounds of $NO_X$ per ton of cement clinker produced |
| MECT | Mass Emissions Cap and Trade |
| MVEB | motor vehicle emissions budget |
| NAAQS | National Ambient Air Quality Standards |
| NETX | Northeast Texas |
| NO | nitrogen oxide |
| $NO_2$ | nitrogen dioxide |
| $NO_X$ | nitrogen oxides |
| NSR | New Source Review |
| $O_2$ | oxygen |
| $O_3$ | ozone |
| $PM_{2.5}$ | fine particulate matter |

| | |
|---|---|
| ppm | parts per million |
| PSD | Prevention of Significant Deterioration |
| PUCT | Public Utility Commission of Texas |
| RACM | reasonably available control measures |
| RACT | reasonably available control technology |
| RFP | reasonable further progress |
| SIP | state implementation plan |
| $SO_2$ | sulfur dioxide |
| TAC | Texas Administrative Code |
| TACB | Texas Air Control Board |
| TCAA | Texas Clean Air Act |
| TCEQ | Texas Commission on Environmental Quality (commission) |
| TNRCC | Texas Natural Resource Conservation Commission |
| tpy | tons per year |
| TUC | Texas Utilities Code |
| VIC | Victoria |
| VOC | volatile organic compounds |

## LIST OF TABLES

Table 1-1: Public Hearing Information

Table 2-1: Percent Change in Eight-Hour Ozone Design Values

Table 2-2: Areas in EPA Region 6 Designated Nonattainment for the 2008 Eight-Hour Ozone NAAQS

Table 2-3: Monitor Sites and Eight-Hour Ozone Design Values in EPA Region 6

## LIST OF FIGURES

Figure 2-1: Counties Designated Nonattainment for the 2008 Eight-Hour Ozone NAAQS (EPA, 2012)

Figure 2-2: Eight-Hour Ozone Design Value Trends in Texas and Closest Nonattainment Areas

Figure 2-3: 2010 Eight-Hour Ozone Design Values at Monitors Located in Texas and Surrounding States

Figure 2-4: $NO_X$ Emission Trend for Texas EGUs from 1995 through 2011

# CHAPTER 1: GENERAL

## 1.1 BACKGROUND

"The History of the Texas State Implementation Plan (SIP)," a comprehensive overview of the SIP revisions submitted to the United States Environmental Protection Agency (EPA) by the State of Texas, is available on the Introduction to the SIP Web page (http://www.tceq.texas.gov/airquality/sip/sipintro.html#History) on the Texas Commission on Environmental Quality's (TCEQ) Web site (http://www.tceq.texas.gov).

## 1.2 INTRODUCTION

This proposed SIP revision for the transport of ozone under the 2008 Ozone National Ambient Air Quality Standards (NAAQS) describes how the Texas Commission on Environmental Quality (TCEQ) will meet the requirements of §110(a)(2)(D)(i)(I) of the Federal Clean Air Act (FCAA). States are required to submit a SIP revision within three years of promulgation of new or revised NAAQS that contains adequate provisions that prohibit any source or other type of emissions activity within the state from emitting any NAAQS pollutants in amounts that will:

- contribute significantly to nonattainment of the NAAQS for areas in other states; or
- interfere with maintenance of the NAAQS by any other state.

On March 12, 2008, the EPA strengthened the NAAQS for ground level ozone. The new primary eight-hour ozone standard, set at 0.075 parts per million (ppm) replaced the previous 1997 standard of 0.08 ppm. The EPA also decreased the secondary eight-hour ozone standard to the level of 0.075 ppm making it identical to the revised primary standard. However, the EPA did not initially implement the 2008 eight-hour ozone standard due to a subsequent reconsideration of the NAAQS. To date, the EPA has not published infrastructure or transport guidance for the 2008 ozone NAAQS.

Based on the control strategies already in place to reduce ozone precursor emissions in ozone nonattainment areas and an analysis of ozone trends in Texas, this SIP revision demonstrates that Texas meets the transport requirements of FCAA §110(a)(2)(D)(i)(I).

## 1.3 HEALTH EFFECTS

In 2008, the EPA revised the primary ozone standard to 0.075 ppm. To support the 2008 eight-hour primary ozone standard, the EPA provided information indicating that health effects can occur at levels lower than the previous standard. Exposure to relatively high levels of ambient ozone can aggravate asthma in some people. Repeated exposures to high levels of ozone can make people more susceptible to respiratory infection and lung inflammation and can aggravate preexisting respiratory diseases, such as bronchitis and emphysema.

Children are at a relatively higher risk from exposure to ozone when compared to adults, since they breathe more air per pound of body weight than adults and because children's respiratory systems are still developing. Children also spend a considerable amount of time outdoors during summer and during the start of the school year (August through October) when high ozone levels are typically recorded. Adults most at risk to ozone exposure are people working or exercising outdoors and individuals with preexisting respiratory diseases.

## 1.4 PUBLIC HEARING AND COMMENT INFORMATION

The TCEQ will hold a public hearing for this proposed SIP revision at the following time and location:

**Table 1-1: Public Hearing Information**

| City | Date | Time | Location |
|------|------|------|----------|
| Austin, TX | September 25, 2012 | 10:00 a.m. | Texas Commission on Environmental Quality, 12100 Park 35 Circle, Building E, Room 201S |

Written comments will be accepted via mail, fax, or through the eComments (http://www5.tceq.texas.gov/rules/ecomments/) system. All comments should reference the "Federal Clean Air Act, Sections 110(a)(1) and (2) Infrastructure and Transport State Implementation Plan Revision for the 2008 Ozone National Ambient Air Quality Standards" and Project Number 2012-004-SIP-NR. Comments may be submitted to Shelley Naik, MC 206, State Implementation Plan Team, Office of Air, Texas Commission on Environmental Quality, P.O. Box 13087, Austin, Texas 78711-3087 or faxed to (512) 239-5687. Electronic comments may be submitted through the eComments system. File size restrictions may apply to comments being submitted via the eComments system. Comments must be received by September 28, 2012.

An electronic version of this proposed SIP revision and appendices can be found at the TCEQ's SIP Hot Topics Web page (http://www.tceq.texas.gov/airquality/sip/Hottop.html).

## 1.5 SOCIAL AND ECONOMIC CONSIDERATIONS

Because rulemaking is not a part of this SIP revision, there are no changes that would have an impact on society or the economy.

## 1.6 FISCAL AND MANPOWER RESOURCES

The TCEQ has determined that its fiscal and manpower resources are adequate and will not be adversely affected through the implementation of this plan.

## 1.7 COORDINATION WITH LOCAL AGENCIES

The TCEQ has determined that there will be no assignment to local agencies. However, pre-existing assignments to local agencies regarding various enforcement activities remain in effect and could be used if enforcement activities are delegated to the TCEQ from the EPA.

## 1.8 ORGANIZATIONS RESPONSIBLE FOR DEVELOPMENT, IMPLEMENTATION AND ENFORCEMENT

The TCEQ is the agency delegated authority by the Texas Legislature regarding the protection of air quality in the State of Texas. Other local government entities have limited authority regarding air quality matters in the State of Texas.

## 1.9 DATA AVAILABILITY

The TCEQ affirms that it will retain all data used in the preparation of this SIP revision. All supporting documents and data are publicly available via the TCEQ SIP Web page (http://www.tceq.texas.gov/airquality/sip/) or are available from the TCEQ upon request.

## CHAPTER 2: REQUIRED CONTROL STRATEGY ELEMENTS

### 2.1 BACKGROUND

There are only two nonattainment areas for the 2008 eight-hour ozone National Ambient Air Quality Standards (NAAQS) in Texas: the Houston-Galveston-Brazoria (HGB) marginal nonattainment area and the Dallas-Fort Worth (DFW) moderate nonattainment area. The rest of the counties in Texas are designated unclassifiable/attainment for the 2008 eight-hour ozone NAAQS.

Texas has not yet put control measures in place to address the 2008 eight-hour ozone NAAQS, as attainment demonstration (AD) state implementation plan (SIP) revisions are not due until 2015. However, Texas already has numerous control measures in place to address ozone precursor emissions under previous ozone standards. These measures have resulted in significant decreases in eight-hour ozone design values from 1990 to 2010, with much of the decreases occurring from 2000 to 2010. With implementation of the 2008 ozone standard, decreases in design values are expected to continue.

Texas is not covered under the Clean Air Interstate Rule (CAIR) for the 1997 eight-hour ozone NAAQS, but is included for the 1997 fine particulate matter ($PM_{2.5}$) NAAQS. In addition to the annual nitrogen oxides ($NO_X$) reductions from the CAIR program, in 1999 the state implemented a strategy in the eastern part of Texas to reduce $NO_X$ emissions from electric generating units (EGU). These EGU strategies, along with other $NO_X$ and volatile organic compounds (VOC) reducing programs from 1997 eight-hour ozone SIP revisions, Early Action Compact (EAC) SIP revisions, 1997 eight-hour ozone maintenance plans, 1997 eight-hour ozone flex plans, one-hour ozone SIP revisions, a one-hour ozone flexible attainment region SIP revision, and one-hour ozone flexible agreements are described in this chapter. The combination of these $NO_X$ and VOC reduction programs fulfills the state's obligation to address transport for the 2008 eight-hour ozone NAAQS.

### 2.2 CONTROL STRATEGY OVERVIEW

Federal Clean Air Act (FCAA), §110(a)(2)(D)(i)(I) requires states to submit a SIP revision that contains adequate provisions to prohibit any source or other type of emissions activity within the state from emitting any air pollutants in amounts that will contribute significantly to nonattainment of the NAAQS for areas in other states or interfere with maintenance of the NAAQS in any other state. The following sections evaluate eight-hour ozone design value trends for nonattainment areas in Texas and in surrounding states and outline the control measures implemented in Texas to achieve emission reductions to demonstrate that emissions from Texas do not contribute significantly to nonattainment or interfere with maintenance of the 2008 ozone NAAQS in another state.

#### 2.2.1 Significant Contribution to Nonattainment and Interference with Maintenance Elements

##### 2.2.1.1 Technical Analysis

Ozone ($O_3$) is a secondary pollutant that is created through a photochemical reaction between oxygen ($O_2$), $NO_X$, and VOC. $NO_X$ refers to the combination of nitrogen oxide (NO) and nitrogen dioxide ($NO_2$). The following reactions show how $NO_X$, VOC, and $O_2$ react in the presence of sunlight (hv) to form $O_3$:

$$O_2 + NO_2 \overset{h\nu}{\leftrightarrow} O_3 + NO$$

$$NO + VOC \rightarrow NO_2$$

The amount of ozone formed depends on several factors. Meteorological conditions, such as wind direction and speed, temperature, mixing height, solar radiation, and other parameters, affect the rates at which ozone formation occurs. The types and the concentration of precursors present can affect net reactivity of precursor compounds found in a plume of emissions.

Precursor compounds, $NO_X$ and VOC, also exist under natural conditions. Ozone is created and destroyed on a natural cycle according to atmospheric conditions and chemical concentrations, even in the absence of additional anthropogenic precursor sources. This natural ozone formation is known as "natural background" ozone and is the starting point for measuring the contribution of ozone and precursors attributable to human activity. Within an urban area, not all ozone formation is necessarily caused by emissions produced locally because anthropogenic precursors, along with ozone formed by them, are often transported over long distances. Because the amount of ozone formed depends on so many other variables, it can be difficult to quantify the exact contribution from specific sources.

The EPA revised the eight-hour ozone NAAQS to 0.075 parts per million (ppm) in 2008. On April 30, 2012, the EPA finalized designations for the 2008 eight-hour ozone NAAQS. *Figure 2-1: Counties Designated Nonattainment for the 2008 Eight-Hour Ozone NAAQS (EPA, 2012)* shows a map of the counties the EPA designated nonattainment. The map shows that two areas in Texas were designated nonattainment. The DFW area, which includes Collin, Dallas, Denton, Ellis, Johnson, Kaufman, Parker, Rockwall, Tarrant, and Wise Counties, and the HGB area, which includes Brazoria, Chambers, Fort Bend, Galveston, Harris, Liberty, Montgomery, and Waller Counties.



**Final Designations**

Unclassifiable / Attainment

Unclassifiable

Nonattainment (Partial County)

Nonattainment (Whole County)

Notes:
EPA does not intend to designate as nonattainment any areas outside the Continental US.

**Figure 2-1: Counties Designated Nonattainment for the 2008 Eight-Hour Ozone NAAQS (EPA, 2012)**

Figure 2-2: *Eight-Hour Ozone Design Value Trends in Texas and Closest Nonattainment Areas* shows the eight-hour ozone design value trends from the nonattainment areas in Texas and nonattainment areas in surrounding states. The surrounding nonattainment areas evaluated below are those that are geographically closest to Texas. The design values in Texas were over 6 ppb higher in 2010 than the design values in other states; however, the overall design value trend was decreasing in all areas. Although all areas had a decrease in the eight-hour ozone design value, the majority of areas experienced most of those decreases after 2000. Table 2-1: *Percent Change in Eight-Hour Ozone Design Values* shows the percent change in the eight-hour ozone design values from Texas and the closest nonattainment areas in other states (Arizona, Arkansas, Colorado, Illinois, Indiana, Louisiana, Mississippi, Missouri, Tennessee, and Wisconsin). The minus sign indicates a percent decrease. The table shows that the percent change from 2000 through 2010, which ranged from a 9% decrease to a 25% decrease, was much larger than the percent change from 1990 through 2000, which ranged from a 6% increase to an 18% decrease. The HGB area had the second largest decrease in eight-hour ozone design values from 1990 through 2010, 29 %, the majority of that occurring after 2000.



**Figure 2-2: Eight-Hour Ozone Design Value Trends in Texas and Closest Nonattainment Areas**

**Table 2-1: Percent Change in Eight-Hour Ozone Design Values**

| Nonattainment Area | Percent Change 1990-2010 | Percent Change 1990-2000 | Percent Change 2000-2010 |
|---|---|---|---|
| Chicago-Naperville | -35 | -18 | -20 |
| Houston-Galveston-Brazoria | -29 | -6 | -25 |
| St. Louis-St. Charles-Farmington | -25 | -8 | -18 |
| Sheboygan | -24 | -10 | -15 |
| Baton Rouge | -23 | -3 | -20 |
| Memphis | -20 | 2 | -22 |
| Dallas-Fort-Worth | -18 | -3 | -16 |
| Denver-Boulder-Greeley-Ft. Collins | -9 | 0 | -9 |
| Phoenix-Mesa | -6 | 6 | -11 |

EPA Region 6, the region where Texas is located, has two other nonattainment areas besides those in Texas: the Baton Rouge area in Louisiana and the Memphis area in Arkansas, Mississippi, and Tennessee. Table 2-2: *Areas in EPA Region 6 Designated Nonattainment for the 2008 Eight-Hour Ozone NAAQS* lists the counties in each area that were designated

nonattainment and shows the approximate distance from each nonattainment area to the Texas nonattainment areas. Although the Memphis nonattainment area spans three states (Arkansas, Mississippi, and Tennessee), only one of those states, Arkansas, is located within Region 6. These areas can be seen more clearly on the map displayed in Figure 2-3: *2010 Eight-Hour Ozone Design Values at Monitors Located in Texas and Surrounding States*.

**Table 2-2: Areas in EPA Region 6 Designated Nonattainment for the 2008 Eight-Hour Ozone NAAQS**

| Area | State | Counties Designated Nonattainment by the EPA | Approximate Distance from HGB (miles) | Approximate Distance from DFW (miles) |
|------|-------|----------------------------------------------|---------------------------------------|---------------------------------------|
| Baton Rouge | Louisiana | Ascension<br>East Baton Rouge<br>Iberville<br>Livingston<br>West Baton Rouge | 260 | 370 |
| Memphis | Arkansas<br>Mississippi<br>Tennessee | Crittenden<br>DeSoto (partial county)<br>Shelby | 485 | 420 |

Figure 2-3 also shows the 2010 eight-hour ozone design values from monitors in Texas and the surrounding Region 6 states. Design values are from the EPA's Air Quality System (AQS). The pink and red dots represent monitors with a design value that is above the 2008 eight-hour ozone NAAQS, and the yellow and blue dots represent monitors with a design value below the 2008 eight-hour ozone NAAQS. Attainment status is based on 2010 design values. Nonattainment areas are outlined on the map in light and dark brown. The map shows that there are several monitors located between Texas and the two closest nonattainment areas, Memphis and Baton Rouge. The monitors located between Texas and Baton Rouge show attainment of the 2008 eight-hour ozone NAAQS. This result suggests that local emissions contribute to these areas' nonattainment status. In addition, there are sources of ozone precursors located between Texas and the other nonattainment areas. The amount of ozone in other nonattainment areas from precursor sources outside of Texas and the amount of ozone coming from Texas into other nonattainment areas was not calculated. Because there are additional precursor sources located between Texas and other areas, it is difficult to determine how much ozone in other areas would be due to transport and how much ozone would be due to those sources of ozone precursors.

Ozone season wind patterns from the DFW and the HGB areas were extensively investigated in the 2010 DFW Ozone Conceptual Model (TCEQ, 2011) and in the 2009 HGB Ozone Conceptual Model (TCEQ, 2010). Those analyses showed that in the DFW area ozone season winds are typically out of the south to the east. In the HGB area, winds in the early part of the ozone season, May through July, are typically from the south. Then, in the later part of the ozone season, August and September, winds switch to a more east to northeast direction. In both areas, very few winds are observed from the west and northwest, the directions which would be anticipated to transport ozone to Memphis and Baton Rouge.



**Figure 2-3: 2010 Eight-Hour Ozone Design Values at Monitors Located in Texas and Surrounding States**

2.2.1.2  Monitoring Sites

In 2010, there were 167 ozone monitors located within EPA Region 6. The location of monitors with valid 2010 eight-hour ozone design values are displayed in the map in Figure 2-3. A complete list of monitors, including those without valid design values, is shown in Table 2-3: *Monitor Sites and Eight-Hour Ozone Design Values in EPA Region 6*. The data from these monitors were reported to the EPA's AQS. Texas has the most monitors, 78, in Region 6. Oklahoma has 29 monitors, New Mexico and Louisiana have 26 monitors each, and Arkansas has 8 monitors. Note that the monitor numbers include tribal monitors. Although there are several monitors located near the Texas border in Louisiana and New Mexico, there are no monitors near the Texas border in Oklahoma and Arkansas.

**Table 2-3: Monitor Sites and Eight-Hour Ozone Design Values in EPA Region 6**

| State | County Name | Airs Number and POC Number | Site Name (If Applicable) | 2010 Eight-Hour Ozone Design Value | Nonattainment Area (If Applicable) |
|---|---|---|---|---|---|
| Arkansas | Crittenden | 050350005-1 | Marion | 74 | Memphis |
| Arkansas | Newton | 051010002-1 | Deer | 66 | |
| Arkansas | Polk | 051130003-1 | Eagle Mountain | 70 | |

| State | County Name | Airs Number and POC Number | Site Name (If Applicable) | 2010 Eight-Hour Ozone Design Value | Nonattainment Area (If Applicable) |
|---|---|---|---|---|---|
| Arkansas | Pulaski | 051190007-1 | Parr | 70 | |
| Arkansas | Pulaski | 051191002-1 | Nlr Airport | 70 | |
| Arkansas | Pulaski | 051191008-1 | Doyle Springs Road | 67 | |
| Arkansas | Van Buren | 051410001-1 | | | |
| Arkansas | Washington | 051430005-1 | Springdale | 64 | |
| Louisiana | Ascension | 220050004-1 | | 75 | Baton Rouge |
| Louisiana | Bossier | 220150008-2 | | 74 | |
| Louisiana | Caddo | 220170001-2 | | 72 | |
| Louisiana | Calcasieu | 220190002-1 | | 74 | |
| Louisiana | Calcasieu | 220190008-1 | | 63 | |
| Louisiana | Calcasieu | 220190009-1 | | 74 | |
| Louisiana | East Baton Rouge | 220330003-1 | | 78 | Baton Rouge |
| Louisiana | East Baton Rouge | 220330009-1 | Capitol | 73 | Baton Rouge |
| Louisiana | East Baton Rouge | 220330013-1 | Locate At Pride / Zachary | 72 | Baton Rouge |
| Louisiana | East Baton Rouge | 220331001-2 | | 72 | Baton Rouge |
| Louisiana | Iberville | 220470007-1 | | 71 | |
| Louisiana | Iberville | 220470009-1 | Off LA Hwy 75 Near Water Treatment Facility | 73 | Baton Rouge |
| Louisiana | Iberville | 220470012-1 | Replaced Site Id 220470002 | 73 | Baton Rouge |
| Louisiana | Jefferson | 220511001-2 | Kenner | 75 | |
| Louisiana | Lafayette | 220550007-1 | Replace Site Id #220550001 | 72 | |
| Louisiana | Lafourche | 220570004-1 | Nicholls State University Farm | 71 | |
| Louisiana | Livingston | 220630002-1 | | 75 | Baton Rouge |
| Louisiana | Orleans | 220710012-2 | City Park | 71 | |
| Louisiana | Ouachita | 220730004-1 | Monroe Airport | 64 | |
| Louisiana | Pointe Coupee | 220770001-1 | | 75 | |
| Louisiana | St. Bernard | 220870009-1 | Chalmette High School | 69 | |
| Louisiana | St. Charles | 220890003-1 | | 70 | |
| Louisiana | St. James | 220930002-1 | | 68 | |
| Louisiana | St. John the Baptist | 220950002-1 | | 73 | |
| Louisiana | St. Tammany | 221030002-1 | | | |
| Louisiana | West Baton Rouge | 221210001-1 | | 71 | Baton Rouge |
| New Mexico | Bernalillo | 350010023-1 | Del Norte High School | 64 | |
| New Mexico | Bernalillo | 350010024-1 | South East Heights | 66 | |

| State | County Name | Airs Number and POC Number | Site Name (If Applicable) | 2010 Eight-Hour Ozone Design Value | Nonattainment Area (If Applicable) |
|---|---|---|---|---|---|
| New Mexico | Bernalillo | 350010027-1 | Westside Taylor Ranch | 67 | |
| New Mexico | Bernalillo | 350010029-1 | South Valley Mountain View | 66 | |
| New Mexico | Bernalillo | 350010032-1 | Westside | | |
| New Mexico | Bernalillo | 350011012-1 | Far North East Heights | 68 | |
| New Mexico | Bernalillo | 350011013-1 | North Valley | 67 | |
| New Mexico | Dona Ana | 350130008-2 | | 64 | |
| New Mexico | Dona Ana | 350130017-1 | | 64 | |
| New Mexico | Dona Ana | 350130020-1 | 6Zk 3 Mi North Of El Paso, TX On East Side Of Franklin Mountains | 66 | |
| New Mexico | Dona Ana | 350130021-1 | 6Zm 2Mi From Mt Cristo Rey Where NM, TX, And Mexico Join Together | 70 | |
| New Mexico | Dona Ana | 350130022-1 | 6Zn US-Mexico Border Crossing. Both Sides Uninhabited As Of 1996. | 67 | |
| New Mexico | Dona Ana | 350130023-1 | 6Zq In SE Corner Of NM Highway Dept. Yards In Las Cruces | 63 | |
| New Mexico | Eddy | 350151005-1 | 5Zr On Blm Land Bordering Residential Area Outside Carlsbad City L | 67 | |
| New Mexico | Eddy | 350153001-1 | | | |
| New Mexico | Grant | 350171003-1 | 7T Alongside Softball Field And Near Chino Copper Smelter | 63 | |
| New Mexico | Lea | 350250008-1 | Hobbs-Jefferson | 59 | |
| New Mexico | Luna | 350290003-1 | | 57 | |
| New Mexico | Sandoval | 350431001-1 | | 60 | |

| State | County Name | Airs Number and POC Number | Site Name (If Applicable) | 2010 Eight-Hour Ozone Design Value | Nonattainment Area (If Applicable) |
|---|---|---|---|---|---|
| New Mexico | Sandoval | 350439004-1 | Pueblo Of Jemez Tribal Trust Lands, Department Of Resource Protection | | |
| New Mexico | San Juan | 350450009-1 | SE Corner Of NM Highway Dept Yard | 60 | |
| New Mexico | San Juan | 350450018-1 | | | |
| New Mexico | San Juan | 350451005-1 | | 63 | |
| New Mexico | San Juan | 350451233-1 | | | |
| New Mexico | Santa Fe | 350490021-1 | | 63 | |
| New Mexico | Valencia | 350610008-1 | | | |
| Oklahoma | Adair | 400019009-1 | Stilwell | 67 | |
| Oklahoma | Caddo | 400159008-1 | Anadarko Pm2.5 | | |
| Oklahoma | Canadian | 400170101-1 | OKC West-(Yukon) | 71 | |
| Oklahoma | Cherokee | 400219002-1 | Tahlequah Shelter | 68 | |
| Oklahoma | Cleveland | 400270049-1 | Moore Water Tower | 69 | |
| Oklahoma | Comanche | 400310649-1 | Lawton South | | |
| Oklahoma | Comanche | 400310651-1 | Lawton North | 69 | |
| Oklahoma | Creek | 400370144-1 | Mannford | 70 | |
| Oklahoma | Dewey | 400430860-1 | Seiling Municipal Airport | 66 | |
| Oklahoma | Jefferson | 400670671-1 | Located Behind Lake Waurika Corp. Of Eng. Office | | |
| Oklahoma | Kay | 400719003-1 | Ponca Tribe | | |
| Oklahoma | Kay | 400719010-1 | Newkirk Improve | 66 | |
| Oklahoma | Lincoln | 400819005-1 | Sac and Fox Nation, Stroud | 60 | |
| Oklahoma | Love | 400850300-1 | Weather Station - Burnyeyville Mesonet Site | | |
| Oklahoma | McClain | 400871073-1 | Goldsby | 68 | |
| Oklahoma | McCurtain | 400892001-1 | Smithville Site | | |
| Oklahoma | Mayes | 400979014-1 | Cherokee Heights | 67 | |
| Oklahoma | Oklahoma | 401090033-1 | OKC Central-Osdh | 72 | |
| Oklahoma | Oklahoma | 401090096-1 | Choctaw | 72 | |
| Oklahoma | Oklahoma | 401091037-1 | OKC North | 74 | |
| Oklahoma | Osage | 401139020-1 | | | |
| Oklahoma | Ottawa | 401159004-1 | Quapaw Shelter | 65 | |

| State | County Name | Airs Number and POC Number | Site Name (If Applicable) | 2010 Eight-Hour Ozone Design Value | Nonattainment Area (If Applicable) |
|-------|-------------|---------------------------|---------------------------|-----------------------------------|-----------------------------------|
| Oklahoma | Pittsburg | 401210415-1 | Mcalester Municipal Airport | 67 | |
| Oklahoma | Sequoyah | 401359015-1 | Marble City Shelter | | |
| Oklahoma | Sequoyah | 401359021-1 | | | |
| Oklahoma | Tulsa | 401430137-1 | Tulsa North (Skiatook) | 75 | |
| Oklahoma | Tulsa | 401430174-1 | Tulsa South | 67 | |
| Oklahoma | Tulsa | 401430178-1 | Tulsa East | 70 | |
| Oklahoma | Tulsa | 401431127-1 | North Tulsa - Fire Station#24 | 70 | |
| Texas | Bell | 480271047-1 | Killeen Skylark Field | | |
| Texas | Bexar | 480290032-2 | San Antonio Northwest | 75 | |
| Texas | Bexar | 480290052-1 | Camp Bullis | 75 | |
| Texas | Bexar | 480290055-1 | CPS Pecan Valley | | |
| Texas | Bexar | 480290059-1 | Calaveras Lake | 67 | |
| Texas | Bexar | 480290622-1 | Heritage Middle School | | |
| Texas | Brazoria | 480391004-1 | Manvel Croix Park | 84 | HGB |
| Texas | Brazoria | 480391016-1 | Lake Jackson | 74 | HGB |
| Texas | Brewster | 480430101-1 | Bravo Big Bend | 64 | |
| Texas | Cameron | 480610006-1 | Brownsville | 65 | |
| Texas | Collin | 480850005-1 | Frisco | 77 | DFW |
| Texas | Dallas | 481130069-3 | Dallas Hinton | | DFW |
| Texas | Dallas | 481130075-1 | Dallas North #2 | 78 | DFW |
| Texas | Dallas | 481130087-1 | Dallas Redbird Airport Execut | 78 | DFW |
| Texas | Denton | 481210034-1 | Denton Airport South | 80 | DFW |
| Texas | Denton | 481211032-1 | Pilot Point | 78 | DFW |
| Texas | Ellis | 481390016-1 | Midlothian Ofw | 72 | DFW |
| Texas | Ellis | 481391044-1 | Italy | 68 | DFW |
| Texas | El Paso | 481410029-1 | Ivanhoe | 69 | |
| Texas | El Paso | 481410037-2 | El Paso UTEP | 71 | |
| Texas | El Paso | 481410044-1 | El Paso Chamizal | 70 | |
| Texas | El Paso | 481410055-1 | Ascarate Park Se | 69 | |
| Texas | El Paso | 481410057-1 | Socorro | 68 | |
| Texas | El Paso | 481410058-1 | Skyline Park | 71 | |
| Texas | Galveston | 481671034-1 | Galveston 99Th Street | | HGB |
| Texas | Gregg | 481830001-2 | Longview | 74 | |
| Texas | Harris | 482010024-2 | Houston Aldine | 83 | HGB |
| Texas | Harris | 482010026-3 | Channelview | 78 | HGB |
| Texas | Harris | 482010029-2 | Northwest Harris County | 81 | HGB |
| Texas | Harris | 482010046-1 | Houston North Wayside | 71 | HGB |
| Texas | Harris | 482010047-2 | Lang | 76 | HGB |
| Texas | Harris | 482010051-2 | Houston Croquet | 77 | HGB |
| Texas | Harris | 482010055-1 | Houston Bayland Park | 82 | HGB |

| State | County Name | Airs Number and POC Number | Site Name (If Applicable) | 2010 Eight-Hour Ozone Design Value | Nonattainment Area (If Applicable) |
|---|---|---|---|---|---|
| Texas | Harris | 482010062-1 | Houston Monroe | 72 | HGB |
| Texas | Harris | 482010066-1 | Houston Westhollow | 75 | HGB |
| Texas | Harris | 482010070-1 | Houston Regional Office | 73 | HGB |
| Texas | Harris | 482010075-1 | Houston Texas Avenue | 74 | HGB |
| Texas | Harris | 482010416-1 | Park Place | 77 | HGB |
| Texas | Harris | 482011015-1 | Lynchburg Ferry | | HGB |
| Texas | Harris | 482011034-2 | Houston East | 76 | HGB |
| Texas | Harris | 482011035-3 | Clinton | 76 | HGB |
| Texas | Harris | 482011039-1 | Houston Deer Park #2 | 81 | HGB |
| Texas | Harris | 482011050-1 | Seabrook Friendship Park | 75 | HGB |
| Texas | Harrison | 482030002-1 | Karnack | 70 | |
| Texas | Hays | 482090614-1 | Dripping Springs School | | |
| Texas | Hidalgo | 482150042-1 | Edinburg | | |
| Texas | Hidalgo | 482150043-1 | Mission | 61 | |
| Texas | Hidalgo | 482151048-1 | Mercedes | | |
| Texas | Hood | 482210001-1 | Granbury | 75 | |
| Texas | Hunt | 482311006-1 | Greenville | 64 | |
| Texas | Jefferson | 482450009-2 | Beaumont Downtown | 72 | |
| Texas | Jefferson | 482450011-1 | Port Arthur West | 74 | |
| Texas | Jefferson | 482450022-1 | Hamshire | 70 | |
| Texas | Jefferson | 482450101-1 | South East Texas Regional Planning Commission (SETRPC) 40 Sabine Pass | | |
| Texas | Jefferson | 482450102-1 | SETRPC 43 Jefferson Co Airport | 73 | |
| Texas | Jefferson | 482450628-1 | SETRPC Port Arthur | 68 | |
| Texas | Jefferson | 482451035-1 | Nederland High School | 70 | |
| Texas | Johnson | 482510003-1 | Cleburne Airport | 80 | DFW |
| Texas | Kaufman | 482570005-1 | Kaufman | 67 | DFW |
| Texas | McLennan | 483091037-1 | Waco Mazanec | 70 | |
| Texas | Montgomery | 483390078-1 | Conroe Relocated | 71 | HGB |
| Texas | Navarro | 483491051-1 | Corsicana Airport | | |
| Texas | Nueces | 483550025-2 | Corpus Christi West | 69 | |
| Texas | Nueces | 483550026-1 | Corpus Christi Tuloso | 71 | |
| Texas | Orange | 483611001-2 | West Orange | 71 | |
| Texas | Orange | 483611100-1 | SETRPC 42 Mauriceville | 68 | |
| Texas | Parker | 483670081-1 | Parker County | 75 | DFW |
| Texas | Rockwall | 483970001-1 | Rockwall Heath | 74 | DFW |
| Texas | Smith | 484230007-1 | Tyler Airport Relocated | 73 | |
| Texas | Tarrant | 484390075-1 | Eagle Mountain Lake | 85 | DFW |
| Texas | Tarrant | 484391002-2 | Fort Worth Northwest | 79 | DFW |
| Texas | Tarrant | 484392003-2 | Keller | 86 | DFW |

| State | County Name | Airs Number and POC Number | Site Name (If Applicable) | 2010 Eight-Hour Ozone Design Value | Nonattainment Area (If Applicable) |
|-------|-------------|----------------------------|---------------------------|-----------------------------------|-------------------------------------|
| Texas | Tarrant | 484393009-1 | Grapevine Fairway Arlington Municipal | 82 | DFW |
| Texas | Tarrant | 484393011-1 | Airport | 79 | DFW |
| Texas | Travis | 484530014-2 | Austin Northwest | 74 | |

### 2.2.1.3 References

EPA. "Final Nonattainment Areas for the 2008 Ozone Standards." Last modified May 1, 2012. http://www.epa.gov/airquality/ozonepollution/designations/2008standards/final/finalmap.htm.

TCEQ. HGB Attainment Demonstration SIP Revision for the 1997 Eight-Hour Ozone Standard. Appendix C: Photochemical Modeling for the HGB Attainment Demonstration SIP. March, 10, 2010. http://www.tceq.texas.gov/airquality/sip/HGB_eight_hour.html.

TCEQ. Dallas–Fort Worth Attainment Demonstration State Implementation Plan Revision for the 1997 Eight-Hour Ozone Standard. Appendix D: Conceptual Modeling for the DFW Attainment Demonstration SIP Revisions for the 1997 Eight-Hour Ozone Standard. December 7, 2011. http://www.tceq.texas.gov/airquality/sip/dfw_revisions.html.

### 2.2.2 Emissions Reductions from EGUs

Texas is not covered under the CAIR for the 1997 eight-hour ozone NAAQS, but is included for the 1997 $PM_{2.5}$ NAAQS. In addition to the annual $NO_X$ reductions from the CAIR program, in 1999, the state implemented a strategy in the eastern part of Texas to reduce $NO_X$ emissions from EGUs. The control strategies specific to EGUs include:

- utility electric generation in ozone nonattainment areas;
- utility electric generation in east and central Texas; and
- Texas-specific legislation from the 1999 76th session in Senate Bill 7 that requires $NO_X$ reductions through a regional cap and trade program.

These strategies have resulted in significant $NO_X$ emissions from EGUs. Figure 2-4: *$NO_X$ Emission Trend for Texas EGUs from 1995 through 2011* shows the $NO_X$ emission reductions from EGUs from 1995 through 2011.



**Figure 2-4: NOx Emission Trend for Texas EGUs from 1995 through 2011**

2.2.2.1 CAIR and Cross-State Air Pollution Rule (CSAPR)

In March 2005, the EPA issued CAIR to address EGU emissions that transport from one state to another. The rule incorporates the use of three cap and trade programs to reduce sulfur dioxide ($SO_2$) and $NO_X$: the ozone-season $NO_X$ trading program, the annual $NO_X$ trading program, and the annual $SO_2$ trading program.

Texas was not included in the ozone season $NO_X$ program but was included for the annual $NO_X$ and $SO_2$ programs. As such, Texas must make necessary reductions in annual $SO_2$ and $NO_X$ emissions from new and existing EGUs to demonstrate that emissions from Texas do not contribute to nonattainment or interfere with maintenance of the $PM_{2.5}$ NAAQS in another state. CAIR consists of two phases for implementing necessary $NO_X$ and $SO_2$ reductions. Phase I addresses required reductions from 2009 through 2014. Phase II addresses reductions in 2015 and thereafter. In July 2006, the TCEQ adopted a SIP revision to address how the state would meet the emissions allowance allocation budgets for $NO_X$ and $SO_2$ established by the EPA to meet the federal obligations under CAIR. The TCEQ adopted a second CAIR-related SIP revision in February 2010. This revision incorporated various federal rule revisions that the EPA had promulgated since the TCEQ's initial submittal. It also incorporated revisions to 30 Texas Administrative Code (TAC), Chapter 101 resulting from legislation during the 80th Texas Legislature.

A December 2008 court decision found flaws in CAIR, but kept CAIR requirements in place temporarily while directing the EPA to issue a replacement rule. In July 2011, the EPA finalized CSAPR to meet FCAA requirements and respond to the court's order to issue a replacement

program. Texas is included in CSAPR for ozone season $NO_X$, annual $NO_X$, and annual $SO_2$ due to the EPA's determination that Texas significantly contributes to nonattainment or interferes with maintenance of the 1997 eight-hour ozone NAAQS and the 1997 and 2006 $PM_{2.5}$ NAAQS in other states. As a result of the numerous EGU emission reduction strategies already in place in Texas, as described in Section 2.2.2: *Emissions Reductions from EGUs*, the annual and ozone season $NO_X$ reduction requirements from CSAPR are fairly small. The CSAPR requires an approximate 7% reduction in annual $NO_X$ emissions and less than 5% reduction in ozone season $NO_X$ emissions.

However, ongoing federal litigation has put CSAPR on hold. On December 31, 2011 the United States District Court of Appeals for the D.C. Circuit issued a stay of CSAPR pending judicial review. In its stay order, the court also directed the EPA to continue to implement CAIR while the case is under review. Therefore, all the requirements in CAIR are federally enforceable and all sources that are covered by CAIR must continue to comply with the requirements of the program.

## 2.2.2.2  Utility Electric Generation in Ozone Nonattainment Areas

The rules in 30 TAC Chapter 117, Subchapter C establish $NO_X$ emission specifications for utility electric generation for each ozone nonattainment area in Texas. These rules apply to each electric generating facility that generates electric energy for compensation, or are owned or operated by a municipality or Public Utility Commission of Texas (PUCT) regulated utility or any of its successors, regardless of whether the successor is a municipality or is regulated by the PUCT.

In the HGB area, the owner or operator of each affected utility boiler, auxiliary steam boiler, or stationary gas turbine must demonstrate compliance with the $NO_X$ emission specifications through a system cap and participation in the HGB area Mass Emissions Cap and Trade (MECT) Program. Affected sources were required to comply with the MECT Program rules beginning January 1, 2002, and comply with the system cap requirements by March 31, 2004. Additional information about the MECT Program is available in Section 2.2.3.1: *HGB Area MECT Program.*

In the DFW area, each utility boiler that is part of a large system must meet a $NO_X$ emission rate of 0.033 pound per million British thermal units (lb/MMBtu) heat input, and each utility boiler that is part of a small system must meet a $NO_X$ emission rate of 0.06 lb/MMBtu heat input. Compliance with the $NO_X$ emission rates may be demonstrated on a daily average basis, a system-wide heat input weighted average basis for utility boilers that are part of a large system, or through the use of emission credits. Affected sources were required to comply with the rules by March 1, 2009.

In the Beaumont-Port Arthur (BPA) 1997 eight-hour ozone maintenance area, each utility boiler must meet a $NO_X$ emission rate of 0.10 lb/MMBtu heat input. Compliance with the $NO_X$ emission rates must be demonstrated on a daily average, through the use of a system cap, or through the use of emission credits. Affected sources were required to comply with the rules by May 1, 2005.

## 2.2.2.3  Utility Electric Generation in East and Central Texas

The rules in 30 TAC Chapter 117, Subchapter E, Division 1 limit $NO_X$ emissions from utility electric generation in Atascosa, Bastrop, Bexar, Brazos, Calhoun, Cherokee, Fannin, Fayette, Freestone, Goliad, Gregg, Grimes, Harrison, Henderson, Hood, Hunt, Lamar, Limestone, Marion, McLennan, Milam, Morris, Nueces, Parker, Red River, Robertson, Rusk, Titus, Travis,

Victoria, or Wharton Counties. The rules apply to each utility electric power boiler and stationary gas turbine (including duct burners used in turbine exhaust ducts) that generate electric energy for compensation; is owned by an electric cooperative, independent power producer, municipality, river authority, or public utility; and was placed into service before December 31, 1995. Utility electric power boilers must meet a $NO_x$ emission rate of 0.14 lb/MMBtu for gas-fired units and 0.165 lb/MMBtu for coal-fired units. Stationary gas turbines (including duct burners used in turbine exhaust ducts) must meet an annual average $NO_x$ emission rate of 0.14 lb/MMBtu for units subject to Texas Utilities Code (TUC), §39.264 (except §39.264(i)) or 0.15 lb/MMBtu for units not subject to TUC, §39.264 and units designated in accordance with TUC, §39.264(i). Compliance with the $NO_x$ emission rates is based on average heat input for a calendar year. Affected sources were required to comply with the rules by May 1, 2005.

### 2.2.2.4 Senate Bill 7 (76th Texas Legislature)

Senate Bill 7, 76th Texas Legislature session, requires a cap and trade program for previously grandfathered or unpermitted, electric generating facilities and other electric generating facilities that choose to participate in the cap and trade program. The $NO_x$ allowances were determined using a $NO_x$ rate of 0.14 lb $NO_x$/MMBtu for grandfathered facilities in the East Texas region and a $NO_x$ rate of 0.195 lb $NO_x$/MMBtu for the grandfathered facilities in the West Texas and El Paso regions.

The first control period for this program began on May 1, 2003. The last revision on this rule package, 30 TAC Chapter 101, Subchapter H, Division 2, was published in the *Texas Register* on September 10, 1999, and the public comment period ended on October 11, 1999. The adopted rule package was published in the *Texas Register* on January 7, 2000. The effective date of the rule package was January 11, 2000.

## 2.2.3 Emission Reductions from Other Sources

Texas has implemented numerous control measures to reduce ozone precursor emissions from a variety of sources. These measures have resulted in significant decreases in eight-hour ozone design values from 1990 through 2010. This section details some of the controls for major stationary sources and regional controls implemented as part of the state's strategy to address the one-hour and 1997 eight-hour ozone standards.

### 2.2.3.1 HGB Area MECT Program

The MECT Program rules in 30 TAC Chapter 101, Subchapter H, Division 3 established a mandatory annual $NO_x$ emission cap on all existing stationary sources in the HGB area that emit at least 10 tons per year (tpy) of $NO_x$ and are subject to the $NO_x$ emission specifications in 30 TAC Chapter 117, Subchapter B, Division 3 and Subchapter C, Division 3. Affected units include: utility boilers, auxiliary steam boilers, or stationary gas turbines; industrial, commercial, or institutional boilers and process heaters; stationary gas turbines; stationary internal combustion engines; fluid catalytic cracking units (including carbon monoxide boilers, carbon monoxide furnaces, and catalyst regenerator vents); boilers and industrial furnaces that were regulated as existing facilities by the EPA under 40 Code of Federal Regulations Part 266, Subpart H (as in effect on June 9, 1993); duct burners used in turbine exhaust ducts; pulping liquor recovery furnaces; lime kilns; lightweight aggregate kilns; heat treating furnaces and reheat furnaces; magnesium chloride fluidized bed dryers; and incinerators.

The MECT program cap is enforced by the allocation, trading, and banking of allowances. An allowance is the equivalent of one ton of $NO_x$ emissions. The MECT program cap was implemented on January 1, 2002, at historical emission levels, with mandatory $NO_x$ reductions

increasing over time until achieving the final cap by April 1, 2007. All new or modified sources in the HGB area must obtain unused allowances from other sources already participating in the MECT program to offset any increased $NO_X$ emissions.

### 2.2.3.2  Cement Kilns

The rules in 30 TAC Chapter 117, Subchapter E, Division 1 limit $NO_X$ emissions from cement kilns in Bexar, Comal, Ellis, Hays, and McLennan Counties. The rules require cement kilns in Bexar, Comal, Hays, and McLennan Counties to reduce $NO_X$ emissions 30% below 1996 levels or to meet a $NO_X$ emissions cap of 6.0 pounds of $NO_X$ per ton of cement clinker produced (lb/ton of clinker) for wet kilns; 5.1 lb/ton of clinker for dry kilns; 3.8 lb/ton of clinker for preheater kilns; and 2.8 lb/ton of clinker for preheater-precalciner or precalciner kilns. Affected sources were required to comply with the rules by May 1, 2005.

These rules also require cement kilns in Ellis County to meet a $NO_X$ emission ozone-season cap based on kiln configuration and production during calendar years 2003 through 2005. The cap limits $NO_X$ emissions from dry kilns to no more than 1.7 lb/ton of clinker and limits $NO_X$ emissions from wet kilns to no more than 3.4 lb/ton of clinker. Emissions from any kilns installed after 2005 must be offset with emission reductions at the site or through emission reduction credits. Affected sources were required to comply with the rules by March 1, 2009. The Ellis County cement kiln cap is part of the May 2007 DFW AD SIP Revision and the TCEQ estimates that implementation of these rules results in approximately 9.69 tons per day $NO_X$ emission reductions.

### 2.2.3.3  East Texas Engines

The rules in 30 TAC Chapter 117, Subchapter E, Division 4 limit $NO_X$ emissions from certain engines located in Anderson, Brazos, Burleson, Camp, Cass, Cherokee, Franklin, Freestone, Gregg, Grimes, Harrison, Henderson, Hill, Hopkins, Hunt, Lee, Leon, Limestone, Madison, Marion, Morris, Nacogdoches, Navarro, Panola, Rains, Robertson, Rusk, Shelby, Smith, Titus, Upshur, Van Zandt, and Wood Counties. The rules apply to stationary, gas-fired, reciprocating internal combustion engines rated 240 horsepower (hp) and larger. Rich-burn gas-fired internal combustion engines rated less than 500 hp must limit $NO_X$ emissions to 1.0 grams per horsepower-hour (g/hp-hr). Rich-burn engines rated 500 hp or greater must limit $NO_X$ emissions to 0.60 g/hp-hr for landfill gas-fired engines or 0.05 g/hp-hr for all other rich-burn engines. Affected sources were required to comply with the rules by March 1, 2010.

The East Texas combustion rules reduce $NO_X$ emissions and ozone air pollution transport into the DFW area. While these rules are part of the May 2007 DFW AD SIP Revision for the 1997 eight-hour ozone NAAQS, the Northeast Texas Early Action Compact area in east Texas also benefits from $NO_X$ reductions resulting from the rules. Using photochemical modeling sensitivity studies, the TCEQ estimated that implementation of the rules results in an overall reduction of approximately 22.4 tons per day of $NO_X$ emissions in the 33 counties subject to the rules by March 1, 2010. The TCEQ estimated the rules benefit the DFW area by reducing ozone by an average of 0.1 to 0.2 parts per billion.

### 2.2.3.4  HGB Area Highly Reactive VOC (HRVOC) Rules and HRVOC Cap and Trade (HECT) Program

The HRVOC rules in 30 TAC Chapter 115, Subchapter H are performance-based, emphasizing monitoring, recordkeeping, reporting, and enforcement rather than establishing individual unit emission rates. The rules apply to HRVOC emissions from flares, process vents, cooling towers, and fugitive emission sources. In addition to the monitoring requirements, affected sources in Harris County must meet an annual HRVOC emission cap and a site-wide short-term HRVOC

limit of 1,200 lb/hour from any flare, vent, pressure relief valve, cooling tower, or any combination. Affected sources in Harris County must demonstrate compliance with these HRVOC emission limits through participation in the HECT Program.

The HECT Program rules in 30 TAC Chapter 101, Subchapter H, Division 6 establish a mandatory annual HRVOC emission cap on all existing stationary sources in Harris County that emit at least 10 tpy of HRVOC emissions and are subject to the HRVOC rules in 30 TAC Chapter 115, Subchapter H, Divisions 1 and 2. Affected sources include vent gas streams, flares, and cooling tower heat exchange systems. The HECT program cap is enforced by the allocation, trading, and banking of allowances. An allowance is the equivalent of one ton of HRVOC emissions. The HECT program cap was implemented on January 1, 2007, at historical emission levels. All new or modified sources in the HGB area must obtain unused allowances from other sources already participating in the HECT program to offset any increased HRVOC emissions.

The HECT program was revised in 2009 to reduce the total HECT cap by 25% and revise the HRVOC allocation methodology to address inequities from the initial allocation. An initial 10% reduction of the existing available cap of 3,451.5 tons will occur with the 2014 calendar-year control period. The available cap will then be reduced in 5% increments at the start of each calendar-year control period for 2015, 2016, and 2017. Photochemical modeling analysis demonstrates that a 25% reduction of the total HRVOC cap in Harris County will advance attainment of the 1997 eight-hour ozone NAAQS by reducing the future 2018 ozone design values at all HGB monitors by an average of 0.13 parts per billion.

### 2.2.4  1997 Eight-Hour Ozone SIP Revisions Adopted Since 2008

Texas has 1997 eight-hour ozone SIP revisions in place for the HGB area and the DFW area, as well as maintenance plans for BPA, Victoria (VIC), and El Paso. EAC SIP revisions for the 1997 eight-hour ozone standard were developed for the Austin-Round Rock (ARR) area, the Northeast Texas (NETX) area, and the San Antonio area. In addition to these SIP revisions, a 1997 Eight-Hour Ozone Flex Program is in place for ARR and Corpus Christi. One-Hour Ozone SIP revisions were developed for HGB, DFW, BPA, NETX, and the Central and East Texas Region, as well as One-Hour Ozone Flexible Agreements for Austin-San Marcos and Corpus Christi.

Texas' 1997 eight-hour ozone SIP revisions and one-hour ozone SIP revisions adopted prior to 2008 were described in detail in the previous ozone transport SIP revision to address the 1997 eight-hour ozone standard, adopted on April 16, 2008. The 1997 eight-hour ozone transport SIP revision and all other Texas SIP revisions are available on the <u>Texas SIP Revisions</u> Web page (http://www.tceq.texas.gov/airquality/sip/sipplans.html).

Since 2008, Texas has adopted several additional SIP revisions to address the 1997 eight-hour ozone standard in HGB, DFW, BPA, and VIC. An Eight-Hour Ozone Flex Plan was also developed for the ARR area. These latest SIP revisions and plans are detailed in this section.

### 2.2.4.1  HGB 1997 Eight-Hour Ozone SIP Revisions

On March 10, 2010, the commission adopted two revisions to the Texas SIP for the HGB severe nonattainment area. The HGB AD SIP Revision for the 1997 Eight-Hour Ozone Standard includes a photochemical modeling analysis and a weight of evidence analysis to demonstrate attainment of the 1997 eight-hour ozone NAAQS by the June 15, 2019, deadline. This SIP revision also includes a motor vehicle emissions budget (MVEB), a VOC and $NO_x$ Reasonably Available Control Technology (RACT) analysis, a Reasonably Available Control Measures (RACM) analysis, and a contingency plan. In addition, the AD SIP revision incorporated

revisions to 30 TAC Chapters 101 and 115, also adopted on March 10, 2010, which include the MECT Program Cap Integrity, the HECT Program Cap Reduction and Allowance Reallocation, and the VOC Control Techniques Guidelines (CTG) Update.

The HGB Reasonable Further Progress (RFP) SIP Revision for the 1997 Eight-Hour Ozone Standard, as required by the EPA, demonstrates that an 18% emissions reduction requirement will be met for the analysis period between 2002 through 2008 and an average of 3% per year emissions reduction between each of the milestone years 2008, 2011, 2014, 2017, and 2018. This SIP revision establishes baseline emission levels, calculates reduction targets, identifies control strategies to meet emission target levels, and tracks actual emission reductions against established emissions growth. This revision also includes an MVEB for each milestone year and a contingency plan.

On December 7, 2011, the commission adopted the HGB RACT Analysis Update SIP Revision for the 1997 Eight-Hour Ozone Standard to include CTG documents that were not addressed in the March 2010 HGB AD SIP Revision for the 1997 Eight-Hour Ozone Standard. This SIP revision also incorporated CTG-related rulemaking for the HGB area.

### 2.2.4.2  DFW 1997 Eight Hour Ozone SIP Revisions

On July 14, 2008, the EPA proposed conditional approval (73 FR 40203) of the May 2007 DFW AD SIP Revision, providing that final conditional approval was contingent upon Texas adopting and submitting to the EPA an approvable contingency plan SIP revision for the DFW area. The Contingency Plan SIP Revision was adopted by the commission on November 5, 2008, and submitted to the EPA on November 15, 2008. The Contingency Plan SIP revision identified measures to satisfy the EPA's 3% reduction contingency requirement for 2010 for the DFW area, to apply in the event that the DFW area failed to meet the 1997 eight-hour ozone standard by the attainment deadline. On January 14, 2009, the EPA published final conditional approval of the DFW AD SIP revision (74 FR 1903).

A condition stipulated by the EPA for final approval of the May 2007 DFW AD SIP Revision was that the TCEQ adopt and submit rule and SIP revisions to implement an enforceable mechanism to limit the use of Discrete Emissions Reduction Credits (DERC) in the DFW area by March 1, 2009. The DERC Program SIP Revision incorporated rulemaking that amends 30 TAC Chapter 101, Subchapter H, Division 4, Discrete Emission Credit Banking and Trading, to limit DERC use in the DFW area.

On March 10, 2010, the commission adopted the DFW RACT Update, 30 TAC Chapter 117 Rule Revision Noninterference Demonstration, and Modified Failure-to-Attain Contingency Plan SIP Revision. The RACT Update SIP Revision incorporated several actions adopted by the TCEQ, including 30 TAC Chapter 115 and Chapter 117 rule revisions, and supplemented the 1997 eight-hour ozone AD by demonstrating that the revised Chapter 117 rule does not interfere with the DFW AD SIP Revision.

On December 7, 2011, the commission adopted two revisions to the Texas SIP for the DFW serious nonattainment area. The DFW AD SIP revision provides photochemical modeling and weight of evidence analyses to demonstrate that the DFW nine-county serious nonattainment area will attain the 1997 eight-hour ozone standard by the June 15, 2013, attainment deadline. The AD SIP revision includes a RACT analysis, a RACM analysis, a MVEB for 2012, and a contingency plan. Concurrent with this SIP revision, the commission adopted revisions to 30 TAC Chapter 115 into the Texas SIP.

The DFW RFP SIP revision provides analyses of incremental reductions in ozone precursors, $NO_X$ and VOC, from a 2002 base year out to attainment of the 1997 eight-hour ozone standard as well as updated emissions inventories and MVEBs for the 2011 and 2012 milestone years.

### 2.2.4.3  BPA 1997 Eight-Hour Ozone Redesignation to Attainment and Maintenance Plan

On December 10, 2008, the commission adopted the BPA Redesignation Request and Maintenance Plan SIP revision for the 1997 eight-hour ozone standard. On October 20, 2010, the EPA published a final rule in the *Federal Register* (75 FR 64675), effective November 19, 2010, approving the redesignation request and maintenance plan and finalizing a determination that the BPA area is in attainment of the revoked one-hour ozone standard. With redesignation to attainment for the 1997 eight-hour ozone standard and a determination of attainment for the one-hour ozone standard, no new ozone reduction strategies will have to be developed for either standard as long as the area continues to monitor ozone levels below the 1997 eight-hour ozone standard; however, current strategies to reduce ozone in the BPA area will remain in place.

### 2.2.4.4  VIC 1997 Eight-Hour Ozone Contingency Plan SIP Revision

In early 2009, EPA Region 6 staff informed the TCEQ that to approve the Victoria County 1997 Eight-Hour Ozone Maintenance Plan adopted in March 2007, the contingency plan had to be revised to contain an enforceable commitment to adopt and implement the contingency measures once they are triggered. On July 28, 2010, the commission adopted the Contingency Plan SIP Revision for the VIC area.

### 2.2.4.5  ARR 1997 Eight-Hour Ozone Flex Plan

On June 18, 2008, the commission approved the Austin-Round Rock Eight-Hour Ozone Flex Plan and Memorandum of Agreement. Stakeholders involved in this plan are Bastrop, Caldwell, Hays, Travis, and Williamson Counties; the cities of Austin, Bastrop, Elgin, Lockhart, Luling, Round Rock and San Marcos; the TCEQ; and the EPA. The Eight-Hour Ozone Flex program is one in a series of regional initiatives and builds on the region's previous plans: the One-Hour Ozone Flex program and the EAC. These voluntary initiatives allow the region to address regional ozone problems proactively to maintain the 1997 eight-hour ozone standard.

## 2.3 CONTROL STRATEGY CONCLUSIONS

Overall, monitoring data do not suggest that emissions from Texas contribute significantly to nonattainment or interfere with maintenance of the 2008 eight-hour ozone NAAQS for areas in any other state. Additionally, Texas has numerous control measures in place to address ozone precursor emissions and all are federally enforceable through SIP revisions. These measures have resulted in significant decreases in eight-hour ozone design values from 1990 through 2010, with much of the decreases occurring from 2000 through 2010. With implementation of the 2008 ozone standard, decreases in design values are expected to continue.

## CHAPTER 3: FUTURE REVISIONS TO THE NATIONAL AMBIENT AIR QUALITY STANDARDS (NAAQS)

Federal Clean Air Act (FCAA), §110(a)(1) requires states to submit state implementation plans within three years after the promulgation of new or revised NAAQS to meet the requirements of FCAA, §110(a)(2), including FCAA, §110(a)(2)(D)(i)(I), relating to interstate transport. Therefore, if the NAAQS are revised in the future, the Texas Commission on Environmental Quality will need to take the adequate steps relating to the interstate transport of air pollution.

# TESTIMONY

INDEX OF WRITTEN TESTIMONY

| Reference Number | Submitted by |
|---|---|
| W-1 | Joni Henry |
| W-2 | Chaka Patterson |
| W-3 | Tom "Smitty" Smith, Public Citizen |
| W-4 | Carl Young for Guy Donaldson, United States Environmental Protection Agency |
| W-5 | Perry Panousis, WaterWay CleanUp Services |
| W-6 | Chelsea Wren |

| From: | TRRules |
|---|---|
| To: | Patricia Duron; Shelley Naik |
| Subject: | FW: 2012-004-SIP-NR |
| Date: | Monday, September 10, 2012 8:41:45 AM |

**W-1**

-----Original Message-----
From: jonihenry48@hotmail.com [mailto:███████████████████]
Sent: Friday, September 07, 2012 5:46 PM
To: jonihenry48@hotmail.com
Subject: 2012-004-SIP-NR

09/07/2012 05:46 PM

This email is a confirmation of the comment that was submitted for the referenced rulemaking.

First Name: Joni
Last Name: Henry
Company/Organization:
E-mail Address: jonihenry48@hotmail.com
Street Address: ███████
City: Corpus Christi
State: ███
Zip Code: ███████
Phone Number: ██████████
Fax Number:

Rule: 2012-004-SIP-NR

Comments:

I do not agree that burning coal is safe and I see why so many lawsuits are being filed for what you people say is safe.

**From:** TRRules
**To:** Patricia Duron; Shelley Naik
**Subject:** FW: 2012-004-SIP-NR
**Date:** Monday, September 10, 2012 8:42:29 AM

**W-2**

-----Original Message-----
From: pattersonckhan@~~yahoo.com~~ [mailto:pattersonckhan@yahoo.com]
Sent: Monday, September 10, 2012 4:46 AM
To: pattersonckhan@yahoo.com
Subject: 2012-004-SIP-NR

 09/10/2012 04:46 AM

This email is a confirmation of the comment that was submitted for the referenced rulemaking.

First Name: chaka
Last Name: patterson
Company/Organization:
E-mail Address: pattersonckhan@yaho~~o.com  Street Address: 1202 logan ave~~
City: ~~corpus christi~~
State: ~~tx~~
Zip Code: ~~78404~~
Phone Number:
Fax Number:

Rule: 2012-004-SIP-NR

Comments:

I would like to request a public meeting concerning o the Las Brias power plant in Corpus Christi,Texas.
I would also like to request a contested case hearing in Corpus Christi, Tx.

| | |
|---|---|
| **From:** | TRRules |
| **To:** | Patricia Duron; Shelley Naik |
| **Subject:** | FW: 2012-004-SIP-NR |
| **Date:** | Monday, October 01, 2012 8:42:18 AM |
| **Attachments:** | Comments of Public Citizen.doc |

# W–3

-----Original Message-----
From: smitty@citizen.org [█████████████████]
Sent: Friday, September 28, 2012 9:55 PM
To: ██████████████
Subject: 2012-004-SIP-NR

09/28/2012 09:55 PM

This email is a confirmation of the comment that was submitted for the referenced rulemaking.

First Name: Tom "Smitty"
Last Name: Smith
Company/Organization: Public Citizen
E-mail Address: ████████████
Street Address: ████████████
City: ██████
State: ██
Zip Code: ██████
Phone Number: ████████████
Fax Number: █████████████

Rule: 2012-004-SIP-NR

Comments:

# Comments of Public Citizen's Texas Office
## Before the Texas Commission on Environmental Quality
## Docket Number 2012-1087
## Infrastructure and Transport State Plan Revision for the
## 2008 Ozone National Ambient Air Quality Standard

Public Citizen's Texas Office submits the following comments Infrastructure and Transport SIP:

We have had years of disappointing experiences in participating in good faith and with optimism in local groups working to develop local clean air plans, only to have those plans dismissed and replaced by TCEQ with far weaker plans which are clearly inadequate.

In addition we participated or advised 16 groups who were fighting coal plants across texas. We routinely saw TCEQ permit plants who emissions were so large that they would affect non-attainment areas without adequate analysis. When data from credible outside analysts was presented it was ignored. TCEQ has also failed to As a result, air quality has deteriorated or failed to improve as promised.

This current SIP not only fails to analyze Texas impact on downwind states, but also fails to accurately account for ozone emissions being blown in to Texas from other states. It is the height of regulatory hypocrisy that Texas would claim that it is unfairly blamed for effecting air quality in other states and do so little analysis, and when given an opportunity to show how it is impacted- utter failure to do adequate analysis. As an example:

TCEQ states on page 2-5 of the SIP:
(http://www.tceq.texas.gov/assets/public/implementation/air/sip/ozone/infrastructure/12004S IP_Complete.pdf) that "The map shows that there are several monitors located between Texas and the two closest nonattainment areas, Memphis and Baton Rouge. The monitors located between Texas and Baton Rouge show attainment of the 2008 eight-hour ozone NAAQS. This result suggests that local emissions contribute to these areas' nonattainment status. In addition, there are sources of ozone precursors located between Texas and the other nonattainment areas. The amount of ozone in other nonattainment areas from precursor sources outside of Texas and the amount of ozone coming from Texas into other nonattainment areas was not calculated. Because there are additional precursor sources located between Texas and other areas, it is difficult to determine how much ozone in other areas would be due to transport and how much ozone would be due to those sources of ozone precursors."

Here are some section by section comments:

- §110(a)(2)(A) include enforceable emission limitations and other control measures, means, or techniques (including economic incentives such as fees, marketable permits, and auctions of

emissions rights), as well as schedules and timetables for compliance, as may be necessary or appropriate to meet the applicable requirements of the FCAA; -

- §110(a)(2)(B) provide for establishment and operation of devices, methods, systems, and procedures necessary to – (i) monitor, compile, and analyze data on ambient air quality, and (ii) upon request, make such data available to the EPA;

  - In three areas air quality is monitoring well above the 2008 standard. This seems to demonstrate the state is not meeting its responsibility under this rule. The lack of regional limits on NOX emissions permitted by TCEQ, especially for small sources like oil and gas, and the lack of any photochemical modeling required for permitting of large sources, such as coal plants, close to near-nonattainment or non- attainment areas are glaring deficiencies. The state legislature has given TCEQ specific authority to create districts to protect air quality:

    Sec. 382.012. STATE AIR CONTROL PLAN. The commission shall prepare and develop a general, comprehensive plan for the proper control of the state's air. Sec. 382.013. AIR QUALITY CONTROL REGIONS. The commission may designate *air quality control regions based on jurisdictional boundaries, urban-industrial concentrations, and other factors, including atmospheric areas, necessary to provide adequate implementation of air quality standards*.

    - The under-funding of TERP to the tune of $50 million and the TCEQ's failure to request full funding and an exceptional item to recover some or all of the $601 million sequestered TERP funding
    - There is no really thorough analysis of whether or not the existing control measures are sufficient to meet the standard in section 110(a)(1) for "a plan which provides for implementation, maintenance, and enforcement of such primary standard in each air quality control region (or portion thereof within such State."
    -

- §110(a)(2)(C) include a program to provide for enforcement of measures described in §110(a)(2)(A), and regulation of the modification and construction of any stationary source within the areas covered by the plan as necessary to assure that NAAQS are achieved, including a permit program as required in parts (C) and (D);

  -
    - o The lack of adequate permitting protections for attainment areas should be addressed The fact that EPA has not issued required photochemical modeling or region-wide limits on how much NOX emissions can be permitted does not excuse t TCEQ from it's responsibility to do this on its own .
    - o TCEQ's documents lack of enforcement and failures to assess adequate penalties demonstrates the plan is inadequate to meet this provision

- §110(a)(2)(D) contain adequate provisions – (i) prohibiting any source or other type of emissions activity from emitting any air pollutant in amounts which will – (I) contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect to any such

national primary or secondary ambient air quality standard, or (II) interfere with measures required to be included in the applicable implementation plan for any other state under part (C) to prevent significant deterioration of air quality or to protect visibility, (ii) insuring compliance with the applicable requirements of §126 and §115 (interstate and international pollution abatement);

- o TCEQ's repeated permitting of large power plants and other sources of emissions that evidence clearly shows will impact NAAQS demonstrates that they have no real intention of complying with this section

- §110(a)(2)(E) provide (i) necessary assurances that the state will have adequate personnel, funding, and authority under state law to carry out such implementation plan (and is not prohibited by any provision of federal or state law from carrying out such implementation plan or portion thereof), (ii) requirements that the state comply with the requirements respecting state boards under §128, and (iii) necessary assurances that, where the state has relied on a local or regional government, agency, or instrumentality for the implementation of any plan provision, the state has responsibility for ensuring adequate implementation of such plan provision; -
  - o considering that TCEQ is spending about half as much on air quality in the current fiscal year and biennium as they did in the previous one, this is hard to imagine that tTCEQ is complying with this provision..
  - o TERP is now one of the largest emission reduction measures for several of our areas – we are getting over 3 tons per day of NOX reductions from it yet TCEQ is failing to ask the legislature for adequate funding for this program and failing to ask for an exceptional item to recoup the some $600 million in sequestered funds so meet early SIP commitments.
  - o We routinely hear from staff that they "don't have the resources" to help us with emissions inventory projects or other analysis needed to help committees like the North Central Texas Clean Air Working Group figure out chronic problems .

- §110(a)(2)(F) require, as may be prescribed by the EPA – (i) the installation, maintenance, and replacement of equipment, and the implementation of other necessary steps, by owners or operators of stationary sources to monitor emissions from such sources, (ii) periodic reports on the nature and amounts of emissions and emissions-related data from such sources, and (iii) correlation of such reports by the State agency with any emission limitations or standards established pursuant to the FCAA, which reports shall be available at reasonable times for public inspection; -
  - o TCEQ's has tried to do detailed inventory of equipment and emissions in the Barnett Shale and ended up relying on voluntary reporting and work from other governmental agencies that may not have been up to the standards the agency should rely on to make policy
  - o The agency has failed to do even minimal effort in the Eagle Ford Shale area. The reuslut may have been the accumulation of air emissions to such an extent that the San Antonio area has become a non- attainment area

- §110(a)(2)(G) provide for authority comparable to that in §303 and adequate contingency plans to implement such authority;

- §110(a)(2)(H) provide for revision of such plan – (i) from time to time as necessary to take account of revisions of such national primary or secondary ambient air quality standard or the

availability of improved or more expeditious methods of attaining such standard, (ii) except as provided in (3)(C), whenever the EPA finds on the basis of information available to the EPA that the plan is substantially inadequate to attain the NAAQS which it implements or to otherwise comply with any additional FCAA requirements;

- §110(a)(2)(I) in the case of a plan or plan revision for an area designated as a nonattainment area, meet the applicable requirements of part(D) of this subchapter (relating to nonattainment areas);

- §110(a)(2)(J) meet the applicable requirements of §121 (relating to consultation), §127 (relating to public notification), and part (C) (relating to prevention of significant deterioration of air quality and visibility protection);

- §110(a)(2)(K) provide for (i) the performance of air quality modeling as the EPA may prescribe for the purpose of predicting the effect on ambient air quality of any emissions of any air pollutant for which the EPA has established a NAAQS, and (ii) the submission, upon request, of data related to such air quality modeling to the EPA; -

  - o  EPA did ask for modeling for the White Stallion plant and TCEQ rejected such a request. The White Stallion plant is next to the worst non-attainment area in the state yet there was no hesitation by TCEQ in permitting large sources near areas with ozone problems.

- §110(a)(2)(M) provide for consultation and participation by local political subdivisions affected by the plan. –

  - o  The lack of any kind of standing SIP advisory group and the Commission's rebuffing of requests and plans from local jurisdictions and the advisory groups they have established shows how TCEQ has ignored this provision. Merely providing an opportunity for public comment that is routinely ignored is insufficient,

In summary- we think this SIP is inadequate.



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
REGION 6
1445 ROSS AVENUE, SUITE 1200
DALLAS, TX 75202-2733

SEP 2 8 2012                                              **W–4**

Ms. Shelley Naik, MC 206
State Implementation Plan Team, Office of Air
Texas Commission on Environmental Quality
P.O. Box 13087
Austin, TX 78711-3087

Re: Project Number 2012-004-SIP-NR

Dear Ms. Naik:

Thank you for the opportunity to review and comment on the proposed State Implementation Plan (SIP) revision "Federal Clean Air Act, Sections 110(a)(1) and (2) Infrastructure and Transport State Implementation Plan Revision for the 2008 Ozone National Ambient Air Quality Standard," Project Number 2012-004-SIP-NR dated August 22, 2012. The EPA appreciates the efforts of the Texas Commission on Environmental Quality (TCEQ) to meet this important Clean Air Act requirement. The EPA Region 6 offers the following comments on the proposed SIP revision:

Comment 1:

Footnote 1 on Page x in Section V-D-1: Infrastructure Demonstration for the 2008 Ozone National Ambient Air Quality Standard of the proposal, states the following:

"Texas has permitting rules for Prevention of Significant Deterioration (PSD), as required by the FCAA. The EPA has recently promulgated regulations for the permitting of greenhouse gases under the PSD program. Although Texas has not amended or proposed amendments to its permitting program to include greenhouse gases, Texas is meeting its obligations under the FCAA to provide for permitting of facilities that emit criteria pollutants. Greenhouse gases are not criteria pollutants, with a NAAQS that must be met, and therefore, a lack of permitting requirements in Texas rules for greenhouse gas emissions does not constitute a lack in the required infrastructure elements of §110(a)(2)."

As the TCEQ notes, the EPA has recently promulgated regulations for the permitting of greenhouse gases under the PSD program. Because the PSD under the Act applies to each newly regulated pollutant, including non-NAAQS pollutants, a state's PSD SIP must also apply permitting requirements for greenhouse gas emissions for the EPA to determine the PSD related infrastructure elements of 110(a)(2) as sufficient.

Comment 2:

Section 110(a)(2)(D)(ii) of the Clean Air Act (Act) requires compliance with sections 115 and 126 of the Act, relating to interstate and international pollution abatement. Section 115 addresses endangerment of

public health or welfare in foreign countries from pollution emitted in the United States. Please discuss how the state complies with section 115(c) of the Act.

Section 126(a) of the Act requires new or modified sources to notify neighboring states of potential impacts from such sources. Section 126(b) of the Act affects a state only if the Administrator has been petitioned to make a finding of violation that is related to either interstate transport or international transport of emissions from sources in the state. Please discuss how the state complies with section 126 of the Act.

Comment 3:

We appreciate the TCEQ's discussion of section 110(a)(2)(E) requirements on pages xi and xii of this proposal. However, we note while the TCEQ addresses subsections (i) and (iii) of this section, the TCEQ's proposal does not specifically address subsection (ii). Section 110(a)(2)(E)(ii) requires a state to comply with the requirements of section 128 of the Act with respect to State boards. Section 128 in turn explicitly requires that a SIP contain particular requirements pertaining to conflict of interests for State boards. Please provide a discussion of how Texas's SIP complies with the conflict of interest provisions of section 128 to therefore satisfy the infrastructure SIP requirements of section 110(a)(2)(E)(ii).

Comment 4:

On Page xi of the proposal addressing section 110(a)(2)(D) of the Act, we note that TCEQ cross references their discussion on section 110(a)(2)(C) and relevant rules for meeting federal requirements. Please provide a more comprehensive listing of relevant rules in Chapter 30 of TAC that address the federal requirements in section 110(a)(2)(D)(i)(II). As written, the TCEQ states that Chapter 101 General Air Quality Rules, and Chapter 122, Subchapter E, Division 2, Clean Air Interstate Rule of 30 TAC are the only relevant rules for meeting the requirements of section 110(a)(2)(D)(i).

Comment 5:

Regarding section 110(a)(2)(H), the TCEQ explains it regularly revises the Texas SIP in response to revisions in the NAAQS and the EPA rules, and proceeds to cross reference its discussion on section 110(a)(2)(A). As 110(a)(2)(H) requires that a state have the authority to revise the SIP as necessary, we recommend the TCEQ additionally provide discussion of and reference to such authority that allows the TCEQ to make the regular revisions as stated.

Comment 6:

On August 21, 2012, the United States Court of Appeals for the District of Columbia Circuit issued a decision to vacate the Cross-State Air Pollution Rule (CSAPR). As a result, the EPA is in the process of evaluating that court decision as it pertains to the Federal Clean Air Act, Section 110(a)(1) and (2) Infrastructure and Transport State Implementation Plan requirements. Therefore, until our evaluation is complete, the EPA, at this time, will not comment on the portion of the TCEQ's proposed SIP revision (Section VI: Control Strategy) addressing the requirements of section 110(a)(2)(D)(i)(I) for the transport of ozone under the 2008 8-hour Ozone National Ambient Air Quality Standard (NAAQS).

Thank you for your efforts to meet this important Clean Air Act requirement. We offer our assistance during the SIP revision process. If you have any questions or need additional clarification, please contact Mr. John Walser of my staff at 214-665-7128. Please let us know how we may be of further assistance

Sincerely yours,

for Guy Donaldson
Chief
Air Planning Section

| | |
|---|---|
| **From:** | TRRules |
| **To:** | Patricia Duron; Shelley Naik |
| **Subject:** | FW: 2012-004-SIP-NR |
| **Date:** | Thursday, September 27, 2012 11:27:59 AM |

**W–5**

Not sure if this is a comment or just an advertisement.


-----Original Message-----
From: Waterwayservices@earthlink.net [mailto:Waterwayservices@earthlink.net]
Sent: Thursday, September 27, 2012 11:23 AM
To: Waterwayservices@earthlink.net
Subject: 2012-004-SIP-NR

09/27/2012 11:22 AM

This email is a confirmation of the comment that was submitted for the referenced rulemaking.

First Name: Perry
Last Name: Panousis
Company/Organization: WaterWay CleanUp Services E-mail Address: Waterwayservices@earthlink.net
Street Address: 26 Glade Bank Pl
City: The Woodlands
State: TX
Zip Code: 77382
Phone Number: 832.588.8097
Fax Number:

Rule: 2012-004-SIP-NR

Comments:

WaterWay CleanUp Services has systems (as seen on ABC, FOX news) proven to catch trash,
hydrocarbons and now using Bacti-Guard (TM) system killing storm water run off which eventually gets
into watersheds. I am more than willing to assist TCEQ, HGAC in the fight against dangerous bacteria
and contaminants.

Please contact me at your earliest convenience,

Best regards,
Perry Panousis
WaterWay CleanUp Services
PH# 832.588.8097

| | |
|---|---|
| **From:** | TRRules |
| **To:** | Patricia Duron; Shelley Naik |
| **Subject:** | FW: 2012-004-SIP-NR |
| **Date:** | Monday, September 10, 2012 8:42:05 AM |

**W–6**

-----Original Message-----
From: cchelsea_wrenn@~~yahoo.com~~ [mailto:cchelsea_wrenn@yahoo.com]
Sent: Saturday, September 08, 2012 9:49 PM
To: ~~cchelsea_wrenn@yahoo.com~~
Subject: 2012-004-SIP-NR

09/08/2012 09:49 PM

This email is a confirmation of the comment that was submitted for the referenced rulemaking.

First Name: chelsea
Last Name: wren
Company/Organization:
E-mail Address: ~~cchelsea_wrenn@yahoo.com Street Address: 1010 earl~~
City: ~~mathis~~
State: ~~tx~~
Zip Code: ~~78368~~
Phone Number:
Fax Number:

Rule: 2012-004-SIP-NR

Comments:

have a public meeting and contest case hearing in corpus christi tx

INDEX OF ORAL TESTIMONY

September 25, 2012 – TCEQ at 10:00 a.m.

<u>Reference Number</u>                    <u>Submitted by</u>

O-1                                          Peter Bella, Alamo Area Council of Governments

1

1    Before the Texas Commission

2    on Environmental Quality

3

4    Public Hearing for Proposed Revision )
     to the State Implementation Plan )
5    TCEQ Non-Rule Project Number 2012-004-SIP-NR  )

6

7                          Room 201S, Building E
                           TCEQ Complex
                           12100 Park 35 Circle
8                          Austin, Texas

9                           Tuesday,
                           September 25, 2012
10

11

12        The above-entitled matter came on for

13   hearing, pursuant to notice, at 10:00 a.m.

14

15    BEFORE:
       Shelley Naik - Air Quality Division
16    Walker Williamson - Air Quality Division
       Amy Browning - Environmental Law Division
17

18

19

20

21

22

23

24

25

2

```
 1                        I N D E X

 2

 3    SPEAKER                                          PAGE

 4    Peter Bella                                         4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    (Proceedings, 10:09 a.m.)

 2              SHELLEY NAIK:  Good morning.  I would like

 3    to welcome everyone to this public hearing being

 4    conducted by the Texas Commission on Environmental

 5    Quality.  My name is Shelley Naik with the Air Quality

 6    Division.  With me are Walker Williamson and Kasey

 7    Savanich with the Air Quality Division, and Amy Browning

 8    with the Environmental Law Division.

 9              We're here this morning to receive oral and

10    written comments on the proposed Federal Clean Air Act,

11    Section 110(a)(1) and (2) Infrastructure and Transport

12    State Implementation Plan, or SIP, Revision for the 2008

13    Ozone National Ambient Air Quality Standards.

14              Copies of the proposed SIP are available on

15    the registration table for you to refer to while you're

16    here.  If you have not already signed in at the

17    registration table, please sign in now.  If you intend

18    to present oral comments, please make sure to indicate

19    that on the sign-in sheet.

20              On the registration table we also have

21    copies of the public hearing notice that you may take

22    with you so you can quickly find information on how to

23    submit written comments on these proposals.  We will

24    continue to accept written comments on this proposal

25    until September 28, 2012.
```

1          This hearing is structured strictly for the

2     receipt of oral and/or written comments on these

3     proposals.  Open discussion during the hearing is not

4     allowed.  However, if anyone has additional questions

5     regarding the proposal, there will be another

6     opportunity after the hearing to talk to staff.

7          We will now begin receiving comments in the

8     order in which you registered.  As a reminder, we have a

9     court reporter present that will be transcribing your

10    comments.  Please remember to speak directly into the

11    microphone, and we ask that you not turn your back on

12    the court reporter so that she can get your comments

13    accurately.

14         When I call your name, please come up to the

15    podium, state your name and who you represent, and begin

16    your comments.  Peter Bella.

17         PETER BELLA:  Good morning.  Thank you for

18    the opportunity to make comments.  My name is Peter

19    Bella and I'm the director of the Natural Resources

20    Department at the Alamo Area Council of Governments.

21    AACOG serves a 12-county jurisdiction including the City

22    of San Antonio.

23         When I last addressed the Commission during

24    the August 17, 2012 work session, I noted that "the

25    AACOG/San Antonio region is now in attainment because

5

1   our AACOG EAC counties were designated

2   nonattainment/deferred on April 30, 2004."  Although we

3   had registered violations of the 1997 ozone standard,

4   our region was declared nonattainment/deferred in April

5   2004 and then in full attainment in early 2008, thanks

6   to the Early Action Compact, or EAC.

7           Less than six weeks ago, I was still able to

8   speak of our status in San Antonio as "the largest city

9   in the United States in full compliance with all federal

10  air quality standards."  A few brief days after the Work

11  Session, on August 21, 2012, a series of exceedances

12  resulted in a violation of the 2008 ozone standard for

13  our region.

14          At this time, assuming the 2012 data will

15  pass quality assurance checks and prior to the end of CY

16  2012, the AACOG region has a 2010-2012 design value of

17  80 parts per billion, well in excess of the standard.

18          To the question of the SIP provision

19  proposed:  Section 110 (a)(2)(A) include enforceable

20  emission limitations and other control measures, means

21  or techniques as well as schedules and timetables for

22  compliance as may be necessary or appropriate to meet

23  the applicable requirements of the Federal Clean Air

24  Act.

25          With the occurrence of these new and strong

6

 1    ozone exceedances in the San Antonio region, it is easy

 2    to question whether adequate controls are now in place

 3    to make such assurances for the San Antonio-New

 4    Braunfels Metropolitan Statistical Area.

 5            But I believe that with the timetable for

 6    new redesignations under a possible revision of the

 7    ozone standard now, that the 2008 designation process is

 8    complete, we can work together to address this.   That

 9    effort is underway locally in the AACOG region.

10            According to projections from the Texas

11    Water Development Board, the population of our MSA is

12    expected to grow by 41 percent from 2010 to 2040, to a

13    figure over 3 million.   Activity in the Eagle Ford shale

14    play continues to be vigorous.

15            According to the Texas Railroaded

16    Commission, there were 368 producing oil leases in the

17    Eagle Ford on schedule in 2011, up from 40 producing oil

18    leases in 2009.

19            There were 550 producing gas wells on

20    schedule in 2011, up from 67 producing gas wells in

21    2009.   Yet there are no regional limits on NOx permitted

22    by TCEQ for small sources like oil and gas extraction.

23            While the background of Chapter 2 in the

24    proposed SIP correctly states that there are only two

25    nonattainment areas for the 2008 eight-hour ozone

7

1    National Ambient Air Quality Standards in Texas, the

2    Houston-Galveston-Brazoria marginal nonattainment area

3    and the Dallas-Fort Worth moderate nonattainment area,

4    and while I acknowledge that the violations in the

5    San Antonio region are very recent, it is the strength

6    of the violations this summer of the 2008 standard, the

7    rapidity of the San Antonio region's projected growth,

8    as well as the vigorous development of the Eagle Ford

9    shale play which makes me now request reconsideration of

10   the adequacy in the state's "enforceable emission

11   limitations and other control measures, means or

12   techniques as may be necessary or appropriate to meet

13   the applicable requirements of the Federal Clean Air

14   Act."

15          I understand that the Commission has labored

16   under funding cuts, as has the local air quality

17   planning process in the AACOG region.  So I must ask

18   whether Section 110(a)(2)(E), which asks about

19   "necessary assurances that the state will have adequate

20   personnel funding and authority under state law to carry

21   out" the State Implementation Plan can be met under the

22   current proposal.

23          At AACOG we continue with TCEQ's partnership

24   to do the best work we can with minimal resources in our

25   effort to create an ozone precursor emissions inventory

8

1   for the Eagle Ford shale play.

2          I believe, with the added impetus of the

3   recent violations noted earlier, that it would be in all

4   our best interests to devote resources to this endeavor

5   of the scale devoted to the Barnett shale play emissions

6   inventory work.  Thank you, very much.

7          SHELLEY NAIK:  Thank you.  Once again, the

8   Commission will continue to accept written comments on

9   this proposal until September 28, 2012.  All comments

10  should reference the SIP project number that the comment

11  pertains to.

12         Copies of the proposed SIP revision can be

13  obtained from the Commission's website.  Please feel

14  free to pick up the handout with the list of these web

15  addresses from the registration table.  The handout also

16  includes instructions on how to register to receive

17  e-mail updates on issues related to the development in

18  the SIP.

19         We appreciate your comments and we thank you

20  for coming.  If there are no further comments, this

21  hearing is now closed.

22         (Hearing Concluded, 10:17 a.m.)

23

24

25

9

```
 1                 C E R T I F I C A T E

 2

 3   In Re:   Public Meeting for Proposed Revision

 4                 to the State Implementation Plan, TCEQ Non-Rule

 5                 Project Number 2012-004-SIP-NR

 6

 7                                   Location:   Austin, Texas

 8                                   Date:   September 25, 2012

 9

10

11                 I, Joy Quiroz-Hernandez, Certified Shorthand

12   Reporter Number 8391 for The State of Texas, do hereby

13   certify that I did, in computerized stenotype shorthand,

14   transcribe proceedings in the above-entitled matter to

15   the best of my ability and hearing, proceedings before

16   the Texas Commission on Environmental Quality and that

17   the above and foregoing pages contain a full and correct

18   computer-assisted transcription of my computerized

19   stenotype shorthand notes.

20

21                 _____
                     Joy Quiroz-Hernandez, CSR
22                   CSR No. 8391 - Expires 12/31/13
                     Integrity Legal Support Solutions
23                   Firm Registration No. 528
                     3100 W. Slaughter Lane, Suite A-101
24                   Austin, Texas 78748
                     (512) 320-8690
25                   (512) 320-8692 (Fax)
```

Texas Commission on Environmental Quality
Public Hearing Registration
September 25, 2012
10:00 a.m.

**Federal Clean Air Act, Section 110(a)(1) and (2) Infrastructure and Transport State Implementation Plan Revision for the 2008 Ozone National Ambient Air Quality Standards (Project No. 2012-004-SIP-NR)**

| Name (Please Print) | Representing | Presenting Oral Testimony? (Circle One) |
|---|---|---|
| Peter Bella | Alamo Area COG | (Yes)   No |
|  |  | Yes   No |
|  |  | Yes   No |
|  |  | Yes   No |
|  |  | Yes   No |
|  |  | Yes   No |
|  |  | Yes   No |
|  |  | Yes   No |
|  |  | Yes   No |
|  |  | Yes   No |
|  |  | Yes   No |
|  |  | Yes   No |
|  |  | Yes   No |

# EVALUATION

# Texas Commission on Environmental Quality
## Interoffice Memorandum

**To:**       Commissioners                          **Date:** November 16, 2012

**Thru:**     Bridget C. Bohac, Chief Clerk
              Zak Covar, Executive Director

**From:**     Steve Hagle, P.E., Deputy Director
              Office of Air

**Docket No.:** 2012-1087-SIP

**Subject:**  Commission Approval for Adoption of the Federal Clean Air Act (FCAA),
              §110(a)(1) and (2) Infrastructure and Transport State Implementation Plan
              (SIP) Revision for the 2008 Ozone National Ambient Air Quality Standards
              (NAAQS)

              Infrastructure and Transport SIP Revision for the 2008 Ozone NAAQS
              Non-Rule Project No. 2012-004-SIP-NR

**Background and reason(s) for the SIP revision:**
On March 12, 2008, the United States Environmental Protection Agency (EPA)
strengthened the NAAQS for ground level ozone. The new primary eight-hour ozone
standard, set at 0.075 parts per million (ppm), replaced the previous 1997 standard of 0.08
ppm. The EPA also decreased the secondary eight-hour ozone standard to the level of
0.075 ppm making it identical to the revised primary standard. However, the EPA did not
initially implement the 2008 eight-hour ozone standard due to a subsequent NAAQS
reconsideration. To date, the EPA has not published infrastructure or transport guidance
for the 2008 ozone NAAQS.

Section 110(a)(1) of the FCAA requires states to submit a SIP revision to provide for the
implementation, maintenance, and enforcement of the NAAQS. States are required to
submit the infrastructure portion of this SIP requirement to the EPA to demonstrate that
basic program elements have been addressed within three years of the promulgation of any
new or revised NAAQS. Section 110(a)(2) lists the elements that the new SIP submissions
must contain.

On February 2, 2011, the TCEQ sent a letter to the EPA Region 6 to request formal
clarification on several issues regarding the 2008 ozone NAAQS and the EPA's
reconsideration of the standards. Specifically, the TCEQ asked whether the EPA intended
that Texas develop and submit infrastructure and transport SIP revisions under the 2008
ozone standards by the March 12, 2011, deadline. On April 21, 2011, the EPA responded to
the TCEQ stating, "As we stated earlier, EPA has not implemented the 2008 ozone
standards by the deadline specified in the *Federal Register* (75 FR 2936). EPA has
proposed that the 2008 ozone standards are insufficient to protect public health and
welfare (75 FR 2938). EPA intends to take final action on the reconsideration by the end of
July 2011 and at that time we will propose requirements for implementation, including the
requisite infrastructure and transport elements." Based on this EPA direction, the TCEQ
did not submit an infrastructure SIP revision by the March 12, 2011, deadline.

Commissioners
Page 2
November 16, 2012

Re: Docket No. 2012-1087-SIP

On September 22, 2011, the EPA issued a memorandum to inform states the 2008 ozone NAAQS would be implemented. Implementation of the 2008 ozone NAAQS requires that the infrastructure SIP be submitted, although the original deadline of March 12, 2011, has already passed. On October 17, 2012, the United States District Court, Northern District of California, issued an order requiring the EPA to issue findings of failure to submit for states that had not already submitted infrastructure SIP revisions for the 2008 ozone NAAQS (including Texas) by January 4, 2013.

Submitting this SIP revision prior to a finding of failure to submit could avoid a possible federal implementation plan (FIP) by the EPA for any future transport rule associated with the 2008 ozone NAAQS. On April 25, 2005, the EPA issued Texas a finding of failure to submit the required transport SIP for the 1997 ozone standard. The EPA then relied on this notice to justify the inclusion of Texas in the FIP for the Cross-State Air Pollution Rule (CSAPR) even though Texas had subsequently submitted a transport SIP revision for the 1997 ozone standard that addressed the finding of failure to submit. On August 21, 2012, the United States Court of Appeals for the District of Columbia Circuit vacated CSAPR.

**Scope of the SIP revision:**

**A.) Summary of what the SIP revision will do:**
The SIP revision will document how the infrastructure elements listed in FCAA, §110(a)(2) are currently addressed in the Texas SIP. The SIP revision outlines the requirements of FCAA, §110(a)(2)(A) through (M) and the Texas provisions supporting the requirements. These requirements include basic program elements such as enforceable emission limitations and control measures, interstate transport provisions, air quality monitoring and modeling, a permitting program, adequate funding, personnel, and authority under state law to carry out the plan, emissions reporting, emergency powers, public participation, and fee collection.

The SIP revision will also include a technical demonstration to support that Texas meets the interstate transport requirements of §110(a)(2)(D) of the FCAA. Pursuant to FCAA, §110(a)(2)(D)(i)(I), this SIP revision must provide supporting information demonstrating that emissions from Texas are not contributing significantly to nonattainment and not interfering with maintenance of the 2008 ozone NAAQS in any other state.

**B.) Scope required by federal regulations or state statutes:**
The SIP revision will document how the infrastructure elements listed in FCAA, §110(a)(2) are currently addressed in the Texas SIP. The SIP revision outlines the requirements of FCAA, §110(a)(2)(A) through (M) and the Texas provisions supporting the requirements.

**C.) Additional staff recommendations that are not required by federal rule or state statute:**

Commissioners
Page 3
November 16, 2012

Re: Docket No. 2012-1087-SIP

None

**Statutory authority:**
The EPA published the final rule establishing the revised NAAQS for ozone in the *Federal Register* on March 27, 2008 (73 FR 16436). The authority to propose and adopt the SIP revision is derived from FCAA, 42 United States Code, §7410, which requires states to submit SIP revisions that contain enforceable measures to attain the NAAQS and other general and specific authority in Texas Water Code, Chapters 5 and 7 and Texas Health and Safety Code, Chapter 382.

**Effect on the:**

**A.) Regulated community:**
This SIP revision contains no new control measures and will not affect the regulated community.

**B.) Public:**
None

**C.) Agency programs:**
This SIP revision will have no new effect on agency programs.

**Stakeholder meetings:**
No stakeholder meetings were held.

**Public comment:**
The commission held a public hearing for the proposed SIP revision in Austin on September 25, 2012. A question and answer session was held 30 minutes prior to the meeting. The Alamo Area Council of Governments provided oral comments concerning the SIP revision.

The public comment period opened on August 24, 2012, and closed on September 28, 2012. Comments were received from the EPA, Public Citizen, and four individuals. A summary of the comments and the TCEQ response is provided as part of this SIP revision in the Response to Comments.

**Significant changes from proposal:**
The discussion of the Clean Air Interstate Rule (CAIR) and CSAPR was updated to include that on August 21, 2012, the United States Court of Appeals for the District of Columbia Circuit vacated CSAPR. Under the court's ruling, CAIR will remain in place until the EPA develops a valid replacement for CAIR. The background discussion was also updated to include that on October 17, 2012, the United States District Court, Northern District of California, issued an order requiring the EPA to issue findings of failure to submit infrastructure SIPs for the 2008 ozone NAAQS by January 4, 2013.

Commissioners
Page 4
November 16, 2012

Re: Docket No. 2012-1087-SIP

In response to comment from EPA Region 6, the list of relevant rules for meeting the requirements of FCAA, §110(a)(2)(D)(i) was expanded to include 30 Texas Administrative Code, Chapters 115, 116, and 117.

In response to comment from AACOG and Public Citizen, the discussion of how Texas meets the requirements of §110(a)(2)(E), on page xii of the SIP revision narrative, was revised.

**Potential controversial concerns and legislative interest:**
EPA Disapproval Notices:
The EPA has published various proposed disapproval notices for Texas' air permitting programs, and these disapprovals have not yet been fully resolved. Texas has adopted new rules that address all of these notices and has committed to working closely with the EPA to ensure that these rulemaking efforts will result in rules that are approvable by the EPA. Since the EPA has not acted on the rules, the infrastructure submittal may or may not be fully approvable.

The EPA has also proposed limited approval/limited disapproval of the commission's rules regarding public participation for air quality New Source Review (NSR) permits. This proposed action has a potential direct impact on the infrastructure requirements of FCAA, §110(a)(2). Texas has withdrawn from EPA consideration most of the rules that were the subject of the proposed limited approval/limited disapproval and has submitted new and revised adopted public participation rules to the EPA for the SIP. On October 28, 2010, the EPA signed a notice withdrawing its limited approval and limited disapproval of the SIP revisions relating to public participation because those revisions are no longer before the EPA for review. Although the EPA has disapproved various elements of Texas' air permitting programs, those concerns are being addressed with newly adopted rules and a commitment to work closely with EPA staff to issue EPA-approvable rules. Texas has a robust, SIP-approved permitting program and therefore has met the infrastructure requirements of §110(a)(2).

Previous Transport Submittals:
The TCEQ submitted an FCAA, §110(a)(2)(D)(i) SIP revision for the 1997 eight-hour ozone standard in April 2008 with receipt acknowledged by the EPA as of May 5, 2008. Because Texas was not originally included in the CAIR program for the 1997 ozone standard, the state did not rely solely on CAIR modeling in meeting this SIP obligation and identified state-level controls adopted for major point sources, along with their associated emission reductions, and other Texas SIP revisions that would address Texas' §110(a)(2)(D)(i)(I) obligations.

The revision was deemed by operation of law as of November 5, 2008, to meet minimum completeness requirements, in accordance with §110(k)(1) of the FCAA. The EPA was therefore required to take action regarding full, partial, or conditional approval or disapproval for this revision within 12 months of the completeness determination.

Commissioners
Page 5
November 16, 2012

Re:  Docket No. 2012-1087-SIP

However, the EPA relied on the 2005 notice of failure to submit to justify including Texas in the FIP in the final CSAPR. While the EPA's reliance on the 2005 notice of failure to submit is not appropriate, the EPA may use the same approach to include Texas in future interstate transport programs if a finding of failure to submit is issued for the 2008 ozone NAAQS.

In a September 22, 2011, memo regarding the implementation of the 2008 NAAQS, the EPA stated that it does not intend to penalize states for the passage of time due to the delay in implementation. On October 17, 2012, however, the United States District Court, Northern District of California, issued an order requiring the EPA to issue findings of failure to submit by January 4, 2013.

Previous Infrastructure Submittals:
Texas was issued a finding of failure to submit its infrastructure SIP revision for the 1997 eight-hour ozone NAAQS on March 27, 2008. On April 4, 2008, Texas submitted a letter and supporting documentation to address any potential infrastructure issues associated with the 1997 eight-hour ozone and fine particulate matter ($PM_{2.5}$) NAAQS that fulfilled its infrastructure SIP obligations. On September 14, 2010, Earthjustice sued the EPA on behalf of the Sierra Club seeking to compel promulgation of a FIP for Texas for the ozone standard and to take final approval or disapproval action on Texas' $PM_{2.5}$ submittal.

In the December 28, 2011, *Federal Register*, the EPA determined that the Texas SIP meets the infrastructure requirements for the 1997 eight-hour ozone NAAQS and the 1997 and 2006 $PM_{2.5}$ NAAQS at FCAA, §110(a)(2(A), (B), (E), (F), (G), (H), (K), (L), (M), and portions of (C), (D)(ii), and (J). The EPA determined that the Texas SIP does not meet the infrastructure requirements for the 1997 eight-hour ozone NAAQS and the 1997 and 2006 $PM_{2.5}$ NAAQS at FCAA, §110(a)(2) for portions of (C), (D)(ii), and (J) because Texas has stated it cannot issue permits for and does not intend to regulate greenhouse gas (GHG) emissions. The EPA partially approved and partially disapproved the Texas SIP revisions to address the Prevention of Significant Deterioration requirements at FCAA, §110(a)(2)(D)(i) for the 1997 eight-hour ozone NAAQS and the 1997 and 2006 $PM_{2.5}$ NAAQS again because Texas cannot issue permits for emissions of GHG. Texas is challenging the EPA's partial disapproval of the previous infrastructure SIP revisions; however, because the basis for the EPA's partial disapproval was the lack of a GHG permitting program in Texas, the EPA will likely use the same criteria when determining if any future infrastructure SIP revisions may be approved.

**Does this SIP revision affect any current policies or require development of new policies?**
No

Commissioners
Page 6
November 16, 2012

Re:  Docket No. 2012-1087-SIP

**What are the consequences if this SIP revision does not go forward? Are there alternatives to this SIP revision?**
The infrastructure and transport SIP revision is required by §110(a) of the FCAA. If a SIP revision is not submitted, the EPA may promulgate a FIP for Texas.

**Agency contacts:**
Shelley Naik, SIP Project Manager, 239-1536, Air Quality Division
Amy Browning, Staff Attorney, 239-0891

**Attachment**

cc:     Chief Clerk, 2 copies
        Executive Director's Office
        Susana M. Hildebrand, P.E.
        Anne Idsal
        Curtis Seaton
        Tucker Royall
        Office of General Counsel
        Shelley Naik

**RESPONSE TO COMMENTS RECEIVED REGARDING FEDERAL CLEAN AIR ACT (FCAA), SECTION 110(a)(1) AND (2) INFRASTRUCTURE AND TRANSPORT STATE IMPLEMENTATION PLAN (SIP) REVISION FOR THE 2008 OZONE NATIONAL AMBIENT AIR QUALITY STANDARDS (NAAQS)**

The Texas Commission on Environmental Quality (TCEQ) held a public hearing for the proposed SIP revision on September 25, 2012, at 10:00 a.m. at the TCEQ Headquarters in Austin. The Austin Area Council of Governments (AACOG) provided oral comments concerning the SIP revision.

The public comment period opened on August 24, 2012, and closed on September 28, 2012. The commission received written comments from the United States Environmental Protection Agency (EPA), Public Citizen, and four individuals.

## TABLE OF CONTENTS

Table of Contents .................................................................................................................. 1
General Comments ................................................................................................................ 1
Power Plants ......................................................................................................................... 2
Greenhouse Gas (GHG) Permitting ..................................................................................... 2
Adequacy of Controls as Required by FCAA, §110(a)(1) and (a)(2)(A) .......................... 3
Compliance with The FCAA ................................................................................................ 4
Title 30 Texas Administrative Code (TAC) Rules for Addressing FCAA, §110(a)(2)(D)(i)(II) ........ 7
Funding and FCAA, §110(a)(2)(E) ..................................................................................... 8
Emissions Inventory Development ...................................................................................... 9
Authority of the TCEQ to Revise the Texas SIP ............................................................... 10
Interstate Transport and FCAA, §110(a)(2)(D)(i)(I) ........................................................ 11

## GENERAL COMMENTS

Public Citizen commented that its experiences working to develop local clean air plans that are subsequently dismissed and replaced by the TCEQ with far weaker, inadequate plans have been disappointing.

**This comment is beyond the scope of this SIP revision. The purpose of this SIP revision is to demonstrate how Texas meets the infrastructure requirements of FCAA, §110(a), including the interstate transport requirements of FCAA, §110(a)(2)(D)(i)(I), for the 2008 eight-hour ozone NAAQS. The infrastructure and transport demonstration explains how existing Texas statutes and rules will allow the state to meet its obligations under the FCAA. This SIP revision is not an attainment demonstration, but a demonstration that basic program elements have been addressed for the 2008 ozone NAAQS.**

One individual mentioned the availability of clean-up systems for storm water runoff.

**The issue of storm water runoff is beyond the scope of this SIP revision. This SIP revision is an air quality plan intended to meet FCAA requirements for ozone infrastructure and transport.**

1

## POWER PLANTS

Public Citizen commented that it has participated or advised 16 groups that were fighting coal plants in Texas, and that the TCEQ permitted plants with emissions large enough to affect nonattainment areas. Public Citizen commented that these plants were permitted without adequate analysis and credible outside analysts were ignored, resulting in the deterioration of, or failure to improve, air quality. Public Citizen also commented that the TCEQ rejected the EPA's request for modeling for the White Stallion plant, and although it is next to the worst nonattainment area in the state, the TCEQ did not hesitate to permit a large source near an area with ozone problems. Additionally, one individual requested a public meeting concerning the Las Brisas power plant and a contested case hearing in Corpus Christi, Texas. Another individual also requested a public meeting and contested case hearing in Corpus Christi, Texas. One individual commented that coal burning is the subject of many lawsuits and they disagree that burning coal for power is safe.

**These comments are beyond the scope of this SIP revision. The purpose of this SIP revision is to demonstrate how Texas meets the infrastructure requirements of FCAA, §110(a), including the interstate transport requirements of FCAA, §110(a)(2)(D)(i)(I), for the 2008 eight-hour ozone NAAQS. The infrastructure and transport demonstration explains how existing Texas statutes and rules will allow the state to meet its obligations under the FCAA. Therefore, issues concerning the White Stallion plant and the proposed Las Brisas Energy Center are beyond the scope of this SIP revision. Because this SIP revision does not include any information on the proposed Las Brisas Energy Center, nor does it specifically address controls in Corpus Christi, a public meeting was not conducted in Corpus Christi, Texas. Rather, because this SIP revision is a statewide plan for Texas, a public hearing was held in Austin, Texas.**

**Power plants are discussed in this SIP revision with respect to electric generating units (EGU) in Section 2.2.2: *Emissions Reductions from EGUs*. The SIP revision discusses existing control strategies specific to EGUs including: annual nitrogen oxides (NO$_X$) reductions from the Clean Air Interstate Rule (CAIR), utility electric generation in ozone nonattainment areas (30 TAC Chapter 117, Subchapter C), utility electric generation in east and central Texas (30 TAC Chapter 117, Subchapter E, Division 1), and Texas-specific legislation from the 1999 76th legislative session in Senate Bill 7 that requires NO$_X$ reductions through a regional cap and trade program. This SIP revision does not include any information about the safety of coal-burning power plants or any related lawsuits.**

## GREENHOUSE GAS (GHG) PERMITTING

The EPA commented that it recently promulgated regulations for GHG permitting under the Prevention of Significant Deterioration (PSD) program.   Because PSD under the FCAA applies to each newly regulated pollutant, including non-NAAQS pollutants, a state's PSD SIP must also apply permitting requirements for GHG emissions for the EPA to determine the PSD-related infrastructure elements of §110(a)(2) are sufficient.

**No changes were made in response to this comment. Infrastructure SIP demonstrations are a requirement of §110(a)(1), which specifically requires each state to submit a plan demonstrating that it has all the required elements to ensure**

2

**that the NAAQS can be implemented, maintained, and enforced. The EPA has failed to offer any rationale for why the implementation of GHG permitting is necessary or required for the implementation, maintenance, or enforcement of the 2008 eight-hour ozone NAAQS. Therefore, the commission disagrees that Texas is required to have an approved GHG PSD permitting program in place to have an infrastructure SIP revision that is complete for the purposes of attaining and maintaining the 2008 eight-hour ozone NAAQS. Furthermore, GHG PSD permitting in Texas is currently under the control of the EPA through a federal implementation plan (FIP) specifically imposed by the EPA to ensure that GHG PSD permitting could occur in Texas. The imposition of the FIP fills any perceived hole in the Texas SIP, and therefore, the Texas infrastructure SIP should be considered complete and approvable. Lastly, Texas is currently litigating the EPA's position that implementation of GHG is necessary or required for the implementation, maintenance, or enforcement of the ozone and PM NAAQS. Therefore, the commission may consider this issue further based on the outcome of the litigation.**

## ADEQUACY OF CONTROLS AS REQUIRED BY FCAA, §110(a)(1) AND (a)(2)(A)

The AACOG questioned whether adequate controls and emission limitations are in place as required by §110(a)(2)(A) for the San Antonio-New Braunfels Metropolitan Statistical Area (MSA). San Antonio, designated attainment in 2008, was "the largest city in the United States in full compliance with all federal air quality standards." However, on August 21, 2012, the area experienced a series of ozone exceedances that resulted in a violation of the 2008 ozone standard, with a preliminary 2012 design value of 80 parts per billion (ppb). The AACOG commented that the population of the MSA is expected to grow by 41% from 2010 to 2040, and oil and gas extraction in the Eagle Ford Shale has continued to develop. The AACOG also commented that there are no regional limits on $NO_x$ permitted by the TCEQ for small sources such as oil and gas extraction. Public Citizen commented there are three areas monitoring above the 2008 ozone standard and that Texas is not meeting FCAA requirements due to lack of regional limits on $NO_x$ emissions, especially for small sources like oil and gas, and lack of photochemical modeling requirements for permitting of large sources, like coal plants close to near-nonattainment and nonattainment areas. Public Citizen also commented that there is no thorough analysis of whether the existing control measures are sufficient to meet the requirements of §110(a)(1). Finally, Public Citizen commented that the TCEQ has specific authority to create districts to protect air quality under Texas Health and Safety Code, §382.012, State Air Control Plan, and §382.013, Air Quality Control Regions.

**The purpose of this SIP revision is to demonstrate how Texas meets the infrastructure requirements of FCAA, §110(a), including the interstate transport requirements of FCAA, §110(a)(2)(D)(i)(I), for the 2008 eight-hour ozone NAAQS. The infrastructure demonstration explains how existing Texas statutes and rules will allow the state to meet its obligations under the FCAA. This SIP revision is not an attainment demonstration but a demonstration that basic program elements have been addressed for the 2008 eight-hour ozone NAAQS. Attainment demonstration SIP revisions will be developed for any Texas areas designated as moderate or above nonattainment of the 2008 eight-hour ozone NAAQS. Those SIP revisions will be developed with appropriate stakeholder input and will undergo separate notice and comment rulemaking procedures. At that time, the TCEQ will develop appropriate rules and control measures to bring those areas into**

3

attainment by the appropriate attainment deadlines. This infrastructure and transport SIP revision simply demonstrates that Texas has the appropriate statutory and regulatory authority to develop necessary rules and control measures so that all areas of the state can either maintain the standard or meet and then attain the standard in the future.

The TCEQ agrees with Public Citizen that it has authority under Texas Health and Safety Code, §382.012 to "prepare and develop a general, comprehensive plan for the proper control of the state's air" and §382.013 to "designate air quality control regions based on jurisdictional boundaries, urban-industrial concentrations, and other factors, including atmospheric areas, necessary to provide adequate implementation of air quality standards." The SIP revision references the Texas Clean Air Act, Texas Health and Safety Code, Chapter 382, except Subchapter 1, in both Section V-A: *Legal Authority* and Section V-D-1: *Infrastructure Demonstration for the 2008 Ozone National Ambient Air Quality Standards.*

## COMPLIANCE WITH THE FCAA

Public Citizen commented that the SIP revision does not meet the requirements of §110(a)(2)(C) due to lack of enforcement and failure to assess adequate penalties. Public Citizen also commented that permitting protections for attainment areas are inadequate, and although the EPA has not issued required photochemical modeling or region-wide limits on permitting of $NO_X$ emission, the TCEQ has a responsibility to do this.

The TCEQ has the enforcement and permitting authority in place insofar as the agency has been given such jurisdiction from the state legislature. Whether or not Public Citizen agrees with the ways in which the TCEQ exercises such authority is a different issue that is beyond the scope of this SIP revision.

The EPA commented that §110(a)(2)(D)(ii) of the FCAA requires compliance with §115 of the FCAA, relating to interstate and international pollution abatement. Section 115 addresses endangerment of public health or welfare in foreign countries from pollution emitted in the United States. The EPA requested more discussion on how Texas complies with §115(c) of the FCAA.

Pursuant to §115(a), the EPA has not made TCEQ aware of submissions indicating reports, surveys, or studies from any duly constituted international agency regarding air pollution emitted in Texas, which may reasonably be anticipated to endanger public welfare or health in Mexico. Furthermore, under §115(a), based on information available to the TCEQ, the EPA has not been requested by the United States Secretary of State to issue formal notification to Texas that any emissions originating in the state are endangering public health or welfare in Mexico. In the absence of such a finding and notification, Texas has no obligations to address the endangerment of public health or welfare in Mexico under §115. Should Texas receive such a finding from the EPA in the future, the appropriate remedy would be a SIP revision to correct the endangerment, as specified in §115(b). As discussed in the infrastructure SIP, Texas has the proper authority and procedures in place to make revisions to its SIP when necessary. No changes were made to the SIP revision in response to this comment.

4

**The TCEQ is unclear about the EPA's concern with how Texas complies with §115(c), given that this section only concerns applicability of foreign countries.**

The EPA commented that §126(a) of the FCAA requires new or modified sources to notify neighboring states of potential impacts from such sources. Section 126(b) of the FCAA affects a state only if the EPA has been petitioned to make a finding of violation that is related to either interstate transport or international transport of emissions from sources in the state. The EPA requested further discussion on how Texas complies with §126.

**The Texas SIP requires that each major proposed new or modified source provide such notification (see 67 FR 58697). The state also has no pending obligations under §126 of the FCAA. The EPA has previously approved Texas' infrastructure SIP for §110(a)(2)(D)(ii), except as regarding GHG (see 76 FR 81371). The EPA's rationale for this approval can be found in the September 22, 2011, EPA Technical Support Document on the 1997 ozone and PM$_{2.5}$ and 2006 PM$_{2.5}$ infrastructure and transport SIP, Docket ID EPA-R06-OAR-2008-0638, page 16. Quoting EPA analysis:**

> **Section 126 of the Act addresses interstate pollution abatement and section 126(a) requires that each applicable implementation plan shall require each major proposed new or modified source to notify neighboring states of potential impacts from the source. The Texas SIP addresses section 126 of the Act under their PSD rules at 30 TAC 116, Division 3 (Public Notice). Specifically, 30 TAC 116.131 provides that public notice be provided "[...] for any permit subject to the FCAA, Title I, Part C or D, or to Title 40 Code of Federal Regulations (CFR), Part 51.165(b)." Furthermore, the rules at 30 TAC 116.134 provide that "[...] the permit applicant shall furnish a copy of such notices and date of publication to [...] the air pollution control agency of any nearby state in which air quality may be adversely affected by the emissions from the new or modified facility." These rules were adopted into the Texas SIP on September 18, 2002 (67 FR 58709) and address section 126(a)(1)(A) and (B) of the Act. Section 126(b) of the Act provides that any state or political subdivision may petition the Administrator for a finding that any major source or group of stationary sources emits or would emit any air pollutant in violation of the prohibition of section 110(a)(2)(D)(ii) of this title or this section. Within 60 days after receipt of any petition under this subsection and after public hearing, the Administrator shall make such a finding or deny the petition. We have not been made aware of any such pending actions pursuant to CAA section 126(b), thus we are proposing that the Texas SIP meets this portion of section 110(a)(2)(D)(ii). We are proposing that the Texas SIP meets the requirements of section 110(a)(2)(D)(ii).**

**Texas agrees that it meets the requirements of §110(a)(2)(D)(ii) and disagrees with the EPA's previous disapproval of this section for GHG. The EPA has failed to offer a rational explanation of why GHG PSD permitting is necessary for attaining or maintaining any NAAQS, including ozone or PM$_{2.5}$. As noted previously, Texas is currently litigating the EPA's final partial disapproval regarding the**

5

**implementation of GHG permitting in Texas as it relates to infrastructure requirements. No changes were made to the SIP revision in response to this comment.**

The EPA requested more discussion of how Texas' SIP complies with the conflict of interest provisions of §128 to satisfy the infrastructure SIP requirements of §110(a)(2)(E)(ii) of the FCAA.

**The infrastructure demonstration states for §110(a)(2)(E) that "The TCEQ relies on the complete statutory and regulatory authority as referenced throughout this document." The statutory authority includes Texas Water Code, Chapter C: Texas Natural Resources Commission, which includes the statutory requirements for the eligibility and selection of the commissioners of the TCEQ. These requirements ensure that Texas is in compliance with the FCAA, §128. The EPA has acknowledged this authority previously when it approved this portion of the Texas infrastructure SIP demonstration for the 1997 ozone and PM$_{2.5}$ and 2006 PM$_{2.5}$ NAAQS. Although infrastructure SIP revisions are NAAQS specific, the requirements of §110(a)(2)(E), specifically, are the same regardless of the criteria pollutant at issue. The EPA discussed its proposed approval of this section of the Texas ozone and PM$_{2.5}$ infrastructure SIP in the EPA's September 22, 2011, Technical Support Document, Docket ID EPA-R06-OAR-2008-0638, page 18. Quoting EPA analysis:**

> **The TCEQ commissioners take final action on Texas state rules and their eligibility to serve as commissioner is subject to Section 128 of the FCAA. Section 128 requires that, (1) any board or body which approves permits or enforcement orders shall have at least a majority of members who represent the public interest and do not derive any significant portion of their income from persons subject to permits or enforcement orders under this chapter, and (2) any potential conflicts of interest by members of such board or body or the head of an executive agency with similar powers are adequately disclosed. The three commissioners of the TCEQ are appointed by the governor to represent the general public and their suitability and conduct are prescribed by the Texas Water Code (TWC). The state rules that address Section 128 of the FCAA are found in the TWC, Title 2 (Water Administration), Subtitle A (Executive Agencies), Chapter 5 (Texas Natural Resource Conservation Commission), Subchapter C (Texas Natural Resource Conservation Commission), Section 5.053: Eligibility for Membership; Section 5.054: Removal of Commission Members; Section 5.059: Conflict of Interest; Section 5.060: Lobbyist Prohibition; and Subchapter D (General Powers and Duties of the Commission), Section 5.111: Standards of Conduct. In 1981, the EPA approved into the SIP the Standards of Conduct of State Officers and Employees (Texas Revised Civil Statute Annotated, Article 6252-9b) (46 FR 61124). The current TWC rules retain the standards of conduct for state officers and employees approved in 1981. We are proposing that the Texas SIP meets the requirements of section 110(a)(2)(E).**

**Texas agrees that it meets the requirements of §110(a)(2)(E)(ii). No changes were made to the SIP revision in response to this comment.**

6

Public Citizen commented that the SIP does not meet the requirements of §110(a)(2)(M) due to a lack of a SIP advisory group and the TCEQ's rebuffing of requests and plans from local jurisdictions and advisory groups to address these requirements. Public Citizen also commented it is insufficient to merely provide an opportunity for public comment that is routinely ignored.

**Section V-D-1:** *Infrastructure Demonstration for the 2008 Ozone National Ambient Air Quality Standards* **of the SIP revision references Texas Water Code, §5.107, Advisory Committees, Work Groups, and Task Forces. Under §5.107, the TCEQ is authorized to create and consult with advisory committees, work groups, or task forces, and does so when appropriate and necessary. Regarding public participation, the legal requirement is to provide a period for public comment; however, there is not a requirement to implement all comments or suggestions. The Texas Administrative Procedures Act (APA) governs rulemaking procedures in Texas.[1] SIP revisions, and rules associated with them, must also comply with the FCAA and federal regulations as defined in the Code of Federal Regulations (CFR).[2] Although the Texas APA requires an agency to fully consider all oral and written comments on a proposed rule,[3] it does not prescribe the manner in which an agency shall respond to such comments. The TCEQ routinely responds in writing to all substantive comments received on SIP revisions and associated rules. The response typically details why the commission did or did not make changes in response to such comments.**

**TITLE 30 TEXAS ADMINISTRATIVE CODE (TAC) RULES FOR ADDRESSING FCAA, §110(a)(2)(D)(i)(II)**

The EPA commented that on page xi of the proposal addressing §110(a)(2)(D) of the FCAA the TCEQ cross-references its discussion on §110(a)(2)(C) and relevant rules for meeting federal requirements. The EPA requested a more comprehensive listing of relevant rules in 30 TAC that address the federal requirements in §110(a)(2)(D)(i)(II). As written, the TCEQ states that Chapter 101, General Air Quality Rules and Chapter 122, Subchapter E, Division 2, Clean Air Interstate Rule of 30 TAC are the only relevant rules for meeting the requirements of §110(a)(2)(D)(i).

**The commission confirms that 30 TAC Chapter 101, General Air Quality Rules and Chapter 122, Subchapter E, Division 2, Clean Air Interstate Rule are the relevant rules for meeting the infrastructure and transport requirements of §110(a)(2)(D)(i) including §110(a)(2)(D)(i)(II). FCAA, §110(a)(2)(D)(i)(II) requires that the SIP contain adequate provisions prohibiting any source or type of emissions activity within the state from emitting air pollutants in amounts that will interfere with** *another state's SIP measures for preventing significant deterioration of air quality or to protect visibility.* **Texas also has SIP-approved rules for PSD, as required by the FCAA.[4] These rules are found in 30 TAC Chapter 116. Additionally,**

---

[1] TEX. GOV'T CODE ANN. §§ 2001.001 *et seq.*

[2] *See* 40 CFR Part 51, Subpart F.

[3] TEX. GOV'T . CODE ANN. § 2001.029.

[4] The EPA has recently promulgated regulations for the permitting of greenhouse gases under the PSD program. Although Texas has not amended or proposed amendments to its permitting program to include greenhouse gases, Texas is meeting its obligations under the FCAA to provide for permitting of facilities

**Texas has SIP-approved source-specific rules in 30 TAC Chapters 115 and 117 that require NO$_X$ and volatile organic compounds (VOC) controls.**

**In addition to the general air quality rules in 30 TAC Chapter 101 and the CAIR rules in 30 TAC Chapter 122, Texas submitted a Regional Haze SIP revision to the EPA on March 19, 2009. Regional haze program requirements include progress reports due to the EPA in 2014 and every five years thereafter, to demonstrate progress toward the visibility goal. Another Regional Haze SIP is due in 2018 and every 10 years thereafter, through 2064. Furthermore, the EPA has already approved Texas' infrastructure and transport SIP for §110(a)(2)(D)(i)(II) for the 1997 eight-hour ozone and PM$_{2.5}$ NAAQS, and the 2006 PM$_{2.5}$ NAAQS, except as regards GHG PSD permitting requirements (*see* 76 *Federal Register* 58748, at 58755 (September 22, 2011)). Texas agrees that it meets the requirements of §110(a)(2)(D)(ii), and disagrees with EPA's previous disapproval of this section for GHGs. The EPA has failed to offer a rational explanation of why GHG PSD permitting is necessary for attaining or maintaining any NAAQS, including either the 1997 or the 2008 eight-hour ozone standards. In response to this comment, the commission has expanded the list of relevant rules to include 30 TAC Chapters 115, 116, and 117.**

## FUNDING AND FCAA, §110(a)(2)(E)

The AACOG commented that local efforts are underway to address recent ozone exceedances in the San Antonio-New Braunfels MSA but questioned whether the SIP revision meets the requirements of §110(a)(2)(E)(i) to provide "necessary assurances that the state will have adequate personnel, funding, and authority under state law to carry out" the SIP. The AACOG mentioned TCEQ funding cuts as well as local air quality planning funding cuts in the AACOG region.

Public Citizen commented that the SIP may not meet the requirements of §110(a)(2)(E) because the TCEQ is spending half as much on air quality in the current fiscal year and biennium than the previous year. Public Citizen also commented that the Texas Emissions Reduction Plan (TERP), one of the largest emission reduction measures for several areas resulting in over 3 tons per day (tpd) of NO$_X$ reductions, is underfunded by $50 million. The TCEQ has failed to request full funding and an exceptional item to recover some or all of the $601 million in sequestered TERP funding to meet early SIP commitments. Public Citizen also mentioned that TCEQ staff has routinely informed them that they "don't have the resources" to assist with emissions inventory projects or other analysis to assist committees like the North Central Texas Clean Air Working Group.

**Part of the TCEQ's role is to determine how to appropriately distribute resources. Like all agencies, the TCEQ prioritizes the allocation of resources to items that require the most attention and that does not always align with the needs and requests of local areas.**

---

that emit criteria pollutants. Greenhouse gases are not criteria pollutants, with a NAAQS that must be met, and therefore a lack of permitting requirements in Texas rules for greenhouse gas emissions does not constitute a lack in the required infrastructure elements of §110(a)(2).

Section 110(a)(2)(E) requires that the TCEQ ensure that it has adequate resources to carry out its responsibilities under the SIP and that any local jurisdiction upon which any portion of the SIP relies has adequate resources to carry out its responsibilities. The TCEQ works with local governments and other stakeholders during the SIP development process to assess all measures to be included in the SIP that will be implemented at the local level. After the SIP development process is completed, the TCEQ continues to provide support to local governments by participating in local air quality planning committees and through the general conformity and transportation conformity processes. Further, through the Rider 8 program, the TCEQ administers grant funding and provides technical and planning assistance to specified local governments that are attaining the 2008 eight-hour ozone standard to assist them in their efforts to maintain their attainment status.

The TERP appropriation was reduced by about $50 million per fiscal year from the last biennium. Funding decisions are made by the legislature, which determines the priority for TERP funding, not the TCEQ. However, the current TERP appropriations and associated emission reductions are still significant in addressing mobile source emissions. The TERP projects funded to date (from the beginning of the program in 2001 through August 31, 2012) are projected to result in $NO_X$ reductions of around 60 tpd in the TERP-eligible counties.

The commission disagrees that the Texas SIP may not meet the requirements of §110(a)(2)(E) or that specific equivalent funding is necessary every year. The EPA has not adopted rules that require a specific amount of funding to be spent on air quality programs. Instead, states are obligated to assess their programs and funding to assure that they have adequate resources to meet their FCAA obligations. Furthermore, the EPA has already approved Texas' infrastructure and transport SIP demonstration for §110(a)(2)(E) for the 1997 eight-hour ozone and $PM_{2.5}$ NAAQS and 2006 $PM_{2.5}$ NAAQS.

In response to this comment, discussion of how Texas meets the requirements of §110(a)(2)(E), on page xii of the SIP revision narrative, has been revised.

## EMISSIONS INVENTORY DEVELOPMENT

The AACOG commented that it will continue with minimal resources in partnership with the TCEQ to create an Eagle Ford Shale ozone precursor emissions inventory. Based on recent ozone violations in the San Antonio MSA, the AACOG requested that resources be devoted to the Eagle Ford Shale emissions inventory on the scale devoted to the Barnett Shale emissions inventory work. Public Citizen commented that the San Antonio area has become a nonattainment area, possibly resulting from air emissions that occurred because the TCEQ has failed to put forth even minimal effort in the Eagle Ford Shale.

The purpose of this SIP revision for ozone infrastructure and transport is to meet the infrastructure requirements of the FCAA, §110(a), including the emissions reporting requirements of FCAA, §110(a)(2)(F). The infrastructure and transport demonstration explains how existing Texas statutes and rules will allow the state to meet those requirements. Specific issues concerning emissions inventory work in the Eagle Ford Shale are beyond the scope of this SIP revision.

9

**The TCEQ will continue to partner with the AACOG through the Rider 8 grant program to support its work on the Eagle Ford Shale emissions inventory. The TCEQ also continues to monitor the Eagle Ford Shale by conducting flyovers of the area with infrared cameras, conducting investigations, and developing emissions inventories for all source categories including the oil and gas sector in these counties. The TCEQ has also made compliance information and tools available to the oil and gas industry at the <u>Oil & Gas Facilities: Compliance Resources</u> Web page.**

Public Citizen commented that the TCEQ has tried and failed to complete detailed equipment and emissions inventory in the Barnett Shale relying instead on voluntary reporting and work from other governmental agencies that may not have been up to the standards necessary to make policy.

**Although specific issues concerning the emissions inventory work in the Barnett Shale are beyond the scope of this infrastructure SIP revision, the TCEQ disagrees with this comment. The TCEQ conducted a special inventory that captured actual air emissions data and detailed equipment information from stationary oil and gas operations associated with the Barnett Shale formation.**

**The Barnett Shale Special Inventory represents one of the first large-scale efforts nationally to directly survey area (nonpoint) oil and gas emissions sources that generally would not report to the point source emissions inventory. The TCEQ received special inventory data from companies that account for more than 99% of the 2009 production in the Barnett Shale formation. Specifically, data for more than 8,500 oil and gas sites were received. Due to the large volume of data received, county-level summary data for both phases of the Barnett Shale special inventory are available at: http://www.tceq.texas.gov/airquality/point-source-ei/psei.html.**

## AUTHORITY OF THE TCEQ TO REVISE THE TEXAS SIP

The EPA commented that regarding §110(a)(2)(H) the TCEQ explained that it regularly revises the Texas SIP in response to revisions in the NAAQS and EPA rules and cross-references its discussion on §110(a)(2)(A). As §110(a)(2)(H) requires that a state have the authority to revise the SIP as necessary, the EPA recommended the TCEQ provide additional discussion of and reference to such authority that allowed the TCEQ to make the regular revisions as stated.

**The TCEQ's statutory and regulatory authority to revise its SIP as necessary is broadly contained within the statutes and rules referenced throughout this infrastructure and transport SIP revision. Furthermore, the EPA has previously approved Texas' infrastructure SIP for 1997 ozone and PM$_{2.5}$ and 2006 PM$_{2.5}$ for §110(a)(2)(H) (see 76 FR 81371). Although infrastructure SIP revisions are NAAQS specific, the requirements of §110(a)(2)(H) are the same regardless of the criteria pollutant at issue. The TCEQ's authority to revise Texas' SIP to address any future problems with the 2008 eight-hour ozone NAAQS is consistent with its authority to revise its SIP for any other NAAQS. The EPA proposed approval of this section of the Texas ozone and PM$_{2.5}$ infrastructure SIP in the EPA's September 22, 2011, Technical Support Document, Docket ID EPA-R06-OAR-2008-0638, page 23. Quoting EPA analysis:**

**... the TCAA authorizes the TCEQ to establish the level of quality to be maintained in the state's air and to control the quality of the state's air by preparing and developing a SIP under §382.011 and 382.012. The TCAA under §382.011 further provides the TCEQ with "the powers necessary or convenient to carry out its responsibilities." Section 382.017 authorizes the TCEQ to adopt rules and §382.036 requires that the TCEQ "advise, consult, and cooperate with [...] the federal government." Thus, Texas has the authority to revise its SIP as may be necessary to account for revisions of the NAAQS, adopt more effective methods of attaining the NAAQS, and respond to EPA SIP calls. We are proposing that the Texas SIP meets the requirements of §110(a)(2)(H).**

Additionally, the EPA's historical interpretation has been that SIPs are subject to revision as standards and the ability to meet those standards change. The EPA has stated that it is immaterial whether or not a state has acknowledged that its plan may change. The EPA first made this finding in the May 31, 1972, regulation titled Part 52 – Approval and Promulgation of Implementation Plans, 37 FR 10842, at 10846, stating, "In accordance with the Act and the Administrator's regulations (40 CFR 51.6), all State plans are subject to revision, as necessary, to take account of revisions of the national standards, availability of improved or more expeditious methods of attaining the national standards, or a finding by the Administrator that a State plan is substantially inadequate to attain or maintain a national standard. Accordingly, whether a state has acknowledged that its implementation plan is subject to revision is considered immaterial." No changes were made to the SIP revision in response to this comment.

### INTERSTATE TRANSPORT AND FCAA, §110(a)(2)(D)(i)(I)

The EPA commented that on August 21, 2012, the United States (U.S.) Court of Appeals for the District of Columbia (D.C.) Circuit issued a decision to vacate the Cross-State Air Pollution Rule (CSAPR). The EPA is evaluating the court decision as it pertains to FCAA, §110(a)(1) and (2) infrastructure and transport SIP requirements. Therefore, at this time the EPA did not comment on the TCEQ's proposed SIP revision in Section VI: *Control Strategy* to address the requirements of §110(a)(2)(D)(i)(I) for ozone transport under the 2008 eight-hour ozone NAAQS.

**The SIP revision has been updated to include that on August 21, 2012, the U.S. Court of Appeals for the D.C. Circuit vacated CSAPR. Under the court's ruling, the Clean Air Interstate Rule (CAIR) will remain in place until the EPA develops a valid replacement for CAIR. These updates are included in Section VI: *Control Strategy*, Section L: *Transport*, Chapter 2: *Required Control Strategy Elements*, Section 2.2.2.1: *CAIR and Cross-State Air Pollution Rule (CSAPR)*.**

Public Citizen commented that the SIP revision fails to analyze Texas impact on downwind states and fails to accurately account for ozone emissions entering Texas from other states.

**The TCEQ disagrees with this comment. FCAA, §110(a)(2)(D)(i)(I) requires states to submit a SIP revision that contains adequate provisions to prohibit any source or other type of emissions activity within the state from emitting any air pollutants**

in amounts that will contribute significantly to nonattainment of the NAAQS for areas in other states or interfere with maintenance of the NAAQS in any other state. First, this provision does not require the state to accurately account for ozone emissions entering Texas from other states. Section 110(a)(2)(D)(i)(I) only requires the state to address its impact on downwind states. Further, the SIP revision does address the potential impact on nearby states by including analysis of ozone design values, ozone design value trends in Texas as well as in other states located in Region 6, and the distance between the nonattainment areas in Texas compared to the other nonattainment areas in Region 6.

The TCEQ developed the transport technical analysis included in this SIP revision with available information and guidance. To date, the EPA has not yet proposed infrastructure or transport guidance for the 2008 ozone NAAQS.

Public Citizen commented that based on the TCEQ's repeated permitting of large power plants and other emissions sources that evidence shows will impact the NAAQS, the TCEQ has no real intention of complying with the requirements of FCAA, §110(a)(2)(D).

The TCEQ strongly disagrees with the comment that it has "no real intention of complying" with the requirements of §110(a)(2)(D). The TCEQ is committed to meeting the requirements of the FCAA and takes its duties to Texas citizens very seriously. As stated in the SIP revision, Texas has a SIP-approved PSD and nonattainment New Source Review permitting program (for all pollutants except for GHGs, for which EPA has issued a FIP and assumed responsibility) that contains requirements for sources of air pollutants to obtain an approved permit before beginning construction of a facility and before modifying an existing facility. All permitted sources in Texas are required to comply with all state and federal rules and regulations including the NAAQS.

# RECOMMENDATION

REVISIONS TO THE STATE OF TEXAS AIR QUALITY
IMPLEMENTATION PLAN FEDERAL CLEAN AIR ACT, SECTION
110(a)(1) AND (2) INFRASTRUCTURE AND TRANSPORT

INFRASTRUCTURE DEMONSTRATION AND TRANSPORT PLAN
FOR OZONE



TEXAS COMMISSION ON ENVIRONMENTAL QUALITY
P.O. BOX 13087
AUSTIN, TEXAS 78711-3087

**FEDERAL CLEAN AIR ACT, SECTION 110(a)(1) AND (2)
INFRASTRUCTURE AND TRANSPORT STATE
IMPLEMENTATION PLAN REVISION FOR THE 2008
OZONE NATIONAL AMBIENT AIR QUALITY STANDARDS**

Project Number 2012-004-SIP-NR

Adoption
December 5, 2012

*This page intentionally left blank*

# EXECUTIVE SUMMARY

This revision to the state implementation plan (SIP) for ozone infrastructure and transport is intended to meet the infrastructure requirements of the Federal Clean Air Act (FCAA), §110(a). States are required by §110(a)(1) of the FCAA to submit SIP revisions to meet the infrastructure requirements within three years of promulgation of new or revised National Ambient Air Quality Standards (NAAQS). On March 12, 2008, the United States Environmental Protection Agency (EPA) strengthened the NAAQS for ground level ozone. The new primary eight-hour ozone standard, set at 0.075 parts per million (ppm) replaced the previous 1997 standard of 0.08 ppm. The EPA also strengthened the secondary eight-hour ozone standard to the level of 0.075 ppm making it identical to the revised primary standard. This SIP revision documents that the Texas SIP at 40 Code of Federal Regulations Part 52, Subpart SS contains all the infrastructure elements required by FCAA, §110(a)(2) for the implementation, maintenance, and enforcement of the 2008 ozone NAAQS. Because the infrastructure demonstration explains how the existing Texas statutes and rules will allow the state to meet its obligations under the FCAA, this SIP revision has been developed as an expansion of the existing Section V: *Legal Authority* section of Texas' SIP. This expanded section is unique to infrastructure SIP revisions that are submitted to meet the requirements of FCAA, §110(a)(1), and demonstrates that the state can provide for the implementation, maintenance, and enforcement of the NAAQS.

The infrastructure demonstration outlines the requirements of FCAA, §110(a)(2)(A) through (M) and the Texas statutes and rules that allow the Texas Commission on Environmental Quality to meet those requirements. The requirements include basic program elements such as enforceable emission limitations and control measures, air quality monitoring and modeling, a permitting program, adequate funding and personnel, authority under state law to carry out the plan, emissions reporting, emergency powers, public participation, and fee collection.

This SIP revision also includes a more detailed technical demonstration to meet the interstate transport requirements of FCAA, §110(a)(2)(D)(i)(I). Since this infrastructure element requires more than statutory authority, the requirement is discussed in the Section VI: *Control Strategy* portion of this SIP revision. The technical demonstration includes an analysis of ozone trends and discussion of existing ozone control strategies to demonstrate that emissions from Texas do not contribute significantly to nonattainment or interfere with maintenance of the 2008 ozone NAAQS in another state.

## SECTION V: LEGAL AUTHORITY

A. General (Revised)

B. Infrastructure Demonstration for Lead (No change)

    1.  2008 Lead National Ambient Air Quality Standard (No change)

C. Infrastructure Demonstration for Nitrogen Dioxide (No change)

    1.  2010 Nitrogen Dioxide National Ambient Air Quality Standard (No change)

D. Infrastructure Demonstration for Ozone (New)

    1.  2008 Ozone National Ambient Air Quality Standards (New)

## SECTION V-A: LEGAL AUTHORITY

A. <u>General</u>

The Texas Commission on Environmental Quality (TCEQ) has the legal authority to implement, maintain, and enforce the National Ambient Air Quality Standards (NAAQS) and to control the quality of the state's air, including maintaining adequate visibility.

The first air pollution control act, known as the Clean Air Act of Texas, was passed by the Texas Legislature in 1965. In 1967, the Clean Air Act of Texas was superseded by a more comprehensive statute, the Texas Clean Air Act (TCAA), found in Article 4477-5, Vernon's Texas Civil Statutes. The legislature amended the TCAA in 1969, 1971, 1973, 1979, 1985, 1987, 1989, 1991, 1993, 1995, 1997, 1999, 2001, 2003, 2005, 2007, 2009, and 2011. In 1989, the TCAA was codified as Chapter 382 of the Texas Health and Safety Code.

Originally, the TCAA stated that the Texas Air Control Board (TACB) is the state air pollution control agency and is the principal authority in the state on matters relating to the quality of air resources. In 1991, the legislature abolished the TACB effective September 1, 1993, and its powers, duties, responsibilities, and functions were transferred to the Texas Natural Resource Conservation Commission (TNRCC). With the creation of the TNRCC, the authority over air quality is found in both the Texas Water Code and the TCAA. Specifically, the authority of the TNRCC is found in Chapters 5 and 7. Chapter 5, Subchapters A - F, H - J, and L, include the general provisions, organization, and general powers and duties of the TNRCC, and the responsibilities and authority of the executive director. Chapter 5 also authorizes the TNRCC to implement action when emergency conditions arise and to conduct hearings. Chapter 7 gives the TNRCC enforcement authority. In 2001, the 77th Texas Legislature continued the existence of the TNRCC until September 1, 2013, and changed the name of the TNRCC to the TCEQ. In 2009, the 81st Texas Legislature, during a special session, amended section 5.014 of the Texas Water Code, changing the expiration date of the TCEQ to September 1, 2011, unless continued in existence by the Texas Sunset Act. In 2011, the 82nd Texas Legislature continued the existence of the TCEQ until 2023.

The TCAA specifically authorizes the TCEQ to establish the level of quality to be maintained in the state's air and to control the quality of the state's air by preparing and developing a general, comprehensive plan. The TCAA, Subchapters A - D, also authorize the TCEQ to collect information to enable the commission to develop an inventory of emissions; to conduct research and investigations; to enter property and examine records; to prescribe monitoring requirements; to institute enforcement proceedings; to enter into contracts and execute instruments; to formulate rules; to issue orders taking into consideration factors bearing upon health, welfare, social and economic factors, and practicability and reasonableness; to conduct hearings; to establish air quality control regions; to encourage cooperation with citizens' groups and other agencies and political subdivisions of the state as well as with industries and the federal government; and to establish and operate a system of permits for construction or modification of facilities.

Local government authority is found in Subchapter E of the TCAA. Local governments have the same power as the TCEQ to enter property and make inspections. They also may make recommendations to the commission concerning any action of the TCEQ that affects their territorial jurisdiction, may bring enforcement actions, and may execute cooperative agreements with the TCEQ or other local governments. In addition, a city or town may enact and enforce ordinances for the control and abatement of air pollution not inconsistent with the provisions of the TCAA and the rules or orders of the commission.

Subchapters G and H of the TCAA authorize the TCEQ to establish vehicle inspection and maintenance programs in certain areas of the state, consistent with the requirements of the Federal Clean Air Act; coordinate with federal, state, and local transportation planning agencies to develop and implement transportation programs and measures necessary to attain and maintain the NAAQS; establish gasoline volatility and low emission diesel standards; and fund and authorize participating counties to implement vehicle repair assistance, retrofit, and accelerated vehicle retirement programs.

## B. Applicable Law

The following statutes and rules provide necessary authority to adopt and implement the state implementation plan (SIP). The rules listed below have previously been submitted as part of the SIP.

Statutes
All sections of each subchapter are included, unless otherwise noted.

| | |
|---|---|
| TEXAS HEALTH & SAFETY CODE, Chapter 382 | September 1, 2011 |
| TEXAS WATER CODE | September 1, 2011 |

Chapter 5: Texas Natural Resource Conservation Commission
    Subchapter A: General Provisions
    Subchapter B: Organization of the Texas Natural Resource Conservation Commission
    Subchapter C: Texas Natural Resource Conservation Commission
    Subchapter D: General Powers and Duties of the Commission
    Subchapter E: Administrative Provisions for Commission
    Subchapter F: Executive Director (except §§5.225, 5.226, 5.227, 5.2275,5.231, 5.232, and
        5.236)
    Subchapter H: Delegation of Hearings
    Subchapter I: Judicial Review
    Subchapter J: Consolidated Permit Processing
    Subchapter L: Emergency and Temporary Orders (§§5.514, 5.5145, and 5.515 only)
    Subchapter M: Environmental Permitting Procedures (§5.558 only)

Chapter 7: Enforcement
    Subchapter A: General Provisions (§§7.001, 7.002, 7.0025, 7.004, and 7.005 only)
    Subchapter B: Corrective Action and Injunctive Relief (§7.032 only)
    Subchapter C: Administrative Penalties
    Subchapter D: Civil Penalties (except §7.109)
    Subchapter E: Criminal Offenses and Penalties: §§7.177, 7.179-7.183

Rules
All of the following rules are found in 30 Texas Administrative Code, as of the following latest effective dates:

Chapter 7: Memoranda of Understanding, §§7.110 and 7.119
                    December 13, 1996 and May 2, 2002

Chapter 19: Electronic Reporting               March 15, 2007

Chapter 35: Subchapters A-C, K: Emergency and Temporary Orders and
Permits; Temporary Suspension or Amendment of Permit Conditions      July 20, 2006

Chapter 39: Public Notice, §§39.402(a)(1) - (6), (8), and (10) - (12), 39.405(f)(3) and (g), (h)(1)(A) - (4), (6), (8) - (11), (i) and (j), 39.407, 39.409, 39.411(a), (e)(1) - (4)(A)(i) and (iii), (4)(B), (5)(A) and (B), and (6) - (10), (11)(A)(i) and (iii) and (iv), (11)(B ) - (F), (13) and (15), and (f)(1) - (8), (g) and (h), 39.418(a), (b)(2)(A), (b)(3), and (c), 39.419(e), 39.420 (c)(1)(A) - (D)(i)(I) and (II), (D)(ii), (c)(2), (d) - (e), and (h), and 39.601 - 39.605     June 24, 2010

Chapter 55: Requests for Reconsideration and Contested Case Hearings; Public Comment, §§55.150, 55.152(a)(1), (2), (5), and (6) and (b), 55.154(a), (b), (c)(1) - (3), and (5), and (d) - (g), and 55.156(a), (b), (c)(1), (e), and (g)     June 24, 2010

Chapter 101: General Air Quality Rules     April 19, 2012

Chapter 106: Permits by Rule, Subchapter A     May 15, 2011

Chapter 111: Control of Air Pollution from Visible Emissions and Particulate Matter     February 16, 2012

Chapter 112: Control of Air Pollution from Sulfur Compounds     July 16, 1997

Chapter 113: Standards of Performance for Hazardous Air Pollutants and for Designated Facilities and Pollutants     May 14, 2009

Chapter 114: Control of Air Pollution from Motor Vehicles     September 13, 2012

Chapter 115: Control of Air Pollution from Volatile Organic Compounds     December 29, 2011

Chapter 116: Permits for New Construction or Modification     August 16, 2012

Chapter 117: Control of Air Pollution from Nitrogen Compounds     April 19, 2012

Chapter 118: Control of Air Pollution Episodes     March 5, 2000

Chapter 122: §122.122: Potential to Emit     December 11, 2002

Chapter 122: §122.215: Minor Permit Revisions     June 3, 2001

Chapter 122: §122.216: Applications for Minor Permit Revisions     June 3, 2001

Chapter 122: §122.217: Procedures for Minor Permit Revisions     December 11, 2002

Chapter 122: §122.218: Minor Permit Revision Procedures for Permit Revisions Involving the Use of Economic Incentives, Marketable Permits, and Emissions Trading     June 3, 2001

**SECTION V-D-1: INFRASTRUCTURE DEMONSTRATION FOR THE 2008 OZONE NATIONAL AMBIENT AIR QUALITY STANDARDS**

A. <u>Background</u>
Section 110(a)(1) of the Federal Clean Air Act (FCAA) requires states to submit a state implementation plan (SIP) revision to provide for the implementation, maintenance, and enforcement of the National Ambient Air Quality Standards (NAAQS). States are required to submit the infrastructure portion of this SIP requirement to the United States Environmental Protection Agency (EPA) to demonstrate that basic program elements have been addressed within three years of the promulgation of any new or revised NAAQS. Section 110(a)(2) lists the elements that these SIP submissions must contain.

On March 12, 2008, the EPA strengthened the NAAQS for ground level ozone. The 2008 primary eight-hour ozone standard, set at 0.075 parts per million (ppm) replaced the previous 1997 standard of 0.08 ppm. The EPA also strengthened the secondary eight-hour ozone standard to the level of 0.075 ppm making it identical to the revised primary standard. However, the EPA did not initially implement the 2008 eight-hour ozone standard due to a subsequent reconsideration of the NAAQS.

On February 2, 2011, the Texas Commission on Environmental Quality (TCEQ) sent a letter to the EPA Region 6 to request formal clarification on several issues regarding the 2008 ozone NAAQS and the EPA's reconsideration of the standards. Specifically, the TCEQ asked whether the EPA intended that Texas develop and submit infrastructure and transport SIP revisions under the 2008 ozone standards by the March 12, 2011, deadline. On April 21, 2011, the EPA responded to the TCEQ stating, "As we stated earlier, EPA has not implemented the 2008 ozone standards by the deadline specified in the *Federal Register* (75 FR 2936). EPA has proposed that the 2008 ozone standards are insufficient to protect public health and welfare (75 FR 2938). EPA intends to take final action on the reconsideration by the end of July 2011 and at that time we will propose requirements for implementation, including the requisite infrastructure and transport elements." Based on this EPA direction, the TCEQ did not submit an infrastructure SIP revision by the March 12, 2011, deadline.

On September 22, 2011, the EPA issued a memorandum to inform states that the 2008 ozone NAAQS would be implemented. Implementation of the 2008 ozone NAAQS requires that the infrastructure SIP be submitted, although the original deadline of March 12, 2011, has already passed. On September 22, 2011, the EPA issued a memorandum entitled *Implementation of the Ozone National Ambient Air Quality Standard* in which the Assistant Administrator stated that the EPA does not intend to penalize states for late submittals of infrastructure SIPs and interstate transport SIPs. On October 17, 2012, however, the United States District Court, Northern District of California, issued an order requiring the EPA to issue findings of failure to submit for states that had not already submitted infrastructure SIP revisions for the 2008 ozone NAAQS (including Texas) by January 4, 2013. To date, the EPA has not published infrastructure or transport guidance for the 2008 ozone NAAQS.

This SIP revision is intended to provide an update of the §110(a)(2) infrastructure requirements for the 2008 ozone NAAQS. This chapter outlines FCAA, §110(a)(2)(A) through (M) and includes various Texas provisions that support the conclusion that Texas meets the requirements of each section. The federally enforceable SIP for Texas is documented at 40 Code of Federal Regulations Part 52, Subpart SS.

The infrastructure demonstration is an expansion of the Legal Authority section of Texas' SIP that provides additional information about how the existing statutes and rules allow Texas to

meet the §110(a)(2) infrastructure requirements of the FCAA. Therefore, this SIP revision contains an expanded infrastructure section under the SIP Legal Authority. This infrastructure section is intended to satisfy the §110(a)(1) requirement to provide for the implementation, maintenance, and enforcement of the NAAQS. This infrastructure section will be updated as part of the infrastructure SIP revisions that Texas is required to submit as new or revised NAAQS are promulgated, but it will not otherwise be included in other Texas SIP revisions. Section A of the Legal Authority contains the basic listing of Texas' legal framework for adopting SIP revisions and will be the default Legal Authority for Texas SIP revisions that are not specifically submitted to meet the FCAA, §110(a)(1) infrastructure demonstration requirement.

The October 2, 2007, EPA *Guidance on SIP Elements Required Under Sections 110(a)(1) and (2) for the 1997 8-hour ozone and PM$_{2.5}$ National Ambient Air Quality Standards*, and the September 25, 2009, *Guidance on SIP Elements Required Under Sections 110(a)(1) and (2) for the 2006 24-Hour Fine Particle (PM$_{2.5}$) National Ambient Air Quality Standards (NAAQS)* indicated that if a state determines that its existing SIP is adequate, the state can certify via a letter to the EPA that the existing SIP contains provisions that address the infrastructure requirements. The EPA's more recent 2011 *Guidance on Infrastructure State Implementation Plan (SIP) Elements Required Under Sections 110(a)(1) and 110(a)(2) for the 2008 Lead (Pb) National Ambient Air Quality Standards (NAAQS)* indicates that the state should provide reasonable public notice and opportunity for public hearing prior to submission to the EPA. The EPA has not yet proposed infrastructure or transport guidance for the 2008 ozone NAAQS, but in order to meet statutory deadlines for submittal of infrastructure SIPs, states do not have the option of waiting for EPA to provide additional guidance before proceeding with infrastructure and transport SIP development, review, and submittal. The TCEQ proceeded with this SIP revision to ensure that there were adequate opportunities for public notice and comment as required by state and federal statutes.

The TCEQ acknowledges that proposed changes to federal regulations may have future impacts on how the TCEQ meets the requirements of FCAA, §110(a)(2); however, this SIP revision reflects the methods and means by which Texas meets these requirements at the time of this SIP revision. Should future federal rule changes necessitate state rule changes, the TCEQ will act appropriately at that time.

B. Texas Statutory Authority

The TCEQ has the legal authority to implement, maintain, and enforce the NAAQS. Texas' legal authority has been submitted to the EPA as part of various SIP revisions that have been approved by the EPA.

The first air pollution control act, known as the Clean Air Act of Texas, was passed by the Texas Legislature in 1965. In 1967, the Clean Air Act of Texas was superseded by a more comprehensive statute, the Texas Clean Air Act (TCAA), found in Article 4477-5, Vernon's Texas Civil Statutes. The Legislature amended the TCAA in 1969, 1971, 1973, 1979, 1985, 1987, 1989, 1991, 1993, 1995, 1997, 1999, 2001, 2003, 2005, 2007, 2009, and 2011. In 1989, the TCAA was codified as Chapter 382 of the Texas Health and Safety Code.

Originally, the TCAA stated that the Texas Air Control Board (TACB) was the state air pollution control agency and was the principal authority in the state on matters relating to the quality of air resources. In 1991, the legislature abolished the TACB effective September 1, 1993, and its powers, duties, responsibilities, and functions were transferred to the Texas Natural Resource Conservation Commission (TNRCC). With the creation of the TNRCC, the authority over air quality is found in both the Texas Water Code and the TCAA. Specifically, the authority of the

commission is found in Texas Water Code, Chapters 5 and 7. Chapter 5, Subchapters A - F, H - J, and L, include the general provisions, organization, and general powers and duties of the commission, and the responsibilities and authority of the executive director. Chapter 5 also authorizes the commission to implement action when emergency conditions arise and to conduct hearings. Chapter 7 gives the commission enforcement authority. In 2001, the 77th Texas Legislature continued the existence of the commission until September 1, 2013, and changed the name of the TNRCC to the TCEQ. In 2009, the 81st Texas Legislature, during a special session, amended the Texas Water Code, §5.014, changing the expiration date of the TCEQ to September 1, 2011, unless continued in existence by the Texas Sunset Act. In 2011, the 82nd Texas Legislature continued the existence of the TCEQ until 2023.

The TCAA specifically authorizes the TCEQ to establish the level of quality to be maintained in the state's air and to control the quality of the state's air by preparing and developing a general, comprehensive plan. The TCAA, Subchapters A through D, also authorize the TCEQ to collect information to enable the commission to develop an inventory of emissions; conduct research and investigations; enter property and examine records; prescribe monitoring requirements; institute enforcement proceedings; enter into contracts and execute instruments; formulate rules; issue orders taking into consideration factors bearing upon health, welfare, social and economic factors, and practicability and reasonableness; conduct hearings; establish air quality control regions; encourage cooperation with citizens' groups and other agencies and political subdivisions of the state as well as with industries and the federal government; and establish and operate a system of permits for construction or modification of facilities.

Local government authority concerning air quality matters is found in Subchapter E of the TCAA. Local governments have the same power as the TCEQ to enter property and make inspections. Local governments may also make recommendations to the commission concerning any action of the TCEQ that affects their territorial jurisdiction, may bring enforcement actions, and may execute cooperative agreements with the TCEQ or other local governments. In addition, a city or town may enact and enforce ordinances for the control and abatement of air pollution not inconsistent with the provisions of the TCAA or the rules or orders of the commission.

Subchapters G and H of the TCAA authorize the TCEQ to establish vehicle inspection and maintenance programs in certain areas of the state, consistent with the requirements of the FCAA; coordinate with federal, state, and local transportation planning agencies to develop and implement transportation programs and measures necessary to attain and maintain the NAAQS; and fund and authorize participating counties to implement vehicle repair assistance, retrofit and accelerated vehicle retirement programs.

<u>Statutory Authority</u>
The following statutory authority allows for the establishment and operation of the TCEQ and the adoption and implementation of all §110(a)(2) requirements.

Texas Clean Air Act, Texas Health and Safety Code, Chapter 382, except Subchapter I.

Texas Water Code:

| | |
|---|---|
| §5.013(a)(11) & (13) | GENERAL JURISDICTION OF COMMISSION |
| §5.051. | COMMISSION |
| §5.052. | MEMBERS OF THE COMMISSION; APPOINTMENT |
| §5.053. | ELIGIBILITY FOR MEMBERSHIP |
| §5.054. | REMOVAL OF COMMISSION MEMBERS |

| §5.059. | CONFLICT OF INTEREST |
|---|---|
| §5.060. | LOBBYIST PROHIBITION |
| §5.101. | SCOPE OF SUBCHAPTER |
| §5.102. | GENERAL POWERS |
| §5.103. | RULES |
| §5.104. | MEMORANDA OF UNDERSTANDING |
| §5.105. | GENERAL POLICY |
| §5.106. | BUDGET APPROVAL |
| §5.107. | ADVISORY COMMITTEES, WORK GROUPS, AND TASK FORCES |
| §5.115. | PERSONS AFFECTED IN COMMISSION HEARINGS; NOTICE OF APPLICATION |
| §5.117. | MANDATORY ENFORCEMENT HEARING |
| §5.120. | CONSERVATION AND QUALITY OF ENVIRONMENT |
| §5.133. | ACTIONS IN MEXICO |
| §5.1733. | ELECTRONIC POSTING OF INFORMATION |
| §5.223. | ADMINISTRATIVE ORGANIZATION OF COMMISSION |
| §5.230. | ENFORCEMENT |
| §5.233. | GIFTS AND GRANTS |
| §5.234. | APPLICATIONS AND OTHER DOCUMENTS |
| §5.237. | OPERATING FUND |
| §5.501. | EMERGENCY AND TEMPORARY ORDER OR PERMIT; TEMPORARY SUSPENSION OR AMENDMENT OF PERMIT CONDITION |
| §5.502. | APPLICATION FOR EMERGENCY OR TEMPORARY ORDER |
| §5.514. | ORDER ISSUED UNDER AIR EMERGENCY |
| §5.515. | EMERGENCY ORDER BECAUSE OF CATASTROPHE |
| §5.701(a) | FEES |
| §5.702. | PAYMENT OF FEES REQUIRED WHEN DUE |
| §5.703. | FEE ADJUSTMENTS |
| §5.704. | NOTICE OF CHANGE IN PAYMENT PROCEDURE |
| §5.705. | NOTICE OF VIOLATION |
| §7.002. | ENFORCEMENT AUTHORITY |
| §7.032. | INJUNCTIVE RELIEF |
| §7.051. | ADMINISTRATIVE PENALTY |
| §7.052. | MAXIMUM PENALTY |
| §7.053. | FACTORS TO BE CONSIDERED IN DETERMINATION OF PENALTY AMOUNT |
| §7.061. | PAYMENT OF PENALTY; PETITION FOR REVIEW |
| §7.066. | REFERRAL TO ATTORNEY GENERAL |
| §7.067. | SUPPLEMENTAL ENVIRONMENTAL PROJECTS |
| §7.072. | RECOVERY OF PENALTY |
| §7.073. | CORRECTIVE ACTION |
| §7.101. | VIOLATION |
| §7.102. | MAXIMUM PENALTY |
| §7.103. | CONTINUING VIOLATIONS |
| §7.105. | CIVIL SUIT |
| §7.106. | RESOLUTION THROUGH ADMINISTRATIVE ORDER |
| §7.177. | VIOLATIONS OF CLEAN AIR ACT |
| §7.178. | FAILURE TO PAY FEES UNDER CLEAN AIR ACT |
| §7.179. | FALSE REPRESENTATIONS UNDER CLEAN AIR ACT |
| §7.180. | FAILURE TO NOTIFY UNDER CLEAN AIR ACT |
| §7.181. | IMPROPER USE OF MONITORING DEVICE |

| §7.182. | RECKLESS EMISSION OF AIR CONTAMINANT AND ENDANGERMENT |
| §7.183. | INTENTIONAL OR KNOWING EMISSION OF AIR CONTAMINANT AND KNOWING ENDANGERMENT |
| §7.186. | SEPARATE OFFENSES |
| §7.187. | PENALTIES |
| §7.302. | GROUNDS FOR REVOCATION OR SUSPENSION OF PERMIT |

C. Texas Regulatory Authority

The TCEQ has promulgated rules implementing statutory authority to meet the requirements of both the FCAA and the TCAA. These rules were submitted to the EPA in various SIP revisions and have been approved in the *Federal Register* (FR) or are pending EPA review. Rules that are relevant for each FCAA, §110(a)(2) requirement are noted below.

**FCAA, §110(a)(2)(A)**

Federal Requirement

(A)   include enforceable emission limitations and other control measures, means, or techniques (including economic incentives such as fees, marketable permits, and auctions of emissions rights), as well as schedules and timetables for compliance, as may be necessary or appropriate to meet the applicable requirements of this Act;

Texas Requirement

The TCEQ has promulgated rules to implement and enforce the NAAQS and other air quality standards. These rules include programs for banking and trading of emissions, as well as permits and fees. Periodic revisions to the SIP establish timetables and schedules for improving the air quality in nonattainment areas.

The following chapters of Title 30 Texas Administrative Code (TAC) contain rules relevant for this federal requirement:

| Chap. 7 | Memoranda of Understanding |
| Chap. 101 | General Air Quality Rules |
| Chap. 106 | Permits by Rule, Subchapter A, General Requirements |
| Chap. 111 | Control of Air Pollution from Visible Emissions and Particulate Matter |
| Chap. 112 | Control of Air Pollution from Sulfur Compounds |
| Chap. 113 | Standards of Performance for Hazardous Air Pollutants and for Designated Facilities and Pollutants |
| Chap. 114 | Control of Air Pollution from Motor Vehicles |
| Chap. 115 | Control of Air Pollution from Volatile Organic Compounds |
| Chap. 116 | Control of Air Pollution by Permits for New Construction or Modification |
| Chap. 117 | Control of Air Pollution from Nitrogen Compounds |
| Chap. 118 | Control of Air Pollution Episodes |

**FCAA, §110(a)(2)(B)**

Federal Requirement

(B)   provide for establishment and operation of appropriate devices, methods, systems, and procedures necessary to (i) monitor, compile, and analyze data on ambient air quality, and (ii) make such data available to the Administrator;

Texas Requirement
The TCEQ maintains a network of air quality monitors to measure air quality data that is reported to the EPA on a regular basis. Texas submits annual monitoring plans to the EPA that describe how the state has complied with monitoring requirements and explains any proposed changes.

The following chapters of 30 TAC contain rules relevant for this federal requirement:

| | |
|---|---|
| Chap. 101 | General Air Quality Rules |
| Chap. 106 | Permits by Rule, Subchapter A, General Requirements |
| Chap. 111 | Control of Air Pollution from Visible Emissions and Particulate Matter |
| Chap. 112 | Control of Air Pollution from Sulfur Compounds |
| Chap. 115 | Control of Air Pollution from Volatile Organic Compounds |
| Chap. 116 | Control of Air Pollution by Permits for New Construction or Modification |
| Chap. 117 | Control of Air Pollution from Nitrogen Compounds |

## FCAA, §110(a)(2)(C)
Federal Requirement
(C)     include a program to provide for the enforcement of the measures described in subparagraph (A), and regulation of the modification and construction of any stationary source within the areas covered by the plan as necessary to assure that national ambient air quality standards are achieved, including a permit program as required in parts C and D;

Texas Requirement
The TCEQ has established rules governing the enforcement of control measures, including attainment plans and permitting programs that regulate construction and modification of stationary sources.[1]

The EPA has published various disapproval notices for Texas' air permitting programs, and these disapprovals have not yet been fully resolved. Texas has adopted new rules that address these notices and has committed to working closely with the EPA to ensure that these rulemaking efforts will result in rules that are approvable by the EPA. The EPA has also proposed limited approval/limited disapproval of the commission's rules regarding public participation for air quality New Source Review (NSR) permits. Texas has withdrawn from EPA consideration most of the rules that were the subject of the proposed limited approval/limited disapproval and has submitted new and revised adopted public participation rules to the EPA for the SIP. On October 28, 2010, the EPA signed a notice withdrawing its limited approval and limited disapproval of the SIP revisions relating to public participation, because those revisions are no longer before the EPA for review. Although the EPA has disapproved various elements of Texas' air permitting programs, those concerns are being addressed with newly adopted rules and a commitment to work closely with EPA staff to issue EPA-approvable rules. Texas has a

---

[1] Texas has permitting rules for Prevention of Significant Deterioration (PSD), as required by the FCAA. In May 2010, the EPA promulgated regulations for the permitting of greenhouse gases under the PSD program. Although Texas has not amended or proposed amendments to its permitting program to include greenhouse gases, Texas is meeting its obligations under the FCAA to provide for permitting of facilities that emit criteria pollutants. Greenhouse gases are not criteria pollutants, with a NAAQS that must be met, and therefore a lack of permitting requirements in Texas rules for greenhouse gas emissions does not constitute a lack in the required infrastructure elements of §110(a)(2).

robust, SIP-approved permitting program and therefore has met the infrastructure requirements of §110(a)(2).

The following chapters of 30 TAC contain rules relevant for this federal requirement:

| | |
|---|---|
| Chap. 35 | Emergency and Temporary Orders and Permits; Temporary Suspension or Amendment of Permit Conditions; Subchapters A, B, C, K |
| Chap. 39 | Public Notice |
| Chap. 55 | Requests for Reconsideration and Contested Case Hearings; Public Notice |
| Chap. 101 | General Air Quality Rules |
| Chap. 106 | Permits by Rule, Subchapter A, General Requirements |
| Chap. 112 | Control of Air Pollution from Sulfur Compounds |
| Chap. 115 | Control of Air Pollution from Volatile Organic Compounds |
| Chap. 116 | Control of Air Pollution by Permits for New Construction or Modification |
| Chap. 117 | Control of Air Pollution from Nitrogen Compounds |

## FCAA, §110(a)(2)(D)
<u>Federal Requirement</u>
(D)    contain adequate provisions (i) prohibiting, consistent with the provisions of this title, any source or other type of emissions activity from emitting any air pollutant in amounts which will (I) contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect to any such national primary or secondary ambient air quality standard, or (II) interfere with measures required to be included in the applicable implementation plan for any other State under part C to prevent significant deterioration of air quality or to protect visibility,(ii) insuring compliance with the applicable requirements of sections 126 and 115 (relating to interstate and international pollution abatement);

<u>Texas Requirement</u>
This SIP revision includes an interstate transport technical analysis in Section VI: *Control Strategy* to address the requirements of §110(a)(2)(D)(i)(I).

Texas has a SIP-approved PSD and nonattainment NSR permitting program that contains requirements for sources of air pollutants to obtain an approved permit before beginning construction of a facility and before modifying an existing facility (see requirements for §110(a)(2)(C) previously listed). Texas submitted a Regional Haze SIP revision to the EPA on March 19, 2009. Regional haze program requirements include progress reports due to the EPA in 2014 and every five years thereafter, to demonstrate progress toward the visibility goal. Another Regional Haze SIP is due in 2018 and every 10 years thereafter, through 2064.

The following chapters of 30 TAC contain rules relevant for this federal requirement:

| | |
|---|---|
| Chap. 101 | General Air Quality Rules |
| Chap. 122 | Subchapter E, Division 2, Clean Air Interstate Rule |
| Chap. 115 | Control of Air Pollution from Volatile Organic Compounds |
| Chap. 116 | Control of Air Pollution by Permits for New Construction or Modification |
| Chap. 117 | Control of Air Pollution from Nitrogen Compounds |

**FCAA, §110(a)(2)(E)**

<u>Federal Requirement</u>

(E)     provide (i) necessary assurances that the State (or, except where the Administrator deems inappropriate, the general purpose local government or governments, or a regional agency designated by the State or general purpose local governments for such purpose) will have adequate personnel, funding, and authority under State (and, as appropriate, local) law to carry out such implementation plan (and is not prohibited by any provision of Federal or State law from carrying out such implementation plan or portion thereof), (ii) requirements that the state comply with the requirements respecting State boards under section 128, and (iii) necessary assurances that, where the State has relied on a local or regional government, agency, or instrumentality for the implementation of any plan provision, the State has responsibility for ensuring adequate implementation of such plan provision;

<u>Texas Requirement</u>

The TCEQ has consistently included assurances in SIP revisions that the state has adequate personnel, funding, and authority under state law to carry out the SIP. The TCEQ has various Memoranda of Understanding and Memoranda of Agreement with other state and local agencies. Local governments have their own responsibilities and privileges regarding the protection of air quality as established by the Texas legislature.

Part of the TCEQ's role is to determine how to appropriately distribute resources. Like all agencies, the TCEQ prioritizes the allocation of resources to items that require the most attention and that does not always align with the needs and requests of local areas. The TCEQ works with local governments and other stakeholders during the SIP development process to asses all measures to be included in the SIP that will be implemented at the local level. After the SIP development process is completed, the TCEQ continues to provide support to local governments by participating in local air quality planning committees and through the general conformity and transportation conformity processes.

The TCEQ relies on the complete statutory and regulatory authority as referenced throughout this document. This statutory authority ensures that Texas can meet the requirements of this section, including the requirements of §128 of the FCAA. The TCEQ also regularly submits a legal authority with SIP revisions submitted to the EPA.

**FCAA, §110(a)(2)(F)**

<u>Federal Requirement</u>

(F)     require, as may be prescribed by the Administrator: (i) the installation, maintenance, and replacement of equipment, and implementation of other necessary steps, by owners or operators of stationary sources to monitor emissions from such sources, (ii) periodic reports on the nature and amounts of emissions and emissions-related data from such sources, and (iii) correlation of such reports by the State agency with any emission limitations or standards established pursuant to this Act, which reports shall be available at reasonable times for public inspection;

<u>Texas Requirement</u>

The TCEQ requires monitoring for air pollutants as part of its NSR permit program. Certain emission sources are required to submit annual emission inventories and periodic reporting of emissions, which provides data that is used in air quality modeling to help Texas prepare SIP

revisions. Emissions data are available at reasonable times for public inspection, with some information also available on the agency Web site.

The following chapters of 30 TAC contain rules relevant for this federal requirement:

| Chap. 101 | General Air Quality Rules |
| Chap. 106 | Permits by Rule, Subchapter A, General Requirements |
| Chap. 111 | Control of Air Pollution from Visible Emissions and Particulate Matter |
| Chap. 112 | Control of Air Pollution from Sulfur Compounds |
| Chap. 115 | Control of Air Pollution from Volatile Organic Compounds |
| Chap. 116 | Control of Air Pollution by Permits for New Construction or Modification |
| Chap. 117 | Control of Air Pollution from Nitrogen Compounds |

### FCAA, §110(a)(2)(G)
<u>Federal Requirement</u>

  (G)  provide for authority comparable to that in section 303 and adequate contingency plans to implement such authority;

<u>Texas Requirement</u>
The TCEQ may issue emergency orders, or issue or suspend air permits as required by an air pollution emergency. In addition, the TCEQ also maintains air quality information in a form readily available to the public on the TCEQ's <u>Today's Texas Air Quality Forecast Web site</u> (http://www.tceq.texas.gov/airquality/monops.html).

The following chapters of 30 TAC contain rules relevant for this federal requirement:

| Chap. 35 | Emergency and Temporary Orders and Permits; Temporary Suspension or Amendment of Permit Conditions; Subchapters A, B, C, K |
| Chap. 118 | Control of Air Pollution Episodes |

### FCAA, §110(a)(2)(H)
<u>Federal Requirement</u>

  (H)  provide for revision of such plan: (i) from time to time as may be necessary to take account of revisions of such national primary or secondary ambient air quality standard or the availability of improved or more expeditious methods of attaining such standard, and (ii) except as provided in paragraph (3)(C), whenever the Administrator finds on the basis of information available to the Administrator that the plan is substantially inadequate to attain the national ambient air quality standard which it implements or to otherwise comply with any additional requirements established under this Act;

<u>Texas Requirement</u>
The TCEQ regularly revises the Texas SIP in response to revisions in the NAAQS and the EPA rules. See §110(a)(2)(A) above.

### FCAA, §110(a)(2)(I)
<u>Federal Requirement</u>

  (I)  in the case of a plan or plan revision for an area designated as a nonattainment area, meet the applicable requirements of part D (relating to nonattainment areas);

Texas Requirement

SIP revisions that implement the control strategies necessary to bring a nonattainment area into attainment of the NAAQS are not required by the FCAA to be submitted within three years of the promulgation of a new or revised NAAQS. Therefore, §110(a)(1) does not require this element to be demonstrated as part of an infrastructure SIP submittal (73 FR 16205, at 16206).

**FCAA, §110(a)(2)(J)**

Federal Requirement

(J)    meet the applicable requirements of section 121 (relating to consultation), section 127 (relating to public notification), and part C (relating to prevention of significant deterioration and visibility protection);

Texas Requirement

The TCEQ has an established public participation process for all SIP revisions and permitting programs. The EPA has proposed limited approval/limited disapproval of the rules regarding public participation for air quality NSR permits.[2] Texas has withdrawn from EPA consideration most of the rules that were the subject of the proposed limited approval/limited disapproval, and has submitted new and revised public participation rules to the EPA as a new SIP revision to address the EPA's published concerns regarding these requirements.[3] On October 28, 2010, the EPA signed a notice withdrawing its limited approval/limited disapproval of the SIP revisions relating to public participation because those revisions are no longer before the EPA for review (75 FR 68291). The TCEQ consults with other state agencies, local agencies, and non-governmental organizations, as well as with the environmental agencies of other states regarding air quality concerns. All major sources in attainment/unclassifiable areas in Texas are subject to Texas' SIP-approved PSD program. Texas submitted a SIP revision to address Regional Haze, including a long-term strategy to address visibility impairment for each Class I area that may be impacted by emissions from Texas facilities.

The following chapters of 30 TAC contain rules relevant for this federal requirement:

| Chap. 7 | Memoranda of Understanding |
|---|---|
| Chap. 35 | Emergency and Temporary Orders and Permits; Temporary Suspension or Amendment of Permit Conditions; Subchapters H and K |
| Chap. 101 | General Air Quality Rules |
| Chap. 116 | Control of Air Pollution for New Construction or Modification |

**FCAA, §110(a)(2)(K)**

Federal Requirement

(K)    provide for (i) the performance of such air quality modeling as the Administrator may prescribe for the purpose of predicting the effect on ambient air quality of any emissions of any air pollutant for which the Administrator has established a national ambient air quality standard, and (ii) the submission, upon request, of data related to such air quality modeling to the Administrator;

---

[2] Approval and Promulgation of Implementation Plans; Texas; Revisions to Chapters 39, 55, and 116 Which Relate to Public Participation on Permits for New and Modified Sources, 73 FR 72001 (November 26, 2008).

[3] The TCEQ adopted this rulemaking on June 2, 2010, and the adopted rules were published in the *Texas Register* (TR) on June 18, 2010 (35 TR 5198). These rules became effective on June 24, 2010, were submitted to the EPA on July 2, 2010, but the EPA has not yet taken any action on these rules.

Texas Requirement
Air quality modeling is conducted during development of revisions to the Texas SIP, as appropriate for the state to demonstrate attainment with required NAAQS. Modeling is also a part of the NSR permitting program.

The following chapter of 30 TAC contains rules relevant for this federal requirement:

Chap. 116          Control of Air Pollution for New Construction or Modification

## FCAA, §110(a)(2)(L)
Federal Requirement
      (L)     require the owner or operator of each major stationary source to pay to the permitting authority, as a condition of any permit required under this Act, a fee sufficient to cover (i) the reasonable costs of reviewing and acting upon any application for such a permit, and (ii) if the owner or operator receives a permit for such source, the reasonable costs of implementing and enforcing the terms and conditions of any such permit (not including any court costs or other costs associated with any enforcement action), until fee requirement is superseded with respect to such sources by the Administrator's approval of a fee program under title V;

Texas Requirement
The TCEQ assesses fees for reviewing permit applications and for enforcing the terms and conditions of permits.

The following chapters of 30 TAC contain rules relevant for this federal requirement:

Chap. 12          Payment of Fees
Chap. 101         General Air Quality Rules
Chap. 106         Permits by Rule, Subchapter A, General Requirements
Chap. 116         Control of Air Pollution by Permits for New Construction or Modification

## FCAA, §110(a)(2)(M)
Federal Requirement
      (M)     provide for consultation and participation by local political subdivisions affected by the plan.

Texas Requirement
The TCEQ has several cooperative agreements and Memoranda of Understanding with various other state and local agencies and organizations. Consultation with a variety of different organizations is a regular part of the TCEQ's process of developing SIP revisions.

## D.  Conclusion
The foregoing demonstrates that Texas has the necessary regulatory and statutory authority to meet the infrastructure requirements of FCAA, §110(a)(1) and (2) for the 2008 ozone NAAQS.

## SECTION VI: CONTROL STRATEGY

A.  Introduction (No change)
B.  Ozone (No change)
C.  Particulate Matter (No change)
D.  Carbon Monoxide (No change)
E.  Lead (No change)
F.  Oxides of Nitrogen (No change)
G.  Sulfur Dioxide (No change)
H.  Conformity with the National Ambient Air Quality Standards (No change)
I.   Site Specific (No change)
J.  Mobile Sources Strategies (No change)
K.  Clean Air Interstate Rule (No change)
L.  Transport (Revised)
M. Regional Haze (No change)

# TABLE OF CONTENTS

Executive Summary

Section V: Legal Authority

Section V-A: Legal Authority

    A. General

    B. Applicable Law

Section V-D-1: Infrastructure Demonstration for the 2008 Ozone National Ambient Air Quality Standards

    A. Background

    B. Texas Statutory Authority

    C. Texas Regulatory Authority

        FCAA, §110(a)(2)(A)

        FCAA, §110(a)(2)(B)

        FCAA, §110(a)(2)(C)

        FCAA, §110(a)(2)(D)

        FCAA, §110(a)(2)(E)

        FCAA, §110(a)(2)(F)

        FCAA, §110(a)(2)(G)

        FCAA, §110(a)(2)(H)

        FCAA, §110(a)(2)(I)

        FCAA, §110(a)(2)(J)

        FCAA, §110(a)(2)(K)

        FCAA, §110(a)(2)(L)

        FCAA, §110(a)(2)(M)

    D. Conclusion

Section VI: Control Strategy

Table of Contents

List of Acronyms

List of Tables

List of Figures

Chapter 1: General

    1.1 Background

1.2 Introduction

1.3 Health Effects

1.4 Public Hearing and Comment Information

1.5 Social and Economic Considerations

1.6 Fiscal and Manpower Resources

1.7 Coordination with Local Agencies

1.8 Organizations Responsible for Development, Implementation and Enforcement

1.9 Data Availability

Chapter 2: Required Control Strategy Elements

2.1 Background

2.2 Control Strategy Overview

2.2.1 Significant Contribution to Nonattainment and Interference with Maintenance Elements

2.2.1.1 Technical Analysis

2.2.1.2 Monitoring Sites

2.2.1.3 References

2.2.2 Emissions Reductions from EGUs

2.2.2.1 CAIR and Cross-State Air Pollution Rule (CSAPR)

2.2.2.2 Utility Electric Generation in Ozone Nonattainment Areas

2.2.2.3 Utility Electric Generation in East and Central Texas

2.2.2.4 Senate Bill 7 (76th Texas Legislature)

2.2.3 Emission Reductions from Other Sources

2.2.3.1 HGB Area MECT Program

2.2.3.2 Cement Kilns

2.2.3.3 East Texas Engines

2.2.3.4 HGB Area Highly Reactive VOC (HRVOC) Rules and HRVOC Cap and Trade (HECT) Program

2.2.4 1997 Eight-Hour Ozone SIP Revisions Adopted Since 2008

2.2.4.1 HGB 1997 Eight-Hour Ozone SIP Revisions

2.2.4.2 DFW 1997 Eight Hour Ozone SIP Revisions

2.2.4.3 BPA 1997 Eight-Hour Ozone Redesignation to Attainment and Maintenance Plan

2.2.4.4 VIC 1997 Eight-Hour Ozone Contingency Plan SIP Revision

2.2.4.5 ARR 1997 Eight-Hour Ozone Flex Plan

2.3 Control Strategy Conclusions

Chapter 3: Future Revisions to the National Ambient Air Quality Standards (NAAQS)

Response to Comments

## LIST OF ACRONYMS

| | |
|---|---|
| AD | attainment demonstration |
| AQS | Air Quality System |
| ARR | Austin-Round Rock |
| BPA | Beaumont-Port Arthur |
| CAIR | Clean Air Interstate Rule |
| CSAPR | Cross-State Air Pollution Rule |
| CTG | control techniques guidelines |
| DERC | Discrete Emission Reduction Credit |
| DFW | Dallas-Fort Worth |
| EAC | Early Action Compact |
| EGU | electric generating unit |
| EPA | United States Environmental Protection Agency |
| FCAA | Federal Clean Air Act |
| FR | *Federal Register* |
| g/hp-hr | grams per horsepower-hour |
| HECT | Highly Reactive Volatile Organic Compounds Emissions Cap and Trade |
| HGB | Houston-Galveston-Brazoria |
| hp | horsepower |
| HRVOC | highly reactive volatile organic compounds |
| hv | sunlight |
| lb/MMBtu | pound per million British thermal units |
| lb/ton of clinker | pounds of $NO_x$ per ton of cement clinker produced |
| MECT | Mass Emissions Cap and Trade |
| MVEB | motor vehicle emissions budget |
| NAAQS | National Ambient Air Quality Standards |
| NETX | Northeast Texas |
| NO | nitrogen oxide |
| $NO_2$ | nitrogen dioxide |
| $NO_X$ | nitrogen oxides |
| NSR | New Source Review |
| $O_2$ | oxygen |
| $O_3$ | ozone |
| $PM_{2.5}$ | fine particulate matter |

| | |
|---|---|
| ppm | parts per million |
| PSD | Prevention of Significant Deterioration |
| PUCT | Public Utility Commission of Texas |
| RACM | reasonably available control measures |
| RACT | reasonably available control technology |
| RFP | reasonable further progress |
| SIP | state implementation plan |
| $SO_2$ | sulfur dioxide |
| TAC | Texas Administrative Code |
| TACB | Texas Air Control Board |
| TCAA | Texas Clean Air Act |
| TCEQ | Texas Commission on Environmental Quality (commission) |
| TNRCC | Texas Natural Resource Conservation Commission |
| tpy | tons per year |
| TUC | Texas Utilities Code |
| VIC | Victoria |
| VOC | volatile organic compounds |

## LIST OF TABLES

Table 2-1: Percent Change in Eight-Hour Ozone Design Values

Table 2-2: Areas in EPA Region 6 Designated Nonattainment for the 2008 Eight-Hour Ozone NAAQS

Table 2-3: Monitor Sites and Eight-Hour Ozone Design Values in EPA Region 6

**LIST OF FIGURES**

Figure 2-1: Counties Designated Nonattainment for the 2008 Eight-Hour Ozone NAAQS (EPA, 2012)

Figure 2-2: Eight-Hour Ozone Design Value Trends in Texas and Closest Nonattainment Areas

Figure 2-3: 2010 Eight-Hour Ozone Design Values at Monitors Located in Texas and Surrounding States

Figure 2-4: $NO_X$ Emission Trend for Texas EGUs from 1995 through 2011

# CHAPTER 1: GENERAL

## 1.1 BACKGROUND

"The History of the Texas State Implementation Plan (SIP)," a comprehensive overview of the SIP revisions submitted to the United States Environmental Protection Agency (EPA) by the State of Texas, is available on the <u>Introduction to the SIP Web page</u> (http://www.tceq.texas.gov/airquality/sip/sipintro.html#History) on the <u>Texas Commission on Environmental Quality's (TCEQ) Web site</u> (http://www.tceq.texas.gov).

## 1.2 INTRODUCTION

This SIP revision for the transport of ozone under the 2008 Ozone National Ambient Air Quality Standards (NAAQS) describes how the Texas Commission on Environmental Quality (TCEQ) will meet the requirements of §110(a)(2)(D)(i)(I) of the Federal Clean Air Act (FCAA). States are required to submit a SIP revision within three years of promulgation of new or revised NAAQS that contains adequate provisions that prohibit any source or other type of emissions activity within the state from emitting any NAAQS pollutants in amounts that will:

- contribute significantly to nonattainment of the NAAQS for areas in other states; or
- interfere with maintenance of the NAAQS by any other state.

On March 12, 2008, the EPA strengthened the NAAQS for ground level ozone. The new primary eight-hour ozone standard, set at 0.075 parts per million (ppm) replaced the previous 1997 standard of 0.08 ppm. The EPA also decreased the secondary eight-hour ozone standard to the level of 0.075 ppm making it identical to the revised primary standard. However, the EPA did not initially implement the 2008 eight-hour ozone standard due to a subsequent reconsideration of the NAAQS. To date, the EPA has not published infrastructure or transport guidance for the 2008 ozone NAAQS. On August 21, 2012, the United States Court of Appeals for the District of Columbia Circuit vacated the Cross State Air Pollution Rule (CSAPR).

Based on the control strategies already in place to reduce ozone precursor emissions in ozone nonattainment areas and an analysis of ozone trends in Texas, this SIP revision demonstrates that Texas meets the transport requirements of FCAA §110(a)(2)(D)(i)(I).

## 1.3 HEALTH EFFECTS

In 2008, the EPA revised the primary ozone standard to 0.075 ppm. To support the 2008 eight-hour primary ozone standard, the EPA provided information indicating that health effects can occur at levels lower than the previous standard. Exposure to relatively high levels of ambient ozone can aggravate asthma in some people. Repeated exposures to high levels of ozone can make people more susceptible to respiratory infection and lung inflammation and can aggravate preexisting respiratory diseases, such as bronchitis and emphysema.

Children are at a relatively higher risk from exposure to ozone when compared to adults, since they breathe more air per pound of body weight than adults and because children's respiratory systems are still developing. Children also spend a considerable amount of time outdoors during summer and during the start of the school year (August through October) when high ozone levels are typically recorded. Adults most at risk to ozone exposure are people working or exercising outdoors and individuals with preexisting respiratory diseases.

## 1.4 PUBLIC HEARING AND COMMENT INFORMATION

The commission held a public hearing for the proposed SIP revision in Austin on September 25, 2012. A question and answer session was held 30 minutes prior to the meeting. The Alamo Area Council of Governments provided oral comments concerning the SIP revision.

The public comment period opened on August 24, 2012, and closed on September 28, 2012. Written comments were accepted via mail, fax, and through the eComments (http://www5.tceq.texas.gov/rules/ecomments) system. Written comments were received from the EPA, Public Citizen, and four individuals. A summary of the comments and the TCEQ response is provided as part of this SIP revision in the Response to Comments.

An electronic version of this SIP revision can be found at the TCEQ's Air Pollution from Ozone Web page (http://www.tceq.texas.gov/airquality/sip/criteria-pollutants/sip-ozone).

## 1.5 SOCIAL AND ECONOMIC CONSIDERATIONS

Because rulemaking is not a part of this SIP revision, there are no changes that would have an impact on society or the economy.

## 1.6 FISCAL AND MANPOWER RESOURCES

The TCEQ has determined that its fiscal and manpower resources are adequate and will not be adversely affected through the implementation of this plan.

## 1.7 COORDINATION WITH LOCAL AGENCIES

The TCEQ has determined that there will be no assignment to local agencies. However, pre-existing assignments to local agencies regarding various enforcement activities remain in effect and could be used if enforcement activities are delegated to the TCEQ from the EPA.

## 1.8 ORGANIZATIONS RESPONSIBLE FOR DEVELOPMENT, IMPLEMENTATION AND ENFORCEMENT

The TCEQ is the agency delegated authority by the Texas Legislature regarding the protection of air quality in the State of Texas. Other local government entities have limited authority regarding air quality matters in the State of Texas.

## 1.9 DATA AVAILABILITY

The TCEQ affirms that it will retain all data used in the preparation of this SIP revision. All supporting documents and data are publicly available via the TCEQ SIP Web page (http://www.tceq.texas.gov/airquality/sip/) or are available from the TCEQ upon request.

## CHAPTER 2:  REQUIRED CONTROL STRATEGY ELEMENTS

### 2.1 BACKGROUND

There are two nonattainment areas for the 2008 eight-hour ozone National Ambient Air Quality Standards (NAAQS) in Texas: the Houston-Galveston-Brazoria (HGB) marginal nonattainment area and the Dallas-Fort Worth (DFW) moderate nonattainment area. The rest of the counties in Texas are designated unclassifiable/attainment for the 2008 eight-hour ozone NAAQS.

Texas has not yet put control measures in place to address the 2008 eight-hour ozone NAAQS, as attainment demonstration (AD) state implementation plan (SIP) revisions are not due until 2015. However, Texas already has numerous control measures in place to address ozone precursor emissions under previous ozone standards. These measures have resulted in significant decreases in eight-hour ozone design values from 1990 to 2010, with much of the decreases occurring from 2000 to 2010. With implementation of the 2008 ozone standard, decreases in design values are expected to continue.

Texas is not covered under the Clean Air Interstate Rule (CAIR) for the 1997 eight-hour ozone NAAQS, but is included for the 1997 fine particulate matter ($PM_{2.5}$) NAAQS. In addition to the annual nitrogen oxides ($NO_X$) reductions from the CAIR program, in 1999 the state implemented a strategy in the eastern part of Texas to reduce $NO_X$ emissions from electric generating units (EGU). These EGU strategies, along with other $NO_X$ and volatile organic compounds (VOC) reducing programs from 1997 eight-hour ozone SIP revisions, Early Action Compact (EAC) SIP revisions, 1997 eight-hour ozone maintenance plans, 1997 eight-hour ozone flex plans, one-hour ozone SIP revisions, a one-hour ozone flexible attainment region SIP revision, and one-hour ozone flexible agreements are described in this chapter. The combination of these $NO_X$ and VOC reduction programs fulfills the state's obligation to address transport for the 2008 eight-hour ozone NAAQS.

### 2.2 CONTROL STRATEGY OVERVIEW

Federal Clean Air Act (FCAA), §110(a)(2)(D)(i)(I) requires states to submit a SIP revision that contains adequate provisions to prohibit any source or other type of emissions activity within the state from emitting any air pollutants in amounts that will contribute significantly to nonattainment of the NAAQS for areas in other states or interfere with maintenance of the NAAQS in any other state. The following sections evaluate eight-hour ozone design value trends for nonattainment areas in Texas and in surrounding states and outline the control measures implemented in Texas to achieve emission reductions to demonstrate that emissions from Texas do not contribute significantly to nonattainment or interfere with maintenance of the 2008 ozone NAAQS in another state.

### 2.2.1 Significant Contribution to Nonattainment and Interference with Maintenance Elements

#### 2.2.1.1 Technical Analysis

Ozone ($O_3$) is a secondary pollutant that is created through a photochemical reaction between oxygen ($O_2$), $NO_X$, and VOC. $NO_X$ refers to the combination of nitrogen oxide (NO) and nitrogen dioxide ($NO_2$). The following reactions show how $NO_X$, VOC, and $O_2$ react in the presence of sunlight (hv) to form $O_3$:

$$O_2 + NO_2 \overset{hv}{\leftrightarrow} O_3 + NO$$

$$NO + VOC \rightarrow NO_2$$

The amount of ozone formed depends on several factors. Meteorological conditions, such as wind direction and speed, temperature, mixing height, solar radiation, and other parameters, affect the rates at which ozone formation occurs. The types and the concentration of precursors present can affect net reactivity of precursor compounds found in a plume of emissions.

Precursor compounds, $NO_X$ and VOC, also exist under natural conditions. Ozone is created and destroyed on a natural cycle according to atmospheric conditions and chemical concentrations, even in the absence of additional anthropogenic precursor sources. This natural ozone formation is known as "natural background" ozone and is the starting point for measuring the contribution of ozone and precursors attributable to human activity. Within an urban area, not all ozone formation is necessarily caused by emissions produced locally because anthropogenic precursors, along with ozone formed by them, are often transported over long distances. Because the amount of ozone formed depends on so many other variables, it can be difficult to quantify the exact contribution from specific sources.

The EPA revised the eight-hour ozone NAAQS to 0.075 parts per million (ppm) in 2008. On April 30, 2012, the EPA finalized designations for the 2008 eight-hour ozone NAAQS. *Figure 2-1: Counties Designated Nonattainment for the 2008 Eight-Hour Ozone NAAQS (EPA, 2012)* shows a map of the counties the EPA designated nonattainment. The map shows that two areas in Texas were designated nonattainment. The DFW area, which includes Collin, Dallas, Denton, Ellis, Johnson, Kaufman, Parker, Rockwall, Tarrant, and Wise Counties, and the HGB area, which includes Brazoria, Chambers, Fort Bend, Galveston, Harris, Liberty, Montgomery, and Waller Counties.



**Figure 2-1: Counties Designated Nonattainment for the 2008 Eight-Hour Ozone NAAQS (EPA, 2012)**

Figure 2-2: *Eight-Hour Ozone Design Value Trends in Texas and Closest Nonattainment Areas* shows the eight-hour ozone design value trends from the nonattainment areas in Texas and nonattainment areas in surrounding states. The surrounding nonattainment areas evaluated below are those that are geographically closest to Texas. The design values in Texas were over 6 ppb higher in 2010 than the design values in other states; however, the overall design value trend was decreasing in all areas. Although all areas had a decrease in the eight-hour ozone design value, the majority of areas experienced most of those decreases after 2000. Table 2-1: *Percent Change in Eight-Hour Ozone Design Values* shows the percent change in the eight-hour ozone design values from Texas and the closest nonattainment areas in other states (Arizona, Arkansas, Colorado, Illinois, Indiana, Louisiana, Mississippi, Missouri, Tennessee, and Wisconsin). The minus sign indicates a percent decrease. The table shows that the percent change from 2000 through 2010, which ranged from a 9% decrease to a 25% decrease, was much larger than the percent change from 1990 through 2000, which ranged from a 6% increase to an 18% decrease. The HGB area had the second largest decrease in eight-hour ozone design values from 1990 through 2010, 29 %, the majority of that occurring after 2000.



**Figure 2-2: Eight-Hour Ozone Design Value Trends in Texas and Closest Nonattainment Areas**

**Table 2-1: Percent Change in Eight-Hour Ozone Design Values**

| Nonattainment Area | Percent Change 1990-2010 | Percent Change 1990-2000 | Percent Change 2000-2010 |
|---|---|---|---|
| Chicago-Naperville | -35 | -18 | -20 |
| Houston-Galveston-Brazoria | -29 | -6 | -25 |
| St. Louis-St. Charles-Farmington | -25 | -8 | -18 |
| Sheboygan | -24 | -10 | -15 |
| Baton Rouge | -23 | -3 | -20 |
| Memphis | -20 | 2 | -22 |
| Dallas-Fort-Worth | -18 | -3 | -16 |
| Denver-Boulder-Greeley-Ft. Collins | -9 | 0 | -9 |
| Phoenix-Mesa | -6 | 6 | -11 |

EPA Region 6, the region where Texas is located, has two other nonattainment areas besides those in Texas: the Baton Rouge area in Louisiana and the Memphis area in Arkansas, Mississippi, and Tennessee. Table 2-2: *Areas in EPA Region 6 Designated Nonattainment for the 2008 Eight-Hour Ozone NAAQS* lists the counties in each area that were designated

nonattainment and shows the approximate distance from each nonattainment area to the Texas nonattainment areas. Although the Memphis nonattainment area spans three states (Arkansas, Mississippi, and Tennessee), only one of those states, Arkansas, is located within Region 6. These areas can be seen more clearly on the map displayed in Figure 2-3: *2010 Eight-Hour Ozone Design Values at Monitors Located in Texas and Surrounding States.*

**Table 2-2: Areas in EPA Region 6 Designated Nonattainment for the 2008 Eight-Hour Ozone NAAQS**

| Area | State | Counties Designated Nonattainment by the EPA | Approximate Distance from HGB (miles) | Approximate Distance from DFW (miles) |
|------|-------|----------------------------------------------|---------------------------------------|---------------------------------------|
| Baton Rouge | Louisiana | Ascension<br>East Baton Rouge<br>Iberville<br>Livingston<br>West Baton Rouge | 260 | 370 |
| Memphis | Arkansas<br>Mississippi<br>Tennessee | Crittenden<br>DeSoto (partial county)<br>Shelby | 485 | 420 |

Figure 2-3 also shows the 2010 eight-hour ozone design values from monitors in Texas and the surrounding Region 6 states. Design values are from the EPA's Air Quality System (AQS). The pink and red dots represent monitors with a design value that is above the 2008 eight-hour ozone NAAQS, and the yellow and blue dots represent monitors with a design value below the 2008 eight-hour ozone NAAQS. Attainment status is based on 2010 design values. Nonattainment areas are outlined on the map in light and dark brown. The map shows that there are several monitors located between Texas and the two closest nonattainment areas, Memphis and Baton Rouge. The monitors located between Texas and Baton Rouge show attainment of the 2008 eight-hour ozone NAAQS. This result suggests that local emissions contribute to these areas' nonattainment status. In addition, there are sources of ozone precursors located between Texas and the other nonattainment areas. The amount of ozone in other nonattainment areas from precursor sources outside of Texas and the amount of ozone coming from Texas into other nonattainment areas was not calculated. Because there are additional precursor sources located between Texas and other areas, it is difficult to determine how much ozone in other areas would be due to transport and how much ozone would be due to those sources of ozone precursors.

Ozone season wind patterns from the DFW and the HGB areas were extensively investigated in the 2010 DFW Ozone Conceptual Model (TCEQ, 2011) and in the 2009 HGB Ozone Conceptual Model (TCEQ, 2010). Those analyses showed that in the DFW area ozone season winds are typically out of the south to the east. In the HGB area, winds in the early part of the ozone season, May through July, are typically from the south. Then, in the later part of the ozone season, August and September, winds switch to a more east to northeast direction. In both areas, very few winds are observed from the west and northwest, the directions which would be anticipated to transport ozone to Memphis and Baton Rouge.



**Figure 2-3: 2010 Eight-Hour Ozone Design Values at Monitors Located in Texas and Surrounding States**

2.2.1.2 Monitoring Sites

In 2010, there were 167 ozone monitors located within EPA Region 6. The location of monitors with valid 2010 eight-hour ozone design values are displayed in the map in Figure 2-3. A complete list of monitors, including those without valid design values, is shown in Table 2-3: *Monitor Sites and Eight-Hour Ozone Design Values in EPA Region 6*. The data from these monitors were reported to the EPA's AQS. Texas has the most monitors, 78, in Region 6. Oklahoma has 29 monitors, New Mexico and Louisiana have 26 monitors each, and Arkansas has 8 monitors. Note that the monitor numbers include tribal monitors. Although there are several monitors located near the Texas border in Louisiana and New Mexico, there are no monitors near the Texas border in Oklahoma and Arkansas.

**Table 2-3: Monitor Sites and Eight-Hour Ozone Design Values in EPA Region 6**

| State | County Name | Airs Number and POC Number | Site Name (If Applicable) | 2010 Eight-Hour Ozone Design Value | Nonattainment Area (If Applicable) |
|-------|-------------|---------------------------|--------------------------|-----------------------------------|-----------------------------------|
| Arkansas | Crittenden | 050350005-1 | Marion | 74 | Memphis |
| Arkansas | Newton | 051010002-1 | Deer | 66 | |
| Arkansas | Polk | 051130003-1 | Eagle Mountain | 70 | |

| State | County Name | Airs Number and POC Number | Site Name (If Applicable) | 2010 Eight-Hour Ozone Design Value | Nonattainment Area (If Applicable) |
|-------|-------------|---------------------------|---------------------------|-----------------------------------|-----------------------------------|
| Arkansas | Pulaski | 051190007-1 | Parr | 70 | |
| Arkansas | Pulaski | 051191002-1 | Nlr Airport | 70 | |
| Arkansas | Pulaski | 051191008-1 | Doyle Springs Road | 67 | |
| Arkansas | Van Buren | 051410001-1 | | | |
| Arkansas | Washington | 051430005-1 | Springdale | 64 | |
| Louisiana | Ascension | 220050004-1 | | 75 | Baton Rouge |
| Louisiana | Bossier | 220150008-2 | | 74 | |
| Louisiana | Caddo | 220170001-2 | | 72 | |
| Louisiana | Calcasieu | 220190002-1 | | 74 | |
| Louisiana | Calcasieu | 220190008-1 | | 63 | |
| Louisiana | Calcasieu | 220190009-1 | | 74 | |
| Louisiana | East Baton Rouge | 220330003-1 | | 78 | Baton Rouge |
| Louisiana | East Baton Rouge | 220330009-1 | Capitol | 73 | Baton Rouge |
| Louisiana | East Baton Rouge | 220330013-1 | Locate At Pride / Zachary | 72 | Baton Rouge |
| Louisiana | East Baton Rouge | 220331001-2 | | 72 | Baton Rouge |
| Louisiana | Iberville | 220470007-1 | | 71 | |
| Louisiana | Iberville | 220470009-1 | Off LA Hwy 75 Near Water Treatment Facility | 73 | Baton Rouge |
| Louisiana | Iberville | 220470012-1 | Replaced Site Id 220470002 | 73 | Baton Rouge |
| Louisiana | Jefferson | 220511001-2 | Kenner | 75 | |
| Louisiana | Lafayette | 220550007-1 | Replace Site Id #220550001 | 72 | |
| Louisiana | Lafourche | 220570004-1 | Nicholls State University Farm | 71 | |
| Louisiana | Livingston | 220630002-1 | | 75 | Baton Rouge |
| Louisiana | Orleans | 220710012-2 | City Park | 71 | |
| Louisiana | Ouachita | 220730004-1 | Monroe Airport | 64 | |
| Louisiana | Pointe Coupee | 220770001-1 | | 75 | |
| Louisiana | St. Bernard | 220870009-1 | Chalmette High School | 69 | |
| Louisiana | St. Charles | 220890003-1 | | 70 | |
| Louisiana | St. James | 220930002-1 | | 68 | |
| Louisiana | St. John the Baptist | 220950002-1 | | 73 | |
| Louisiana | St. Tammany | 221030002-1 | | | |
| Louisiana | West Baton Rouge | 221210001-1 | | 71 | Baton Rouge |
| New Mexico | Bernalillo | 350010023-1 | Del Norte High School | 64 | |
| New Mexico | Bernalillo | 350010024-1 | South East Heights | 66 | |

| State | County Name | Airs Number and POC Number | Site Name (If Applicable) | 2010 Eight-Hour Ozone Design Value | Nonattainment Area (If Applicable) |
|---|---|---|---|---|---|
| New Mexico | Bernalillo | 350010027-1 | Westside Taylor Ranch | 67 | |
| New Mexico | Bernalillo | 350010029-1 | South Valley Mountain View | 66 | |
| New Mexico | Bernalillo | 350010032-1 | Westside | | |
| New Mexico | Bernalillo | 350011012-1 | Far North East Heights | 68 | |
| New Mexico | Bernalillo | 350011013-1 | North Valley | 67 | |
| New Mexico | Dona Ana | 350130008-2 | | 64 | |
| New Mexico | Dona Ana | 350130017-1 | | 64 | |
| New Mexico | Dona Ana | 350130020-1 | 6Zk 3 Mi North Of El Paso, TX On East Side Of Franklin Mountains | 66 | |
| New Mexico | Dona Ana | 350130021-1 | 6Zm 2Mi From Mt Cristo Rey Where NM, TX, And Mexico Join Together | 70 | |
| New Mexico | Dona Ana | 350130022-1 | 6Zn US-Mexico Border Crossing. Both Sides Uninhabited As Of 1996. | 67 | |
| New Mexico | Dona Ana | 350130023-1 | 6Zq In SE Corner Of NM Highway Dept. Yards In Las Cruces | 63 | |
| New Mexico | Eddy | 350151005-1 | 5Zr On Blm Land Bordering Residential Area Outside Carlsbad City L | 67 | |
| New Mexico | Eddy | 350153001-1 | | | |
| New Mexico | Grant | 350171003-1 | 7T Alongside Softball Field And Near Chino Copper Smelter | 63 | |
| New Mexico | Lea | 350250008-1 | Hobbs-Jefferson | 59 | |
| New Mexico | Luna | 350290003-1 | | 57 | |
| New Mexico | Sandoval | 350431001-1 | | 60 | |

| State | County Name | Airs Number and POC Number | Site Name (If Applicable) | 2010 Eight-Hour Ozone Design Value | Nonattainment Area (If Applicable) |
|---|---|---|---|---|---|
| New Mexico | Sandoval | 350439004-1 | Pueblo Of Jemez Tribal Trust Lands, Department Of Resource Protection | | |
| New Mexico | San Juan | 350450009-1 | SE Corner Of NM Highway Dept Yard | 60 | |
| New Mexico | San Juan | 350450018-1 | | | |
| New Mexico | San Juan | 350451005-1 | | 63 | |
| New Mexico | San Juan | 350451233-1 | | | |
| New Mexico | Santa Fe | 350490021-1 | | 63 | |
| New Mexico | Valencia | 350610008-1 | | | |
| Oklahoma | Adair | 400019009-1 | Stilwell | 67 | |
| Oklahoma | Caddo | 400159008-1 | Anadarko Pm2.5 | | |
| Oklahoma | Canadian | 400170101-1 | OKC West-(Yukon) | 71 | |
| Oklahoma | Cherokee | 400219002-1 | Tahlequah Shelter | 68 | |
| Oklahoma | Cleveland | 400270049-1 | Moore Water Tower | 69 | |
| Oklahoma | Comanche | 400310649-1 | Lawton South | | |
| Oklahoma | Comanche | 400310651-1 | Lawton North | 69 | |
| Oklahoma | Creek | 400370144-1 | Mannford | 70 | |
| Oklahoma | Dewey | 400430860-1 | Seiling Municipal Airport | 66 | |
| Oklahoma | Jefferson | 400670671-1 | Located Behind Lake Waurika Corp. Of Eng. Office | | |
| Oklahoma | Kay | 400719003-1 | Ponca Tribe | | |
| Oklahoma | Kay | 400719010-1 | Newkirk Improve | 66 | |
| Oklahoma | Lincoln | 400819005-1 | Sac and Fox Nation, Stroud | 60 | |
| Oklahoma | Love | 400850300-1 | Weather Station - Burnyeyville Mesonet Site | | |
| Oklahoma | McClain | 400871073-1 | Goldsby | 68 | |
| Oklahoma | McCurtain | 400892001-1 | Smithville Site | | |
| Oklahoma | Mayes | 400979014-1 | Cherokee Heights | 67 | |
| Oklahoma | Oklahoma | 401090033-1 | OKC Central-Osdh | 72 | |
| Oklahoma | Oklahoma | 401090096-1 | Choctaw | 72 | |
| Oklahoma | Oklahoma | 401091037-1 | OKC North | 74 | |
| Oklahoma | Osage | 401139020-1 | | | |
| Oklahoma | Ottawa | 401159004-1 | Quapaw Shelter | 65 | |

| State | County Name | Airs Number and POC Number | Site Name (If Applicable) | 2010 Eight-Hour Ozone Design Value | Nonattainment Area (If Applicable) |
|-------|-------------|------------------|-----------|--------|--------|
| Oklahoma | Pittsburg | 401210415-1 | Mcalester Municipal Airport | 67 | |
| Oklahoma | Sequoyah | 401359015-1 | Marble City Shelter | | |
| Oklahoma | Sequoyah | 401359021-1 | | | |
| Oklahoma | Tulsa | 401430137-1 | Tulsa North (Skiatook) | 75 | |
| Oklahoma | Tulsa | 401430174-1 | Tulsa South | 67 | |
| Oklahoma | Tulsa | 401430178-1 | Tulsa East | 70 | |
| Oklahoma | Tulsa | 401431127-1 | North Tulsa - Fire Station#24 | 70 | |
| Texas | Bell | 480271047-1 | Killeen Skylark Field | | |
| Texas | Bexar | 480290032-2 | San Antonio Northwest | 75 | |
| Texas | Bexar | 480290052-1 | Camp Bullis | 75 | |
| Texas | Bexar | 480290055-1 | CPS Pecan Valley | | |
| Texas | Bexar | 480290059-1 | Calaveras Lake | 67 | |
| Texas | Bexar | 480290622-1 | Heritage Middle School | | |
| Texas | Brazoria | 480391004-1 | Manvel Croix Park | 84 | HGB |
| Texas | Brazoria | 480391016-1 | Lake Jackson | 74 | HGB |
| Texas | Brewster | 480430101-1 | Bravo Big Bend | 64 | |
| Texas | Cameron | 480610006-1 | Brownsville | 65 | |
| Texas | Collin | 480850005-1 | Frisco | 77 | DFW |
| Texas | Dallas | 481130069-3 | Dallas Hinton | | DFW |
| Texas | Dallas | 481130075-1 | Dallas North #2 | 78 | DFW |
| Texas | Dallas | 481130087-1 | Dallas Redbird Airport Execut | 78 | DFW |
| Texas | Denton | 481210034-1 | Denton Airport South | 80 | DFW |
| Texas | Denton | 481211032-1 | Pilot Point | 78 | DFW |
| Texas | Ellis | 481390016-1 | Midlothian Ofw | 72 | DFW |
| Texas | Ellis | 481391044-1 | Italy | 68 | DFW |
| Texas | El Paso | 481410029-1 | Ivanhoe | 69 | |
| Texas | El Paso | 481410037-2 | El Paso UTEP | 71 | |
| Texas | El Paso | 481410044-1 | El Paso Chamizal | 70 | |
| Texas | El Paso | 481410055-1 | Ascarate Park Se | 69 | |
| Texas | El Paso | 481410057-1 | Socorro | 68 | |
| Texas | El Paso | 481410058-1 | Skyline Park | 71 | |
| Texas | Galveston | 481671034-1 | Galveston 99Th Street | | HGB |
| Texas | Gregg | 481830001-2 | Longview | 74 | |
| Texas | Harris | 482010024-2 | Houston Aldine | 83 | HGB |
| Texas | Harris | 482010026-3 | Channelview | 78 | HGB |
| Texas | Harris | 482010029-2 | Northwest Harris County | 81 | HGB |
| Texas | Harris | 482010046-1 | Houston North Wayside | 71 | HGB |
| Texas | Harris | 482010047-2 | Lang | 76 | HGB |
| Texas | Harris | 482010051-2 | Houston Croquet | 77 | HGB |
| Texas | Harris | 482010055-1 | Houston Bayland Park | 82 | HGB |

| State | County Name | Airs Number and POC Number | Site Name (If Applicable) | 2010 Eight-Hour Ozone Design Value | Nonattainment Area (If Applicable) |
|---|---|---|---|---|---|
| Texas | Harris | 482010062-1 | Houston Monroe | 72 | HGB |
| Texas | Harris | 482010066-1 | Houston Westhollow | 75 | HGB |
| Texas | Harris | 482010070-1 | Houston Regional Office | 73 | HGB |
| Texas | Harris | 482010075-1 | Houston Texas Avenue | 74 | HGB |
| Texas | Harris | 482010416-1 | Park Place | 77 | HGB |
| Texas | Harris | 482011015-1 | Lynchburg Ferry | | HGB |
| Texas | Harris | 482011034-2 | Houston East | 76 | HGB |
| Texas | Harris | 482011035-3 | Clinton | 76 | HGB |
| Texas | Harris | 482011039-1 | Houston Deer Park #2 | 81 | HGB |
| Texas | Harris | 482011050-1 | Seabrook Friendship Park | 75 | HGB |
| Texas | Harrison | 482030002-1 | Karnack | 70 | |
| Texas | Hays | 482090614-1 | Dripping Springs School | | |
| Texas | Hidalgo | 482150042-1 | Edinburg | | |
| Texas | Hidalgo | 482150043-1 | Mission | 61 | |
| Texas | Hidalgo | 482151048-1 | Mercedes | | |
| Texas | Hood | 482210001-1 | Granbury | 75 | |
| Texas | Hunt | 482311006-1 | Greenville | 64 | |
| Texas | Jefferson | 482450009-2 | Beaumont Downtown | 72 | |
| Texas | Jefferson | 482450011-1 | Port Arthur West | 74 | |
| Texas | Jefferson | 482450022-1 | Hamshire | 70 | |
| Texas | Jefferson | 482450101-1 | South East Texas Regional Planning Commission (SETRPC) 40 Sabine Pass | | |
| Texas | Jefferson | 482450102-1 | SETRPC 43 Jefferson Co Airport | 73 | |
| Texas | Jefferson | 482450628-1 | SETRPC Port Arthur | 68 | |
| Texas | Jefferson | 482451035-1 | Nederland High School | 70 | |
| Texas | Johnson | 482510003-1 | Cleburne Airport | 80 | DFW |
| Texas | Kaufman | 482570005-1 | Kaufman | 67 | DFW |
| Texas | McLennan | 483091037-1 | Waco Mazanec | 70 | |
| Texas | Montgomery | 483390078-1 | Conroe Relocated | 71 | HGB |
| Texas | Navarro | 483491051-1 | Corsicana Airport | | |
| Texas | Nueces | 483550025-2 | Corpus Christi West | 69 | |
| Texas | Nueces | 483550026-1 | Corpus Christi Tuloso | 71 | |
| Texas | Orange | 483611001-2 | West Orange | 71 | |
| Texas | Orange | 483611100-1 | SETRPC 42 Mauriceville | 68 | |
| Texas | Parker | 483670081-1 | Parker County | 75 | DFW |
| Texas | Rockwall | 483970001-1 | Rockwall Heath | 74 | DFW |
| Texas | Smith | 484230007-1 | Tyler Airport Relocated | 73 | |
| Texas | Tarrant | 484390075-1 | Eagle Mountain Lake | 85 | DFW |
| Texas | Tarrant | 484391002-2 | Fort Worth Northwest | 79 | DFW |
| Texas | Tarrant | 484392003-2 | Keller | 86 | DFW |

| State | County Name | Airs Number and POC Number | Site Name (If Applicable) | 2010 Eight-Hour Ozone Design Value | Nonattainment Area (If Applicable) |
|-------|-------------|----------------------------|---------------------------|-------------------------------------|-------------------------------------|
| Texas | Tarrant | 484393009-1 | Grapevine Fairway Arlington Municipal | 82 | DFW |
| Texas | Tarrant | 484393011-1 | Airport | 79 | DFW |
| Texas | Travis | 484530014-2 | Austin Northwest | 74 | |

## 2.2.1.3 References

EPA. "Final Nonattainment Areas for the 2008 Ozone Standards." Last modified May 1, 2012. http://www.epa.gov/airquality/ozonepollution/designations/2008standards/final/finalmap.htm.

TCEQ. HGB Attainment Demonstration SIP Revision for the 1997 Eight-Hour Ozone Standard. Appendix C: Photochemical Modeling for the HGB Attainment Demonstration SIP. March, 10, 2010. http://www.tceq.texas.gov/airquality/sip/HGB_eight_hour.html.

TCEQ. Dallas-Fort Worth Attainment Demonstration State Implementation Plan Revision for the 1997 Eight-Hour Ozone Standard. Appendix D: Conceptual Modeling for the DFW Attainment Demonstration SIP Revisions for the 1997 Eight-Hour Ozone Standard. December 7, 2011. http://www.tceq.texas.gov/airquality/sip/dfw_revisions.html.

## 2.2.2 Emissions Reductions from EGUs

Texas is not covered under the CAIR for the 1997 eight-hour ozone NAAQS, but is included for the 1997 $PM_{2.5}$ NAAQS. In addition to the annual $NO_X$ reductions from the CAIR program, in 1999, the state implemented a strategy in the eastern part of Texas to reduce $NO_X$ emissions from EGUs. The control strategies specific to EGUs include:

- utility electric generation in ozone nonattainment areas;
- utility electric generation in east and central Texas; and
- Texas-specific legislation from the 1999 76th session in Senate Bill 7 that requires $NO_X$ reductions through a regional cap and trade program.

These strategies have resulted in significant $NO_X$ emissions from EGUs. Figure 2-4: *$NO_X$ Emission Trend for Texas EGUs from 1995 through 2011* shows the $NO_X$ emission reductions from EGUs from 1995 through 2011.



**Figure 2-4: $NO_X$ Emission Trend for Texas EGUs from 1995 through 2011**

2.2.2.1  CAIR and CSAPR

In March 2005, the EPA issued CAIR to address EGU emissions that transport from one state to another. The rule incorporates the use of three cap and trade programs to reduce sulfur dioxide ($SO_2$) and $NO_X$: the ozone-season $NO_X$ trading program, the annual $NO_X$ trading program, and the annual $SO_2$ trading program.

Texas was not included in the ozone season $NO_X$ program but was included for the annual $NO_X$ and $SO_2$ programs. As such, Texas must make necessary reductions in annual $SO_2$ and $NO_X$ emissions from new and existing EGUs to demonstrate that emissions from Texas do not contribute to nonattainment or interfere with maintenance of the $PM_{2.5}$ NAAQS in another state. CAIR consists of two phases for implementing necessary $NO_X$ and $SO_2$ reductions. Phase I addresses required reductions from 2009 through 2014. Phase II addresses reductions in 2015 and thereafter. In July 2006, the TCEQ adopted a SIP revision to address how the state would meet the emissions allowance allocation budgets for $NO_X$ and $SO_2$ established by the EPA to meet the federal obligations under CAIR. The TCEQ adopted a second CAIR-related SIP revision in February 2010. This revision incorporated various federal rule revisions that the EPA had promulgated since the TCEQ's initial submittal. It also incorporated revisions to 30 Texas Administrative Code (TAC), Chapter 101 resulting from legislation during the 80th Texas Legislature.

A December 2008 court decision found flaws in CAIR, but kept CAIR requirements in place temporarily while directing the EPA to issue a replacement rule. In July 2011, the EPA finalized CSAPR to meet FCAA requirements and respond to the court's order to issue a replacement

program. Texas was included in CSAPR for ozone season $NO_X$, annual $NO_X$, and annual $SO_2$ due to the EPA's determination that Texas significantly contributes to nonattainment or interferes with maintenance of the 1997 eight-hour ozone NAAQS and the 1997 and 2006 $PM_{2.5}$ NAAQS in other states.

On August 21, 2012, the United States Court of Appeals for the District of Columbia Circuit vacated CSAPR. Under the court's ruling, CAIR will remain in place until the EPA develops a valid replacement for CAIR. Therefore, all the requirements in CAIR are federally enforceable and all sources that are covered by CAIR must continue to comply with the requirements of the program.

### 2.2.2.2  Utility Electric Generation in Ozone Nonattainment Areas

The rules in 30 TAC Chapter 117, Subchapter C establish $NO_X$ emission specifications for utility electric generation for each ozone nonattainment area in Texas. These rules apply to each electric generating facility that generates electric energy for compensation, or are owned or operated by a municipality or Public Utility Commission of Texas (PUCT) regulated utility or any of its successors, regardless of whether the successor is a municipality or is regulated by the PUCT.

In the HGB area, the owner or operator of each affected utility boiler, auxiliary steam boiler, or stationary gas turbine must demonstrate compliance with the $NO_X$ emission specifications through a system cap and participation in the HGB area Mass Emissions Cap and Trade (MECT) Program. Affected sources were required to comply with the MECT Program rules beginning January 1, 2002, and comply with the system cap requirements by March 31, 2004. Additional information about the MECT Program is available in Section 2.2.3.1: *HGB Area MECT Program*.

In the DFW area, each utility boiler that is part of a large system must meet a $NO_X$ emission rate of 0.033 pound per million British thermal units (lb/MMBtu) heat input, and each utility boiler that is part of a small system must meet a $NO_X$ emission rate of 0.06 lb/MMBtu heat input. Compliance with the $NO_X$ emission rates may be demonstrated on a daily average basis, a system-wide heat input weighted average basis for utility boilers that are part of a large system, or through the use of emission credits. Affected sources were required to comply with the rules by March 1, 2009.

In the Beaumont-Port Arthur (BPA) 1997 eight-hour ozone maintenance area, each utility boiler must meet a $NO_X$ emission rate of 0.10 lb/MMBtu heat input. Compliance with the $NO_X$ emission rates must be demonstrated on a daily average, through the use of a system cap, or through the use of emission credits. Affected sources were required to comply with the rules by May 1, 2005.

### 2.2.2.3  Utility Electric Generation in East and Central Texas

The rules in 30 TAC Chapter 117, Subchapter E, Division 1 limit $NO_X$ emissions from utility electric generation in Atascosa, Bastrop, Bexar, Brazos, Calhoun, Cherokee, Fannin, Fayette, Freestone, Goliad, Gregg, Grimes, Harrison, Henderson, Hood, Hunt, Lamar, Limestone, Marion, McLennan, Milam, Morris, Nueces, Parker, Red River, Robertson, Rusk, Titus, Travis, Victoria, or Wharton Counties. The rules apply to each utility electric power boiler and stationary gas turbine (including duct burners used in turbine exhaust ducts) that generate electric energy for compensation; is owned by an electric cooperative, independent power producer, municipality, river authority, or public utility; and was placed into service before December 31, 1995. Utility electric power boilers must meet a $NO_X$ emission rate of 0.14

lb/MMBtu for gas-fired units and 0.165 lb/MMBtu for coal-fired units. Stationary gas turbines (including duct burners used in turbine exhaust ducts) must meet an annual average $NO_X$ emission rate of 0.14 lb/MMBtu for units subject to Texas Utilities Code (TUC), §39.264 (except §39.264(i)) or 0.15 lb/MMBtu for units not subject to TUC, §39.264 and units designated in accordance with TUC, §39.264(i). Compliance with the $NO_X$ emission rates is based on average heat input for a calendar year. Affected sources were required to comply with the rules by May 1, 2005.

### 2.2.2.4  Senate Bill 7 (76th Texas Legislature)

Senate Bill 7, 76th Texas Legislature session, requires a cap and trade program for previously grandfathered or unpermitted, electric generating facilities and other electric generating facilities that choose to participate in the cap and trade program. The $NO_X$ allowances were determined using a $NO_X$ rate of 0.14 lb $NO_X$/MMBtu for grandfathered facilities in the East Texas region and a $NO_X$ rate of 0.195 lb $NO_X$/MMBtu for the grandfathered facilities in the West Texas and El Paso regions.

The first control period for this program began on May 1, 2003. The last revision on this rule package, 30 TAC Chapter 101, Subchapter H, Division 2, was published in the *Texas Register* on September 10, 1999, and the public comment period ended on October 11, 1999. The adopted rule package was published in the *Texas Register* on January 7, 2000. The effective date of the rule package was January 11, 2000.

## 2.2.3  Emission Reductions from Other Sources

Texas has implemented numerous control measures to reduce ozone precursor emissions from a variety of sources. These measures have resulted in significant decreases in eight-hour ozone design values from 1990 through 2010. This section details some of the controls for major stationary sources and regional controls implemented as part of the state's strategy to address the one-hour and 1997 eight-hour ozone standards.

### 2.2.3.1  HGB Area MECT Program

The MECT Program rules in 30 TAC Chapter 101, Subchapter H, Division 3 established a mandatory annual $NO_X$ emission cap on all existing stationary sources in the HGB area that emit at least 10 tons per year (tpy) of $NO_X$ and are subject to the $NO_X$ emission specifications in 30 TAC Chapter 117, Subchapter B, Division 3 and Subchapter C, Division 3. Affected units include: utility boilers, auxiliary steam boilers, or stationary gas turbines; industrial, commercial, or institutional boilers and process heaters; stationary gas turbines; stationary internal combustion engines; fluid catalytic cracking units (including carbon monoxide boilers, carbon monoxide furnaces, and catalyst regenerator vents); boilers and industrial furnaces that were regulated as existing facilities by the EPA under 40 Code of Federal Regulations Part 266, Subpart H (as in effect on June 9, 1993); duct burners used in turbine exhaust ducts; pulping liquor recovery furnaces; lime kilns; lightweight aggregate kilns; heat treating furnaces and reheat furnaces; magnesium chloride fluidized bed dryers; and incinerators.

The MECT program cap is enforced by the allocation, trading, and banking of allowances. An allowance is the equivalent of one ton of $NO_X$ emissions. The MECT program cap was implemented on January 1, 2002, at historical emission levels, with mandatory $NO_X$ reductions increasing over time until achieving the final cap by April 1, 2007. All new or modified sources in the HGB area must obtain unused allowances from other sources already participating in the MECT program to offset any increased $NO_X$ emissions.

### 2.2.3.2  Cement Kilns

The rules in 30 TAC Chapter 117, Subchapter E, Division 1 limit NO$_X$ emissions from cement kilns in Bexar, Comal, Ellis, Hays, and McLennan Counties. The rules require cement kilns in Bexar, Comal, Hays, and McLennan Counties to reduce NO$_X$ emissions 30% below 1996 levels or to meet a NO$_X$ emissions cap of 6.0 pounds of NO$_X$ per ton of cement clinker produced (lb/ton of clinker) for wet kilns; 5.1 lb/ton of clinker for dry kilns; 3.8 lb/ton of clinker for preheater kilns; and 2.8 lb/ton of clinker for preheater-precalciner or precalciner kilns. Affected sources were required to comply with the rules by May 1, 2005.

These rules also require cement kilns in Ellis County to meet a NO$_X$ emission ozone-season cap based on kiln configuration and production during calendar years 2003 through 2005. The cap limits NO$_X$ emissions from dry kilns to no more than 1.7 lb/ton of clinker and limits NO$_X$ emissions from wet kilns to no more than 3.4 lb/ton of clinker. Emissions from any kilns installed after 2005 must be offset with emission reductions at the site or through emission reduction credits. Affected sources were required to comply with the rules by March 1, 2009. The Ellis County cement kiln cap is part of the May 2007 DFW AD SIP Revision and the TCEQ estimates that implementation of these rules results in approximately 9.69 tons per day NO$_X$ emission reductions.

### 2.2.3.3  East Texas Engines

The rules in 30 TAC Chapter 117, Subchapter E, Division 4 limit NO$_X$ emissions from certain engines located in Anderson, Brazos, Burleson, Camp, Cass, Cherokee, Franklin, Freestone, Gregg, Grimes, Harrison, Henderson, Hill, Hopkins, Hunt, Lee, Leon, Limestone, Madison, Marion, Morris, Nacogdoches, Navarro, Panola, Rains, Robertson, Rusk, Shelby, Smith, Titus, Upshur, Van Zandt, and Wood Counties. The rules apply to stationary, gas-fired, reciprocating internal combustion engines rated 240 horsepower (hp) and larger. Rich-burn gas-fired internal combustion engines rated less than 500 hp must limit NO$_X$ emissions to 1.0 grams per horsepower-hour (g/hp-hr). Rich-burn engines rated 500 hp or greater must limit NO$_X$ emissions to 0.60 g/hp-hr for landfill gas-fired engines or 0.05 g/hp-hr for all other rich-burn engines. Affected sources were required to comply with the rules by March 1, 2010.

The East Texas combustion rules reduce NO$_X$ emissions and ozone air pollution transport into the DFW area. While these rules are part of the May 2007 DFW AD SIP Revision for the 1997 eight-hour ozone NAAQS, the Northeast Texas Early Action Compact area in east Texas also benefits from NO$_X$ reductions resulting from the rules. Using photochemical modeling sensitivity studies, the TCEQ estimated that implementation of the rules results in an overall reduction of approximately 22.4 tons per day of NO$_X$ emissions in the 33 counties subject to the rules by March 1, 2010. The TCEQ estimated the rules benefit the DFW area by reducing ozone by an average of 0.1 to 0.2 parts per billion.

### 2.2.3.4  HGB Area Highly Reactive VOC (HRVOC) Rules and HRVOC Cap and Trade (HECT) Program

The HRVOC rules in 30 TAC Chapter 115, Subchapter H are performance-based, emphasizing monitoring, recordkeeping, reporting, and enforcement rather than establishing individual unit emission rates. The rules apply to HRVOC emissions from flares, process vents, cooling towers, and fugitive emission sources. In addition to the monitoring requirements, affected sources in Harris County must meet an annual HRVOC emission cap and a site-wide short-term HRVOC limit of 1,200 lb/hour from any flare, vent, pressure relief valve, cooling tower, or any combination. Affected sources in Harris County must demonstrate compliance with these HRVOC emission limits through participation in the HECT Program.

The HECT Program rules in 30 TAC Chapter 101, Subchapter H, Division 6 establish a mandatory annual HRVOC emission cap on all existing stationary sources in Harris County that emit at least 10 tpy of HRVOC emissions and are subject to the HRVOC rules in 30 TAC Chapter 115, Subchapter H, Divisions 1 and 2. Affected sources include vent gas streams, flares, and cooling tower heat exchange systems. The HECT program cap is enforced by the allocation, trading, and banking of allowances. An allowance is the equivalent of one ton of HRVOC emissions. The HECT program cap was implemented on January 1, 2007, at historical emission levels. All new or modified sources in the HGB area must obtain unused allowances from other sources already participating in the HECT program to offset any increased HRVOC emissions.

The HECT program was revised in 2009 to reduce the total HECT cap by 25% and revise the HRVOC allocation methodology to address inequities from the initial allocation. An initial 10% reduction of the existing available cap of 3,451.5 tons will occur with the 2014 calendar-year control period. The available cap will then be reduced in 5% increments at the start of each calendar-year control period for 2015, 2016, and 2017. Photochemical modeling analysis demonstrates that a 25% reduction of the total HRVOC cap in Harris County will advance attainment of the 1997 eight-hour ozone NAAQS by reducing the future 2018 ozone design values at all HGB monitors by an average of 0.13 parts per billion.

### 2.2.4  1997 Eight-Hour Ozone SIP Revisions Adopted Since 2008

Texas has 1997 eight-hour ozone SIP revisions in place for the HGB area and the DFW area, as well as maintenance plans for BPA, Victoria (VIC), and El Paso. EAC SIP revisions for the 1997 eight-hour ozone standard were developed for the Austin-Round Rock (ARR) area, the Northeast Texas (NETX) area, and the San Antonio area. In addition to these SIP revisions, a 1997 Eight-Hour Ozone Flex Program is in place for ARR and Corpus Christi. One-Hour Ozone SIP revisions were developed for HGB, DFW, BPA, NETX, and the Central and East Texas Region, as well as One-Hour Ozone Flexible Agreements for Austin-San Marcos and Corpus Christi.

Texas' 1997 eight-hour ozone SIP revisions and one-hour ozone SIP revisions adopted prior to 2008 were described in detail in the previous ozone transport SIP revision to address the 1997 eight-hour ozone standard, adopted on April 16, 2008. The 1997 eight-hour ozone transport SIP revision and all other Texas SIP revisions are available on the Texas SIP Revisions Web page (http://www.tceq.texas.gov/airquality/sip/sipplans.html).

Since 2008, Texas has adopted several additional SIP revisions to address the 1997 eight-hour ozone standard in HGB, DFW, BPA, and VIC. An Eight-Hour Ozone Flex Plan was also developed for the ARR area. These latest SIP revisions and plans are detailed in this section.

### 2.2.4.1  HGB 1997 Eight-Hour Ozone SIP Revisions

On March 10, 2010, the commission adopted two revisions to the Texas SIP for the HGB severe nonattainment area. The HGB AD SIP Revision for the 1997 Eight-Hour Ozone Standard includes a photochemical modeling analysis and a weight of evidence analysis to demonstrate attainment of the 1997 eight-hour ozone NAAQS by the June 15, 2019, deadline. This SIP revision also includes a motor vehicle emissions budget (MVEB), a VOC and $NO_X$ Reasonably Available Control Technology (RACT) analysis, a Reasonably Available Control Measures (RACM) analysis, and a contingency plan. In addition, the AD SIP revision incorporated revisions to 30 TAC Chapters 101 and 115, also adopted on March 10, 2010, which include the MECT Program Cap Integrity, the HECT Program Cap Reduction and Allowance Reallocation, and the VOC Control Techniques Guidelines (CTG) Update.

The HGB Reasonable Further Progress (RFP) SIP Revision for the 1997 Eight-Hour Ozone Standard, as required by the EPA, demonstrates that an 18% emissions reduction requirement will be met for the analysis period between 2002 through 2008 and an average of 3% per year emissions reduction between each of the milestone years 2008, 2011, 2014, 2017, and 2018. This SIP revision establishes baseline emission levels, calculates reduction targets, identifies control strategies to meet emission target levels, and tracks actual emission reductions against established emissions growth. This revision also includes an MVEB for each milestone year and a contingency plan.

On December 7, 2011, the commission adopted the HGB RACT Analysis Update SIP Revision for the 1997 Eight-Hour Ozone Standard to include CTG documents that were not addressed in the March 2010 HGB AD SIP Revision for the 1997 Eight-Hour Ozone Standard. This SIP revision also incorporated CTG-related rulemaking for the HGB area.

2.2.4.2  DFW 1997 Eight Hour Ozone SIP Revisions

On July 14, 2008, the EPA proposed conditional approval (73 FR 40203) of the May 2007 DFW AD SIP Revision, providing that final conditional approval was contingent upon Texas adopting and submitting to the EPA an approvable contingency plan SIP revision for the DFW area. The Contingency Plan SIP Revision was adopted by the commission on November 5, 2008, and submitted to the EPA on November 15, 2008. The Contingency Plan SIP revision identified measures to satisfy the EPA's 3% reduction contingency requirement for 2010 for the DFW area, to apply in the event that the DFW area failed to meet the 1997 eight-hour ozone standard by the attainment deadline. On January 14, 2009, the EPA published final conditional approval of the DFW AD SIP revision (74 FR 1903).

A condition stipulated by the EPA for final approval of the May 2007 DFW AD SIP Revision was that the TCEQ adopt and submit rule and SIP revisions to implement an enforceable mechanism to limit the use of Discrete Emissions Reduction Credits (DERC) in the DFW area by March 1, 2009. The DERC Program SIP Revision incorporated rulemaking that amends 30 TAC Chapter 101, Subchapter H, Division 4, Discrete Emission Credit Banking and Trading, to limit DERC use in the DFW area.

On March 10, 2010, the commission adopted the DFW RACT Update, 30 TAC Chapter 117 Rule Revision Noninterference Demonstration, and Modified Failure-to-Attain Contingency Plan SIP Revision. The RACT Update SIP Revision incorporated several actions adopted by the TCEQ, including 30 TAC Chapter 115 and Chapter 117 rule revisions, and supplemented the 1997 eight-hour ozone AD by demonstrating that the revised Chapter 117 rule does not interfere with the DFW AD SIP Revision.

On December 7, 2011, the commission adopted two revisions to the Texas SIP for the DFW serious nonattainment area. The DFW AD SIP revision provides photochemical modeling and weight of evidence analyses to demonstrate that the DFW nine-county serious nonattainment area will attain the 1997 eight-hour ozone standard by the June 15, 2013, attainment deadline. The AD SIP revision includes a RACT analysis, a RACM analysis, a MVEB for 2012, and a contingency plan. Concurrent with this SIP revision, the commission adopted revisions to 30 TAC Chapter 115 into the Texas SIP.

The DFW RFP SIP revision provides analyses of incremental reductions in ozone precursors, $NO_X$ and VOC, from a 2002 base year out to attainment of the 1997 eight-hour ozone standard as well as updated emissions inventories and MVEBs for the 2011 and 2012 milestone years.

### 2.2.4.3  BPA 1997 Eight-Hour Ozone Redesignation to Attainment and Maintenance Plan

On December 10, 2008, the commission adopted the BPA Redesignation Request and Maintenance Plan SIP revision for the 1997 eight-hour ozone standard. On October 20, 2010, the EPA published a final rule in the *Federal Register* (75 FR 64675), effective November 19, 2010, approving the redesignation request and maintenance plan and finalizing a determination that the BPA area is in attainment of the revoked one-hour ozone standard. With redesignation to attainment for the 1997 eight-hour ozone standard and a determination of attainment for the one-hour ozone standard, no new ozone reduction strategies will have to be developed for either standard as long as the area continues to monitor ozone levels below the 1997 eight-hour ozone standard; however, current strategies to reduce ozone in the BPA area will remain in place.

### 2.2.4.4  VIC 1997 Eight-Hour Ozone Contingency Plan SIP Revision

In early 2009, EPA Region 6 staff informed the TCEQ that to approve the Victoria County 1997 Eight-Hour Ozone Maintenance Plan adopted in March 2007, the contingency plan had to be revised to contain an enforceable commitment to adopt and implement the contingency measures once they are triggered. On July 28, 2010, the commission adopted the Contingency Plan SIP Revision for the VIC area.

### 2.2.4.5  ARR 1997 Eight-Hour Ozone Flex Plan

On June 18, 2008, the commission approved the Austin-Round Rock Eight-Hour Ozone Flex Plan and Memorandum of Agreement. Stakeholders involved in this plan are Bastrop, Caldwell, Hays, Travis, and Williamson Counties; the cities of Austin, Bastrop, Elgin, Lockhart, Luling, Round Rock, and San Marcos; the TCEQ; and the EPA. The Eight-Hour Ozone Flex program is one in a series of regional initiatives and builds on the region's previous plans: the One-Hour Ozone Flex program and the EAC. These voluntary initiatives allow the region to address regional ozone problems proactively to maintain the 1997 eight-hour ozone standard.

## 2.3  CONTROL STRATEGY CONCLUSIONS

Overall, monitoring data do not suggest that emissions from Texas contribute significantly to nonattainment or interfere with maintenance of the 2008 eight-hour ozone NAAQS for areas in any other state. Additionally, Texas has numerous control measures in place to address ozone precursor emissions and all are federally enforceable through SIP revisions. These measures have resulted in significant decreases in eight-hour ozone design values from 1990 through 2010, with much of the decreases occurring from 2000 through 2010. With implementation of the 2008 ozone standard, decreases in design values are expected to continue.

# CHAPTER 3:  FUTURE REVISIONS TO THE NATIONAL AMBIENT AIR QUALITY STANDARDS (NAAQS)

Federal Clean Air Act (FCAA), §110(a)(1) requires states to submit state implementation plans within three years after the promulgation of new or revised NAAQS to meet the requirements of FCAA, §110(a)(2), including FCAA, §110(a)(2)(D)(i)(I), relating to interstate transport. Therefore, if the NAAQS are revised in the future, the Texas Commission on Environmental Quality will need to take the adequate steps relating to the interstate transport of air pollution.

TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

THE STATE OF TEXAS
COUNTY OF TRAVIS
I hereby certify that this is a true and correct copy of a
Texas Commission on Environmental Quality document,
which is filed in the permanent records of the Commission.
Given under my hand and the seal of office on

*Bridget C. Bohac* DEC 1 1 2012

Bridget C. Bohac, Chief Clerk
Texas Commission on Environmental Quality

**ORDER ADOPTING**
**REVISION TO THE STATE IMPLEMENTATION PLAN**

Docket No. 2012-1087-SIP
Project No. 2012-004-SIP-NR

On December 5, 2012, the Texas Commission on Environmental Quality (Commission), during a public meeting, considered adoption of revisions to the state implementation plan (SIP). The Commission adopts revisions to the SIP for Infrastructure and Transport of the 2008 Ozone National Ambient Air Quality Standard (NAAQS). The Commission adopts the SIP revision demonstrating that Texas is not contributing significantly to nonattainment of the 2008 ozone NAAQS for areas in other states; not interfering with the maintenance of the 2008 ozone NAAQS in any other state; not interfering with measures required to meet an implementation plan for any other state related to prevention of significant deterioration (PSD); and not interfering with measures required to meet the implementation plan for any other state related to regional haze and visibility. Under Tex. Health & Safety Code Ann. §§ 382.011, 382.012, and 382.023 (Vernon 2011), the Commission has the authority to control the quality of the state's air and to issue orders consistent with the policies and purposes of the Texas Clean Air Act, Chapter 382 of the Tex. Health & Safety Code. Notice of the proposed SIP revisions was published for comment in the September 7, 2012 issue of the *Texas Register* (37 TexReg 7221).

Pursuant to 40 Code of Federal Regulations § 51.102 and after proper notice, the Commission conducted a public hearing to consider the revision to the SIP. Proper notice included prominent advertisement in the areas affected at least 30 days prior to the date of the hearing. A public hearing was held in Austin on September 25, 2012.

The Commission circulated hearing notices of its intended action to the public, including interested persons, the Regional Administrator of the EPA, and all applicable local air pollution control agencies. The public was invited to submit data, views, and recommendations on the proposed SIP revision, either orally or in writing, at the hearing or during the comment period. Prior to the scheduled hearing, copies of the proposed SIP revision were available for public inspection at the Commission's central office and on the Commission's Web site.

Data, views, and recommendations of interested persons regarding the proposed SIP revisions were submitted to the Commission during the comment period, and were considered by the Commission as reflected in the analysis of testimony incorporated by reference to this Order. The Commission finds that the analysis of testimony includes the names of all interested groups or associations offering comment on the proposed SIP revisions and their position concerning the same.

IT IS THEREFORE ORDERED BY THE COMMISSION that the revisions to the SIP incorporated by reference to this Order are hereby adopted. The adopted revisions to the SIP are incorporated by reference in this Order as if set forth at length verbatim in this Order.

IT IS FURTHER ORDERED BY THE COMMISSION that on behalf of the Commission, the Chairman should transmit a copy of this Order, together with the adopted revisions to the SIP, to the Regional Administrator of EPA as a proposed revisions to the Texas SIP pursuant to the Federal Clean Air Act, codified at 42 U.S. Code Ann. §§ 7401 - 7671q, as amended.

If any portion of this Order is for any reason held to be invalid by a court of competent jurisdiction, the invalidity of any portion shall not affect the validity of the remaining portions.

Date issued: **DEC 1 0 2012**

TEXAS COMMISSION ON
ENVIRONMENTAL QUALITY

Bryan W. Shaw, Ph.D., Chairman

# Tab 4

TCEQ cover letter and comment letter to EPA- EPA Docket Center, Air and Radiation Docket; Re: Docket ID No. EPA-R06-0AR-2012-0985 (May 11,2016); Comments by the Texas Commission on Environmental Quality Regarding Disapproval of Air Quality Implementation Plans: Interstate Transport of Air Pollution for the 2008 Ozone National Ambient Air Quality Standards

Bryan W. Shaw, Ph.D., P.E., *Chairman*
Toby Baker, *Commissioner*
Jon Niermann, *Commissioner*
Richard A. Hyde, P.E., *Executive Director*



## TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

*Protecting Texas by Reducing and Preventing Pollution*

May 11, 2016

Environmental Protection Agency
EPA Docket Center
Air and Radiation Docket
Mail Code: 2821T
1200 Pennsylvania Avenue, NW
Washington, DC 20460-001

Re: Docket ID No. EPA-R06-OAR-2012-0985

Dear Sir or Madam:

The Texas Commission on Environmental Quality (TCEQ) appreciates the opportunity to comment on the proposed disapproval of the portion of the Texas State Implementation Plan submittal pertaining to interstate transport of air pollution that will significantly contribute to nonattainment or interfere with maintenance of the 2008 ozone National Ambient Air Quality Standards in other states (81 FR 21290), which was published in the *Federal Register* on April 11, 2016.

Detailed comments on the proposed rule are enclosed. If there are any questions concerning the TCEQ's comments, please contact Mr. Steve Hagle, P.E., Deputy Director, Office of Air, at 512-239-1295 or steve.hagle@tceq.texas.gov.

Sincerely,

Richard A. Hyde, P.E.
Executive Director

Enclosure

cc:    Guy Donaldson, EPA R6
       Carl Young, EPA R6

**COMMENTS BY THE TEXAS COMMISSION ON ENVIRONMENTAL QUALITY**
**REGARDING DISAPPROVAL OF AIR QUALITY IMPLEMENTATION PLANS:**
**INTERSTATE TRANSPORT OF AIR POLLUTION FOR THE**
**2008 OZONE NATIONAL AMBIENT AIR QUALITY STANDARDS**

**EPA DOCKET ID NO. EPA-R06-OAR-2012-0985**

## I. Background

On April 11, 2016, the United States (U.S.) Environmental Protection Agency (EPA) published in the *Federal Register* a proposal to disapprove the portion of the Texas State Implementation Plan (SIP) submittal pertaining to interstate transport of air pollution that will significantly contribute to nonattainment or interfere with maintenance of the 2008 ozone National Ambient Air Quality Standard (NAAQS) in other states. This disapproval would establish a two-year deadline for the EPA to promulgate a Federal Implementation Plan (FIP) for Texas to address the Federal Clean Air Act (FCAA) interstate transport requirements pertaining to significant contribution to nonattainment and interference with maintenance of the 2008 ozone NAAQS in other states, unless the EPA approves a SIP that meets these requirements before that time.

On March 12, 2008, the EPA revised the levels of the primary and secondary eight-hour ozone NAAQS from 0.08 parts per million (ppm) to 0.075 ppm (73 FR 16436). States are required to submit a SIP meeting the applicable "infrastructure" elements of FCAA Section 110(a)(1) and (2) within three years after promulgation of a new or revised NAAQS. On December 13, 2012, Texas submitted a SIP revision addressing the FCAA infrastructure requirements for the 2008 ozone NAAQS.

The Texas Commission on Environmental Quality (TCEQ) provides the following comments on this proposed rule.

## II. Comments

### 1. The TCEQ does not support the proposed partial disapproval of Texas' Infrastructure and Transport SIP revision for the 2008 ozone NAAQS pertaining to the FCAA, §110(a)(2)(D)(i)(I) requirement to address interstate transport.

The EPA proposes to disapprove the portion of Texas' December 13, 2012 Infrastructure and Transport SIP revision submittal for the 2008 ozone NAAQS pertaining to the FCAA, §110(a)(2)(D)(i)(I) requirement to address the interstate transport of air pollution that will significantly contribute to nonattainment or interference with maintenance of the 2008 ozone NAAQS in other states. The TCEQ does not support the proposed partial disapproval and maintains that the transport analysis provided in the December 13, 2012 submittal adequately addressed the transport requirements of FCAA, §110(a)(2)(D)(i)(I). For this reason and as discussed in the TCEQ's other comments below, the TCEQ does not support disapproval of the Texas Infrastructure and Transport SIP.

### 2. The EPA failed to issue guidance in a timely manner for states to use in developing infrastructure and transport SIP revisions for the 2008 ozone NAAQS.

Texas submitted its Infrastructure and Transport SIP revision for the 2008 ozone standard on December 13, 2012 in order to meet the January 4, 2013 deadline by

which the EPA was court-ordered to issue findings of failure to submit infrastructure SIPs for the 2008 ozone NAAQS. The EPA issued guidance for states to use in developing infrastructure SIP revisions on September 13, 2013, eight months *following* the January 2013 deadline. In addition to the guidance being issued too late to be useful for 2008 ozone infrastructure SIP development, the document also did not provide guidance on transport. The EPA did not provide information to states regarding transport for the 2008 ozone NAAQS until 2015, through information provided in a January 22, 2015 memo, an August 4, 2015 notice of data availability (NODA), and the December 3, 2015 Cross State Air Pollution Rule (CSAPR) Update Rule proposal.

In order to meet statutory deadlines, states do not have the option of waiting for the EPA to provide guidance before proceeding with SIP development, review, and submittal and must proceed without the EPA's formal guidance to develop submittals based on information available at the time. As a result of the EPA's lack of timely transport guidance for the 2008 ozone standard and subsequent NODA regarding nonattainment and maintenance receptor linkages and contributions, Texas was forced to expend effort and resources to develop its SIP revision without knowing how the EPA would evaluate Texas' transport obligation.

Overall, the EPA has routinely failed to issue timely guidance for SIP revisions and to even meet statutory SIP review deadlines in the FCAA. As a result, the EPA has disrupted the SIP development process nationwide, undermining the states' ability to submit sufficient SIP revisions.

**3. It is inappropriate for the EPA to state that the TCEQ's analysis of ozone contributions to other areas is incomplete when it did not provide timely guidance stating what would constitute a complete analysis.**

As previously stated, the EPA did not issue guidance until after the court-ordered deadline to issue findings of failure to submit infrastructure SIPs for the 2008 ozone NAAQS. Even then, the guidance did not contain any information on what the EPA believed would be an adequate analysis of ozone transport to other areas. In addition, the EPA's modeling was not available until 2015, several years after the SIP submittal deadline. In the absence of guidance, Texas provided what was considered to be an adequate analysis of ozone transport to other states.

**4. The EPA prematurely prepared a FIP before even proposing action on Texas' timely submitted SIP revision to address 2008 eight-hour ozone standard transport requirements. Despite the EPA's claims of not pre-judging submitted SIPs, the EPA took unwarranted action by proposing the 2008 ozone CSAPR FIP for states that had SIPs awaiting EPA action.**

Texas submitted its Infrastructure and Transport SIP revision for the 2008 eight-hour ozone NAAQS to the EPA on December 13, 2012. The EPA had almost three years to review the SIP revision prior to the EPA's December 3, 2015 proposal of the CSAPR Update Rule FIP to address transport under the 2008 ozone standard. The EPA took no action on Texas' transport submittal until this proposed disapproval, four months after proposing this FIP. Had the EPA reviewed the 2008 ozone nonattainment SIP revision before proposing this FIP, the purpose of which is to correct deficiencies in such a SIP, Texas would have had the opportunity contemplated by the FCAA to correct any problems with its SIP in a timely fashion and avoid the imposition of the FIP. The EPA claimed in the proposed CSAPR Update FIP that states would have time to

review previously submitted SIPs, and make any necessary corrections to bring states into compliance with the proposed FIP requirements before the FIP becomes final, ignoring the timelines necessary for proper development of any necessary modeling or potential control strategies, including required notice and comment opportunities for the public. However, the EPA proposed the CSAPR Update FIP before even notifying Texas of what corrections it deemed necessary for approval. As the EPA acknowledged in the FIP proposal, the FCAA requires the Administrator to promulgate a FIP after the Administrator finds that a state has failed to make a required submission, finds that the plan does not satisfy the minimum criteria, or disapproves a SIP submission in whole or in part. Texas did submit a SIP for approval by the Administrator, and the Administrator failed to either find that the plan does not meet the minimum criteria or disapprove the SIP submission prior to proposing the CSAPR Update FIP and including Texas. To justify the proposed CSAPR Update FIP, the EPA stated "[t]o the extent that EPA has not finalized action on these submitted SIPs, these states can evaluate their submissions in light of this proposal…" (80 FR 75720). By proposing CSAPR Update FIP and including Texas, the EPA essentially required that Texas conform its SIP to the proposed FIP without first properly taking action on the SIP as required by the FCAA.

**5. The EPA inappropriately states that Texas should have considered possible contributions to downwind areas that are not designated nonattainment but may nonetheless measure exceedances of the NAAQS.**

The EPA fails to mention how Texas might have accomplished this theoretical exercise particularly without EPA guidance on how to develop its transport SIP. This is particularly true when, as it did in this instance, the EPA relies on nationwide modeling to determine potential exceedances in areas that are attaining the NAAQS that is not made available to states prior to the statutory due dates for state transport SIPs. The EPA may now consider the CSAPR schema to be appropriate guidance for transport regulation, however, it is still not possible for states to effectively respond with timely transport SIPs.

In addition, as mentioned in comment 3, when the EPA did issue formal guidance in 2013, it did not explain what type of transport analysis would be considered satisfactory.

**6. The EPA states that Texas failed to give independent consideration to possible contributions that may interfere with maintenance in downwind areas. However, the EPA has consistently failed to identify any balance between local controls in areas with potential maintenance problems and reductions that it is requiring of states upwind that it models as contributing at least 1% of the relevant NAAQS to these areas with modeled, not monitored, issues.**

The EPA has claimed in its December 2015 CSAPR Update proposal (80 FR 75706) that it is giving independent effect to potential nonattainment and maintenance monitors; however, there is actually no "independent effect" since nonattainment and maintenance receptors are treated exactly the same way as far as linkages to states are defined and emission budgets are set. While the EPA goes to great lengths to distinguish the two classes of receptors (monitors), this distinction amounts to nothing more than a name game, and the implications for an upwind state are the same. A state is linked to a monitor if and only if the highest of the projected future year design values is greater than 75 ppb, and all linkages are treated identically except for being listed in separate tables for "nonattainment" and "maintenance" monitors.

Simply labeling monitors differently but making no other distinctions hardly amounts to "independent effect." The EPA itself acknowledges this fact (80 FR 75730), stating that "… two receptors … are expected to have average design values below the NAAQS with the adjusted base case. However, these receptors are still expected to have maximum design values exceeding the NAAQS with the adjusted base case. Because both of these receptors are also considered maintenance receptors for the purposes of this proposal, their status as identified air quality concerns and ***the status of states linked to these receptors is unchanged*** by the adjusted base case." [Emphasis added]

The EPA states that all responsibility for meeting the NAAQS will not fall on upwind states (see 80 FR 75709). However, the EPA has linked upwind states, including Texas, to areas that are marginal nonattainment areas for both nonattainment and maintenance. In fact, in the 2008 CSAPR Update Texas is linked to one single "nonattainment" monitor, which is in an area designated as marginal nonattainment (Sheboygan County, Wisconsin (551170006)). The possible modeled linkage to Denver, Colorado that the EPA has identified for the first time in current proposal is also a linkage to a marginal nonattainment area. Additionally, Texas is linked to nine "maintenance" monitors in four areas designated as marginal nonattainment (Camden County, New Jersey (340071001); Gloucester County, New Jersey (340150002); Ocean County, New Jersey (340290006); Queens County, New York (360810124); Richmond County, New York (360850067); Suffolk County, New York (361030002); Hamilton County, Ohio (390610006); Allegheny County, Pennsylvania (420031005); and Philadelphia County, Pennsylvania (421010024)), and to one "maintenance" monitor in one area designated as attainment (Allegan County, Michigan (260050003)). Although Texas is also linked to two "maintenance" monitors in one area designated as moderate nonattainment (Baltimore County, Maryland (240053001); Harford County, Maryland (240251001)), on March 18, 2015, the EPA published a clean data determination for the Baltimore area. Should the EPA finalize that determination, all nonattainment planning requirements for that area would be suspended so long as the area remains in attainment of the 2008 eight-hour ozone standard. This would leave only major source New Source Review (NSR) offsets and Lowest Achievable Emission Rate (LAER) requirements for new or modified major sources as potentially affecting sources within the nonattainment area and would not require any specific emissions reduction within the nonattainment area in the absence of major modifications or new construction of major sources.

Linkages to marginal nonattainment areas means that the EPA is requiring emission reductions from upwind states, including Texas, to assist states that do not have to make emission reductions or institute control strategies of their own to reduce ozone in the absence of major modifications or new construction of major sources. The only nonattainment requirements that marginal nonattainment areas have to meet are the major source NSR offsets and LAER requirements for new or modified major sources within the nonattainment areas. This may, in fact, affect no sources in these areas, as only new and modified construction of sources that meet the nitrogen oxides and volatile organic compounds major source thresholds will have to make any allowances because of these areas' nonattainment status.

Lastly, the EPA has not promulgated a rule that identifies a required or recommended methodology for states (or even the EPA, itself) to give independent consideration to possible contributions that may interfere with maintenance in downwind areas. It is

arbitrary and capricious to propose disapproval for failure to meet a standard or requirement that did not exist at the time the statutory obligation matured.

7. **The EPA has not proven that a contribution by upwind states of 1% of the relevant NAAQS will "interfere with" maintenance in identified maintenance areas.**

The EPA continues to conflate the requirements necessary to ensure that an upwind area is not "contributing to nonattainment" with the requirement to not "interfere with maintenance." Texas does not dispute that upwind states are required to not "interfere with maintenance" in downwind areas. However, the EPA has not demonstrated that a 1% of the NAAQS contribution to modeled emissions in maintenance areas is appropriate for linking an upwind state to a maintenance monitor. Nor has the EPA demonstrated that the amount of reductions necessary to cure a contribution to nonattainment is also appropriate to ensure that an upwind state is not interfering with maintenance. The 1% contribution is arbitrary.

8. **The TCEQ supports the use of ambient air quality monitoring data as the only valid basis for making nonattainment designations and identifying nonattainment and maintenance receptors.**

The TCEQ does not support the use of modeling as the basis for designations or identifying receptors for transport. Such actions have serious consequences to industry, the economy of an area, its citizens, and the state. These actions should only be made based on data from 40 CFR Part 58 compliant (regulatory) monitoring. Using modeling for these actions could result in major capital expenditures for industry to "fix" something that may not be a real problem. To base these actions on modeling is inconsistent with historical and present EPA policies. For example, the EPA does not redesignate when an area models attainment as part of an attainment demonstration SIP. The EPA uses monitoring data to verify attainment before redesignating.

9. **The EPA failed to give Texas comments on the adequacy of its analysis and its use of data in areas geographically close to Texas during the public comment period for the SIP.**

The EPA did not comment on the adequacy of the TCEQ's analysis or its use of data from states geographically close to Texas during the public comment period for the Infrastructure and Transport SIP. The EPA made no mention that Texas should provide analysis for other areas in addition to the ones that they already analyzed. The lack of EPA comment led the TCEQ to believe that the submitted analysis was adequate to show how Texas contributes to other states' ozone concentrations.

# Tab 5

Luminant comment letter to Ron Curry, EPA Region 6 Regional Administrator; Re: Comments of Luminant on the Disapproval of Texas′s SIP Regarding Implementation of the 2008 Ozone NAAQS-Docket ID No. EPA-R06-OAR-2012-0985; 81 Fed. Reg. 21290 (April 11, 2016)



**Stephanie Zapata Moore**
Vice President & General Counsel
stephanie.moore@luminant.com

**Luminant**
1601 Bryan St.
Dallas, Texas 75201

**T** 214.875.8183
**C** 214.542.6460
**F** 214.875.9478

May 11, 2016

Sent via: online submission at regulations.gov

Ron Curry
Regional Administrator
U.S. Environmental Protection Agency, Region 6
1445 Ross Avenue, Suite 1200
Dallas, Texas 75202-2733

RE:      Comments of Luminant on the Disapproval of Texas's SIP Regarding Implementation of the 2008 Ozone NAAQS – Docket ID No. EPA-R06-OAR-2012-0985; 81 Fed. Reg. 21,290 (Apr. 11, 2016)

Dear Mr. Curry,

Luminant submits these comments on the U.S. Environmental Protection Agency's ("EPA") proposed *Approval and Promulgation of Air Quality Implementation Plans; Texas; Interstate Transport of Air Pollution for the 2008 Ozone National Ambient Air Quality Standards* ("Proposed Rule").[1]  Luminant appreciates the opportunity to comment on the Proposed Rule.  Luminant believes the Proposed Rule should not be finalized because it amounts to only a post hoc rationalization for EPA's earlier proposed federal implementation plan ("FIP") to update the Cross-State Air Pollution Rule ("CSAPR") with the 2008 ozone national ambient air quality standards ("NAAQS").  Instead, EPA's action on the Texas state implementation plan ("SIP") should be delayed until EPA complies with the D.C. Circuit's CSAPR remand by issuing new legal budgets under the 1997 ozone NAAQS.  If EPA, however, proceeds to finalize the disapproval of Texas's SIP submission, EPA must reopen the comment period for its proposed FIP to update CSAPR with the 2008 ozone NAAQS.

## I.    Public notice on the Proposed Rule is not meaningful because the outcome was predetermined when EPA issued the proposed FIP to update CSAPR.

On December 3, 2015, EPA issued a proposed FIP that would update CSAPR with new $NO_X$ budgets for the 2008 ozone NAAQS.[2]  At the time EPA issued the proposed FIP, EPA had taken no action on Texas's infrastructure SIP that implemented the 2008 ozone NAAQS.  A technical support document for the proposed

---

[1] 81 Fed. Reg. 21,290 (Apr. 11, 2016).  In these comments, "Luminant" refers collectively to Luminant Generation Company LLC, Oak Grove Management Company LLC, Sandow Power Company LLC, Big Brown Power Company LLC, DeCordova Power Company LLC, Tradinghouse Power Company LLC, Eagle Mountain Power Company LLC, DeCordova II Power Company LLC, Valley NG Power Company LLC, Luminant Mining Company LLC, Luminant Energy Company LLC, Luminant Big Brown Mining Company LLC, Luminant Holding Company LLC, Luminant ET Services Company LLC, and La Frontera Holdings, LLC.

[2] 80 Fed. Reg. 75,706 (Dec. 3, 2015).

FIP confirms that "EPA ha[d] not taken *any* action on [Texas's] SIP submission at [that] time."[3]  EPA's current proposal—issued on April 11, 2016—is EPA's first action on the portion of Texas's 2012 SIP submission regarding interstate transport.

The issuance of the Proposed Rule runs counter to basic principles of administrative law and rational agency decision-making.  EPA should have evaluated and proposed action on Texas's SIP submission prior to issuing a FIP for CSAPR.  The Clean Air Act gives EPA the authority to impose a FIP only when: (1) EPA finds that a state fails "to make a required submission" or finds the SIP submission does not meet appropriate criteria; or (2) EPA disapproves a SIP submission "in whole or in part."[4]  EPA's guidance on infrastructure SIP submittals notes that "an action by the EPA to disapprove a SIP or SIP element initiates a FIP obligation."[5]  But here, EPA had not satisfied any of these prerequisites when it issued the proposed FIP with respect to Texas in December 2015.  EPA's proposed disapproval of Texas's SIP submission is only a post hoc rationalization for its earlier FIP.  This approach is unlawful and impermissibly treads on the cooperative federalism approach that is required by the Clean Air Act.

## II.  EPA needs to revise the CSAPR budgets in accordance with the D.C. Circuit's remand before it can evaluate Texas's SIP submission.

In the proposed FIP to update CSAPR that was issued in December 2015, EPA attempts to "replace the budgets promulgated in the CSAPR rule to address the 1997 ozone NAAQS . . . with budgets developed to address the revised and more stringent 2008 ozone NAAQS."[6]  But by failing to issue new budgets for the 1997 ozone NAAQS, EPA is in violation of the D.C. Circuit's specific remand instructions.  EPA cannot rationally evaluate Texas's infrastructure submittal until it complies with the Court's remand and develops legal budgets under the 1997 ozone NAAQS.

In 2015, the U.S. Court of Appeals for the D.C. Circuit ruled on "as-applied challenges" to the "2014 ozone-season $NO_X$ emissions budgets related to the 1997 8-hour ozone NAAQS" in eleven states.[7]  The D.C. Circuit invalidated the 2014 ozone-season $NO_X$ budget for Texas because the record demonstrated that for "the two downwind locations to which Texas is linked for ozone," compliance with the NAAQS could be achieved with a cost threshold "far lower" than the one that was imposed by CSAPR.[8]

To remedy the illegal budgets, the D.C. Circuit concluded that it would "remand *without vacatur* the 2014 emissions budgets that [it] found invalid."[9]  In other words, the unlawful 2014 $NO_X$ ozone-season budgets based on the 1997 8-hour ozone NAAQS are still in place (although tolled until 2017) until replaced with new budgets based also on the same 1997 8-hour ozone NAAQS.  Under the mandate of the D.C. Circuit, EPA must

---

[3] EPA, *Status of 110(a)(2)(D)(i)(I) SIPs Proposed Rule TSD* at 8 (Nov. 2015) (EPA-HQ-OAR-2015-0500-0099) (emphasis added).

[4] 42 U.S.C. § 7410(c)(1); *see Arizona v. EPA*, 151 F.3d 1205, 1212 (9th Cir. 1998) (A FIP is "specifically meant to fill in the gaps where a State has failed to submit an SIP or where the State's SIP does not satisfy minimum criteria under the CAA.").

[5] EPA, *Guidance on Infrastructure State Implementation Plan (SIP) Elements under Clean Air Act Sections 110(a)(1) and 110(a)(2)* at 5 n.11 (Sept. 13, 2013).

[6] 80 Fed. Reg. at 75,716.

[7] *EME Homer City Generation, L.P. v EPA*, 795 F.3d 118, 129–30 (D.C. Cir. 2015).  The eleven states include: Florida, Maryland, New Jersey, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Texas, Virginia, and West Virginia.  *Id.* at 130.

[8] *Id.* at 130.

[9] *Id.* at 132.

replace the 2014 budgets with lawful budgets that do not require more control than necessary to comply with the 1997 8-hour ozone NAAQS. Unless and until EPA does so, it has no basis to disapprove Texas's SIP submittal that implements the 2008 ozone NAAQS. By failing to establish lawful budgets for 2017 under the 1997 ozone NAAQS, EPA does not have the information necessary to evaluate additional reductions associated with Texas's plan to comply with the 2008 ozone NAAQS.

### III.  EPA must reopen the comment period for its proposed FIP to update CSAPR.

As explained above, in December 2015, EPA proposed a FIP that would "resolve" the SIP submittal that EPA is currently proposing to disapprove. Therefore, the comments previously submitted on the proposed FIP have limited utility because EPA's current rationale for disapproving Texas's SIP submission was not known at the time those comments were submitted to EPA. Accordingly, EPA must reopen the comment period for its proposed FIP to update CSAPR with the 2008 ozone NAAQS.

### IV.  Texas's SIP gives independent significance to the "interfere with maintenance" clause.

In 2008, the D.C. Circuit held that "independent significance" must be given to the nonattainment and maintenance prongs of Section 110(a)(2)(D)(i)(I),[10] and the U.S. Supreme Court has found that "under the 'interfere with maintenance' prong, EPA may only limit emissions 'by just enough to permit an already-attaining State to maintain satisfactory air quality.'"[11] Here, EPA's proposal erroneously concludes that "Texas does not give the 'interfere with maintenance' clause of section 110(a)(2)(D)(i)(I) independent significance because its analysis did not attempt to evaluate the potential impact of Texas emissions on areas that are currently measuring clean data, but that may have issues maintaining that air quality."[12]

Texas's SIP does in fact give the "interfere with maintenance" clause independent significance. Texas specifically concludes that "monitoring data do not suggest that emissions from Texas contribute significantly to nonattainment or *interfere with maintenance* of the 2008 eight-hour ozone NAAQS for areas in any other state."[13]

EPA has misconstrued what is required by the "interfere with maintenance" clause by stating that Texas did not evaluate areas "currently measuring clean data."[14] As explained in Luminant's comments on the proposed FIP for CSAPR, EPA has no basis to regulate maintenance receptors that currently monitor clean data. Any receptor that has current air quality data that meets the relevant NAAQS must be removed from consideration. Thus, EPA cannot use maintenance receptors that are monitoring clean data to support a conclusion that Texas did not give the "interfere with maintenance" clause independent significance.

In fact, because EPA intends "to apply a single approach for quantifying an upwind state's ozone transport obligation to both nonattainment and maintenance receptors,"[15] EPA itself is not compliant with the requirement to give the "interfere with maintenance" clause independent significance. Using EPA's standard,

---

[10] *North Carolina v. EPA*, 531 F.3d 896, 910 (D.C. Cir. 2008).

[11] *EME Homer City*, 795 F.3d at 137 (quoting *EME Homer City Generation, L.P. v EPA*, 134 S. Ct. 1584, 1604 n.18 (2014)).

[12] 81 Fed. Reg. at 21,292.

[13] TCEQ, *Texas Infrastructure Demonstration and Transport Plan for Ozone*, at 2-19 (Dec. 5, 2012) (emphasis added).

[14] 81 Fed. Reg. at 21,292.

[15] 80 Fed. Reg. at 75,730.

there is the potential for over-control because EPA is seeking to impose the same "cost-effective-controls" in order to avoid both interference with maintenance *and* significant contribution to nonattainment. The Supreme Court has determined that this approach is unlawful.

*     *     *

In sum, EPA should not finalize its proposed disapproval of the interstate transport provisions of Texas's infrastructure SIP submittal. At a minimum, EPA must revise the 1997 ozone NAAQS budgets in accordance with the D.C. Circuit's remand before it can act on Texas's submission. Only after fully evaluating Texas's submission in light of the new (and legal) CSAPR budgets, can EPA take action on Texas's SIP. A FIP to update CSAPR with the 2008 ozone NAAQS would then be proper only if EPA first finalizes the disapproval of Texas's infrastructure SIP submission.

Thank you for the opportunity to submit these comments. Please contact me with any questions about them.

Very truly yours,

Stephanie Zapata Moore
General Counsel, Luminant

# Tab 6

Comment letter from public citizen Nicholas Porter;
Comment:  EPA-R06-OAR-2012-0985-0001; Re: Air Quality State
Implementation Plans; Approval and Promulgation; Texas; Interstate
Transport of Air Pollution for the 2008 Ozone National Ambient Air
Quality Standards Proposed Rule

Comment: EPA-R06-OAR-2012-0985-0001

RE: Air Quality State Implementation Plans; Approval and Promulgation; Texas; Interstate Transport of Air Pollution for the 2008 Ozone National Ambient Air Quality Standards, Proposed Rule.

To Whom It May Concern,

In March 2008, the Environmental Protection Agency (EPA), revised the National Ambient Air Quality Standards (NAAQS) for ozone over an eight hour averaging time. The ruling changed both the primary and secondary standards from 0.08 parts per million (ppm) to 0.075 ppm.[i] Once these standards were finalized, states needed to submit State Implementation Plans (SIPs) that addressed these new standards.  Specifically, states needed to have approved plans that addressed pollution transport over state lines with regards to ozone and ozone precursor pollution (NO$_x$) for the new standards.[ii] Ozone is the combination of sunlight and two precursor pollution products, oxides of nitrogen (NO$_x$) and volatile organic compounds (VOCs).[ii] Ozone is a serious pollutant that can have multiple negative effects on human health.  Studies have described contributions to serious negative cardiovascular and respiratory health effects due to ozone.[iii,iv,v] Sensitive subpopulations include older adults, kids, and individuals with asthma.[v]

Texas submitted its SIP revision to address the 2008 ozone NAAQS interstate transport obligations on December 13, 2012.[ii]  The Clean Air Act mandates states to do this in order to abide by its "Good Neighbor" policy, which requires that states reduce emissions so as to not interfere with other state's reduction efforts.[ii]  Both the EPA and researchers acknowledge the problem for long range transport of airborne pollutants.[vi,vii,viii] This comment letter addresses the proposed ruling by the EPA to disapprove the revision of the Texas SIP that deals with interstate transport of ozone and pollution precursors (NO$_x$) to ozone in regards to the 2008 NAAQS. This letter comments on the evaluation and offers some advice regarding improvements to the written rule.

As noted in the rule, the Texas SIP revision used "monitoring data, wind patterns, emissions data, and emissions controls" to analyze and ultimately conclude that their SIP was sufficient to satisfy the interstate transport requirements for the 2008 ozone NAAQS.[ii]  The EPA did not agree, stating that "Texas limits its discussion of data only to areas designated nonattainment in states that are geographically closest to Texas".[ii]  EPA argued that Texas should have considered areas that are currently in attainment as well, as these sites could possibly measure ozone values over the 2008 standard due to pollution transport from Texas.[ii] For example, some monitors in Oklahoma, a state bordering Texas, measured 8-hour ozone values above the 0.075 ppm limit in 2011, even though Oklahoma had no nonattainment areas at the time.[ix,x] The EPA also stated that Texas failed to consider areas that are "measuring clean

data", but may have trouble keeping that up due to past variability and transport of pollutants from other states.[ii] These maintenance areas are closely monitored due to their increased risk at falling into a nonattainment status compared to other areas currently in attainment. Regulating authorities are required to analyze and determine if the emissions from their own state can interfere and make it difficult for other states measuring clean data to stay that way.[ii] I agree that Texas did not consider current or future maintenance areas in their SIP revision as they were required and I support EPA's determination that this needs to be addressed.  In studying the SIP revision document, Texas seems to only mention maintenance in the background of their document, not in the actual analysis.[x] I also agree that Texas should consider potential ozone exceedances facilitated by Texas in other states that are not formally considered nonattainment for the 2008 ozone standard.

However, I do want to offer a suggestion that could be useful for the communication of this current proposed SIP evaluation, enhancing the strength and clarity of EPA's evaluation.  It deals with the "Notice of Availability of the Environmental Protection Agency's Updated Ozone Transport Modeling Data for the 2008 Ozone National Ambient Air Quality Standards (NAAQS)" notice of data availability (NODA) and how EPA projects areas to be classified as nonattainment and maintenance receptors in the current SIP revision evaluation.[xi] Currently, future nonattainment and maintenance receptors are designated as such based on recent monitoring data and EPA's modeling data.[xi] More specifically, EPA uses a five year weighted average for nonattainment projections and a five year maximum value for maintenance projections, both from three monitoring periods (in the case of this SIP evaluation: 2009-2011, 2010-2012, and 2011-2013).[xi] EPA then uses these monitored values to produce complex projections and models of nonattainment and maintenance receptors in the near future.[xi] This information is not well explained in the SIP revision evaluation and is located elsewhere in the NODA.[ii,xi] I believe that this should be better articulated in EPA's evaluation of the Texas SIP revision, especially since the one percent threshold is well explained for determining significant state contributions to interstate pollution.[ii] The SIP revision evaluation discusses projections and modeling, but does not explain how these models or projections are informed by recent ozone monitoring data.  By clarifying and explaining this in the evaluation of the SIP revision, the public can better understand how the EPA is using the most current information available in their ultimate decision.

The data and methods used to determine Texas's downwind contributions to projected nonattainment and maintenance were compelling.  By using a threshold equal to one percent of the 2008 ozone NAAQS (0.75 parts per billion) and modeling/monitoring data from 2011, EPA confidently estimated the quantity of Texas's precursor ozone emissions and ozone products and where they will end up in 2017.[ii]  I believe this method was sound due to similar techniques being employed in past effective interstate pollution transport rulings.[ii]  EPA's further reasoning that Texas's revised SIP was not sufficient due to Texas citing compliance with old standards to satisfy new standards was also significant.[ii] The litigation that held up the

implementation of the Cross State Air Pollution Rule (CSAPR) in favor of the outdated Clean Air Interstate Rule (CAIR) was eventually overturned and CSAPR was implemented in 2015.[ii] Texas cannot simply cite compliance with CAIR to address CSAPR requirements, especially since CAIR, in the case of Texas, dealt mainly with reductions of $NO_x$ to address interstate transport of $PM_{2.5}$.[ii] I agree with this determination. However, I have an issue with how long the EPA sat on the Texas SIP revision.

As mentioned above, an issue with this evaluation of the Texas SIP revision is the time in which it took to be reviewed and evaluated.[xii] This SIP revision was submitted in December 2012 and no action was taken on it until April 2016.[ii,xii] While I acknowledge that EPA has limited resources, the state of Texas could have benefitted from this evaluation earlier. The Texas Commission on Environmental Quality (TCEQ) commented on the proposed CSAPR update rule (proposed in December 2015), stating that the EPA did not evaluate the revised SIP in a timely fashion and is now asking for states to revise the SIPs if they want to avoid the Federal Implementation Plan (FIP) proposed in the CSAPR update rule.[xii,xiii] TCEQ believes that the FIPs proposed in the CSAPR update rule were "not yet warranted" because EPA had not formally evaluated the Texas SIP revision.[xii] According to TCEQ, EPA is not giving them ample time to properly and methodically update their SIP, as afforded to states by the Federal Clean Air Act.[xii] This is an issue, especially since EPA could have disapproved the Texas SIP without the updated projections and modeling included in various recent notices and proposals, including the SIP revision evaluation. EPA called the SIP revision "incomplete" before even talking about the new data modeling and projections.[ii] To remedy this, EPA should work closely and quickly with Texas to develop an acceptable SIP to both the EPA and Texas, keeping important stakeholders involved (public, environmental groups, EGU industry, legislators, etc.). Furthermore, they should update this SIP revision evaluation rule to better explain why a relatively short revision to the Texas SIP was not ruled on sooner. This information can help better inform future SIP revisions and allow Texas to employ approved control measures in a timely manner.

In conclusion, I support the disapproval of the Texas SIP revision. I believe that the EPA has sufficiently evaluated the SIP revision and given evidence to the fact that Texas's ozone precursor emissions will significantly contribute to issues with attainment and maintenance of the 2008 ozone NAAQS in other states. While Texas has certainly reduced harmful emissions over the years, new standards and rules require constant revisions to meet the goals of protecting public health.[ii] Ozone is a serious public health issue that will require constant vigilance from federal and state legislators, public health agencies and institutions, hospitals, researchers, and the public. I thank the Environmental Protection Agency for the chance to comment on this proposal.

Sincerely,

Nicholas Porter

[i] Table of Historical Ozone National Ambient Air Quality Standards.  Environmental Protection Agency. March 4th 2016.  Accessed 4/19/16 from https://www.epa.gov/ozone-pollution/table-historical-ozone-national-ambient-air-quality-standards-naaqs

[ii] Approval and Promulgation of Air Quality Implementation Plans; Texas; Interstate Transport of Air Pollution for the 2008 Ozone National Ambient Air Quality Standards. 81 Federal Register 69, (11 April 2016). 21290-21295. Retrieved from https://www.federalregister.gov/articles/2016/04/11/2016-08275/approval-and-promulgation-of-air-quality-implementation-plans-texas-interstate-transport-of-air

[iii] Peng, R. D., Samoli, E., Pham, L., Dominici, F., Touloumi, G., Ramsay, T., ... & Atkinson, R. W. (2013). Acute effects of ambient ozone on mortality in Europe and North America: results from the APHENA study. *Air Quality, Atmosphere & Health*, *6*(2), 445-453.

[iv] Kheirbek, I., Wheeler, K., Walters, S., Kass, D., & Matte, T. (2013). PM2. 5 and ozone health impacts and disparities in New York City: sensitivity to spatial and temporal resolution. *Air Quality, Atmosphere & Health*, *6*(2), 473-486.

[v] Ozone Basics.  Environmental Protection Agency. March 4th 2016.  Retrieved April 19th 2016 from https://www.epa.gov/ozone-pollution/ozone-basics#effects

[vi] Li, Q., Jacob, D. J., Bey, I., Palmer, P. I., Duncan, B. N., Field, B. D., ... & Simmonds, P. G. (2002). Transatlantic transport of pollution and its effects on surface ozone in Europe and North America. *Journal of Geophysical Research: Atmospheres*, *107*(D13).

[vii] Fiore, A. M., Jacob, D. J., Bey, I., Yantosca, R. M., Field, B. D., Fusco, A. C., & Wilkinson, J. G. (2002). Background ozone over the United States in summer: Origin, trend, and contribution to pollution episodes. *Journal of Geophysical Research: Atmospheres*, *107*(D15).

[viii] CSAPR Basic Information. Environmental Protection Agency. February 22 2016.  Accessed April 19th 2016 from https://www3.epa.gov/airtransport/CSAPR/basic.html

[ix] Monitor Values Report.  Environmental Protection Agency. February 22 2016. Accessed April 19th 2016 from https://www3.epa.gov/airdata/ad_rep_mon.html

[x] Texas Infrastructure and Transport SIP for the 2008 Ozone National Ambient Air Quality Standard (NAAQS). Accessed April 19th 2016 from https://www.regulations.gov/#!documentDetail;D=EPA-R06-OAR-2012-0985-0002

[xi] Updated Ozone Transport Modeling Data for the 2008 Ozone National Ambient Air Quality Standard. 80 Federal Register 149, (4 August 2015). 46271-46280.

[xii] Comment Submitted by Richard A. Hyde, Executive DIrectr, Texas Commission on Environmental Quality (TCEQ). Tracking Number: 1k0-8nnu-gmbx. Accessed April 19th 2016 from https://www.regulations.gov/#!documentDetail;D=EPA-HQ-OAR-2015-0500-0314

[xiii] Cross State Air Pollution Rule Update for the 2008 Ozone NAAQS. 80 Federal Register 232, (3 December 2015). 75706-75778.